# EXHIBIT 1

**U.S. Department of Justice**

Civil Division

PDK:DMC:HDL:SAS
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

Telephone: (202) 616-0347
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

March 1, 2006

**VIA FACSIMILE AND FIRST CLASS MAIL**
L. Jager Smith, Jr.
Wise, Carter, Child & Caraway
1340 Echelon Parkway
Jackson, MS 39213

Re: Systems Fuel, Inc.(Mississippi) v. United States, No. 03-2624C (Judge Braden)

Dear Mr. Smith:

Attached, as we discussed earlier, is a list of documents that are identified in SFI's responses to Defendant's First Request For Documents as being available on site. I understand that you will be able to have these documents copied for us. Once we receive the copies of the documents, we will have them Bates stamped and provide you a Bates stamped copy.

In addition, we have a list of documents that support the conclusions and opinions reached in the Kenrich Report that we have not been able to locate in the production. We ask you to either locate them for us within the production, or produce them. It may be that some or all of these documents will be available electronically when we visit the Entergy offices. Please let me know if that is the case. The documents that we need to review include the following:

1) Provide all documents and electronic data (Excel format) for the Capital Suspense allocation [Administrative & General (A&G) and Function Specific] for 1999 – 2005 that establish the support for the allocations to the work orders included in the Kenrich Report, including but not limited to:

   a. The budgeted and actual rates.

   b. Details of the budgeted charges for capital suspense, including hours by person, and details of the budgeted capital spending bases used to allocate the capital suspense.

   c. Details of the actual charges to capital suspense, including hours by person, and actual capital spending bases used to allocate the apital suspense.

   d. Reconciliation of actual charges and allocations to budgeted charges and allocations.

COPY

e. Identification of any charge other than direct labor charged to capital suspense, including but not limited to payroll taxes, benefits, any overhead or other loader applied to the direct labor rate.

f. Job descriptions, departmental descriptions, and any other information that describes the work or services performed by individuals charging to capital suspense.

2) Provide all documents and electronic data (Excel format) for the Materials loader allocation for 1999 – 2005 that establish the support for the allocations to the work orders included in the Kenrich Report, including but not limited to:

a. The budgeted and actual rates.

b. Details of the budgeted charges, including hours by person, and details of the budgeted bases used to allocate the charges.

c. Details of the actual charges, including hours by person, and actual materials bases used to allocate the charges.

d. Reconciliation of actual charges and allocations to budgeted charges and allocations.

f. Identification of non labor charges, including any overhead or other loader applied to the direct labor rate.

g. Job descriptions, departmental descriptions, and any other information that describes the work or services performed by individuals charging to capital suspense.

3) Provide all documents and electronic data (Excel format) for the Payroll loader allocation for 1999 – 2005 that establish that support the allocations to work orders included in the Kenrich Report, including but not limited to:

a. The budgeted and actual rates.

b. Details of the budgeted and actual charges for Benefits, Incentive Compensation, Non-Productive Time and Payroll Taxes.

c. Details of the calculation of the benefits rate identified as Resource Code 019.

d. Policies and other documents describing incentive compensation plans allocated as Resource code 02.

e. Policies and other documents describing benefits plans allocated as Resource code 019.

4) For the following vendors provide all documents from 1998 – 2005 related work performed on the Capital work orders included in the Kenrich report, as further described below:

a. For Enercon Services Inc., provide all emails and correspondence.
b. For Stone & Webster Construction Co., provide all emails, correspondence, and supporting documentation for the summary-level invoices that were provided in discovery.
c. For Rexel Southern, provide all emails and correspondence.
d. For Rental Services Corp, provide all emails and correspondence.
e. For Capitol Steel, provide all emails and correspondence.
f. For MMC Materials Inc, provide all emails and correspondence.
g. For NES Rentals Inc, provide all emails and correspondence.
h. For Martin Marietta Aggregates, provide all emails and correspondence.
i. For Hoist & Crane Service, provide all emails and correspondence.
j. For Emerald Coast Services Inc, provide all emails and correspondence.
k. For Dutch Enterprises Inc, provide all emails and correspondence.

