No. 03-2624
(Judge Braden)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

SYSTEM FUELS, INC., on its own behalf and as agent for SYSTEM ENERGY RESOURCES, INC. and SOUTHERN MISSISSIPPI ELECTRIC POWER ASSOCIATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE FROM TRIAL DOCUMENTS PREPARED BY GOVERNMENT CONTRACTORS

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street NW
Washington, DC 20530
Tele: (202) 307-0282
Fax: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SCOTT R. DAMELIN
JOHN C. EKMAN
STEPHEN FINN
Trial Attorneys
Civil Division
Department of Justice
1100 L Street, NW
Washington, D.C. 20530

September 6, 2006

**TABLE OF CONTENTS**

**PAGE**

DISCUSSION . . . . . . . . . . 1

I. DOCUMENTS PREPARED BY CONTRACTORS OF THE DEPARTMENT OF ENERGY ARE NOT GOVERNMENT DOCUMENTS AND SHOULD BE EXCLUDED FROM EVIDENCE AT TRIAL . . . . . . . . . . 1

II. ANY ASSERTION THAT FEDERAL RULE OF EVIDENCE 803(8)(A) PROVIDES FOR THE ADMISSION OF DOCUMENTS GENERATED BY CONTRACTORS FOR THE DEPARTMENT OF ENERGY IS UNSUPPORTABLE . . . . . . . . . . 6

A. A Contractor For DOE Is Not An "Agency" Of The United States Government . . . . . . . . . . 6

B. Because The "Contractor" Documents That Plaintiff Identified as Trial Exhibits Were Not Prepared Or Adopted By The "Agency," They Are Not Admissible Under Federal Rule Of Evidence 803(8)(A) As Public Records Or Reports Of The Agency's Activities . . . . . . . . . . 10

C. Even If They Were Somehow Considered Evidence Of The Activities Of The Agency, The Preliminary Nature Of The Documents At Issue Precludes Use Of Federal Rule Of Evidence 803(8)(A) . . . . . . . . . . 14

III. ANY ASSERTION THAT FEDERAL RULE OF EVIDENCE 803(6) PROVIDES FOR THE ADMISSION OF DOCUMENTS GENERATED BY CONTRACTORS IS UNSUPPORTABLE . . . . . . . . . . 16

IV. ANY ASSERTION THAT "CONTRACTOR" DOCUMENTS CONSTITUTE ADMISSIONS BY DOE PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2) CONFLICTS WITH THE ROLE OF CONTRACTORS . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . 22

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Air Land Forwarders v. United States,
172 F.3d 1338 (Fed. Cir. 1999) . . . . . . . . . . 16, 17

Alexander v. Estepp,
95 F.3d 312 (4th Cir. 1996) . . . . . . . . . . 11

Blue Water Environmental v. United States,
60 Fed. Cl. 48 (2004) . . . . . . . . . . 7, 14

Brown v. ASD Computing Cntr.,
519 F. Supp. 1096 (S.D. Ohio 1981) . . . . . . . . . . 15

Chemtool, Inc. v. Lubrication Techs., Inc.,
148 F.3d 742 (7th Cir. 1998) . . . . . . . . . . 7

Coast Federal Bank v. United States,
48 Fed. Cl. 402 (2000) . . . . . . . . . . 17

Columbia First Bank, FSB v. United States,
58 Fed. Cl. 333 (2003) . . . . . . . . . . 17, 18

Hawthorne Partners v. AT&T Technologies, Inc.,
No. 91-C-7167, 1994 WL 63054 (N.D. Ill. Feb. 17, 1994) . . . . . . . . . . 11, 12, 13

Kirk v. Raymark Industries, Inc.,
61 F.3d 147 (3rd Cir. 1995) . . . . . . . . . . 20, 21

Lockheed Martin Corp. v. United States,
50 Fed. Cl. 550 (2001), aff'd, 48 Fed. Appx. 752 (Fed. Cir. 2002) . . . . . . . . . . 7, 14

Marsee v. United States Tobacco Co.,
866 F.2d 319 (10th Cir. 1989) . . . . . . . . . . 11

Reid Brothers Logging Co. v. Ketchikan Pulp Co.,
699 F.2d 1292 (9th Cir. 1983) . . . . . . . . . . 20

## TABLE OF AUTHORITIES (cont'd)

**CASES** **PAGE(S)**


Reynolds v. Green,
184 F.3d 589 (6th Cir. 1999) . . . . . . . . . . 6, 10

Rotec Indus. v. Mitsubishi Corp.,
215 F.3d 1246 (Fed. Cir. 2000) . . . . . . . . . . 7

Smith v. Isuzu Motors Ltd.,
137 F.3d 859 (5th Cir. 1998), cert. denied, 525 U.S. 1142 (1999) . . . . . . . . . . 14

United States v. Davis,
826 F.Supp. 617 (D.R.I. 1993) . . . . . . . . . . 12

United States v. Guerrero,
114 F.3d 332 (1st Cir. 1997) . . . . . . . . . . 11

United States v. Loera,
923 F.2d 725 (9th Cir. 1991) . . . . . . . . . . 11

United States v. Orleans,
425 U.S. 807 (1976) . . . . . . . . . . 8, 9

United States v. Ramirez,
45 F.3d 1096 (7th Cir. 1995) . . . . . . . . . . 11

United States v. Rojas,
53 F.3d 1212 (11th Cir. 1995) . . . . . . . . . . 11

United States v. Vidaure,
861 F.2d 1337 (5th Cir. 1988) . . . . . . . . . . 11

Westinghouse Electric Corp. v. United States,
Nos. 93-445C & 93-446C, 1997 WL 1068204 (Fed. Cl. June 4, 1997) . . . . . . . . . . 8

