IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Electronically Filed on September 6, 2006)

| | | |
|---|---|---|
| **SYSTEM FUELS, INC.,** on its own behalf and as agent for SYSTEM ENERGY RESOURCES, INC. and SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant. | ) | No. 03-2624C<br>(Judge Braden) |

**PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY FROM DEFENDANT'S EXPERT WITNESSES ASSERTING THAT CERTAIN ELEMENTS OF PLAINTIFF'S DAMAGES CLAIM ARE NOT "INCREMENTAL" TO THE GOVERNMENT'S BREACH**

Pursuant to RCFC 16, Plaintiff System Fuels, Inc., on its own behalf and as agent for System Energy Resources, Inc. and South Mississippi Electric Power Association, respectfully moves for the exclusion of testimony from Defendant's (the "Government") proposed expert witnesses,[1] to the extent that their testimony opines that certain aspects of Plaintiff's damages claims are not "incremental" to the Government's breach of contract in this case.[2] The term "incremental," as used in the Government's briefs and expert reports in the spent nuclear fuel cases, appears to be a catch-all term for causation, foreseeability, and reasonable certainty. Thus,

[1] It appears that the Government will call Mr. Warren Brewer, Mr. Robert Peterson, and Dr. Raymond Hartman as its expert witnesses at trial. Defendant's Final Witness List at 6-7 (Sept. 1, 2006).

[2] The concept of incrementality is discussed throughout the Government's expert reports and infects the majority of the opinions set forth in those reports. Accordingly, the instant motion is not directed towards the exclusion of particular sections in those reports, but rather to all opinions which conclude that Plaintiff's costs are not "incremental" to the breach.

when the Government's experts offer opinions on the incrementality of costs that Plaintiff incurred or tasks that Plaintiff undertook, those opinions constitute impermissible legal determinations. Such opinions also intrude on the exclusive province of this Court as the trier of fact and do not require any "specialized knowledge." Hence, the bulk of the Government's proposed expert testimony should be excluded as unhelpful in this case. Admissible expert testimony must be relevant, reliable, and helpful to the trier of fact. FED. R. EVID. 702; Daubert v. Merrell Dow Pharms, Inc., 509 U.S. 579, 589 (1993).

## FACTUAL BACKGROUND

On June 2, 2006, the Government submitted three reports to Plaintiff from its proposed expert witnesses.[3] The report of Mr. Warren Brewer issued opinions on tasks related to the dry fuel storage project at the Grand Gulf Nuclear Station ("Grand Gulf") that he believed were not "incremental" to the Government's breach. Brewer Report at 9-22. Mr. Brewer's report also opined on the types of casks that the Department of Energy ("DOE") may have used to accept spent nuclear fuel ("SNF") from Grand Gulf if the Government had not breached the Standard Contract, and how much it may have cost Plaintiff to load such casks.[4] Brewer Report at 22-27. The report of Mr. Robert Peterson appears to quantify offsets to Plaintiff's damages claims based on an assumption that the tasks Mr. Brewer discussed in his report regarding the Grand Gulf dry fuel storage project are not incremental to the Government's breach. Peterson Report at 15-17. Mr. Peterson's report also appears to opine on general administrative or "overhead" charges

[3] EXPERT REPORT OF RAYMOND S. HARTMAN (the "Hartman Report"), EXPERT REPORT PREPARED BY ROBERT A. PETERSON (the "Peterson Report"), and EXPERT WITNESS REPORT OF WARREN K. BREWER (the "Brewer Report"), all served by the Government on the undersigned counsel on June 2, 2006.

[4] As explained in prior filings, any testimony in the SNF cases about DOE cask loading costs in the non-breach world would be speculative (and has been rejected in this Court). Plaintiff's Pre-Trial Memorandum Of Law at 13-14 (Aug. 18, 2006).

within Plaintiff's claim that he deemed as "fixed" costs and not "incremental" to the breach, and on costs that were allegedly unsupported by the available evidence. Id. at 8-14.[5] Finally, the report of Dr. Raymond Hartman questions whether the Grand Gulf dry fuel storage project was itself incremental to the Government's breach, based on SNF acceptance rate assumptions that he made upon direction by counsel for the Government. Hartman Report at 19-22. Dr. Hartman also assumes by adoption the findings of Messrs. Brewer and Peterson regarding their proposed offsets for the Grand Gulf dry fuel storage project. Id. at 22-24.

