No. 03-2624C
(Judge Braden)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SYSTEM FUELS, INC., on its own behalf
and as agent for SYSTEM ENERGY RESOURCES, INC.
and SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S "NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS" AND, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE RELIANCE UPON THOSE DESIGNATIONS AS SUBSTANTIVE EVIDENCE PURSUANT TO RCFC 32(a) AND FEDERAL RULE OF EVIDENCE 801(d)(2)

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-0347
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue S.W.
Washington, D.C. 20585

MARIAN E. SULLIVAN
JOHN C. EKMAN
SCOTT E. DAMELIN
STEPHEN FINN
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

September 8, 2006

Attorneys for Defendant

TABLE OF CONTENTS

PAGE

SUMMARY OF ARGUMENT ..... 1

DISCUSSION ..... 3

I. SFI'S DESIGNATIONS SHOULD BE STRICKEN BECAUSE THEY SHOULD NOT BE ADMITTED INTO THE RECORD OF THIS CASE PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)(D) WITHOUT THIS COURT'S DETERMINATION THAT THEY, IN FACT, CONSTITUTE ADMISSIONS ..... 3

II. SFI HAS FAILED TO ESTABLISH AN INDEPENDENT BASIS FOR THE ADMISSION OF THE DESIGNATED TESTIMONY PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2) ..... 5

A. SFI Has Identified No Basis Upon Which To Avoid Its Burden Of Establishing The Admissibility Of Each Of Its Proposed Designations ..... 5

B. SFI Cannot Introduce Testimony From Individuals Who Were Not Employees Of The Federal Government At The Time Of Their Designated Testimony ..... 6

C. SFI Has Identified No Foundation For Finding That The Remaining Witness Testimony Falls Within FRE 801(d)(2)(D) ..... 8

III. SFI HAS NOT MADE THE PROPER SHOWING AS TO WHY DESIGNATED TESTIMONY SHOULD BE ALLOWED TO BURDEN THE RECORD ..... 11

A. SFI Has Failed To Establish Good Cause For Using Deposition Designations *In Lieu* Of Live Testimony At Trial ..... 11

B. When There Has Been No Showing Of Unavailability, There Is A Strong Preference For Live Testimony ..... 13

IV. TO THE EXTENT THAT WITNESSES DISCUSS EXHIBITS IN THEIR DESIGNATED TESTIMONY, SFI'S DESIGNATIONS CONFLICT WITH SFI'S OBLIGATION TO ESTABLISH PROPER FOUNDATION FOR THE ADMISSION OF EXHIBITS ..... 17

TABLE OF CONTENTS (cont'd)

PAGE

V. ALTHOUGH MR. MORGAN'S PRIOR TESTIMONY CANNOT BE ADMITTED PURSUANT TO FRE 801(d)(2)(D), THE COURT SHOULD PERMIT BOTH PARTIES TO RELY UPON HIS PAST TESTIMONY PURSUANT TO RCFC 32(a) .................................................... 17

VI. NOTWITHSTANDING SFI'S FAILURE TO DEMONSTRATE THE ADMISSIBILITY OF DEPOSITION TESTIMONY IN THIS CASE, THE GOVERNMENT SUBMITS ITS OBJECTIONS AND COUNTER-DESIGNATIONS ............................................................... 19

CONCLUSION ........................................................................................................ 19

# TABLE OF AUTHORITIES

CASES PAGE(S)

Aliotta v. National R.R. Passenger Corp.,
315 F.3d 756 (3d Cir. 2003) .......... 3, 4

American Eagle Insurance Co. v. Thompson,
85 F.3d 327 (8th Cir. 1996) .......... 8

American Steel Works v. Hurley Construction Co.,
46 F.R.D. 465 (D. Minn. 1969) .......... 14

Angelo v. Armstrong World Industrial,
11 F.3d 957 (10th Cir. 1993) .......... 11

Banks v. Yokemick,
144 F. Supp. 2d 272 (S.D.N.Y. 2001) .......... 14

Carden v. Westinghouse Electric Co.,
850 F.2d 996 (8th Cir. 1998) .......... 5

Delaware v. Van Arsdall,
475 U.S. 673 (1986) .......... 15

Evans v. Port Authority of New York & New Jersey,
192 F. Supp. 2d 247 (S.D.N.Y. 2002) .......... 4

Globe Savings Bank v. United States,
61 Fed. Cl. 91 (2004) .......... 5, 6, 10, 16

Grimna v. Makousky,
76 F.3d 151 (7th Cir. 1966) .......... 14

Harris v. Itzhaki,
183 F.3d 1043 (9th Cir. 1999) .......... 4

Kolb v. County of Suffolk,
109 F.R.D. 125 (E.D.N.Y. 1985) .......... 5, 13, 14

Long Island Savings Bank v. United States,
63 Fed. Cl. 157 (2004) .......... 5, 6, 7, 10

Napier v. Bossard,
102 F.2d 467 (2d Cir. 1939) .......... 14

TABLE OF AUTHORITIES (cont'd)

CASES PAGE(S)

Renda Marine, Inc. v. United States,
66 Fed. Cl. 639 (2005) .......... 12

Robertson v. National R.R. Passenger Corp.,
No. 98-1397, 1999 WL 280407 (E.D. La. May 3, 1999) .......... 7

Sacramento Municipal Utility Dist. v. United States,
No. 98-488C (Fed. Cl. March 16, 2005) (unpublished) .......... 12

Sea-Land Serv., Inc. v. Lozen Int'l, Inc.,
285 F.3d 808 (9th Cir. 2001) .......... 4, 5

Selby v. Pepsico, Inc.,
784 F. Supp. 750 (N.D. Cal. 1991) .......... 5

Shapiro, Lifschitz, & Schram, P.C. v. Hazard,
90 F. Supp. 2d 15 (D.D.C. 2000) .......... 7

United States v. Blum,
62 F.3d 63 (2d Cir. 1995) .......... 15

United States v. Holmes,
44 F.3d 1150 (2d Cir. 1995) .......... 16

United States v. International Business Machines Corp.,
90 F.R.D. 377 (S.D.N.Y. 1981) .......... 12

United States v. Mathis,
559 F.2d 294 (5th Cir. 1977) .......... 13

Young & Assoc. Public Relations, L.L.C. v. Delta Air Lines, Inc.,
216 F.R.D. 521 (D. Utah 2003) .......... 13

Young v. James Green Management, Inc.,
327 F.3d 616 (7th Cir. 2003) .......... 7

TABLE OF AUTHORITIES (cont'd)

MISCELLANEOUS PAGE(S)

Fed. R. Evid. 801(d) .......... passim

Fed. R. Evid. 804(b)(1), Advisory Committee Notes .......... 15

8A C. Wright, A. Miller, & R. Marcus, Federal Practice and Procedure § 2142 (2d ed. 1994)..15

# INDEX TO ATTACHMENT AND APPENDIX

ATTACHMENT A:

Defendant's Objections To Designations Of System Fuels, And Defendant's Counter-Designations

APPENDIX:


Document ... Page

Transcript of Trial Testimony of John Bartlett, *Yankee Atomic* Trial, July 14, 2004 ... 1

Transcript of Deposition Testimony of Michael Lawrence, Coordinated Discovery Proceedings, May 20, 2002 ... 3

Transcript of Trial Testimony of Robert Morgan, *Yankee Atomic* Trial, August 2, 2004 ... 5

Transcript of Deposition Testimony of Billy Cole, Coordinated Discovery Proceedings, March 13, 2002 ... 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SYSTEM FUELS, INC., on its own behalf and as agent for SYSTEM ENERGY RESOURCES, INC. and SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION, | ) | |
| Plaintiff, | ) | No. 03-2624C |
| | ) | (Judge Braden) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S "NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS" AND, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE RELIANCE UPON THOSE DESIGNATIONS AS SUBSTANTIVE EVIDENCE PURSUANT TO RCFC 32(a) AND FEDERAL RULE OF EVIDENCE 801(d)(2)

Defendant respectfully requests that the Court strike the "Notice Of Deposition & Trial Testimony Designations" that plaintiff, System Fuels, Inc. ("SFI"), filed on August 18, 2006. To the extent that the Court does not strike those designations from the record of this case, defendant alternatively requests that the Court preclude SFI from relying upon those designations or from considering those designations as substantive evidence, given, among other deficiencies discussed below, SFI's failure to establish an appropriate foundation for the designated testimony and to establish that the designated testimony constitutes "admissions" of the United States.

SUMMARY OF ARGUMENT

SFI has proffered extensive deposition and previous trial testimony of 13 past and present Government employees, and 390 pages of testimony, as substantive evidence.[1] Rather than

[1] In its "notice," SFI seeks to introduce by designation the deposition and trial testimony of Lake Barrett, John Bartlett, Alan Brownstein, Billy Cole, Susan Klein, Christopher Kouts,

filing a motion seeking to have this Court review the proposed designations to determine whether they, as SFI claims, all properly constitute "admissions" by the United States pursuant to Federal Rule of Evidence ("FRE") 801(d)(2), SFI has merely filed them with the Court through a "notice," apparently simply including them in the record of this case under an assumption that SFI is entitled to have them all used as "admissions" without any Court review.