5) Electronic (Excel format) copies of Payroll labor distribution for 1998 – 2005 for the departments listed below. The format and detail can be similar to the previously produced spreadsheet entitled "New-Grand-Gulf Data.XLS" but should include all charges at Grand Gulf, not just claimed work orders. Provide documents which identify, explain or describe each column heading. Additionally, for any of the above departments for which the electronic data can not be retrieved, provide the hardcopy data.

a. NQN81
b. NSCD2
c. NSCE2
d. NSCE3
e. NSCE4
f. NSCE6
g. NSCH1
h. NSCM2
i. NSCM3
j. NSCM4
k. NSCM
l. NSCR3
m. NSE74
n. NEA6

6) Electronic (Excel format) details by person of the labor timekeeping data entered by any subcontractor (including but not limited to Stone & Webster Construction Company) into Entergy's timekeeping system. The time period should cover from 1999 – 2005, and the data should include entries for all Grand Gulf work orders,

both claimed and not claimed. Additionally, provide documents which identify, explain or describe each column heading.

Finally, we have decided that we will travel to Jackson the week of March 13, instead of next week, to review documents that you are making available electronically in the Entergy offices. We would like to start our review of electronic data on Tuesday, March 14. Depending on the amount of information that is available, we plan to spend at least three days in your offices. We can make more definite plans with you as the date approaches.

Thank you in advance for your assistance with these document issues. Please give me a call, if you have any questions.

Very truly yours,

Sharon Snyder

SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch

cc: Alex D. Tomaszczuk (via facsimile)

Enclosure

**<u>ON-SITE DOCUMENTS</u> (to be copied)**

<u>Request No. 13</u>

| | |
|---|---|
| SFL-POOL-1633 | DOE Spent Fuel Management Survey |
| SFI-POOL-1635 | 1+2 Spent Fuel Data Magnetic Tape |
| SFL-POOL-4243 | Revised RF14 Spent Fuel Storage Capacity |

<u>Request No. 14</u>

| | |
|---|---|
| SFI-POOL-1283 | High Density Spent Fuel Storage |
| SFL-POOL-1646 | Proposed Rule Spent Fuel Storage Expansion |
| SFL-POOL-1674 | GGNS Unit 1 High Density Spent Fuel Racks Licensing Report Review |
| SFL-POOL-1752 | Summary of 860205 Site Meeting Regarding Spent Fuel Pool Storage Facility |

<u>Request No. 15</u>

| | |
|---|---|
| SFL-POOL-1306 | Preliminary Report on Measurement on Boraflex Surveillance Coupon For The Grand Gulf Spent Fuel St |
| SFL-POOL-1766 | Purchase Order To Continue Of The Spent Fuel Storage Rack |
| SFL-POOL-1767 | Holtec International |
| SFL-POOL-1815 | Holtec International Purchase Order 80910-195 |

# EXHIBIT 2

**U.S. Department of Justice**

Civil Division

PDK:DMC:HDL:SAS
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

Telephone: (202) 616-0347
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

March 17, 2006

<u>VIA FACSIMILE AND FIRST CLASS MAIL</u>
L. Jager Smith, Jr.
Wise, Carter, Child & Caraway
1340 Echelon Parkway
Jackson, MS 39213

Re: <u>Systems Fuel, Inc.(Mississippi) v. United States</u>, No. 03-2624C (Judge Braden)

Dear Mr. Smith:

Thank you for the courtesy and hospitality that you and the staff at Entergy showed us last week when we came to Jackson to review documents and data. We hope to have the opportunity to enjoy that courtesy and hospitality again soon, as we expect to make another trip to Jackson within the next few weeks to review additional documents and data.

In the meantime, I wanted to follow up with you on a number of items that we discussed before I left last Thursday, as follows.

1) **Capital Suspense loader data and documents** identified in my March 1, 2006, letter: you agreed to send an electronic version of those documents, either by disc or by e-mail.

2) **Materials loader data and documents** identified in the March 1 letter: Diane Bryars was going to take the lead ad provide us a sample electronically.

3) **Payroll loader data and documents** identified in the March 1 letter: you agreed to provide us with information relating to that topic electronically.

4) We had requested copies of **e-mails between SFI/MS and its vendors**. You agreed to start your review and collection of that material.