Yankee Atomic Electric Company v. United States,
No. 98-126C, 2004 WL 2450874 (Fed. Cl. Sept. 17, 2004) . . . . . . . . . . 13

Zeus Enterprises, Inc. v. Alphin Aircraft, Inc.,
190 F.3d 238 (4th Cir. 1999) . . . . . . . . . . 6, 10, 11

**TABLE OF AUTHORITIES (cont'd)**

**PAGE(S)**

**STATUTES**

28 U.S.C. § 1732 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. § 1733 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## INDEX TO APPENDIX

**PAGES(S)**

Table, List of DOE Contractor Documents From Plaintiff's Trial Exhibit List, Filed August 18, 2006 . . . . . 1-2

Deposition Testimony of Alan Brownstein, Yankee Atomic Electric Company v. United States, No. 98-126C (April 9, April 10, April 11, and May 23, 2002) . . . . . 3-13

Deposition Testimony of Lake Barrett, Yankee Atomic Electric Company v. United States, No. 98-126C (May 10, 2002) . . . . . 14-15

Deposition Testimony of Ronald Milner, Yankee Atomic Electric Company v. United States, No. 98-126C (May 3, 2002) . . . . . 16-18

Trial Testimony of Christopher Kouts, Sacramento Municipal Utility District v. United States, No. 98-488C (March 29, 2005) . . 19-20

Plaintiff's Exhibit No. 266 (Excerpt), Total System Life Cycle Cost for Site Recommendation Letter Report, February 2002 . . . . . 21-22

Trial Testimony of Ronald Milner, Yankee Atomic Electric Company v. United States, No. 98-126C (August 11, 2004) . . . . 23-25

Deposition Testimony of Christopher Kouts, Yankee Atomic Electric Company v. United States, No. 98-126C (June 4, 1999) . . . . . 26-27

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SYSTEM FUELS, INC., on its own behalf and as agent for SYSTEM ENERGY RESOURCES, INC. and SOUTHERN MISSISSIPPI ELECTRIC POWER ASSOCIATION, | ) | |
| Plaintiff, | ) | No. 03-2624 (Judge Braden) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE FROM TRIAL DOCUMENTS PREPARED BY GOVERNMENT CONTRACTORS**

Defendant, the United States, respectfully requests that the Court enter an order excluding the admission at trial of certain documents prepared by contractors for the Department of Energy that are included on the trial exhibit list filed by the plaintiff, System Fuels, Inc., on its own behalf and as agent for System Energy Resources, Inc. and Southern Mississippi Electric Power Association ("SFI"), dated August 18, 2006. Attached to this motion is a list of the 17 exhibits from SFI's exhibit list that the Government has identified as contractor documents.[1]

DISCUSSION

I. DOCUMENTS PREPARED BY CONTRACTORS OF THE DEPARTMENT OF ENERGY ARE NOT GOVERNMENT DOCUMENTS AND SHOULD BE EXCLUDED FROM EVIDENCE AT TRIAL

Extensive trial testimony and deposition testimony from prior spent nuclear fuel ("SNF") cases specifically establishes that contractors for the Department of Energy ("DOE") do not operate as part of DOE and that documents created by such contractors do not constitute

---

[1] Although the Government has endeavored to identify all "contractor" documents on SFI's exhibit list, it reserves the right to assert objections at the pre-trial conference or trial to any additional exhibits that it identifies as contractor documents.

Government or public documents. Alan Brownstein, a Senior Policy Advisor to the Director of the Office of Civilian Radioactive Waste, specifically stated that documents created by the Pacific Northwest National Laboratory ("PNNL") in Richland, Washington, operated by a DOE contractor, do not represent DOE positions until and unless it is adopted as policy by DOE.[2] During questioning regarding a particular PNNL document in his deposition, Mr. Brownstein testified:

> Q. You're saying that for something to be adopted as department policy, additional people would have to review it and approve it?
>
> A. What I'm saying is that a contractor product is not departmental policy.
>
> Q. How would a contractor product become departmental policy?
>
> A. One way it would become that would be for it to be issued under DOE letterhead.
>
> Q. By issue, what do you mean?
>
> A. Number of ways -- issued could be instructions or it could be a report. It could be a letter by a program official or, or contracting officer. Those are three ways.
>
> Q. So if it were incorporated into a DOE document or a DOE letter, then it could become departmental position, departmental position?
>
> A. Sure.

Deposition of Alan Brownstein, April 11, 2002, 574:7-576:2 (A.10-11).[3] Similarly, Mr. Lake Barrett, Deputy Director of the Office of Civilian Radioactive Waste Management, testified that

---

[2/] SFI designated certain deposition testimony of Mr. Brownstein that "it intends to use as substantive evidence in its case-in-chief." SFI's Notice of Deposition and Trial Testimony Designations, dated August 18, 2006. The deposition testimony of Mr. Brownstein cited in this motion is not included as part of SFI's deposition designations.

[3/] "A.__" refers to the appendix attached to this motion.