**DISCUSSION**

In their reports, the Government's proposed experts draw myriad legal conclusions about whether the costs associated with the Grand Gulf dry fuel storage project constitute damages, based largely on their review and interpretation of Entergy documents related to the project. It is well established, however, that expert testimony expressing a legal conclusion must be excluded. See, e.g., Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983) (affirming the exclusion of expert's legal conclusion on causation and contributory negligence); Haberern v. Kaupp Vascular Surgeons Ltd., 812 F. Supp. 1376, 1378-79 (E.D. Pa. 1992) (an "expert may not opine legal conclusions drawn by applying the law to the facts."), rev'd on other grounds, 24 F.3d 1491 (3d Cir. 1994). Courts have routinely precluded the legal conclusions of experts regarding contract interpretation and legal causation. See, e.g., Haney v. Mizell Mem'l Hosp., 744 F.2d 1467, 1473-74 (11th Cir. 1984) (affirming the exclusion of expert's conclusion on negligence); Smogor v. Enke, 874 F.2d 295, 296-97 (5th Cir. 1989) (affirming the exclusion of

[5] To the extent that Mr. Peterson opines that any costs that Plaintiff has claimed are unsupported by the evidence, such opinions on their face intrude on this Court's power to determine the sufficiency of the evidence that Plaintiff will present at trial. See Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 856 (1982) ("Determining the weight and credibility of the evidence is the special province of the trier of fact").

expert's conclusions on negligence and proximate cause); Marx & Co. v. Diners' Club, Inc., 550 F.2d 505, 508-510 (2d Cir. 1977) (holding that the district court committed reversible error in admitting testimony from an expert construing the contract at issue) (internal quotations omitted) ("The question of interpretation of contract is for the jury and the question of legal effect is for the judge. In neither case do we permit expert testimony."). Parties have the opportunity to present their legal arguments through counsel and should not be permitted to do so "in the guise of expert testimony." Haberern, 812 F. Supp. at 1379.

Moreover, Federal Rule of Evidence 704 provides no support for the admission of legal conclusions. Although Rule 704(a) abolished the *per se* rule against testimony regarding the ultimate issues of *fact*, it does not permit expert testimony on the ultimate legal conclusion. See FED. R. EVID. 704 Advisory Committee Notes (recognizing that "the abolition of the ultimate issue rule does not lower the bars so as to admit all opinions."). Accord Owen, 698 F.2d at 240 ("Nor is the rule intended to allow a witness to give legal conclusions.") (emphasis in original) (citations omitted); McCormick on Evidence, § 12 (5th ed. 1999) ("Nor do the Federal Rules of Evidence permit opinion on law except questions of foreign law. One federal court voiced the typical judicial attitude when it wrote that 'in a trial there is only one legal expert – the judge.'") (citing Pivot Point Int'l, Inc. v. Charlene Prods., Inc., 932 F. Supp. 220, 225 (N.D. Ill. 1996)). Rather, legal conclusions from experts must be excluded because they are unhelpful to the trier of fact. See Owen, 698 F.2d at 240; Marx & Co., 550 F.2d at 511 n.17; Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence, § 361 (2d ed. 1994) (testimony regarding legal conclusions is excludable "because it is not helpful. And FRE 704 is not an open sesame to all opinion.").

In this case, the Government has impermissibly presented legal arguments regarding the recoverability of costs in Plaintiff's damages claim through its proposed experts. In their reports, Mr. Brewer and Mr. Peterson appear to base their opinions on whether certain costs or tasks associated with the Grand Gulf dry fuel storage project are "incremental" to the Government's breach based on their interpretation of legal documents (e.g., contracts and task orders between Plaintiff and its contactors) or regulations. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 983 (Fed. Cir. 1995) (finding that testimony from a proposed expert regarding the proper construction of a patent "amounts to no more than legal opinion . . . as to these types of opinions, the Court has complete discretion to adopt the expert legal opinion as its own, to find guidance from it, or to ignore it entirely, or even to exclude it"); Principal Mut. Life Ins. Co. v. United States, 26 Cl. Ct. 616, 625 (1992) (holding that affidavits containing only expert legal opinion "cannot be considered helpful, and therefore admissible expert testimony").