Contrary to SFI's apparent belief, it is the Court, not SFI, that must determine whether the proposed designations properly constitute "admissions" of the United States. Because SFI did not file a motion seeking the Court's review of these designations, but, instead, merely included them in the record of this case as predetermined "admissions," we respectfully request that the Court strike SFI's "notice" from the case. Even if the Court considered SFI's "notice" to constitute a motion to deem the designated testimony as admissions of the Government, SFI has failed to make the required showing under FRE 801(d)(2) that the testimony which it has designated may properly be considered to be the admission of a party opponent, and it has ignored or failed to identify numerous objections to the testimony upon which the Court must rule before the testimony could be admitted into the record of this case. SFI also has not overcome the preference for live testimony and met its burden to show cause as to why these designations should be allowed. Because the designated testimony is irrelevant, incomplete, or subject to extensive objections, SFI should not be allowed to burden the record with its

---

Michael Lawrence, Ronald Milner, Robert Morgan, Thomas Pollog, Nancy Slater (Thompson), Victor Trebules, and David Zabransky. Of these individuals, SFI has identified Mr. Zabransky as a witness at trial in its August 18, 2006 witness list. Messrs. Kouts, Morgan, Pollog, and Zabransky are on the Government's witness list, and the Government plans to call these witnesses at trial, although, as we will explain below, it would be appropriate here for both parties to rely upon Mr. Morgan's prior testimony in lieu of live testimony.

admission. To the extent that the Court allows SFI's designations to become part of the record, in whole or in part, we respectfully request that the Court rule upon the objections that are contained in the testimony that SFI has designated, pursuant to RCFC 32(b), and consider the deposition testimony that the Government has counter-designated, pursuant to FRE 106 and RCFC 32(a)(4). The list of these objections and counter-designations are found in Attachment A to this response.

## DISCUSSION

### I. SFI'S DESIGNATIONS SHOULD BE STRICKEN BECAUSE THEY SHOULD NOT BE ADMITTED INTO THE RECORD OF THIS CASE PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)(D) WITHOUT THIS COURT'S DETERMINATION THAT THEY, IN FACT, CONSTITUTE ADMISSIONS

In the "notice" of deposition and trial testimony designations that it filed on August 18, 2006, SFI recognizes that "RCFC Appendix A, ¶ 15(b) provides that a party must move for leave to file designations of substantive testimony, *except 'as provided by Fed. R. Evid. 801(d).'*" SFI Notice, at 1 (Aug. 18, 2006) (italics in original) (quoting RCFC App. A ¶ 15(b)). Claiming that all of its proposed designations constitute "admissions" by the United States pursuant to FRE 801(d)(2), SFI then filed a "notice" of its designations, without any motion requesting that the Court determine whether the proposed designations actually constitute "admissions" under the identified Federal Rule of Evidence. The lack of a motion seeking the Court's review and admission of these proposed designations, as opposed to SFI's mere admission of the designations into the record of this case without any Court review and approval, is inappropriate.

"[T]here are two relevant requirements under Rule 801(d)(2)(D). First, [the designated individual's] deposition testimony must be an admission. Second, the statements must be made 'concerning a matter within the scope' of [the designated individual's] employment." Aliotta v.

National R.R. Passenger Corp., 315 F.3d 756, 761 (3d Cir. 2003). Although a party certainly must identify the specific testimony that it wants to designate for inclusion in the trial record, "the burden of establishing admissibility, of course, is with the proponent of the evidence." Evans v. Port Auth. of N.Y. & N.J., 192 F. Supp. 2d 247, 263 n.121 (S.D.N.Y. 2002). The Court is the ultimate decision-maker regarding these two factors. See Aliotta, 315 F.3d at 761. Specifically, it is the burden of "the proffering party to lay a foundation to show that an otherwise excludable statement relates to a matter within the scope of the agent's employment," Sea-Land Serv., Inc. v. Lozen Int'l, Inc., 285 F.3d 808, 821 (9th Cir. 2001) (quoting Harris v. Itzhaki, 183 F.3d 1043, 1054 (9th Cir. 1999)), and constitutes an admission. "When a court is evaluating whether such a foundation has been established, '[t]he contents of the statement shall be considered but are not alone sufficient to establish . . . the agency or employment relationship and scope thereof.'" Id. (quoting Fed. R. Evid. 801(d)(2)).

Because SFI appears to attempt to remove from the Court's purview any review of its proposed admissions, the Court should strike SFI's "notice" of designations. To the extent that the Court considers SFI's "notice" as a motion to deem the proposed testimony designations as admission of the United States pursuant to FRE 801(d)(2), we have attached to this motion a list of objections to those designations, including SFI's failure to identify any testimony that would establish any foundation for the proposed "admissions." Below, we further discuss specific objections to the proposed designations, to the extent that the Court considers SFI's "notice" as a motion to deem testimony as admissions.

## II. SFI HAS FAILED TO ESTABLISH AN INDEPENDENT BASIS FOR THE ADMISSION OF THE DESIGNATED TESTIMONY PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)

### A. SFI Has Identified No Basis Upon Which To Avoid Its Burden Of Establishing The Admissibility Of Each Of Its Proposed Designations

In its "notice," SFI asserts that it need not comply with the requirements of RCFC 32(a) in submitting its testimony designations because all of the designated testimony is admissible as an admission of a party opponent, pursuant to FRE 801(d)(2). SFI relies upon the Court's decision in Globe Savings Bank v. United States, 61 Fed. Cl. 91 (2004), in which the Court held that a party need not show cause for the admission of deposition testimony, pursuant to RCFC 32(a), if the Federal Rules of Evidence, in particular the rule concerning admissions of a party opponent in FRE 801(d), provide an independent basis for the admission of the deposition testimony. Id. at 95 (2004);[2] see Long Island Savings Bank v. United States, 63 Fed. Cl. 157, 163 (2004). However, consistent with other court decisions, the Court in Globe and Long Island required a showing that the testimony that the plaintiffs sought to designate in each case properly met the requirements of FRE 801(d)(2) as an admission of a party opponent. See Sea-Land, 285 F.3d at 821; Carden v. Westinghouse Elec. Co., 850 F.2d 996, 1002 (8th Cir. 1998); Selby v.

[2] The factual difference between the instant case and Globe provides a proper basis for limiting the application of the analysis in Globe. The plaintiff in Globe was successful in offering into evidence portions of the deposition testimony of a single individual as the admission of a party opponent. Globe, 61 Fed. Cl. at 95. However, in this case, PGE seeks to admit the deposition and trial testimony of 13 individuals as substantive evidence. Other courts have recognized that deposition testimony conceded to be an admission under FRE 801(d)(2)(D) should not be used in place of the deponent's live trial testimony when the deponent is readily available to testify at trial. Kolb v. County of Suffolk, 109 F.R.D. 125, 127 (E.D.N.Y. 1985). SFI's wholesale designation of deposition testimony, rather than providing proper trial testimony, amounts to a "trial by deposition," which is disfavored in the Federal courts. Id.

Pepsico, Inc., 784 F. Supp. 750, 757 (N.D. Cal. 1991). SFI has made no attempt to meet these requirements for much of the testimony that it has designated.

Rule 801(d)(2) provides, in pertinent part, as follows:

> Admission by a party-opponent. The statement is offered against a party and is . . . (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, . . .

Fed. R. Evid. 801(d)(2). In Globe and Long Island, the Court conducted an analysis of the testimony designated to ensure that it met the requirements of the rule. Globe, 61 Fed. Cl. at 96-97; Long Island, 63 Fed. Cl. at 164-65. Specifically, the Court required the plaintiffs to establish that: (1) the statements were made by the party, the United States, against whom the statements were being offered; (2) the subject matter of the testimony designated matched the "subject matter of the employee's job description;" and (3) all of the individuals for whom testimony was designated were employees of the United States Government at the time of their depositions. Id. (citations omitted); see . SFI has failed to provide the Court with the evidence to make similar determinations regarding the extensive deposition testimony that it seeks to designate as admissions of a party opponent.