5) Please let me know when that material will be ready. Please provide us a coy of the generic version of the Learning Series document that we discussed

In addition, in light of our review last week of the Stone & Webster data, we have some follow-up requests, as follows.

6) The spreadsheets created contemporaneously with the invoice for each of the 182 invoices claimed for Stone and Webster. The spreadsheet should cost out the incurred hours and distribute all loadings and mark ups as was provided in. S_W_July05_DFS 2554Areview.xls.

7) With respect to the Stone and Webster Salary and Wage schedule used for each claimed invoice,

a) Provide the amendments which invoke the rates, as follows:

1) NHA00012 Amendment No. 1, Table 1, "Manual Billing Rates."

2) NHA00012 Amendment No. 2, Exhibit G, entitled "Compensation Provisions for Painting and Coating Application Services."

3) NHA00012 Amendment No. 3, Exhibit B, Table 1, "Manual Billing Rates" and Table 2, "Non-Manual Billing Rates."

4) NHA00012 Amendment No. 4, Exhibit B, Table 1, "Manual Billing Rates" and Table 2, "Non-Manual Billing Rates."

5) NHA00012 Amendment No. 6, Exhibit B, Table 1, "Manual Billing Rates."

6) NHA00012 Amendment No. 7, Exhibit B, Table 1, "Manual Billing Rates."

7) NHA00012 Amendment No. 8, Exhibit B, Table 1, "Non-Manual Billing Rates, All Projects," and Table 2, "Craft Billing Rates."

8) NHA00012 Amendment No. 9, Exhibit B, "revised billing rates for 'Laborers – Production Services' as detailed in Table 2, 'Craft Billing Rates.'"

9) NHA00012 Amendment No. 12, Exhibit B, "revised billing rates for 'Laborers – Production Services' and 'Non-Manual Billing Rates,' as detailed in Table 2, 'Craft Billing Rates' and 'Non-Manual Billing Rates – All Projects.'"

10) NHA00012 Amendment No. 14, Exhibit B, "revised billing rates for 'Laborers – Production Services' and 'Non-Manual Billing Rates,' as detailed in Table 2, 'Craft Billing Rates' and 'Non-Manual Billing Rates – All Projects.'"

11) Agreement 10013095 (formerly NHA00012) Amendment No. 17, Exhibit B, Table 2, Craft Billing Rates and Table 2, Non-Manual Billing Rates for January 1, 2003 through December 31, 2003.

12) All contract amendments which invoke billing rates and the actual rate tables applicable after December 31, 2003.

b) Provide an Excel file for each rate table as was provided in S&W Rate Document.xls. The fields required are: CRAFT, DESCR, MAXRATE, STRATE, OTRATE, DTRATE, BLRATE, PERDIEM, CRAFT CD, OWNER.

8) Pages 2 and following, of Amendment No. 13 to S&W Contract NHA00012. Page one was provided in the Kenrich binders on M256. The remaining pages are missing, provide the missing pages.

9) Provide the policies and procedures defining Entergy's oversight of contract labor and documents evidencing oversight of Stone and Webster personnel and Stone and Webster billings by Entergy personnel.

10) Provide procedures defining time reporting requirements for Stone and Webster employees working on Entergy projects, whether the procedures were drafted by Stone and Webster or by Entergy.

11) Provide plant security logs which document Stone and Webster employees' presence and Entergy employee's presence at Grand Gulf for the following dates: October 12, 2004, December 10, 2004, January 21, 2005, April 1, 2005, May 12-13, 2005, June 24, 2005, July 29-30, 2005 and August 25-28, 2005. We have requested a sampling of the security logs only, to avoid an overly burdensome request.

12) You agreed to send us a copy of the **SWEPA Board of Directors minutes**.

13) With respect to the **on-site** and **microfilm** documents that we requested, I believe that you agreed to provide us copies, rather than send the microfilm to the offices of Mr. Tomaszczuk here in Washington. Please let me know if you have decided to make other arrangements.

14) The SFI Board of Directors meeting minutes that you produced at Entergy last week, refer to documents that we have not found in the production, including the following: a Pendergrast Memorandum relating to the negotiations with the Department of Energy regarding spent fuel disposal services, identified in the March 22,1983 minutes; a proposed contract for professional consulting services to be used in connection with the contract with the Department of Energy, identified in the May 24, 1983 minutes.