PNNL was a contractor and that DOE used PNNL to provide nothing more than advice, not to make policy decisions:

> Q What is Pacific Northwest Laboratory?
>
> A It's a contractor in Richland, Washington.
>
> Q Were those contractors relied on often by the Department of Energy in connection with the development, design, and construction of the waste management system?
>
> MS. HERRMANN: Objection. Vague.
>
> A We use them as advisors and analysts for the waste management system.
>
> * * *
>
> Q Did you ever rely on the work of Pacific Northwest Laboratory?
>
> MS. HERRMANN: Objection. Vague.
>
> A I used it as input.
>
> Q For what purposes?
>
> A For advice on systems analysis.

Deposition of Lake Barrett, May 10, 2002, Tr. 1150:3-1151:4 (A.14-15).[4]

In fact, Mr. Brownstein reiterated this point on several occasions with regard to contractor documents generally. With regard to another contractor document, he stated that "[t]his was a, this was, clearly was a contractor document. . . . That automatically means to me that it was, it was a, it was something that DOE had not signed off on. . . . The contractor

---

[4] SFI designated certain deposition and trial testimony of Mr. Barrett that "it intends to use as substantive evidence in its case-in-chief." SFI's Notice of Deposition and Trial Testimony Designations, dated August 18, 2006. The deposition and trial testimony of Mr. Barrett cited in this motion is not included as part of SFI's deposition and trial designations.

documents . . . regularly go through extensive review and modification before they're, if they're ever accepted as a DOE document." Deposition of Alan Brownstein, April 10, 2002, 319:23-320:11 (A.5). When questioned about a third contractor document, he clarified that "[t]his is a contractor document. Contractors make suggestions and recommendations to the department all the time. Because a contractor says something doesn't mean, you know, the department either wanted it or agrees with it." Deposition of Alan Brownstein, May 23, 2002, 140:3-9 (A.12-13). Further, with regard to a fourth document, Mr. Brownstein stated that "the contractor often made a lot of statements. . . . They write words, but because the contractor writes words does not mean it's departmental policy." Deposition of Alan Brownstein, April 11, 2002, 569:18-571:1 (A.9).

Mr. Ronald Milner, former Chief Operating Officer of OCRWM, similarly testified that contractor documents do not speak for DOE:

> A. . . . In any event this is a contractor report which would never relate to a position the Department took, simply input data to it.
>
> Q. You say it would never relate to a position?
>
> A. It would never reflect, I'm sorry; not relate, it would never reflect the Department's position, it would simply input data to it.
>
> Q. The Department would have to subsequently take a separate position which might or might not approve or reflect what the contractor recommended?
>
> A. The Department would take a position based on information from a number of sources including its contractor's input.

Deposition of Ronald Milner, May 3, 2002, Tr. 443:19-444:8 (A.16-18).[5]

---

[5] SFI designated certain deposition and trial testimony of Mr. Milner that "it intends to use as substantive evidence in its case-in-chief." SFI's Notice of Deposition and Trial Testimony Designations, dated August 18, 2006. The deposition and trial testimony of Mr. Milner cited in this motion is not included as part of SFI's deposition and trial designations.

Mr. Christopher A. Kouts, Director, Office Systems Analysis and Strategy Development of OCRWM, similarly testified during the Sacramento Municipal Utility District v. United States trial before this Court that contractor documents do not speak for DOE:

> Q. How does DOE regard these types of reports prepared by contractors?
>
> A. They're essentially the view of the contractor, and unless the Department issues its won report under its own letterhead, with the DOE stamp, as well as a document number, that's not DOE position or DOE policy.
>
> Court. Right. You're just getting advice?
>
> A. Yes, that's correct.
>
> Q. And in terms of, I think you said putting it on DOE letterhead or the equivalent of that, who makes that decision regarding a contractor report or study or document?
>
> A. It's typically a DOE official, and that's routed through senior management, and a decision is made that that document is acceptable and will be issued under a DOE letterhead. Let me give you an example. For instance, when we went through the site recommendation process [for Yucca Mountain], we went through many, many drafts of documents that were related to the Secretary's recommendation. And those drafts were prepared by contractors, but it wasn't until the Department issued those final documents that became part of the site recommendation that we adopted and we accepted the language in those reports, and therefore, it was issued under a DOE identification number, and it was considered a DOE document.

Testimony of Christopher A. Kouts, March 29, 2005, Tr. 2110:25-2112:4 (A.19-20).[6]

---

[6] SFI designated certain deposition and trial testimony of Mr. Kouts that "it intends to use as substantive evidence in its case-in-chief." SFI's Notice of Deposition and Trial Testimony Designations, dated August 18, 2006. The trial testimony of Mr. Kouts cited in this motion is not included as part of SFI's deposition and trial designations.

Given the significant evidence that these "contractor" documents do not constitute DOE documents and the lack of any evidence to the contrary, the Court should reject the underlying premise for SFI's apparent evidentiary argument to support the admission of these documents at trial.