For instance, regarding indirect costs allocated to Stone & Webster and Rexel Southern (companies that provided, *inter alia*, manual labor for construction of the Grand Gulf dry fuel storage facility) subcontracts, Mr. Peterson's report states:

> LitCon analyzed the details behind the invoices from the vendors, and I concluded that the Stone & Webster and the Rexel Southern contracts included fixed costs that should not be included in the claim. [Plaintiff's] claimed costs for Stone & Webster included allocations of non-manual labor costs according to the proportion of manual labor within the weekly invoice. These allocations (Time Office and Accounting charge, and site superintendent) are distributed amounts that are obligated even if no work is performed. *Entergy is contractually obligated to pay the Time Office and Accounting fixed fee.*

Peterson Report at 10 (emphasis added) (footnotes omitted). Based on the plain language of his report, it appears that Mr. Peterson and his colleagues interpreted invoices and contracts between Plaintiff and its vendors, and Mr. Peterson proceeded to draw legal conclusions regarding the

allocability of Plaintiff's indirect costs. These are straightforward, evidentiary tasks that this Court is capable of performing without the testimony of a proffered expert, and the Government should not be permitted to substitute Mr. Peterson's judgment for the Court's in this case. See Inwood Laboratories, 456 U.S. at 856.

Similarly, Mr. Brewer's report describes how he determined that an aspect of the Grand Gulf dry fuel storage project was not "incremental" to the Government's breach:

> I have reviewed the 39 tasks and concluded that there are some tasks that would have been necessarily performed to support transfer of fuel to DOE in the but-for world independent of the type or size of cask that DOE would have provided for the transport of spent fuel. There are additional tasks that would have been performed if it is assumed, as Entergy Grand Gulf personnel have suggested it would be assumed, that DOE would have provided a large rail cask in the but-for world, but would not likely have been performed if DOE have provided a smaller truck cask.

Brewer Report at 9. Mr. Brewer's review and interpretation of Entergy tasking documents regarding the Grand Gulf dry fuel storage project, like Mr. Peterson's review, does not require the "specialized knowledge" that is necessary to assist the Court. See FED. R. EVID. 702. While the Government may cite Mr. Brewer's master's degree in nuclear engineering and his experience in the nuclear energy field, nothing in Mr. Brewer's background suggests that he has specialized knowledge regarding the storage, handling, or transportation of commercial SNF beyond the experience and knowledge that engineers loading dry fuel storage casks at Grand Gulf (or any other commercial nuclear power plant) may possess. In this case, Mr. Brewer's review of Grand Gulf documents does not apply any recognized methodological technique or theory that can be tested or subject to peer review and publication. See Daubert, 509 U.S. at 592-96. Thus, without any established methodology beyond his mere interpretation of Entergy business records, Mr. Brewer's opinions are not sufficiently reliable to assist this Court. Furthermore, his legal conclusion that some Grand Gulf dry fuel storage project tasks are not

"incremental" to the Government's breach is not grounded in any expertise and, once again, reflects evidentiary findings reserved for this Court.

In summary, the Government should not be permitted to present evidence through witnesses who provide legal conclusions under the guise of expert testimony. The interpretation of Entergy's contractual and engineering documents is not, under Daubert, a specialized methodology underlying expert opinions. Moreover, the Government (in this case and other SNF cases) has consistently equated the term "incremental" with the recoverability of costs in a utility plaintiff's damages claim. Because this Court is tasked with determining whether a plaintiff's costs are recoverable, the Government's experts may not substitute their judgment for the Court by issuing opinions on whether aspects of Plaintiff's claim are "incremental" to the Government's breach.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully moves for the exclusion of any testimony from Mr. Warren Brewer, Mr. Robert Peterson, and Dr. Raymond Hartman – to the extent that their opinions at trial about whether aspects of Plaintiff's damages claim are "incremental" to the Government's breach (1) amount to legal conclusions or (2) infringe on this Court's fact-finding.

Dated: September 6, 2006

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Jack Y. Chu
Alex D. Tomaszczuk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102-4859
(703) 770-7940
(703) 770-7901 (fax)

Counsel of Record for Plaintiff
System Fuels, Inc., on its own behalf
and as agent for System Energy Resources, Inc.
and South Mississippi Electric Power Association

OF COUNSEL:
Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)

L. Jager Smith, Jr.
**WISE CARTER CHILD**
**& CARAWAY, P.A.**
1340 Echelon Parkway
Jackson, MS 39213
601-368-5572
601-368-5816 (fax)