B. SFI Cannot Introduce Testimony From Individuals Who Were Not Employees Of The Federal Government At The Time Of Their Designated Testimony

SFI cannot seek to admit the testimony of John Bartlett, Michael Lawrence, or Robert Morgan pursuant to FRE 801(d)(2). Although all three of these individuals had once been employed by the Federal Government, none were not Federal employees at the time of their depositions or trial testimony. See App. 2, 4, 6. To fall within the parameters of FRE 801(d)(2)(D), the individual making the statements at issue must have been an employee or agent

of the party opponent when the statement constituting the alleged admission was made. See, e.g., Young v. James Green Mgt., Inc., 327 F.3d 616, 622-23 (7th Cir. 2003) (statements made by former employees of party, who were not employed by party at time of statement, cannot be party admissions under FRE 801(d)(2)(D)); Shapiro, Lifschitz, & Schram, P.C. v. Hazard, 90 F. Supp. 2d 15, 18 n.3 (D.D.C. 2000) ("affidavit does not qualify under the party admission exception in Fed. R. Evid. 801(d)(2)(D) because O'Riordan is a former employee"); Robertson v. National R.R. Passenger Corp., No. 98-1397, 1999 WL 280407, at *1 (E.D. La. May 3, 1999) ("statement issued by a former employee after the employment ceases, is inadmissible under Rule 801(d)(2)(D)"). Indeed, SFI has not attempted to make any showing under RCFC 32(a) that would permit the introduction of this testimony as evidence in this case. See Long Island, 63 Fed. Cl. at 165 (Court analyzed admission of deposition testimony pursuant to RCFC 32(a) because individual was not an employee of the Federal Government at the time of his deposition). SFI's designation of Mr. Bartlett's testimony is particularly egregious, given that Mr. Bartlett was employed by several spent nuclear fuel ("SNF") plaintiffs and was testifying as their employed witness at the time that he provided the testimony that SFI now seeks to designate as an "admission" of the Federal Government. In any event, there is no basis for the admission of any of the designations from Messrs. Bartlett, Lawrence, and Morgan.[3]

[3] In addition to the fact that Mr. Bartlett was not employed by the Federal Government when he provided his designated testimony and, in fact, was actually employed by several SNF plaintiffs, SFI's designation includes portions of Mr. Bartlett's testimony as an expert witness for the nuclear utilities (see Bartlett *Yankee* Trial Testimony 633:8-640:15 & 643:11-647:18), which is also inappropriate. SFI has not identified Mr. Bartlett as an expert witness in this case, and he has not been qualified as an expert witness in this case. Accordingly, his expert witness testimony from another SNF case should not be admissible here. Further, it was not the United States, but the SNF plaintiffs in Yankee, who were paying for Mr. Bartlett's expert witness testimony. His 2004 expert witness testimony in Yankee, given years after he had concluded his

Similarly, SFI has designated testimony from Mr. Billy Cole. Yet, Mr. Cole has never been an employee of the Federal Government. App. 9. Instead, he has worked only for entities that had contracts with the Department of Energy. SFI has submitted no evidence that Mr. Cole constituted an "agent" of the United States and that his statements should somehow be attributed as "admissions" of the United States. See American Eagle Ins. Co. v. Thompson, 85 F.3d 327, 333 (8th Cir. 1996) (proffering party has burden of "establishing the necessary agency relationship" under FRE 801(d)(2)(D)). Accordingly, Mr. Cole's prior testimony similarly cannot be designated as an "admission" by the United States under FRE 801(d)(2)(D).

### C. SFI Has Identified No Foundation For Finding That The Remaining Witness Testimony Falls Within FRE 801(d)(2)(D)

With respect to the remaining individuals who were Government employees at the time of their depositions or trial testimony, SFI has failed to provide the necessary showing that the testimony that it has designated for admission falls within the scope of the responsibility for the employee for the following: Alan Brownstein, Susan Klein, Christopher Kouts, Nancy Slater, and Victor Trebules.[4] With respect to Susan Klein, SFI only has designated Ms. Klein's testimony that her position was as a "senior policy advisor" to Mr. Lake Barrett, Deputy Director, OCRWM, and that she had held that position since 1997. See Klein Deposition, Apr. 24, 2002, 11:10-12:15. SFI provides no further testimony regarding the scope of Ms. Klein's responsibilities. Similarly, SFI has designated two excerpts from two of the three days of

---

employment by the Federal Government, clearly was not an "admission" by the United States pursuant to FRE 801(d)(2)(D).

[4] As explained below, we currently intend to call Mr. Kouts to testify in our case-in-chief. Deposition designations for Mr. Kouts are unnecessary given his expected testimony at trial.

deposition testimony from Nancy Slater regarding delivery commitment schedules ("DCSs") under the Standard Contract, but has not designated any testimony regarding Ms. Slater's position or her responsibilities that would allow the Court to determine that Ms. Slater's statements regarding DCSs should be considered to be within the scope of her employment. Similarly, SFI designated no testimony that would establish Alan Brownstein's responsibility for Annual Capacity Reports, delivery commitment schedules, the Monitored Retrievable Storage facility, or other matters discussed in his designated testimony or the period of his employment with DOE. Without information regarding the subject matter encompassed by these individuals' positions in the Government, the Court is unable properly to determine that the statements which SFI seeks to introduce as substantive evidence are within the scope of the employment of the individuals and, therefore, independently admissible pursuant to FRE 801(d)(2).

Significantly, SFI's designations for other deponents (Messrs. Barrett, Milner, Pollog, and Zabransky) demonstrate SFI's understanding of the requirements of FRE 801(d)(2) and its obligation to establish that the individual was employed by the Government and the scope of that employment. For example, SFI has designated testimony for Messrs. Barrett and Milner that established their employment by DOE in the positions of the deputy director and the chief operations officer, respectively, for the Office of Civilian Radioactive Waste Management ("OCRWM"). Barrett Deposition, Apr. 22, 2002, 10:21-11:5; Milner Deposition, May 1, 2002, 11:23-12:8. Although SFI should have designated additional testimony regarding the scope of employment for these individuals, we do not dispute that they occupied senior positions within the Office of Civilian Radioactive Waste Management ("OCRWM") within DOE. SFI also has designated testimony regarding the scope of employment for Messrs. Pollog and Zabransky.

Pollog Testimony from the trial in Tennessee Valley Authority v. United States, No. 01-249C (Fed. Cl.), Tr. 908:6-909:24; Zabransky Deposition, Aug. 5, 2004, 4110:15-4112:3. While we maintain foundational objections to portions of the testimony designated for all of these individuals, including objections that the testimony is outside their scope of employment, SFI has at least attempted to provide the scope of employment information required by FRE 801(d)(2). SFI's failure to attempt to establish that scope of employment for Mr. Brownstein, Ms. Klein, Mr. Kouts, Ms. Slater, and Mr. Trebules leaves the Court with no basis upon which to determine whether the designations may be properly admitted pursuant to FRE 801(d)(2). As a result, SFI's designations for these five witnesses (in addition to the four individuals identified above – Messrs. Bartlett, Cole, Lawrence, and Morgan – who were not Federal employees at the time of their designated testimony) should not be admitted. See Long Island, 63 Fed. Cl. at 165; Globe, 61 Fed. Cl. at 97.

## III. SFI HAS NOT MADE THE PROPER SHOWING AS TO WHY DESIGNATED TESTIMONY SHOULD BE ALLOWED TO BURDEN THE RECORD

### A. SFI Has Failed To Establish Good Cause For Using Deposition Designations *In Lieu* Of Live Testimony At Trial

SFI has sought the admission of the testimony of 13 individuals from 40 days of deposition or trial, consisting of 390 additional transcript pages for the Court to consider. SFI has made no effort to show that any of the witnesses whose deposition testimony it has designated are unavailable to testify at trial. Moreover, the testimony is irrelevant, incomplete, and replete with objections, all of which need to be ruled upon before the Court considers its substance. Because SFI has failed to meet its burden to show why this testimony should be admitted, the Court should exclude it from the record.

Pursuant to paragraph 15(b) of Appendix A of the Court's rules, SFI must show "good cause" for using designated deposition and trial testimony, "other than as provided by [FRE] 801(d)." See RCFC, App. A, ¶ 15(b) ("Any party intending to present substantive evidence by way of deposition testimony . . . *shall show cause* why the deposition testimony should be admitted") (emphasis added)); see also Angelo v. Armstrong World Industrial, 11 F.3d 957, 963 (10th Cir. 1993) (proponent of using deposition testimony at trial bears the burden of proving that it is admissible in lieu of live testimony under Rule 32 of the Federal Rules of Civil Procedure). Although paragraph 15(b) of Appendix A itself does not expressly require that a party "show cause" in a written motion regarding the admission of FRE 801(d) evidence, it is clear that this Court has a preference for live testimony and that, even though FRE 801(d) evidence may be presented at trial and supported orally, the party seeking to introduce duplicative, cumulative, and unnecessary evidence must properly support that request.

In its "notice" of the designations, SFI asserts only that its designations are proper because they will "streamline the parties' trial preparation and reduce trial time and cost." SFI Notice, at 2 (Aug. 18, 2006). However, this reason does not amount to sufficient "cause" to permit SFI to justify the designation of a substantial amount of testimony that ultimately seeks an "end run" around the Court's order regarding the length of trial. The Court's existing scheduling order specifically states that SFI will have one week within which to present its case-in-chief – from September 18 through 22, 2006. Pursuant to this scheduling order, substantive evidence must be presented within the five-day period set forth in the scheduling order. Although SFI claims in its notice that it seeks to "reduce" its trial time by avoiding calling live witnesses, it is actually attempting to supplement its designated trial time. Further, particularly

to the extent that the Government will have to address some of the out-of-context designated statements in these deposition designations with live witnesses, SFI's use of designations prejudices the Government by increasing the amount of live testimony that the Government will have to present.