In addition, we have found that the following minutes are missing: 1985 minutes (none were produced, there are two sets of 1986 minutes); November 1986 minutes are missing; November 10, 1994 minutes are missing; only June 1995 minutes produced, are there others for 1995; only June 1996 minutes produced, missing August 21, 1996, September 23, 1996 and December 23, 1996 minutes, are there others for 1996. Beginning in 1997, it appears that there are no further Board of Directors meetings, only decisions made by unanimous written consent. Please confirm that this is correct.

In addition, we need the following diagrams and drawings that are referred to in the documents that we have reviewed:

15) Diagrams from Enercon Services Report G-NE-2004-502, labeled GG0002-SK1, GG0002-SK2, GG0002-SK3.

16) Figures from GGNS FSAR 1.2-001, 1.2-002, 1.2-003, 1.2-004, 1.2-005, 1.2-005, 1.2-007, 1.2-008.

17) Full size versions of the Bechtel Aux Building Drawings labeled M-1015A, M-1016, M-1017, M-1019, M-1020, M-1021, and M-1022.

With respect to all of the documents discussed in this letter, as you know, we have very little time for discovery in this case. With that in mind, we are hoping that you will produce the documents requested as quickly as possible. I will be sending you our first list of deponents to schedule depositions late next week. We will expect that April and early May will be very busy with depositions so that we will attempt to complete as much of the document and data discovery during March and early April.

Please give me a call if you have any questions.

updated in July 1989) is updated every six months, while the Strategic Plan is updated annually. Please produce all Tactical Plans dated after July 1993 and Strategic Plans dated after January 1993.

With respect to all of the documents discussed in this letter, as you know, we have limited time for discovery in this case. With that in mind, please produce the documents requested as quickly as possible. Because we expect that April and early May will be very busy with depositions, we are making every effort to complete as much of the document and data discovery that we can during March and early April.

Thank you in advance for your assistance with these matters. Please give me a call, if you have any questions.

Very truly yours,

Sharon Snyder

SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch

cc: Alex D. Tomaszczuk (via facsimile)

# EXHIBIT 3

U.S. Department of Justice

Civil Division

FILE COPY

PDK:DMC:HDL:SAS
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

Telephone: (202) 616-0347
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

March 31, 2006

VIA FACSIMILE AND FIRST CLASS MAIL
L. Jager Smith, Jr.
Wise, Carter, Child & Caraway
1340 Echelon Parkway
Jackson, MS 39213

Re: Systems Fuel, Inc.(Mississippi) v. United States, No. 03-2624C (Judge Braden)

Dear Mr. Smith:

Attached is the Notice of Depositions for the depositions of Kenneth Walker and Michael Withrow. We would also like to schedule the depositions of John McGaha, Ben Franklin, Stephen Corley and Randy Hutchison, in that order, the week of April 17, beginning on Tuesday, April 18 and continuing through Friday, April 18. Please let me know if your schedules will accommodate this request.

Further, in reviewing the cost of capital discussion and data provided in the Kenrich report and work papers, we have additional requests, as follows:

1. For the client prepared schedules supporting Kenrich's Present Value of Dollars calculations contained in Kenrich Binder A, Pages A34 – A41, please provide the following:

   a) Schedule(s) detailing the debt instruments that are included in the long term debt amount. Please identify the debt, the maturity, the interest rate, original principal issued and the amount of principal included in the amount shown.

   b) Schedule(s) detailing the calculation of the long term debt cost rate.

   c) Schedule(s) detailing the determination of the common equity cost rate.

   d) Schedule detailing the calculation of the 38.25 percent composite tax rate.

   e) Reconciliation of the long term debt amounts on Pages A34 – A41 to the long term debt shown in SERI's Form 1 (e.g. pages 256 – 257 of the 2004 Form 1). Include any

documents that contain explanatory information as to why certain debt obligations were included or excluded from the schedules provided to Kenrich.

f) For any of the debt instruments included in the response to questions 1a, 1b, and 1e, identify the amount of the outstanding debt that is held by Entergy, Entergy subsidiaries or affiliates (other than debt held by Entergy retirement plans).