## II. ANY ASSERTION THAT FEDERAL RULE OF EVIDENCE 803(8)(A) PROVIDES FOR THE ADMISSION OF DOCUMENTS GENERATED BY CONTRACTORS FOR THE DEPARTMENT OF ENERGY IS UNSUPPORTABLE

### A. A Contractor For DOE Is Not An "Agency" Of The United States Government

SFI seeks to introduce as substantive evidence numerous documents created by multiple contractors to DOE. Despite the obvious hearsay nature of these documents, we expect SFI will argue that they fall into some hearsay exception. None of these anticipated arguments has merit. The first hearsay exception upon which SFI may rely in seeking wholesale admission of all "contractor" documents for the truth of the matters asserted in those "contractor" documents is Federal Rule of Evidence 803(8)(A). That rule provides an exception to the hearsay rule for "[r]ecords, reports, statements, or data compilations, in any form, of public offices and agencies, setting forth (A) the activities of the office or agency . . . ." The public records exception to the hearsay rule is justified by "the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record." Zeus Enterprises, Inc. v. Alphin Aircraft, Inc., 190 F.3d 238, 241 (4th Cir. 1999) (quoting Fed. R. Evid. 803(8), Advisory Committee's Note to Paragraph (8)) (emphasis added); see Reynolds v. Green, 184 F.3d 589, 596 (6th Cir. 1999) (quoting same).

To the extent that SFI is claiming that activities performed by a contractor to an agency are the same as those performed by the agency itself, and that all contractor activities should be

attributed to the agency, SFI is simply wrong. To the extent that SFI may assert that management and operations ("M&O") contractors function as DOE, there is no support for that assertion. Although the United States Court of Appeals for the Federal Circuit has found that "an agency relationship can be created by contract," it has determined that "not all contracts create agency relationships and not all conduct creates agency relationships." Rotec Indus. v. Mitsubishi Corp., 215 F.3d 1246, 1256 (Fed. Cir. 2000) (quoting Chemtool, Inc. v. Lubrication Techs., Inc., 148 F.3d 742, 745 (7th Cir. 1998)). The focus in determining whether the relationship between contracting parties creates an agency relationship "focuse[s] on contract provisions [and] not day-to-day Government involvement in the performance of the subcontract." Lockheed Martin Corp. v. United States, 50 Fed. Cl. 550, 558-59 (2001) (involving M&O contractor) (citing United States v. Johnson Controls, Inc., 713 F.3d 1541, 1551 (Fed. Cir. 1983)), aff'd, 48 Fed. Appx. 752 (Fed. Cir. 2002). Specifically, the test for determining agency "requires an interpretation of the contract" and findings that "(1) the prime [M&O] contractor was acting as a purchasing agent for the Government; (2) the agency relationship between the Government and the prime contractor was established by clear contractual consent; and (3) the contract stated that the Government would be directly liable to the vendors for the purchase price." Lockheed, 50 Fed. Cl. at 562.

In Blue Water Environmental v. United States, 60 Fed. Cl. 48 (2004), this Court held that (1) a private contractor which operated a laboratory under an M&O contract with DOE could not be deemed a Federal "agency" for purposes of Tucker Act bid protest jurisdiction even if, as alleged, DOE exercised day-to-day supervision of the contractor's activities. Id. at 52. The Court further determined that, even if such supervision was sufficient to establish "agency," evidence was required to establish that DOE supervised or directed the subcontracting process

about which the plaintiff was complaining. Id. In sum, the plaintiff was required to prove that an agency relationship was established by the contract, and that it created an agency relationship with regard to the specific work about which agency was being claimed, before the contractor could be deemed an "agent" for purposes of that work.

The difficulty with SFI's apparent assertion (given the inclusion of such contractor documents on its exhibit list) that the contractor statements at issue represent the views of DOE is highlighted by the United States Supreme Court's decision in United States v. Orleans, 425 U.S. 807 (1976). The Supreme Court explained that the critical element in distinguishing an "agency" of the Federal Government from a "contractor" for purposes of the Federal Tort Claims Act is the power of the Federal Government to control the detailed physical performance of the contractor. Therefore, the issue is not whether the entity receives Federal money and must comply with Federal regulations, but whether its daily operations are supervised by the Federal Government. Id. at 814. The Supreme Court explained that any contrary finding would be inconsistent with general contracting principles:

> Billions of dollars of federal money are spent each year on projects performed by people and institutions which contract with the Government. These contractors act for and are paid by the United States. They are responsible to the United States for compliance with the specifications of a contract or grant, but they are largely free to select the means of its implementation . . . . Similarly, by contract, the Government may fix specific and precise conditions to implement federal objectives. Although such regulations are aimed at assuring compliance with goals, the regulations do not convert the acts of entrepreneurs or state governmental bodies into federal government acts.

Id. at 815-16.

Other spent nuclear fuel plaintiffs have cited as support for this "agency" argument the Court of Federal Claims decision in Westinghouse Electric Corp. v. United States, Nos. 93-445C

& 93-446C, 1997 WL 1068204, at *2 (Fed. Cl. June 4, 1997).[7] Yet, that decision only describes the general character of an M&O contractor. It does not purport to identify an M&O contractor as an "agent" of the Federal Government. As previously discussed, both this Court and its appellate court have rejected the concept that M&O contractors constitutes "agents" of the Government. As explained in Orleans, the simple fact that the documents at issue were generated by DOE M&O contractors does not establish that any DOE contractor is an "agent" of DOE or that the contractor's documents are those reflecting the activities of the "agency." In fact, many documents evidence on their face that they are not expressing the views of an agency, as indicated by the disclaimer on the first page of Plaintiff's Exhibit No. 266 (A.21-22): "The views and opinions of authors expressed herein do not necessarily state or reflect those of the United States Government or any agency thereof." SFI's otherwise unsupported assertions of agency cannot provide a basis for admitting documents under FRE 803(8)(A).