Significantly, SFI has designated testimony of three individuals – Messrs. Kouts, Pollog, and Zabransky – whom the Government expects to call in its case-in-chief. SFI also has designated the testimony of an individual -- Mr. Zabransky – whom SFI has indicated it "may" call. If these individuals testify, as expected, SFI will have burdened the record with additional testimony that could have been elicited during cross-examination. See Renda Marine, Inc. v. United States, 66 Fed. Cl. 639, 645 (2005) (citing United States v. Int'l Bus. Machs. Corp., 90 F.R.D. 377, 382 (S.D.N.Y. 1981)) (disregarding designated deposition testimony of witnesses who testified at trial); Sacramento Municipal Utility Dist. v. United States, No. 98-488C, order, at 2 (Fed. Cl. March 16, 2005) (unpublished) (denying motion to designate prior testimony of witnesses who were to testify at trial). While we believe that SFI should not be allowed to designate testimony from witnesses who will testify at trial, to the extent that the Court allows it, we ask that SFI be barred from cross-examining these witnesses upon the topics that are the subject of SFI's designations.[5]

---

[5] Because of SFI's designations, this Court must review voluminous snippets of substantive testimony, replete with objections, as well as counter-designations, themselves replete with objections, and rule upon all objections, in order to admit the testimony into evidence. RCFC 32(d)(3)(A) ("Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if present at that time"). By submitting volumes of deposition testimony, SFI not only attempts to supplement its trial time, but also will significantly increase the Government's out-of-trial work.

B. When There Has Been No Showing Of Unavailability, There Is A Strong Preference For Live Testimony

SFI proffers no evidence, and makes no suggestion, that any of the 13 witnesses whose deposition and trial testimony that it has designated have been or are unavailable to testify at the trial in this case. The Government is prepared to assist in making all former and current Government witnesses who appear upon SFI's proposed designation list available for trial, but, to date, we have received no inquiries from counsel for SFI regarding the availability of these individuals for trial. Even deposition testimony conceded to be an admission under FRE 801(d)(2)(D) should not be used in place of the deponent's live trial testimony when the deponent is readily available to testify at trial. Kolb, 109 F.R.D. at 127. SFI should be required to present its case through live testimony at trial and should not be permitted to avoid this obligation by forcing the Court and the Government to read and analyze hundreds of pages of proposed testimony in addition to the evidence that SFI presents at trial.

SFI's failure to make a showing of unavailability flies in the face of established precedent. The preference for live testimony, when available, has been well-established by the courts:

> In both civil and criminal cases, our common law heritage has always favored the presentation of live testimony over the presentation of hearsay testimony by the out-of-court-declarant. See McCormick Evidence 2d § 244. The jury's observation of the demeanor of the witness and the effectiveness of cross-examination in the discovery of the truth are the traditional reasons for the preference even though the out-of-court statement had been given under oath.

United States v. Mathis, 559 F.2d 294, 299 (5th Cir. 1977); see Young & Assoc. Public Relations, L.L.C. v. Delta Air Lines, Inc., 216 F.R.D. 521, 522 (D. Utah 2003) ("[t]he deposition

has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand") (quoting from Judge Learned Hand in Napier v. Bossard, 102 F.2d 467, 469 (2d Cir. 1939)); Banks v. Yokemick, 144 F. Supp. 2d 272, 288 (S.D.N.Y. 2001) ("The general rule is that testimony at all trials must be live . . . [D]eposition testimony is only a substitute, not to be resorted to if the witness can appear in person"). Live testimony is necessary to provide this Court with an opportunity to evaluate the witnesses' demeanor during the discussion of events in which the witnesses were involved. Clearly, the reading of a deposition transcript does not serve as an adequate alternative to evaluation of the witness' testimony in person. See American Steel Works v. Hurley Construction Co., 46 F.R.D. 465, 470 (D. Minn. 1969) ("[t]he taking of a deposition is not equivalent to having 'live' testimony"); see also Grimna v. Makousky, 76 F.3d 151, 153 (7th Cir. 1966) ("strong preference of Anglo-American courts for live testimony"); Kolb, 109 F.R.D. at 127 ("when depositions are submitted in place of live testimony, the trial judge is denied the opportunity to question the witness . . . [c]learly, testimony by deposition is less desirable than oral testimony and should be used as a substitute only under very limited circumstances."). The preference for live testimony is recognized in Rule 32 itself, which provides that the Court may allow deposition testimony to be introduced unless it finds "it is not in the interests of justice, *with due regard to the importance of presenting the testimony of witnesses orally in open court* . . ." RCFC 32(a)(3)(E)(ii) (emphasis added).

The inquiry on the admissibility of deposition and trial transcripts under RCFC 32 is further informed by this "long-established principle that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness is not

available to testify in person." 8A C. Wright, A. Miller, & R. Marcus, Federal Practice and Procedure § 2142, at 158 (2d ed. 1994) (discussing FRCP 32); see Fed. R. Evid. 804(b)(1), Advisory Committee Notes (1972) ("testimony given on the stand in person is preferred over hearsay," such as a witness' former testimony, and "tradition, founded in experience, uniformly favors the production of the witness if he is available" because the "opportunity to observe demeanor is what in a large measure confers depth and meaning upon oath and cross-examination"). SFI's introduction into evidence of deposition and trial testimony designations deprives the Court of the opportunity to see witnesses respond to questions, explain their testimony, as well as respond to any questions asked by the Court. Because this Court possesses national jurisdiction and can summon witnesses to testify form throughout the United States when necessary (RCFC 63), this Court should adhere to the strong preference for live testimony and reject SFI's attempt to eliminate the need to present such testimony to the Court.

Finally, even if the Court in Globe is correct that deposition testimony satisfying the requirements of FRE 801(d)(2) is admissible even if the witness is available to testify, this Court retains the discretion to preclude wholesale introduction of the massive amounts of deposition testimony that SFI proposes to introduce, which threaten to transform this case into a document review case without testimony. See RCFC 1. A party's right to present its case in the manner that it desires "must be balanced against a court's leave to set reasonable limits on the admission of evidence." United States v. Blum, 62 F.3d 63, 67 (2d Cir. 1995) (citing Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). "[J]udges are accorded 'wide latitude' in excluding evidence that poses an undue risk of 'harassment, prejudice [or] confusion of the issues' or evidence that is 'repetitive or only marginally relevant.'" Blum, 62 F.3d at 67 (quoting Van

Arsdall, 475 U.S. at 679); see United States v. Holmes, 44 F.3d 1150, 1157 (2d Cir. 1995) ("[a]bsent a clear abuse of discretion, a trial judge retains a wide latitude to exclude irrelevant, repetitive, or cumulative evidence"). Under the Rules, this Court possesses the clear authority to exclude the wholesale introduction of designated testimony, in place of live testimony.

## IV. TO THE EXTENT THAT WITNESSES DISCUSS EXHIBITS IN THEIR DESIGNATED TESTIMONY, SFI'S DESIGNATIONS CONFLICT WITH SFI'S OBLIGATION TO ESTABLISH PROPER FOUNDATION FOR THE ADMISSION OF EXHIBITS

SFI's designations are replete with testimony concerning documents that were identified as exhibits during the deposition or at trial. These designations are problematic because it is not clear from the designations what document is being discussed or whether a proper foundation has been laid for the witness to testify about that specific document. For example, SFI has designated Mr. Barrett's testimony about the statements contained in a document generated by a group within OCRWM that did not include Mr. Barrett about studies that were undertaken by OCRWM.

> Q: Do you know what the, or are you familiar with the system study that is being referred to in this entry?
>
> A: Not this specific one.
>
> Q: Do you have a general understanding of the system study being referred to here?
>
> [Objection]
>
> A: There were various studies done in the eighties and also in the very early nineties on system performance rate, you know, what the costs were, schedules were, plausibility of them.
>
> Q: And these system studies looked at system issues, correct?

A: Yes.

Q: And am I correct that each one of these studies to which you've just referred confirmed an acceptance rate, an aggregate acceptance rate of 3,000 MTU per year?

[Objection]

A: I think its overstated to say it confirmed it. It showed that, you know, at 2,000 it does this, at 3,000 it does that, 4,000 it does something different. I don't know if they actually reached an absolute confirmation that 3,000 was the exact number, but generally they supported the system rate of 3,000 was a reasonable number.

Barrett Deposition, April 22, 2002, 197:4-197:22. It is unclear whether the document that Mr. Barrett was being asked about or the "various system studies" to which Mr. Barrett referred will be made part of the trial record. By including these designations, SFI is apparently trying to provide the Court with testimony about documents that the Court will not have the ability to review or evaluate. These designations do not provide the Court with the benefit of an explanation as to why the documents are important or, conversely, why the documents should be disregarded.[6] For these reasons, the designations that concern documents should not be admitted by the Court.