2. Rate or other regulatory filings for 1999 – 2005 that include or discuss SERI's cost of capital or SERI's cost of equity.

3. Identify which, if any, of the Construction Work in Process (CWIP) entries in the 2004 SERI Form 1 are items included in the Kenrich claim:

   a) Any amounts included in the CWIP that are not included in the Kenrich claim.

   b) Any amounts in the Kenrich claim (for costs incurred through 2004) that are not included in the CWIP.

4. Provide the rates used to apply AFUDC to the work orders included in the Kenrich claim.

5. Provide documents that show the calculation or the determination of the AFUDC rates.

6. All documents considered or reviewed by the SERI Board of Directors, between 1998 – 2005, as part of the decision to:

   a) Authorize the payment of dividends;

   b) Issue long term;

   c) Refinance long term debt;

   d) Call or repay a portion of any long term debt prior to the stated maturity date;

   e) Enter into any capital leases greater than $1 million; and/or

   f) Borrow from, or lend funds to any Entergy, its subsidiaries or affiliates.

Thank you in advance for your assistance with these matters. Please give me a call, if you have any questions.

Very truly yours,

Sharon Snyder

SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch

cc: Alex D. Tomaszczuk (via facsimile)

# EXHIBIT 4

**U.S. Department of Justice**

Civil Division

PDK:DMC:HDL:SAS
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

Telephone: (202) 616-0347
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

April 6, 2006

**VIA FACSIMILE AND FIRST CLASS MAIL**

L. Jager Smith, Jr.
Wise, Carter, Child & Caraway
1340 Echelon Parkway
Jackson, MS 39213

Re: System Fuels, Inc.(Mississippi) v. United States, No. 03-2624C (Judge Braden)

Dear Mr. Smith:

Thank you for providing us the opportunity informally to follow-up our inquiry regarding the Materials and Capital Suspense loaders with Entergy personnel on Friday, March 31, 2006, by conference call. As we indicated during those calls, there were several issues that the Entergy employees could not address. We agreed to provide a list of those issues to you, so that you could respond either in writing or, if you prefer, with another conference call. Those questions by topic are as follows.

**Materials Loaders Follow-Up Questions:**

**Basis-Loader-Costs 1999-2005.xls Spreadsheet**

For each year, please provide the detail of the underlying labor charges that come in from intercompany charges (e.g. resource codes 410, 450). To keep the file size reasonable, the level of measure can be by person by month. At a minimum, each record should include the name, employee number, hours, dollars, account code, activity code, project code, original resource code, resource code as billed, summary resource code, account, and business unit. Further, please include the name/description field for each code and any other field needed should the data need to be traced back to the original source if questions arise.

For the years in which labor was charged direct (e.g. has a resource code of 003), please provide a labor detail report by month, by person, similar to the above report.

Provide a key/list of the project codes for the charges made to the materials loader pool.

Identify the costs that are charged to the following resource codes:

065 Inventory Adjustments. Further, within this code, please identify the activity "CRSS" and explain how it relates to inventory adjustments.

095 Inventory Materials & Supplies. In addition, explain the large negative amounts in 2004 415/423/424/429 and how, if at all, these figures relate to charges and work that is incurred under resource code 410.

436 Nuc Refueling Outage Reclass. Explain how the reclass is determined and explain why 2002 is the last year the reclass is used.

450 Svc Company Cascade Billings. Further, explain which company this code represents. Further, provide an explanation of the services provided.

816 Taxes Other Than Income-Ad Valor. In addition, explain what taxes are included, how and when these taxes are assessed, and what the bases and the rates are for the taxes. Please explain why the tax amount increased significantly between 2002 and 2003.

990 Co-Owner Credits. In addition, please confirm that this code represents is SMEPA's share of the costs. Further, provide a brief explanation of how the share is calculated and whether it is a straight 10% of all charges or if there adjustments or other factors included in the calculation.

Please explain if the costs of the conversion to Passport are included in the Materials pool. If they are, please identify the conversion costs by resource code by year. If those costs are not included, please explain if any of those conversion costs are included in Capital Suspense and include a brief description of the costs.

Please provide the contemporaneous supporting documents used to set the materials loader rate each quarter.