---

[7] The plaintiffs in Yankee Atomic Electric Company v. United States, No. 98-126C (Fed. Cl.), Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C (Fed. Cl.), and Maine Yankee Atomic Power Co. v. United States, No. 98-474C (Fed. Cl.) previously cited to this case in support of its argument for the admission of contractor documents at trial.

B. Because The "Contractor" Documents That SFI Identified as Trial Exhibits Were Not Prepared Or Adopted By The "Agency," They Are Not Admissible Under Federal Rule Of Evidence 803(8)(A) As Public Records Or Reports Of The Agency's Activities

As previously discussed, the public records exception to the hearsay rule is justified by "the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record." Zeus Enterprises, Inc. v. Alphin Aircraft, Inc., 190 F.3d 238, 241 (4th Cir. 1999) (quoting Fed. R. Evid. 803(8), Advisory Committee's Note to Paragraph (8)) (emphasis added); see Reynolds v. Green, 184 F.3d 589, 596 (6th Cir. 1999) (quoting same). SFI would expand this exception to the hearsay rule to include not only public records issued by "public officials" and Federal agencies, but also internal contractor documents prepared by Government contractor employees working under a contract with the Government, and SFI apparently asserts that the fact that these documents may have been prepared by a contracting party, albeit working for DOE, is irrelevant to their admissibility as public records. Yet SFI's apparent interpretation of the rule would create a ridiculous result. Under SFI's theory, all documents generated by a construction contractor with a contract to construct a Federal courthouse would become "public records" that are admissible in court proceedings without regard to their hearsay nature. A contractor could potentially generate documents that could be used against the Government in any litigation arising from that contract. Thus, documents created in the course of these working government relationships with private industry would also appear to constitute the "public records" of DOE in SFI's view.

SFI's apparent assertions that Government contractor documents, even those of M&O contractors, somehow constitute Government documents for the purposes of FRE 803(8)(a) are unsupported by relevant case law. As an initial matter, the documents that courts have found appropriate to admit under the first clause of FRE 803(8) are typically classic public records –

the type of documents that would spring to mind when thinking of a "public" record. See, e.g., Hawthorne Partners v. AT&T Technologies, Inc., No. 91-C-7167, 1994 WL 63054, at *5 (N.D. Ill. Feb. 17, 1994) ("the fact that the preliminary report is preliminary and that certain sections were not released until Hawthorne Partners subpoenaed them suggest that the preliminary report would not be easily construed as a public record under Rule 803(8)"). For instance, courts have admitted copies of a conviction, see United States v. Vidaure, 861 F.2d 1337, 1340-41 (5th Cir. 1988); an automobile's title history, see United States v. Ramirez, 45 F.3d 1096, 1101 (7th Cir. 1995); a county's registry of applicants for firefighter position, Alexander v. Estepp, 95 F.3d 312, 314 (4th Cir. 1996); a certified copy of docket entries in another court, United States v. Loera, 923 F.2d 725, 730 (9th Cir. 1991); and certifications specifically authorized by statute to be made by a cabinet official or his designee, United States v. Guerrero, 114 F.3d 332, 340 (1st Cir. 1997); United States v. Rojas, 53 F.3d 1212, 1214 (11th Cir. 1995). Such documents are a far cry from the reports and memoranda that SFI would have this Court admit as substantive evidence of DOE policy or decisions.

More importantly, the "contractor" documents that SFI has identified should not be admitted under FRE 803(8) simply because, as previously explained, they are not agency documents in any sense. See Marsee v. United States Tobacco Co., 866 F.2d 319, 326 (10th Cir. 1989) (neither an International Agency for Research on Cancer nor a National Institute of Health report qualified as a Government record under FRE 803(8)(B) because their contents were drawn from "a conference attended by scientists from various countries" and "a panel of scientists and non-scientists after a conference at which invited speakers presented papers," rather than the agencies themselves). As such, they do not fit the rationale for the FRE 803(8) hearsay exception. See Zeus Enterprises, Inc., 190 F.3d at 241. There is simply no reason to believe that

the reliability attributed to documents created by public officials should be attributed to documents created by their contractors, especially where the relevant public officials have generally disavowed those documents as not representing the Government's position. SFI cannot establish that the documents at issue are, in fact, public records in the first place. Only after SFI makes that showing would the burden shift to require the Government to establish reasons that the public records in question should not be admitted.

Even where the admission of contractor documents as public records has been contemplated, in situations in which the Government has essentially adopted reports as its own, an analysis has been conducted to demonstrate reliability that simply cannot be assumed for these documents. See, e.g. Hawthorne Partners, 1994 WL 63054, at *5 (discussing trustworthiness in the context of FRE 803(8)(C)). Courts have carefully considered whether the "work was performed at the direction and under the guidance of" the agency; whether "proposed work plans were reviewed for conformity with [agency] methodology and standards;" whether the agency "remained in charge of and closely involved with," "remained in close contact with," and "closely managed" the contractor; whether the agency "required its contractors to submit regular reports concerning the project;" and whether the agency "reviewed prior drafts . . . requiring all necessary changes and additions to ensure the report's accuracy." Id. at *5 (citing United States v. Davis, 826 F. Supp. 617 (D.R.I. 1993)).