V. ALTHOUGH MR. MORGAN'S PRIOR TESTIMONY CANNOT BE ADMITTED PURSUANT TO FRE 801(d)(2)(D), THE COURT SHOULD PERMIT BOTH PARTIES TO RELY UPON HIS PAST TESTIMONY PURSUANT TO RCFC 32(a)

Although SFI cannot properly introduce Mr. Morgan's past testimony pursuant to FRE 801(d)(2)(D) because he was not a Federal employee at the time of that testimony, the Court

[6] When we have been able to discern that the designated testimony concerns a document that may or may not be identified in the testimony excerpted, we have lodged a "best evidence" objection. See Attachment A.

should permit both parties to introduce portions of Mr. Morgan's past testimony, and to rely upon that past testimony as substantive evidence, pursuant to RCFC 32(a) to preclude the need for Mr. Morgan, yet again, to travel to Washington, D.C., to testify regarding contract formation issues about which he has already repeatedly testified in several trials before this Court. As the Court is aware, the Government originally requested that the Court consolidate the SNF cases, in part to permit for coordinated discovery and to permit former Federal employees, like Mr. Morgan, to testify once, and only once, regarding matters that are relevant in all of the SNF cases. The Court did not grant the Government's request, and, as a result, Mr. Morgan, who was involved in the formation of the Standard Contract at issue in this case, has now testified in the trial of the three Yankee Atomic cases, the Tennessee Valley Authority trial, and the recent trial in Pacific Gas & Electric Co. v. United States, Nos. 04-0074C & -0075C (Fed. Cl.). He was also extensively deposed in the coordinated discovery proceedings about his work at the Department of Energy prior to his retirement in 1988. Given Mr. Morgan's age, the fact that he retired from Federal service approximately 18 years ago, and the repetitive and duplicative nature of the testimony that is being sought from him in individual SNF cases, it is certainly appropriate to allow both parties (not only SFI) to introduce relevant portions of Mr. Morgan's extensive past testimony regarding the contract formation issues, rather than to make Mr. Morgan, once again, repeat his prior testimony about contract formation. Given the SNF plaintiffs' opposition to allowing for a consolidated hearing or trial to resolve rate issues, and their insistence that they wanted individual trials in which the Government would be required to relitigate on a continual basis the same contract formation issues, the Court should invoke RCFC

32(a)(3) to allow both the Government and SFI to designate portions of Mr. Morgan's testimony in lieu of live testimony.

## VI. NOTWITHSTANDING SFI'S FAILURE TO DEMONSTRATE THE ADMISSIBILITY OF DEPOSITION TESTIMONY IN THIS CASE, THE GOVERNMENT SUBMITS ITS OBJECTIONS AND COUNTER-DESIGNATIONS

If the Court allows the testimony that SFI has designated to become part of the record in this case, the Government respectfully requests that the Court first rule upon the objections to that testimony indicated in the portions of the testimony designated. RCFC 32(b). Thereafter, and to the extent that the Court admits any designated testimony, the Government requests that the Court consider the Government's counter-designations from these same depositions. FRE 106. Further, to the extent that the Court allows SFI to designate testimony for Messrs. Kouts, Morgan, Pollog, Zabransky, who are currently expected to testify at trial, the Government requests that the Court preclude any cross-examination by SFI on the matters covered by those designations and allow the Government provide counter-designations for these individuals at a later date. The Government's objections and counter-designations are identified in Attachment A to this motion. The full text of the Government's counter-designations also are attached.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny the admission of the deposition and trial testimony that SFI has designated or, in the alternative, that the Court rule upon the objections and admit the Government's counter-designations.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

MARIAN E. SULLIVAN
JOHN C. EKMAN
SCOTT E. DAMELIN
STEPHEN FINN
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

s/ Sharon A. Snyder
SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 616-0347
Fax: (202) 307-2503

September 8, 2006

Attorneys for Defendant

# ATTACHMENT A

DEFENDANT'S OBJECTIONS TO DESIGNATIONS
BY SYSTEM FUELS, AND DEFENDANT'S COUNTER-DESIGNATIONS

**GUIDE TO OBJECTIONS**

| **OBJECTION** | **MEANING** |
|---|---|
| FOUNDATION | QUESTION SEEKS TESTIMONY THAT IS OUTSIDE OF WITNESS'S PERSONAL EXPERIENCE OR OUTSIDE THE SCOPE OF EMPLOYMENT, OR THE WITNESS'S PERSONAL EXPERIENCE HAS NOT BEEN ESTABLISHED |
| LEGAL CONCLUSION | QUESTION CALLS FOR LEGAL CONCLUSION |
| SPECULATION | QUESTION SEEKS INFORMATION EITHER NOT BASED UPON THE WITNESS'S KNOWLEDGE OR EXPERIENCE OR CONCERNS A HYPOTHETICAL |
| BEST EVIDENCE | TESTIMONY CONTAINS EXCERPTS FROM A DOCUMENTS OR DISCUSSES A DOCUMENT, THE BEST EVIDENCE OF WHICH IS THE DOCUMENT ITSELF (WHICH MAY NOT BE IN EVIDENCE OR IDENTIFIED AS A TRIAL EXHIBIT) |
| VAGUE | MEANING OF TERMS WITHIN THE QUESTION ARE UNCLEAR |
| RELEVANCE | TESTIMONY IS NOT RELEVANT TO THE ISSUES TO BE DECIDED BY THE COURT |
| HEARSAY | TESTIMONY CONTAINS STATEMENTS MADE BY OTHERS |

**LAKE BARRETT**

Objections:

| **Testimony** | **Objections** |
|---|---|
| | |
| **April 22, 2002**<br>49:2-60:22<br>**June 24, 2005 (TVA)** [1]<br>59:4-11 | Foundation, legal conclusion, speculation, vague (as to term "reasonable") |
| 74:2-15 | Best evidence, speculation, vague |
| 76:12-19 | Foundation, vague (as to term "appropriate") |
| 85:3-94:8 | Foundation, vague |
| 117:3-123:2 | Foundation, legal conclusion, vague, completeness (question begins at 116:21) |
| 137:11-139:20 | Vague |
| 153:3-156:19 | Foundation, best evidence, vague |
| 197:4-198:10 | Foundation, best evidence, vague (as to "studies"), completeness (question begins at 196:22) |
| 217:1-220:2 | Foundation, mischaracterizes prior testimony, vague |
| | |
| **April 23, 2002**<br>348:1-350:11<br>**June 24, 2005 (TVA)**<br>824:17-826:25 | Foundation, best evidence, vague |
| | |
| **April 26, 2002**<br>739:1-742:13 | Foundation, best evidence, completeness (question and answer begin at 738:19) |
| 795:5-798:9 | Foundation, best evidence, speculation |

[1] Plaintiff has designated "trial" testimony for Mr. Barrett from the trial in Tennessee Valley Authority v. United States, No. 01-249C (June 24, 2005). Mr. Barrett did not testify at trial in TVA. The testimony designated are excerpts from Mr. Barrett's deposition testimony on April 22 and 23, 2002 and duplicate testimony that plaintiff has already designated.

| | |
|---|---|
| **May 10, 2002**<br>1163:1-1166:7 | Foundation, legal conclusion, best evidence, vague (as to "mission"), completeness (question and answer begin at 1162:12) |
| 1284:19-1286:7 | Foundation, best evidence |
| 1332:1-1335:18 | Foundation, best evidence |
| 1368:10-1371:21 | Foundation, best evidence, speculation |

<u>Counter-Designations</u>:

**April 22, 2002**

38:14-15
43:13-49:1
65:10-69:19
80:10-81:1
83:7-84:5
116:14-117:18
120:22-121:21
149:5-150:20
180:16-181:17
194:19-197:7
201:15-203:3
242:16-249:19

**April 23, 2002**

399:22-401:3
412:22-413:16
427:14-435:2
442:19-445:5
461:14-465:9

**April 26, 2002**

699:6-16
742:14-743:1

**May 8, 2002**

939:13-940:8
953:21-955:14
965:2-966:15

**May 10, 2002**

1148:22-1151:4
1341:2-1342:14
1347:14-1348:14

**JOHN BARTLETT**

Objections:

| Testimony | Objection |
|---|---|
| | |
| **July 14, 2004**<br>609:5-613:8 | Foundation, vague as to timeframe |
| 614:2-615:23 | Foundation, best evidence, relevance |
| 617:4-621:13 | Foundation |
| 633:8-640:15 | Not qualified as an expert in this case, foundation |
| 643:11-647:18 | Not qualified as an expert in this case, foundation |

Counter-designations:

**July 14, 2004**

655:19-666:8
674:20-675:4
688:12-712:21
713:10-722:7

**ALAN BROWNSTEIN**

Objections:

| **Testimony** | **Objections** |
|---|---|
| | |
| **April 9, 2002**<br>136:7-25 | Foundation, best evidence, legal conclusion, completeness (answer continues to 137:6) |
| | |
| **April 10, 2002**<br>276:6-17 | Foundation, vague (as to term "linkages") |
| 282:5-283:15 | Foundation, best evidence |
| 299:15-20 | Foundation, legal conclusion, vague (as to whether question was about ACR or APR – see 299:21-24) |
| 328:19-21 | Foundation |
| 376:22-378:5 | Foundation |
| 405:16-20 | Foundation, legal conclusion |
| | |
| **April 11, 2002**<br>514:1-519:9 | Foundation, best evidence, legal conclusion |
| | |
| **June 14, 2002**<br>282:1-25 | Foundation, vague (as to "kind of inconsistency"), completeness (answer continues to 283:15) |

Counter-designations:

**April 9, 2002**

61:16-63:4
88:5-89:8
111:13-117:18
128:18-136:6
137:1-138:10

**April 10, 2002**

294:7-295:19
319:19-320:11
388:23-400:21

**April 11, 2002**

549:7-14

**May 23, 2002**

140:3-9
167:4-15

**BILLY COLE**

Objections:

| **Testimony** | **Objections** |
|---|---|
| | |
| **March 12, 2002**<br>55:2-25 | Foundation, vague, completeness (answer concludes at 56:10) |
| 75:1-14 | Foundation, vague, completeness (question begins at 74:23) |
| 129:2-130:22 | Foundation, best evidence, vague, completeness (answer concludes at 131:20) |
| 173:3-176:24 | Foundation, best evidence, vague (as to “this topic”), completeness (question begins at 172:24 and last answer concludes at 177:1) |
| 201:20-202:24 | Foundation, vague, completeness (question begins at 201:19) |
| 204:1-206:23 | Foundation |
| 225:15-226:18 | Speculation, completeness (answer concludes at 227:6) |
| | |
| **June 4, 2002**<br>199:5-200:11 | Foundation, legal conclusion, vague |

Counter-designations:

**March 12, 2002**

53:4-54:13
61:9-67:19
74:11-78:10
81:24-84:13
88:24-89:12
119:20-120:10
128:11-129:1
134:3-135:22
152:6-13

171:9-173:2
186:12-195:12
199:10-201:18

**March 13, 2002**

279:25-282:6
353:20-354:17
504:7-21

**SUSAN KLEIN**

Objections:

| **Testimony** | **Objections** |
|---|---|
| | |
| **April 24, 2002**<br>151:6-151:20 | Foundation, best evidence, relevance, beyond the scope of RCFC 30(b)(6) deposition |

Counter-designations:

**April 24, 2002**

10:20-11:9
62:21-63:5

**April 25, 2002**

354:17-355:13
376:13-382:22
400:7-401:17

**CHRISTOPHER KOUTS**

Objections:

| **Testimony** | **Objections** |
|---|---|
| | |
| **July 12, 2005**<br>1569:4-1570:17 | Relevance |
| 1571:1-1580:24 | Best evidence, relevance, completeness (answer ends on 1581:6) |

Counter-designations:

**July 12, 2005**

1580:25-1581:6

**MICHAEL LAWRENCE**

Objections:

| Testimony | Objections |
|---|---|
| | |
| **May 20, 2002**<br>86:7-88:22 | Foundation, best evidence, vague, relevance |
| 130:7-131:16 | Legal conclusion, foundation |
| 142:10-145:24 | Foundation, best evidence, vague |
| | |
| **May 21, 2002**<br>301:20-305:4 | Foundation, legal conclusion |

Counter-designations:

**May 20, 2002**

111:10-113:20
122:8-123:25
124:8-126:23
165:13-167:6
169:11-174:24
184:3-185:24
201:11-204:4

**May 21, 2002**

255:3-258:10
259:14-260:22
266:22-267:25
294:6-295:5
308:1-309:20
311:10-315:18
316:20-317:25
325:1-332:19
333:12-337:23
341:19-345:19

**RONALD MILNER**

Objections:

| **Testimony** | **Objections** |
|---|---|
| | |
| **May 1, 2002**<br>31:1-22 | Relevance |
| 73:10-22 | Foundation, best evidence, vague (as to timeframe) |
| | |
| **May 3, 2002**<br>555:8-556:12 | Best evidence |
| | |
| **May 7, 2002**<br>661:4-24 | Best evidence, relevance |

Counter-designations:

**May 1, 2002**

27:23-28:6
41:3-17
67:5-69:12
132:2-133:4

**May 2, 2002**

391:13-392:17

**May 3, 2002**

443:16-444:8
552:12-555:6

**August 11, 2004**

4711:23-4716:2
4723:9-4732:25
4735:9-4742:11
4760:12-15

**ROBERT MORGAN**

Objections:

| **Testimony** | **Objections** |
|---|---|
| | |
| **March 21, 2002**<br>137:3-144:10 | Legal conclusion, speculation |
| | |
| **June 25, 2002**<br>134:12-135:14 | Legal conclusion |
| | |
| **August 3, 2004**<br>3674:16-3686:22 | Best evidence |

Counter-designations:

**August 2-3, 2004** (Trial in Yankee Atomic)

3626:5-3637:22
3642:19-3652:20
3656:16-3657:15
3664:22-3665:25
3667:17-3668:3
3675:3-23
3685:14-3686:11
3693:18-3696:8

**July 14, 2005** (Trial in TVA)

2189:21-2190:16
2193:4-21
2194:11-2195:10
2198:9-2200:16
2206:1-2216:18
2218:17-2223:10
2230:24-2236:23

**THOMAS POLLOG**

Objections:

| **Testimony**[2] | **Objections** |
|---|---|
| | |
| **May 16, 2002**<br>293:3-294:23 | Legal conclusion |
| | |
| **August 4, 2004**<br>4012:19-4021:9 | Legal conclusion |
| | |
| | |

Counter-designations:

**April 11, 2002**

31:1-34:5
41:5:-44:15
60:1-63:18
64:22-67:13
74:10-19
92:12-93:9
107:1-108:2
123:15-124:10
144:3-145:15
151:14-154:16
155:18-156:13
158:16-172:12
174:1-22
183:4-184:2
206:16-208:6

**April 12, 2002**

[2] Plaintiff has designated portions of the TVA trial transcript which are duplicative of the designations of Mr. Pollog's deposition testimony. Compare Pollog Dep. Apr. 11, 2002, 96:1-97:17 and TVA Transcript, 916:2-918:8 and 1365:9-1367:10.

9:25-16:17
21:17-24:21
49:14-50:23
91:4-92:10
115:11-116:20
160:12-162:19
163:5-19

**May 16, 2002**

320:15-321:7
322:20-323:17

**NANCY SLATER (THOMPSON)**

Objections:

| **Testimony** | **Objections** |
|---|---|
| | |
| **April 22, 1999**<br>242:18-245:21 | Foundation, completeness (answer ends at 246:4) |
| | |
| **June 13, 2002**<br>98:1-99:25 | Foundation, legal conclusion, completeness (answer ends at 100:14) |
| 108:20-110:13 | Foundation, legal conclusion, completeness (question begins at 108:7) |

Counter-designations:

**April 21, 1999**

32:23-33:6
82:10-15
82:19-83:10
106:16-108:10
164:23-165:13
176:11-25

**April 22, 2002**

245:17-246:4
251:23-253:10
253:22-254:11
257:23-259:24

**June 13, 2002**

149:10-153:14

**VICTOR TREBULES**

Objections:

| **Testimony** | **Objections** |
|---|---|
| | |
| **April 17, 2002**<br>52:11-53:21 | Best evidence, completeness (answer concludes at 54:4) |
| | |
| **April 18, 2002**<br>19:7-20:16 | Foundation, legal conclusion, relevance, completeness (question begins at 18:22) |

Counter-designations:

**April 17, 2002**

15:17-16:17
18:18-19:4
42:5-43:17
53:22-54:4
76:17-77:22
96:19-103:22
113:18-116:14
146:12-148:21
173:2-176:9
180:7-186:22

**April 18, 2002**

302:21-305:14
381:5-382:14

**April 18. 2002** (Yankee Atomic deposition)

125:20-127:13

**DAVID ZABRANSKY**

Objections:

| **Testimony** | **Objections** |
|---|---|
| | |
| **April 17, 2002**<br>30:6-42:16 | Legal conclusion |
| 57:1-59:14 | Legal conclusion |
| 76:13-79:19 | Legal conclusion |
| 89:3-92:17 | Speculation, vague (as to term "reasonable") |
| 105:6-14 | Foundation |
| | |
| **April 18, 2002**<br>323:2-326:17 | Foundation, legal conclusion, best evidence, completeness (question begins at 322:16) |
| 343:2-366:22 | Foundation, legal conclusion, speculation |
| | |
| **June 6, 2002**<br>246:1-247:25 | Legal conclusion, speculation |

Counter-designations:

**April 17, 2002**

55:1-57:17
60:20-61:5
128:10-129:18
150:4-155:21
197:4-199:10

**April 18, 2002**

242:10-246:19
249:6-253:12
254:9-19
266:21-267:20

395:18-396:21
412:20-414:16
449:7-451:18

**April 19, 2002**

628:15-631:22
639:12-640:8

**June 6, 2002**

229:7-231:20
234:6-240:19

**August 5, 2004**

4154:6-4156:3
4161:19-4162:9
4222:15-4226:3

# APPENDIX

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY, CONNECTICUT YANKEE ATOMIC POWER COMPANY, and MAINE YANKEE ATOMIC POWER COMPANY, Plaintiffs, v. THE UNITED STATES, Defendant. | ) Case Nos.: ) 98-126C ) 98-154C ) 98-474C ) ) Consolidated ) |

Courtroom Number 7

National Courts Building
717 Madison Place, N.W.
Washington, D.C.