**Inventory 1999-2005.xls Spreadsheet**

For the inventory balance roll forward schedules,

Please explain why the "Issues Of Stocked/Non-Stocked Parts" is a positive $9.3 million in 2003.

Please explain why the return of "Return Of Stock/Non Stock Parts" was so high in 2004.

Please explain what is meant by "Issue Reversal" and why it is negative $13.4 million in 2005.

Please explain what the "Shipment Of Material For Repair Service" is and whether it represents a warranty. If it is a warranty, please identify where the repair cost charged and the types of material that would be included in this.

Please explain why the sum of the dollars does not tie to the change in balance on the "Bals" Sheet. <u>See</u> the $9.7M change on "Bals"that appears as $9.6M on the "2004 Activity".

**Capital Suspense Follow-Up Questions:**

**<u>2005 Capital Susp Pool & Basis With Orig Resource.xls</u>**

Please provide a project code key and explanation of the project codes.

For each year, provide the detail of the underlying labor charges that come in from intercompany charges (e.g. resource codes 410, 450). To keep the file size reasonable, the level of measure can be by person by month. At a minimum, each record should include the name, employee number, hours, dollars, account code, activity code, project code, original resource code, resource code as billed, summary resource code, account, and business unit. In addition, please include the name/description field for each code and any other field needed should the data need to be traced back to the original source if questions arise.

Please identify whether this file can be re-run (and added for the reports for 1998 - 2004) with resource name, original resource code name, project name, and activity name fields added.

Please explain whether some of the people who charge their time to Capital Suspense also charge some of their time directly to projects. If yes, please identify the functions or individuals that tend to split their time between direct and Capital Suspense.

Please provide the specifics of the taxes charged in Code 816 and explain whether it is more than one tax, what is the tax base, whether the tax is only charged to Grand Gulf or is this an allocation of a tax that is charged to more than one business unit.
Explain why the tax associated with activity code STPL ("Provide Corp Strat Planning&An").
In addition, please provide the specifics for the taxes charged in Code 814.

Please explain the tax base only charged to Grand Gulf and whether it is an allocation of a tax that is charged to more than one business unit).

Please explain why some of the tax comes in through Resource Code 450.

We have from the Kenrich files an Excel sheet that lists resource code and the corresponding name. Please explain whether there is an accounting document that provides any further explanation or guidance as to what is to be charged using which resource codes, which activity codes and which non-work order project codes.

Provide an explanation of the following Resource codes (if not provided through the previous question):

> 061 – Teamsharing (not discussed in the payroll presentation)
>
> 236 – Post Retirement Plan Payments (not discussed in the payroll presentation)
>
> 740 – ESI Service Co Recipient Allocation
>
> 097 - Materials Loader and Activity code = CRSS (Perf Nuc Corr Maint-Steady) Please identify whether this code is an allocation out, and if so, why.
>
> 901 – Other ($<358k> for the year. Please explain whether this code is usual or unusual.

Please provide a list of all projects charged each year (e.g. project C6PPN60268) The scope of this request can be projects over $50k, if the list needs to be compiled manually and we'll request a sampling of smaller projects in a follow-up.

Lisa Dabello indicated that she was getting us a rate roll forward analysis that summarizes the rates as they change, typically on a quarterly basis. If not included in Ms. Dabello's summary, please provide the contemporaneous supporting documents used to set the rate each quarter.

**<u>CSC Rates May 03 thru Dec 03 and Apr 05 thru June 05.xls Spreadsheet</u>**

Explain the difference between the Administrative & General pool and the General & Intangible pool.

Please confirm that there is no relationship between SERI's nuclear pool and the nuclear pools for the other facilities. That is, (except for the A&G Pool allocations) individuals that charge to SERI's pool do not charge some of their time to the other nuclear pools, and that the SERI pool does not contain costs are that are partial allocations of a larger cost that shared among capital suspense pools.

Please provide some detail on the charges to the A&G pool and the allocation base so that we can understand the dollars being allocated to SERI. We understand that Ms. Dabello is providing the details on rates for the other relevant periods of prior to May 2003, Jan 2004 – March 2005, and

July – August 2005.

**Grand Gulf Site Document Review:**

With respect to our review of documents at the Grand Gulf site, we promised to provide you a list of documents that our accountants wanted to see. Those documents include the following:

1. Drawings showing site plot plan and elevations prior to and during construction related to the Aux Building and the ISFSI.