SFI cannot make a showing that the contractor documents have these indicia of "trustworthiness." In fact, the record in other spent nuclear fuel cases establishes that there was great variability in the degree of involvement and control that DOE exercised over contractor work. For instance, Alan Brownstein testified that "PNNL did, did a number of pieces of work, some at my direction, and some that they pursued on their own consistent with work tasks that

we gave them," and that DOE may, or may not, comment on PNNL documents. Deposition of Alan Brownstein, April 11, 2002, 562:18-564:2 (A.7-8). Without specific showings of DOE involvement as well as adoption of contractor documents, such documents should be found to lack sufficient trustworthiness to be admitted as "public records" under FRE 803(8). See Hawthorne Partners, 1994 WL 63054, at *5 (finding "no indicia of reliability" where agency's working relationship and supervision of contractor was unknown).

For the reasons stated above, the Government respectfully disagrees with the decision by Senior Judge Merow in Yankee Atomic Electric Company v. United States, No. 98-126C, 2004 WL 2450874 (Fed. Cl. Sept. 17, 2004) (unpublished), regarding the admissibility of contractor documents as public records. Senior Judge Merow concluded that documents prepared by DOE contractors may be admissible as "public records" under Federal Rule of Evidence 803, stating that the admission of such contractor documents "shall, in appropriate context, extent to the truth of the contents under Fed.R.Evid. 803(8) ... ." Id. at *8.[8] Yet, the premise upon which the Court in Yankee found these documents to be "public records" is, with all due respect, suspect. First, the Court in Yankee found that DOE national laboratories are Federal facilities, given that they have websites with a ".gov" e-mail address and that the Court, conducting its own ex parte search of a website, found references to the fact that the national laboratories are Federal laboratories. However, although the laboratories themselves are Federal facilities, they are run

---

[8/] Senior Judge Merow deferred ruling on the admissibility of contractor documents as admissions of the defendant under Federal Rule of Evidence 801(d)(2) (finding that the circumstances "counsel against finding statements made in these documents to be "admissions" by the DOE absent specific evidence that the contractual relationship included binding the government in this regard"). Id. at *11-12. The Court also deferred ruling on any additional theories of admissibility for the contractor documents, including the admission of such documents for their truth as business records under Federal Rules of Evidence 803(8) or 801(d)(2)(B). Id. at 12.

by contractors, not necessarily staffed by Federal employees. See Testimony of Ronald Milner, August 11, 2004, 4780:18-4781:11 (A.23-25); Deposition of Christopher Kouts, June 4, 1999, 94:10-25 (A.26-27); Deposition of Alan Brownstein, April 9, 2002, 79:5-21 (A.4). Second, the Court's finding in Yankee that DOE exercises sufficient control over M&O contractors to turn the M&O contractors into Federal "agents" is both devoid of any supporting testimonial or documentary evidence and is in direct conflict with other court decisions like Blue Water Environmental, Inc. v. United States, 60 F.3d 48 (2004), and Lockheed Martin Corp. v. United States, 50 Fed. Cl. 550 (2001), aff'd, 48 Fed. Appx. 752 (Fed. Cir. Sept. 30, 2002). For these reasons, the Yankee decision, which is not binding on this Court, does not properly support a finding of "agency" sufficient to convert contractor documents into "public records" under Fed. R. Evid. 803(8).

### C. Even If They Were Somehow Considered Evidence Of The Activities Of The Agency, The Preliminary Nature Of The Documents At Issue Precludes Use Of Federal Rule Of Evidence 803(8)(A)

Even if SFI somehow could view "contractor" documents as the equivalent of records or reports of public officers or agencies, those documents still would not fall within the hearsay exception of FRE 803(8)(A) because of their preliminary or interim nature. In Smith v. Isuzu Motors Ltd., 137 F.3d 859 (5th Cir. 1998), cert. denied, 525 U.S. 1142 (1999), the plaintiffs attempted to introduce three memoranda prepared by staff members of the National Highway Traffic Safety Administration relating to a petition filed with the agency by Congressman Wirth, which asked the agency to establish stability standards for certain types of passenger vehicles. Although the agency ultimately rejected the Wirth petition, plaintiffs sought to introduce the three memoranda in which the staff members expressed opinions supporting the petition and the plaintiffs' theory of their case. The Fifth Circuit rejected the plaintiffs' argument that the

preliminary memoranda fell within FRE 803(8)(A), finding that FRE 803(8)(A) does not apply to allow the admission of preliminary or interim evaluation opinions of agency staff members:

> Smith first argues that the memoranda qualify as public records within the meaning of Rule 803(8)(A). We disagree. Although NHTSA staff members prepared the memoranda in the course of evaluating the Wirth petition, the memoranda do not "set forth" the "activities of the agency" within the meaning of Rule 803(8)(A).
>
> Smith cites no case law in which Rule 803(8)(A) has been applied to allow the admission of the preliminary or interim evaluation opinions of agency staff members. Indeed, to apply Rule 803(8)(A) in the fashion Smith suggests would swallow whole Rule 803(8)(C) and its limitations. Rule 803(8)(C) provides a hearsay exception for "factual findings resulting from an investigation made pursuant to authority granted by law" unless those findings lack trustworthiness. If memoranda reflecting the preliminary opinions of agency staff members were admissible under Rule 803(8)(A), then Rule 803(8)(C)'s limitations would be meaningless.

Id. at 862 (emphasis added; citations omitted).