Wednesday, July 14, 2004

VOLUME 3

The parties met, pursuant to the notice of the Judge, at 10:01 a.m.

BEFORE: THE HONORABLE JAMES F. MEROW



APPEARANCES:

ON BEHALF OF YANKEE ATOMIC ELECTRIC COMPANY, CONNECTICUT YANKEE ATOMIC POWER COMPANY and MAINE YANKEE ATOMIC POWER COMPANY:

JERRY STOUCK, ESQ.
ROBERT SHAPIRO, ESQ.
PETER J. SKALABAN, JR., ESQ.
MICHAEL R. MINER, ESQ.
VIVEK H. HATTI, ESQ.
Spriggs & Hollingsworth
1350 I Street, N.W.
Washington, D.C. 20005
(202) 898-5800

ON BEHALF OF YANKEE ATOMIC ELECTRIC COMPANY and CONNECTICUT YANKEE ATOMIC POWER COMPANY

GERALD GARFIELD, ESQ.
General Counsel
Day, Berry & Howard, LLP
CityPlace I
Hartford, Connecticut 06103
(860) 275-0182



APPEARANCES CONTINUED:

ON BEHALF OF MAINE YANKEE ATOMIC POWER COMPANY:

JOSEPH D. FAY, ESQ.
General Counsel
Maine Yankee
321 Old Ferry Road
Wiscasset, Maine 04578
(207) 882-5603

ON BEHALF OF THE DEFENDANT:

HAROLD LESTER, JR., ESQ.
JOHN EKMAN, ESQ.
MARIAN E. SULLIVAN, ESQ.
HEIDE L. HERRMANN, ESQ.
R. ALAN MILLER, ESQ.
KEVIN B. CRAWFORD, ESQ.
RUSSELL SHULTIS, ESQ.
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-7562

** Index appears at the end of transcript **



P R O C E E D I N G S

MR. SHAPIRO: Your Honor, we're ready to proceed with Dr. Bartlett.
THE COURT: Good.
MR. SHAPIRO: The plaintiffs call John Bartlett.
THE COURT: Okay.
Whereupon,
JOHN WESLEY BARTLETT
was called as a witness, and, having first been duly sworn, was examined and testified as follows:
MR. SHAPIRO: Your Honor, once again, we have a notebook with some documents we would like to provide the witness and to provide copies to you as well, and to government counsel.
I know we have the fan, Your Honor, which is pleasant. But, obviously, if you have any trouble hearing, let us know.
THE COURT: I'm more worried about the reporter.
DIRECT EXAMINATION
BY MR. SHAPIRO:
Q Would you state your name for the record, please.
A My name is John Wesley Bartlett.

Page 590

when you left TASC?
A Well, I was nominated by President Bush to become director of the Office of Civilian Radioactive Waste Management. The nomination was put on hold for a while. And I was sworn into the position in April of 1990.
Q Why was your nomination put on hold for a while?
A It was part of the State of Nevada's efforts to slow down the program, basically.
Q And the director is the top position within the Office of Civilian Radioactive Waste Management?
A Yes, it.
Q And that's a presidentially appointed, Senate confirmed position?
A Senate confirmed, yes.
Q And who did you report to as director?
A The Secretary of Energy, Secretary Watkins through the undersecretary like all the other -- it's a position comparable to an assistant secretary.
Q And how long did you hold the position of Director of OCRWM?
A Through the Bush administration, until January of 1993.
Q Can you describe for us, what were your

Page 591

primary responsibilities at OCRWM at that time?
A Basically, your responsibility is to technically direct and manage all activities of the office. And you represent the office to the Congress, to your various constituencies, of whom there are about 400. You do the program planning and budgeting and direct the staff in their activities, and direct the contractors in their activities. It's a top-level responsibility for that function.
Q I would like you to provide us with a description of some of the major program activities going on during your tenure. Maybe if we split it up, focusing on, first, disposal of spent fuel. What was the major program activity at that time?
A Well, the major activity, of course, this being soon after passage of the Nuclear Waste Policy Amendments Act, was the characterization of the Yucca Mountain site to determine if it was a suitable location for disposal. So we have site characterization of Yucca Mountain.
But in addition, we had all the other program elements for a comprehensive program. And that involved development of alternative transport cask designs, development of an interim storage facility, development of the technologies and systems

Page 592

for receipt of spent fuel from the reactors for transport to either a disposal site or interim storage site.
So it was a comprehensive effort for all aspects of the waste management system.
Q Dr. Bartlett, you link the focus on characterization of Yucca Mountain to passage of the Nuclear Waste Policy Amendments Act of 1987. Why is that?
A Well, that Act specifically selected from the candidates that were available, Yucca Mountain, as the single site to be characterized to determine if it was a suitable location for disposal.
Q Another of the activities that you mentioned was working on interim storage. What sorts of work were you doing looking at interim storage at that time?
A Well, a major candidate for a piece of the waste management systém was what was known at the time as a monitored retrievable storage facility. MRS. That's since been called other things, like a central interim storage facility. But the idea was to have the central location to which spent fuel can be taken from reactors in order to diminish the inventory of spent fuel at the reactors and to have a staging

Page 593

location for disposal if the disposal site wasn't ready.
Q Why was it considered important to have a centralized interim storage facility or monitored retrievable storage facility?
A Well, as it turned out, the schedules for activities were such that the rate at which the program was proceeding relative to the date that had been set, receipt date of January 31, 1998 for beginning of receipt from reactors for disposal, the program wasn't going to make it.
It was very clear that the disposal site would not be ready until later. As a matter of fact, the date that was set in a program reassessment document prepared by Secretary Watkins was 2010. That is still the target date for beginning of disposal.
So it was expected it would be unable, it would be impossible to take spent fuel directly from the reactors, beginning January 31, 1998 to disposal, because there would be no place for disposal.
So the objective was to have an interim storage facility that could be the point of receipt and hold the material in what we call "lag storage" until disposal site was ready.
Q I want to come back to some of those issues

2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ORIGINAL

YANKEE ATOMIC ELECTRIC COMPANY, )
et al., )
)
Plaintiffs, )
vs. ) No. 98-126C
UNITED STATES, )
Defendant. )

DEPOSITION OF MICHAEL J. LAWRENCE, VOLUME I

May 20, 2002
Richland, Washington

3

Austria.
Q. And that was attractive?
A. Yes.
Q. Why did you leave the diplomatic post in Austria?
A. Four years was enough time.
Q. You worked your way back to beautiful Tri-Cities?
A. I went to Sante Fe.
Q. Before Chem Nuclear, where did you work?
A. I was the manager of the Richland Operations Office for the Department of Energy in Richland, Washington.
Q. So I'm going to get my dates mixed up. When did you start with the Chem Nuclear position?
A. August 1991 -- 1990. I'm sorry. August 1990.
Q. And when did you become manager of the DOE Richland operations office?
A. June 1984.
Q. What did you do as manager of Richland operations office?
A. I was responsible for all the operations and programs associated with the Hanford site.
Q. Did any of those programs have a relationship to RW?
A. Yes.
Q. Which ones?

4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

YANKEE ATOMIC ELECTRIC )
COMPANY, CONNECTICUT YANKEE ) Case Nos.:
ATOMIC POWER COMPANY, and MAINE ) 98-126C
YANKEE ATOMIC POWER COMPANY, ) 98-154C
Plaintiffs, ) 98-474C
v. )
THE UNITED STATES, )
Defendant. )

Courtroom Number 5

National Courts Building
717 Madison Place, N.W.
Washington, D.C.

Monday, August 2, 2004

VOLUME 15

The parties met, pursuant to the notice of the Judge, at 10:03 a.m.