2. Any as-planned or as-built schedules related to claimed activities.

3. Complete files related to the opening and activity under all claimed work orders, including but not limited to any documents specifying scope, determining relative splits between work orders for common activities, project management, correspondence, and e-mails related to the administration of the work orders, etc.

4. Documents authorizing the removal of materials from on-site inventory, as well as records related to the ultimate disposition of such materials. To the extent this is an electronic process, we would like to see the process and understand the controls in place.

5. Complete vendor files for all vendors listed below. Documentation should include, but not be limited to, detailed invoices, associated support for the invoices, purchase order or subcontract reconciliations, correspondence, and e-mail. For many vendors, partial productions has already been made, but complete files were generally not produced.

   a) Barlow Construction
   b) Brand Scaffold Builders
   c) Capitol Steel
   d) Citibank USA NA
   e) Contractors Supply & Equipment
   f) Control Technologies
   g) Cormier Shoring & Equipment
   h) Drillco National Group
   i) Dutch Enterprises
   j) Emerald Coast Services

k) Enercon Services
l) Energy & Process Corporation
m) Geomatrix Consultants
n) Hanson Pipe & Products
o) Head & Enquist Equipment
p) Hercules Concrete Pumping
q) Hoist & Crane Service
r) Holtec International
s) Martin Marietta Aggregates
t) MMC Materials Inc
u) NES Rentals (National Equipment Services)
v) Nisys Corporation
w) Overhead Door Company
x) Port Gibson Hardware & Lumber
y) Rexel Southern
z) Richard St. Pé Corporation
aa) Shaw Group
bb) SMP Inc
cc) Specialty Metals Supply
dd) Stone & Webster Construction
ee) URS Corporation

Finally, our review of documents to date indicates that the Entergy Board of Directors played a decision-making role in the dry storage project, as well as other nuclear projects at Grand Gulf, including approving project funding. Any minutes of Entergy Board of Directors meetings are fairly called for in Request for Production Nos. 9, 10, and 43. Therefore, please produce those, as quickly as possible.

Thank you in advance for your assistance with these matters. Please give me a call, if you have any questions.

Very truly yours,

Sharon Snyder

SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch

cc: Alex D. Tomaszczuk (via facsimile)

# EXHIBIT 5

U.S. Department of Justice

Civil Division

PDK:DMC:HDL:SAS
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

Telephone: (202) 616-0347
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

April 13, 2006

**VIA FACSIMILE AND FIRST CLASS MAIL**

L. Jager Smith, Jr.
Wise, Carter, Child & Caraway
1340 Echelon Parkway
Jackson, MS 39213

Re: *System Fuels, Inc.(Mississippi) v. United States*, No. 03-2624C (Judge Braden)

Dear Mr. Smith:

In light of our discussions on Monday and Tuesday of this week in Mississippi, I am writing to request the production of additional documents. To the extent available, please provide the Government with the requested documents in electronic format (e.g., Microsoft Excel, Primavera). Please produce the following documents:

1. The current design drawings for the Haul Path at Grand Gulf Nuclear Station ("Grand Gulf").

2. The current inventory, or the most recent annual inventory, depicting Catalog ID, quantity, dollar value, and material indicator, in Microsoft Excel.

3. Weekly Grand Gulf dry fuel storage project meeting agendas, minutes and notes.

4. All P3 Primavera files for the Grand Gulf dry fuel storage project.

5. All (up to 44) Completed Engineering Request (ERs) and/or ER Supplements stored in the IDEAS database related to the Grand Gulf dry fuel storage project.

6. All work plans from Passport for any of the 44 ERs (see Request No. 5 above) which have not completed.

7. Identification of the Passport Work Orders associated with each Capital Work Order.

8. Identification of the Passport Work Orders associated with each ER and/or ER Supplement.

COPY

As you know, we have limited time for discovery in this case. With that in mind, please produce the documents requested as quickly as possible.

Thank you in advance for your assistance with these matters. Please give me a call, if you have any questions.

Very truly yours,

Sharon A. Snyder by Scott R. Dunl

SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch

cc: Alex D. Tomaszczuk (via facsimile)