If the contractor documents were adopted by DOE and issued as the agency's public positions, SFI would have much better grounds for attempting to introduce "contractor" documents as public records. However, the contractor documents to which SFI cites are not the agency's adopted positions, but, instead, at best, are nothing more than preliminary or interim evaluations of various issues that may, or may not, have ever been communicated to DOE. Even if these evaluations had been conducted by DOE employees, they would not necessarily fall within the requirements of FRE 803(8)(A), given their preliminary or interim nature.

"Prior to the adoption of the Federal Rules of Evidence in 1975, hearsay contained in agency memoranda or records could be admitted into evidence either under 28 U.S.C. § 1732 (1970) (hereinafter § 1732), as writings made in the ordinary course of business, or under 28 U.S.C. § 1733 (1970) (hereinafter § 1733) as official records of an agency . . . ." Brown v. ASD

Computing Cntr., 519 F. Supp. 1096, 1103 n.2 (S.D. Ohio 1981). "When the Federal Rules of Evidence were enacted, Rule 803(8) was considered to have been derived from § 1733 . . . ." Id. (citing H.R. Rep. No. 93-650, 93rd Cong., 2d Sess. reprinted in 1974 USCCAN 7051, 7075, 7091). "The assumption must be made that Congress was aware of the current status of court interpretations of [section] . . . 1733 when it enacted Rule[] . . . 803(8)." Id. (citing United States v. Smith, 521 F.2d 957, 968 n.24 (D.C. Cir. 1975)). "Despite this awareness, Congress failed to manifest an intention to alter the traditional interpretation of [section] . . . 1733 . . . ." Id. "Although Rule 803(8)(A)," on its face, "appears to be broad enough to include hearsay which is contained in agency documents not required or authorized by law, that provision cannot be read in so expansive a manner," and "interpreting subsection (A) to include matters such as internal agency memoranda would establish an undesirable precedent." Id. "[T]he House debate on the Proposed Rules of Evidence indicates that Congress intended to restrict, rather than broaden, the application of Rule 803(8)" from the admissibility standards contained in section 1733, as evidenced by congressional debate regarding the need to narrow the exception contained in FRE 803(8)(B). Id. (citing various Congressional Record provisions). Given "the express concern of Congress over restricting subsection (B)" of FRE 803(8), "it would be incongruous to conclude that legislative intent could be circumvented by interpreting subsection (A) so expansively . . ." to render the limitations imposed upon FRE 803(8)(B), and (C), irrelevant. Id.

## III. ANY ASSERTION THAT FEDERAL RULE OF EVIDENCE 803(6) PROVIDES FOR THE ADMISSION OF DOCUMENTS GENERATED BY CONTRACTORS IS UNSUPPORTABLE

To the extent that SFI asserts that the Court can admit the "contractor" documents as "business records" pursuant to FRE 803(6), the Federal Circuit's decision in Air Land Forwarders v. United States, 172 F.3d 1338 (Fed. Cir. 1999), makes plain that the contractor

documents cannot be admitted on that basis. The Air Land Forwarders case involved claims by service members for damage to property by common carriers and freight forwarders. Id. at 1340. The service members submitted their claims to the United States with estimates done by third parties. Id. The United States adjudicated the claims and, where appropriate, compensated the service member and sought reimbursement from the carriers or offset against payments due to the carriers. Id. The trial court admitted the third party estimates, which were in the files of the military, as "business records" of the military, and the carrier appealed. Id. at 1341-42.

In reaching its decision, the Federal Circuit reviewed authorities regarding the circumstances in which documents produced by third parties have been considered the business records of another entity in whose files they appear. Id. at 1342-43. It concluded that a third party document may be admitted as another entity's business record where "the incorporating business rel[ies] upon the accuracy of the document incorporated and . . . there are other circumstances indicating the trustworthiness of the document." Id. at 1343. The circumstances upon which the Court relied included the fact that military personnel could be fined or imprisoned for submitting a false claim and that "Military Claims Office personnel were responsible for becoming familiar with the competency of estimators." Id. at 1343-44. The Court also held that admission of such documents would require "foundation testimony of a witness with first-hand knowledge of the record keeping procedures of the incorporating business." Id. at 1343; see Coast Federal Bank v. United States, 48 Fed. Cl. 402, 447 (2000) (testimony of individual could not secure the admission as business records of the records of various institutions because it did not establish requisite foundation).

This Court adopted the Air Land Forwarders approach in Columbia First Bank, FSB v. United States, 58 Fed. Cl. 333 (2003), finding that, "when a document produced by a third party

is incorporated into the business records of another entity this circuit applies a two-factor standard of reliability in order to admit a record that has an otherwise appropriate foundation." Id. at 339. With regard to the requirement that the entity must have "rel[ied] upon" the accuracy the document, the Court found that "[r]eliance can be shown if the entity used the document in its dealings." Id. With regard to the requirement that there be "other circumstances indicating the trustworthiness of the document," the Court determined that "indicia of trustworthiness can be shown, to cite one example, by demonstrating the existence of legal consequences for falsity or inaccuracy in the document." Id. It further found that "[t]hird party documents," such as documents created by DOE's contractors, "kept in the records of a party in this case must be shown to have been received and incorporated, to have been relied upon, and to have indicia of trustworthiness to meet the Air Land Forwarders test for the business records exception in Fed. R. Evid. 803(6)" and that "[t]he proponent of such evidence at trial must show that this test has been met to overcome a hearsay objection." Id.