BEFORE: THE HONORABLE JAMES F. MEROW



APPEARANCES:
ON BEHALF OF YANKEE ATOMIC ELECTRIC COMPANY, CONNECTICUT YANKEE ATOMIC POWER COMPANY and MAINE YANKEE ATOMIC POWER COMPANY:
JERRY STOUCK, ESQ.
ROBERT SHAPIRO, ESQ.
CATHERINE R. BAUMER, ESQ.
PETER J. SKALABAN, JR., ESQ.
Spriggs & Hollingsworth
1350 I Street, N.W.
Washington, D.C. 20005
(202) 898-5800

ON BEHALF OF YANKEE ATOMIC ELECTRIC COMPANY and CONNECTICUT YANKEE ATOMIC POWER COMPANY
MERRILL J. ATKINS, ESQ.
Assisting General Counsel
19 Midstate Drive
Auburn, Massachusetts 01560
(508) 721-3042



APPEARANCES CONTINUED:

ON BEHALF OF MAINE YANKEE ATOMIC POWER COMPANY:
JOSEPH D. FAY, ESQ.
General Counsel
Maine Yankee
321 Old Ferry Road
Wiscasset, Maine 04578
(207) 882-5603

ON BEHALF OF THE DEFENDANT:
HAROLD LESTER, JR., ESQ.
JOHN EKMAN, ESQ.
MARIAN E. SULLIVAN, ESQ.
HEIDE L. HERRMANN, ESQ.
R. ALAN MILLER, ESQ.
KEVIN B. CRAWFORD, ESQ.
RUSSELL SHULTIS, ESQ.
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-7562

** Index appears at the end of transcript **



P R O C E E D I N G S
MR. STOUCK: Your Honor.
THE COURT: Yes.
MR. STOUCK: Good morning.
THE COURT: Good morning.
MR. STOUCK: I believe I owe the Court and Mr. Lester a response on whether our case is done. It was left sort of dangling on Thursday. And I would like to address that if I may.
THE COURT: Sure.
MR. STOUCK: Okay. And, frankly, it provides an opportunity, I think, to address in a more comprehensive way -- I think we have this 1726 question.
THE COURT: Oh, fine.
MR. STOUCK: And I would like to do that. It's come up most days but it's been a little piecemeal. I want to make sure we've not been whipsawed, on the one hand under a pretrial process that encourages dealing with a lot of details out of court, and then we get to court and then we are told that we really need to have more witnesses here.
So if I could just address our position on this --
THE COURT: Sure.

5

the defense appropriation, and you're going to have to come up with the other 749 million. And right now my understanding is that there are discussions at very senior levels within the Office of Management and Budget and Congress in order to try to address this. But the simple answer to your question, and I didn't mean to go on, is we do not have direct access to that fund. It has to be appropriated by Congress. And the industry over the years has made several attempts to try to get the waste fund used for its original purposes. And that legislation up until this point has not been passed.

THE COURT: Okay. Anything further?

MS. SULLIVAN: Nothing further, Your Honor. Thank you.

THE COURT: Okay. You're excused. And thank you very much for your testimony.

MR. MILLER: Your Honor, our next witness will be Mr. Robert Morgan.

THE COURT: Okay.

Whereupon,

ROBERT L. MORGAN

was called as a witness, and, having first been duly sworn, was examined and testified as follows:



DIRECT EXAMINATION

BY MR. MILLER:

Q Good afternoon, Mr. Morgan. Would you state your full name for the record, please, sir.

A Robert L. Morgan.

Q And you are a former director of what started out to be the Nuclear Waste Policy Act project office, and what during your tenure became the Office of Civilian Radioactive Waste Management; is that correct?

A Yes. That's correct.

Q As we're talking here today, Mr. Morgan, you have to try to remember to let me finish my question before you answer so the court reporter doesn't have to try to decide which one of us she wants to reflect in the record. Do you think you can do that, sir?

A Yes.

Q All right. Thank you.

THE COURT: You can ask him questions, too.

MR. MILLER: I beg your pardon, Your Honor.

THE COURT: Go ahead. Off-the-record comments here.

BY MR. MILLER:

Q Mr. Morgan, I would like before we begin your substantive testimony to ask you just a few



questions about your educational background and your work experience.

So I'll ask you first, sir, if you graduated from the United States Military Academy in 1952?

A Yes.

Q And what degree did you obtain when you graduated?

A It's a bachelor of science in military engineering.

Q Okay. And at that time, you were commissioned as a second lieutenant in the United States Army?

A Yes. In the United States Army Corps of Engineers.

Q Okay. And if you will, please, sir, if you could just summarize for the Court what your subsequent assignments in the Army were.

A After graduation, there was an interim assignment of about 2-1/2 months in Fort Lewis, Washington on my way to Korea. I served with the 25th infantry division in Korea. After the war ended, I transferred to Japan. From Japan, I went to Fort Bragg with the 82nd airborne division. And after 2 years there, the Army selected me to go to MIT. I spent 2 years there and received a



master of science in civil engineering and a master of science in nuclear engineering. Subsequent to that, I went to Idaho Falls, Idaho, assigned to the U.S. – to the Atomic Energy Commission. Following that, I went to an advanced course at Fort Belvoir. Then to Indonesia as a special assistant to the ambassador for civic action. After my return from there, I resigned my commission from the military and joined the Atomic Energy Commission in 1965. Initially assigned for a year in Savannah River. I transferred to Southern California for reactor development. Spent 7 years there. I was selected as the deputy manager at Savannah River. I spent 7 years as deputy manager and then 8 years as manager before I retired from DOE at that time.

Q Okay, sir. And you retired from DOE in what year?

A 1988.

Q Okay, sir. Your assignment to the – to Idaho Falls – and I believe you mentioned that you were working with the Atomic Energy Commission at that time?

A That's correct.

Q And what was – what did that assignment

6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - -x

YANKEE ATOMIC ELECTRIC COMPANY :
(98-126C)(Merow, S.J.) :
CONNECTICUT YANKEE ATOMIC POWER COMPANY :
(98-154C)(Merow, S.J.) :
FLORIDA POWER & LIGHT COMPANY :
(98-483C)(Wilson, J.) :
NORTHERN STATES POWER COMPANY :
(98-484C)(Wiese,J.) :
DUKE POWER, A Division of :
DUKE ENERGY CORP. :
(98-485C)(Sypolt,J.) :
INDIANA MICHIGAN POWER COMPANY :
(98-486C)(Hodges, J.) :
SACRAMENTO MUNICIPAL UTILITY DISTRICT :
(98-488C)(Yock, S.J.) :
SOUTHERN NUCLEAR OPERATING COMPANY, :
et al. :
(98-488C)(Yock, S.J.) :
COMMONWEALTH EDISON COMPANY :
(98-621C)(Hewitt, J.) :
BOSTON EDISON COMPANY :
(99-447C)(Allegra, J.) :
GPU NUCLEAR, INCORPORATED :

CERTIFIED COPY

7

(00-440C)(Bush, J.) :
WISCONSIN ELECTRIC POWER COMPANY :
(00-697C)(Merow, S.J.) :
POWER AUTHORITY OF THE STATE OF NEW YORK :
(00-703C)(Damich, J.) :
OMAHA PUBLIC POWER DISTRICT :
(01-115C)(Bush, J.) :
NEBRASKA PUBLIC POWER DISTRICT :
(01-116C)(Sypolt, J.) :
TENNESSEE VALLEY AUTHORITY :
(01-249C)(Bruggink, J.) :
Plaintiffs, :
v. :Discovery
THE UNITED STATES, :Judge:
Defendant. :(Judge
- - - - - - - - - - - - - - - - - - - - -xSypolt)

McLean, Virginia

Wednesday, March 13, 2002

Continued deposition of BILLY M. COLE, a witness, recalled for examination by counsel for Plaintiffs in the above-entitled matter, pursuant to notice, the witness being duly sworn by CATHERINE S. BOYD, a Notary Public in and for the Commonwealth of Virginia, taken at the offices of Shaw Pittman, LLP, 1650 Tysons

8

MR. MACDONALD: I think that's it for my questions.

MR. MILLER: I just have a couple.

EXAMINATION BY COUNSEL FOR THE DEFENDANT

BY MR. MILLER:

Q. Mr. Cole, you have never worked for DOE, have you?

A. No, other than just as a contractor.

Q. Right, but you have never been a DOE employee?

A. I have never been a DOE employee, no.

Q. So other than having voiced your opinion on the things that the people at DOE with whom you worked told you, you can't speak for DOE, can you?

A. No, I cannot.

Q. No further questions.

A. DOE always made it pretty clear to me. I mean it was just a understood rule as a contractor you don't speak for the department.

MR. MACDONALD: I think we would like to leave the deposition open pending some of the privilege and document issues.

MS. HEWITT: There is a lot, whole lot

9

CERTIFICATE OF FILING

I hereby certify that on this 9th day of September 2006, a copy of foregoing "DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S 'NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS' AND, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE RELIANCE UPON THOSE DESIGNATIONS AS SUBSTANTIVE EVIDENCE PURSUANT TO RCFC 32(a) AND FEDERAL RULE OF EVIDENCE 801(d)(2)" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Harold D. Lester, Jr.