Under the applicable case precedent, there is no basis for admitting the "contractor" documents. As an initial matter, the underlying factual predicate does not exist with regard to many of the documents because they were never in DOE's files, but, rather, were produced to SFI directly from the files of the DOE contractors, and SFI has not identified any witnesses from these contractors to testify in this case. Moreover, even with regard to contractor materials that made their way to DOE files or into individual files of employees at DOE, SFI cannot establish the foundation necessary to admit the documents. SFI has not identified as a trial witness anyone who is familiar with DOE's record-keeping procedures, will not establish whether particular documents came from individual employee files or official DOE files, will not call any witness to establish the reliability of the record-keeping practices of individual employees

regarding documents that might have come from their own personal files or that they kept these documents "in the regular course of business," will not be able to establish that DOE has relied on the accuracy of the documents, and will not be able to identify other circumstances that support the trustworthiness of the documents. Indeed, it is difficult to imagine how they could do so, even with a knowledgable witness, considering the significant previously discussed testimony to the contrary at trial and in the depositions.

## IV. ANY ASSERTION THAT "CONTRACTOR" DOCUMENTS CONSTITUTE ADMISSIONS BY DOE PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2) CONFLICTS WITH THE ROLE OF CONTRACTORS

SFI may also assert that the documents generated by contractors to DOE are admissible pursuant to FRE 801(d)(2)(C) or 801(d)(2)(D). FRE 801(d)(2) provides that a statement is not hearsay if

> [t]he statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment . . . . The contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority under subdivision (C), [or] the agency or employment relationship and scope thereof under subdivision (D) . . . .

FRE 801(d)(2).

With regard to subdivision (C), SFI has not identified any testimony or documents to establish that the DOE contractors were "authorized" to speak for the Government under FRE 801(d)(2)(C). In fact, other spent nuclear fuel plaintiffs have not cited to a single case in which a Government contractor was found to be "authorized" to make admissions upon behalf of the Government. To the contrary, for the same reasons previously explained, a contractor serves as

just that: a contractor. It does not make policy for DOE, and it does not speak for DOE, unless that authority is expressly identified in a contract. SFI and the other spent nuclear fuel plaintiffs have not identified any basis for finding DOE's contractors "authorized" to make admissions upon DOE's behalf.

In Kirk v. Raymark Industries, Inc., 61 F.3d 147 (3rd Cir. 1995), the Court held that the testimony of an expert witness on behalf of a party could not later be used against that party in unrelated litigation unless there was a finding that the expert witness was "authorized to speak" on behalf of that party under FRE 801(d)(2)(C). The Court stated that "Rule 801(d)(2)(C) requires that the declarant be an agent of the party-opponent against whom the admission is offered." Id. at 164. The Third Circuit continued that, "since an expert witness is not subject to the control of the party opponent with respect to consultation and testimony he or she is hired to give, the expert witness can not be deemed an agent." Id. Further, "one can call an expert witness even if one disagrees with the testimony of the expert," so that proof must exist that an agency relationship was established. Id. In addition, even if the Court finds factual evidence of authorization to speak for a party, the statements must be in the scope of that authorization. See, e.g., Reid Brothers Logging Co. v. Ketchikan Pulp Co., 699 F.2d 1292, 1306 (9th Cir. 1983) (holding that an employee was "authorized" under FRE 801(d)(2)(C) to make statements regarding the entire scope of a company's woods operations, the subject of the report prepared by the employee).

Barring evidence that the DOE contractors were subject to the control of the Government, or "authorized to speak" upon behalf of DOE under FRE 801(d)(2)(C), the contractor documents at issue are inadmissible. Similar to an expert witness that can be called "even if one disagrees with the testimony of the expert" and is, therefore, not "authorized to

speak" for that party, a DOE contractor could produce a report for the Government with which the Government disagrees. Kirk, 61 F.3d at 163. Analogous to the problem discussed by the Supreme Court in Orleans, under the spent nuclear fuel plaintiffs' broad interpretation of the hearsay exception, all reports or statements by an M&O contractor, or any contractor, would become statements of the Government, regardless of whether the Government adopted, agreed with, or even was aware of these statements.

However, in the case at hand, SFI has not identified any evidence to show that the DOE contractor's views are the views of the Government or that they were adopted by the Government. The Government receives numerous reports and statements from contractors and could not possibly adopt or agree with all recommendations or scenarios promoted in these documents. The Court should find the challenged documents are not admissible under FRE 801(d)(2)(C).

With regard to subdivision (D), it is clear that contractors – even M&O contractors – are not "agents" of DOE. As previously discussed, SFI and the other spent nuclear fuel plaintiffs have failed to present any evidence that any of the particular contractors that authored documents which SFI now seeks to admit as admissions by DOE are agents of DOE, as evidenced by specific contractual provisions granting them that authority. Absent such evidence, SFI has failed to satisfy its burden of proof regarding admissibility under FRE 801(d)(2)(D).

## CONCLUSION

For the foregoing reasons, the Court should grant the Government's motion and exclude from evidence at trial all contractor documents identified on SFI's trial exhibit list.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SCOTT R. DAMELIN
JOHN C. EKMAN
STEPHEN FINN
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

s/Sharon A. Snyder by Scott. R. Damelin
SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 353-0897
Fax: (202) 307-2503

September 6, 2006

Attorneys for Defendant