IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SYSTEM FUELS, INC., on its own behalf and as agent for SYSTEM ENERGY RESOURCES, INC. and SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION, | ) | |
| Plaintiff, | ) | No. 03-2624C |
| | ) | (Judge Braden) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S "NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS" AND, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE RELIANCE UPON THOSE DESIGNATIONS AS SUBSTANTIVE EVIDENCE PURSUANT TO RCFC 32(a) AND FEDERAL RULE OF EVIDENCE 801(d)(2)

Defendant, the United States, respectfully files this reply to the response that plaintiff, System Fuels Inc. ("SFI"), filed on September 25, 2006, to defendant's motion to strike SFI's "notice of deposition and trial testimony designations," or, in the alternative, motion in limine to preclude reliance upon those designations as substantive evidence, pursuant to Rule 32 (a) of the Rules of the Court of Federal Claims ("RCFC") and Federal Rule of Evidence ("FRE") 801(d)(2). In its response, SFI has failed to establish that the designated testimony may be admitted pursuant to FRE 801(d)(2)(C) and (D). Moreover, SFI has failed to show good cause as to why the record should be burdened with the designation of deposition testimony, particularly of witnesses scheduled to testify. Finally, SFI's complaints about the nature of the Government's objections to the testimony designated and the scope of the Government's counter-designations are without merit.

## DISCUSSION

### I. SFI CANNOT ESTABLISH AN INDEPENDENT BASIS FOR THE ADMISSION OF THE DESIGNATED TESTIMONY PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)

#### A. SFI Cannot Establish That Messrs. Morgan And Lawrence Are 'Agents' Of The Government As Is Necessary To Allow The Admission Of Their Deposition Testimony Pursuant To FRE 801(d)(2)(C)

In our original motion, we moved to strike the designated testimony of Messrs. Bartlett, Cole, Lawrence, and Morgan because none of these individuals were employed by the Department of Energy ("DOE") at the time of their testimony, a requirement for the admission of a statement as the admission of a party opponent, pursuant to FRE 801(d)(2)(D).[1] In its response, SFI asserts that it seeks the admission of the testimony of Messrs. Lawrence and Morgan pursuant to FRE 801(d)(2)(C), because Messrs. Lawrence and Morgan were "agents" of the Government and were authorized to make statements on behalf of the Government regarding "the creation of the Standard Contract." Response at 6. SFI cannot establish that Messrs. Lawrence or Morgan were "agents" of the Federal Government at the time of their testimony and, thus, has not provided the Court with a basis for the admission of this testimony.

FRE 801(d)(2)(C) allows the admission of testimony that is a "statement offered against a party and . . . a statement by a person authorized by the party to make a statement concerning the subject." For testimony to be admitted pursuant to this rule, the Court must find that the witness is an agent of the party against whom the statement is offered and authorized to speak upon

[1] In its response, SFI acknowledges that Mr. Bartlett's testimony is inadmissible because Mr. Bartlett was testifying, in part, as an expert witness for another spent nuclear fuel plaintiff and withdraws its designation of Mr. Bartlett's testimony. Response at 1 n.1. SFI's contentions regarding Mr. Cole's testimony will be discussed in a subsequent section.

behalf of that party on the subject of the testimony. Kirk v. Raymark Indus., Inc., 61 F.3d 147, 164 (3d Cir. 1995). To establish that an individual or entity is acting as an agent, the Court must find the following facts: "manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." Restatement (Second) of Agency § 1 cmt. a (1958). Courts have found that an agent-principal relationship is established, for example, when an individual is employed by the party to investigate an accident that later becomes the subject of litigation. See, e.g., Theriot v. J. Ray McDermott & Co., Inc., 742 F.2d 877, 882 (5th Cir. 1984) (report regarding accident prepared by foreman, whose duties included investigating accidents, admitted as statements of an agent); Collins v. Wayne Corp., 621 F.2d 777, 781-82 (5th Cir. 1980) (report and deposition testimony of investigator of accident hired by party should have been admitted pursuant to FRE 801(d)(2)(C)). However, if the individual or entity has not agreed to be subject to the party opponent's control with regard to testimony offered, that individual cannot be deemed an agent of the party opponent. See Kirk, 61 F.3d at 164 (party cannot establish agent relationship with an expert witness so that prior testimony of expert becomes an admission of that party).

SFI cannot provide the necessary elements to establish that Messrs. Morgan and Lawrence are "agents" of the Federal Government. The only evidence of "agency" that SFI provides is the fact that the Government listed both Messrs. Lawrence and Morgan, among others, as individuals who may have knowledge about contract formation activities. Response, Exhibit D. Presumably because the Government identified Messrs. Lawrence and Morgan as individuals possibly having knowledge, counsel for SFI sought to take their depositions on these

matters. However, these interrogatory responses and the fact that Messrs. Lawrence and Morgan sat for depositions do not establish that Messrs. Lawrence and Morgan were "agents" of the Government at the time of their depositions. Specifically, there is no evidence that the Government asked Messrs. Lawrence or Morgan to speak upon behalf of the Government regarding these activities, that Messrs. Lawrence or Morgan agreed to speak upon behalf of the Government, or that the Government was "in control" of the testimony that Messrs. Lawrence and Morgan provided. Moreover, any argument that the Government's identification of Messrs. Lawrence and Morgan, who were third parties at the time, in response to interrogatories to create an agent-principal relationship with the Government changes the very nature of discovery requests from a vehicle for learning the facts underlying a party's claims to a tool to be used against a party in the prosecution of a case. In fact, in response to several inquiries from spent nuclear fuel ("SNF") plaintiffs regarding persons with knowledge in these cases, the Government has been required to identify some nuclear utility employees. Under SFI's theory, statements by those employees of the plaintiffs would become admissions of the United States, contrary to established law.

Assuming for the sake of argument that these interrogatory responses could establish that Messrs. Lawrence and Morgan were the Government's "agents," Messrs. Lawrence and Morgan were only "authorized" to speak to these contract formation activities that were the subject of the interrogatories. However, SFI seeks the admission of testimony from these individuals that goes beyond their involvement in contract formation activities. See, e.g., Lawrence Dep. May 21, 2002, 301:20-305:4 (testimony about congressional testimony given in 1984, after contracts were signed); Morgan Dep. Mar. 21, 2002, 38:5-44:4 (testimony about presentation to industry

meeting in December 1983). Absent evidence that establishes agency, SFI has no basis for the admission of this deposition testimony pursuant to FRE 801(d)(2)(C).

The Government, recognizing Mr. Morgan's age and the burden to Mr. Morgan of participation in further trials before this Court, proposed that SFI and the Government be allowed to designate portions of Mr. Morgan's existing record of trial and deposition testimony, pursuant to RCFC 32(a). SFI opposes this suggestion because it was not a party to the trials from which the Government seeks to designate Mr. Morgan's testimony.[2] Response at 7. However, unless the Court deems Mr. Morgan unavailable to testify due to age and inconvenience, SFI has no basis for the admission of the testimony that it seeks to designate from Mr. Morgan. SFI will be left without this testimony because its case-in-chief has now closed.

### B. Mr. Cole, As A Contractor, Is Not Employed By DOE For The Purposes Of The Admission Of His Prior Testimony Pursuant To FRE 801(d)(2)(D)

The Government also opposes the admission of Mr. Cole's testimony, pursuant to FRE 801(d)(2)(D), because Mr. Cole has never been employed by DOE. In response, SFI admits that it must show that there exists "an agency or servant relationship between the party-opponent and

---

[2] SFI also opposes this suggestion because RCFC 32(a) provides for the admission of deposition testimony, rather than the trial testimony that the Government has counter-designated. Response at 7. RCFC 32(a) provides the only basis for the admission of Mr. Morgan's deposition testimony that SFI seeks to admit as part of its case-in-chief. Pursuant to RCFC 32(a)(4) and FRE 106, the Government seeks to counter-designate Mr. Morgan's trial testimony to provide the Court with a complete record of Mr. Morgan's testimony on the subjects that SFI has designated testimony. Pacific Gas & Electric Co. v. United States, Nos. 04-0074 & -0075C, 2006 WL 2925649, at * 109 (citations omitted) ("The rule of completeness is nothing more nor less than what it says plainly on its face: that when evidence is introduced by one party, a court is required to admit evidence introduced by the adverse party when that evidence is necessary to give an accurate portrayal of the first party's proffered evidence."). Moreover, if the Court allows the designation of previous trial testimony, Mr. Morgan will be saved the further burden of traveling to Washington D.C. to testify in yet another trial. RCFC 1.

the declarant," but asserts that such a relationship is established by Mr. Cole's employment by one of the contractors to the Office of Civilian Radioactive Waste Management ("OCRWM"). SFI's arguments are unpersuasive.

Although the United States Court of Appeals for the Federal Circuit has found that "an agency relationship can be created by contract," it has determined that "not all contracts create agency relationships and not all conduct creates agency relationships." Rotec Indus. v. Mitsubishi Corp., 215 F.3d 1246, 1256 (Fed. Cir. 2000) (quoting Chemtool, Inc. v. Lubrication Techs., Inc., 148 F.3d 742, 745 (7th Cir. 1998)). The focus in determining whether the relationship between contracting parties creates an agency relationship "focuse[s] on contract provisions [and] not day-to-day Government involvement in the performance of the subcontract." Lockheed Martin Corp. v. United States, 50 Fed. Cl. 550, 558-59 (2001) (involving M&O contractor) (citing United States v. Johnson Controls, Inc., 713 F.3d 1541, 1551 (Fed. Cir. 1983)), aff'd, 48 Fed. Appx. 752 (Fed. Cir. 2002). Specifically, the test for determining agency "requires an interpretation of the contract" and findings that "(1) the prime [M&O] contractor was acting as a purchasing agent for the Government; (2) the agency relationship between the Government and the prime contractor was established by clear contractual consent; and (3) the contract stated that the Government would be directly liable to the vendors for the purchase price." Lockheed, 50 Fed. Cl. at 562.

Extensive trial testimony and deposition testimony from prior spent nuclear fuel ("SNF") cases specifically establishes that contractors for the Department of Energy ("DOE") do not operate as part of DOE and that statements by individuals employed by those contractors should not be considered admissions by the Government. For example, Mr. Lake Barrett, Deputy

Director, OCRWM, testified that Pacific Northwest Laboratory ("PNL") was a contractor and that DOE used PNL to provide nothing more than advice, not to make policy decisions:

> Q What is Pacific Northwest Laboratory?
>
> A It's a contractor in Richland, Washington.
>
> Q Were those contractors relied on often by the Department of Energy in connection with the development, design, and construction of the waste management system?
>
> MS. HERRMANN: Objection. Vague.
>
> A We use them as advisors and analysts for the waste management system.
>
> * * *
>
> Q Did you ever rely on the work of Pacific Northwest Laboratory?
>
> MS. HERRMANN: Objection. Vague.
>
> A I used it as input.
>
> Q For what purposes?
>
> A For advice on systems analysis.

A. 3-4, Barrett Dep., May 10, 2002, 1150:3-1151:4.[3] Similarly, Mr. Ronald Milner, Chief Operating Officer of OCRWM, testified that contractor documents do not present the positions of DOE:

> A. . . . In any event this is a contractor report which would never relate to a position the Department took, simply input data to it.
>
> Q. You say it would never relate to a position?

[3] "A. __" refers to the appendix to this reply brief.

A. It would never reflect, I'm sorry; not relate, it would never reflect the Department's position, it would simply input data to it.

Q. The Department would have to subsequently take a separate position which might or might not approve or reflect what the contractor recommended?

A. The Department would take a position based on information from a number of sources including its contractor's input.

A. 7-8, Milner Dep., May 3, 2002, 443:19-444:8. Mr. Christopher A. Kouts, Director, Office Systems Analysis and Strategy Development of OCRWM, similarly testified that contractor documents do not speak for DOE:

Q. How does DOE regard these types of reports prepared by contractors?

A. They're essentially the view of the contractor, and unless the Department issues its won report under its own letterhead, with the DOE stamp, as well as a document number, that's not DOE position or DOE policy.

Court. Right. You're just getting advice?

A. Yes, that's correct.

Q. And in terms of, I think you said putting it on DOE letterhead or the equivalent of that, who makes that decision regarding a contractor report or study or document?

A. It's typically a DOE official, and that's routed through senior management, and a decision is made that that document is acceptable and will be issued under a DOE letterhead. Let me give you an example. For instance, when we went through the site recommendation process [for Yucca Mountain], we went through many, many drafts of documents that were related to the Secretary's recommendation. And those drafts were prepared by contractors, but it wasn't until the Department issued those final documents that became part of the site recommendation that we adopted and we accepted the language in those reports, and therefore, it was issued under a DOE identification number, and it was considered a DOE document.

A. 10, Trial Transcript in Tennessee Valley Authority v. United States, Mar. 29, 2005, 2110:25-2112:4 (Kouts).

SFI provides no evidence that DOE's contractors occupy an agent role or a servant relationship with DOE, choosing instead simply to rely upon the findings of other courts regarding the role of contractors at DOE. SFI cites to an unpublished decision in Yankee Atomic Electric Co. v. United States, No. 98-126C, 2004 WL 2450874 (Fed. Cl. Sept. 17, 2004) in which the Court admitted numerous contractor documents as exhibits over the Government's objection. However, the Court did not find that individual contractor employees could be deemed "agents" for the purposes of the admission of deposition testimony. SFI's reliance upon the decision in Westinghouse Electric Corp. v. United States, Nos. 93-445C & 93-446C, 1997 WL 1068204, at *2 (Fed. Cl. June 4, 1997), is similarly misplaced. That decision only describes the general character of an M&O contractor. It does not purport to identify an M&O contractor as an "agent" of the Federal Government. Given the significant evidence that DOE's contractors provide only input to OCRWM and that documents prepared by contractors do not constitute official DOE positions and SFI's inability to provide evidence to the contrary, the Court should reject SFI's attempt to attribute the statements of an individual contractor employee to DOE.

C. SFI Has Not Met Its Burden To Establish That The Testimony Designated For The DOE Employees Is Within The Scope Of Their Employment

In our motion to strike, we challenged SFI's designation of the testimony of Messrs. Brownstein and Trebules and Ms. Slater[4] because SFI had failed to establish that the testimony it

[4] The Government also objects to the admission of Mr. Kouts' testimony on this basis, but the Court need not reach this issue because Mr. Kouts will testify when the Government provides its case-in-chief, making the designation of any testimony by SFI an unnecessary burden upon the record. FRE 403.

had designated was within the scope of the employment for these witnesses. In response to this challenge, SFI has again provided the Court with the Government's responses to interrogatories propounded in the coordinated discovery proceedings in which the Government identified these individuals as "knowledgeable" about certain waste acceptance issues. Because SFI provides no further evidence, SFI has failed to meet its burden to establish the proper basis for the admission of this testimony pursuant to FRE 801(d)(2)(D).

As we noted in our motion, "there are two relevant requirements under Rule 801(d)(2)(D). First, [the designated individual's] deposition testimony must be an admission. Second, the statements must be made 'concerning a matter within the scope' of [the designated individual's] employment." Aliotta v. National R.R. Passenger Corp., 315 F.3d 756, 761 (3d Cir. 2003). Although a party certainly must identify the specific testimony that it wants to designate for inclusion in the trial record, "the burden of establishing admissibility, of course, is with the proponent of the evidence." Evans v. Port Auth. of N.Y. & N.J., 192 F. Supp. 2d 247, 263 n.121 (S.D.N.Y. 2002). The Court is the ultimate decision-maker regarding these two factors. See Aliotta, 315 F.3d at 761. Specifically, it is the burden of "the proffering party to lay a foundation to show that an otherwise excludable statement relates to a matter within the scope of the agent's employment," Sea-Land Serv., Inc. v. Lozen Int'l, Inc., 285 F.3d 808, 821 (9th Cir. 2001) (quoting Harris v. Itzhaki, 183 F.3d 1043, 1054 (9th Cir. 1999)), and constitutes an admission. "When a court is evaluating whether such a foundation has been established, '[t]he contents of the statement shall be considered but are not alone sufficient to establish . . . the agency or employment relationship and scope thereof.'" Id. (quoting Fed. R. Evid. 801(d)(2)).

In response to the Government's challenge, SFI attempts to establish the scope of these individuals' employment again by offering only the Government's responses to interrogatory responses regarding the knowledge that these individuals have concerning certain topics. SFI makes no attempt to provide the Court with the information that it needs regarding the scope of these witnesses' employment to determine whether the designated testimony is independently admissible pursuant to FRE 801(d)(2). SFI also proffers to the Court the findings of another judge on the Court with regard to the admissibility of "similar deposition testimony" from Mr. Brownstein and Ms. Slater. Response at 5 (citing Yankee Atomic Electric Co. v. United States, Fed. Cl. No. 98-126C (Sept. 25, 2004)). SFI has not identified the testimony that was at issue in Yankee Atomic or provided the Court with the evidence that established the admissibility of the testimony at issue in that case. Absent this evidence, the Court should not simply adopt the ruling in Yankee Atomic and make a general finding regarding the admissibility of the testimony that SFI has designated in this case.

With regard to Ms. Klein, SFI has designated one substantive portion of deposition testimony from Ms. Klein regarding the rates found in an unidentified document and the rate at which DOE planned to accept SNF after a five-year ramp-up period and the difference between the two rates. Klein Dep. Apr. 24, 2002, 151:6-20. If SFI seeks the admission of Ms. Klein's statement regarding the rate at which DOE was planning to accept SNF after a five-year ramp-up period, although irrelevant, we agree that this portion would fall within the scope of the topics upon which Ms. Klein was designated as a RCFC 30(b)(6) witness. However, SFI has provided no information regarding the scope of Ms. Klein's employment necessary for the admission of Ms. Klein's testimony about any historical documents or other matters that may be inferred from

the portion of the testimony designated and, therefore, provided the Court with no basis for the admission of other portions of this statement, pursuant to FRE 801(d)(2)(D).

II. SFI HAS NOT MADE THE PROPER SHOWING AS TO WHY DESIGNATED TESTIMONY SHOULD BE ALLOWED TO BURDEN THE RECORD, PARTICULARLY FOR WITNESSES WHO ARE SCHEDULED TO TESTIFY

As we demonstrated in our motion to strike, SFI has sought the admission of the testimony of 12 individuals from almost 40 days of deposition or trial, consisting of an entire notebook of additional transcript pages for the Court to consider. Response at 3-4. SFI has made no effort to show that any of the witnesses whose deposition testimony it has designated are unavailable to testify at trial. Moreover, the testimony is irrelevant, incomplete, and replete with objections, all of which need to be ruled upon before the Court considers its substance. Because SFI has failed to meet its burden to show why this testimony should be admitted, the Court should exclude it from the record.

In response to the Government's concerns, SFI merely asserts that it may seek admission of these depositions pursuant to FRE 801(d)(2) and need not show "good cause" for their admission, pursuant to paragraph 15(b) of Appendix A of the Court's rules. See RCFC, App. A, ¶ 15(b) ("Any party intending to present substantive evidence by way of deposition testimony . . . *shall show cause* why the deposition testimony should be admitted") (emphasis added)); see also Angelo v. Armstrong World Industrial, 11 F.3d 957, 963 (10th Cir. 1993) (proponent of using deposition testimony at trial bears the burden of proving that it is admissible in lieu of live testimony under Rule 32 of the Federal Rules of Civil Procedure). However, as demonstrated in our motion and in the discussion above, SFI cannot establish sufficient basis for the admission of

much of this testimony pursuant to FRE 801(d)(2). Therefore, absent a showing of "good cause," SFI is left with no basis for the admission of the testimony that it has designated.

Moreover, SFI's designation of a substantial amount of testimony ultimately seeks an "end run" around the Court's order regarding the length of trial. As the Court is aware, SFI required substantially all of the week that the Court allowed for the presentation of its case-in-chief – from September 18 through 22, 2006. Although SFI claimed in its notice of deposition designations that it sought to "reduce" its trial time by avoiding calling live witnesses, the wholesale designation of testimony from witnesses who were not called to testify represents an attempt to supplement that designated trial time. Further, particularly to the extent that the Government will have to address some of the out-of-context designated statements in these deposition designations with live witnesses, SFI's use of designations prejudices the Government by increasing the amount of live testimony that the Government will have to present.

The Government's concerns with the burden to the record are particularly acute with regard to the designation of testimony for Messrs. Kouts, Pollog, and Zabransky. All three of these individuals are scheduled to testify during the Government's case-in-chief, as they have in each of the spent nuclear fuel trials conducted to date.[5] If these individuals testify, as expected, SFI will have burdened the record with additional testimony that could have been elicited during

---

[5] Mr. Kouts was the only one of these three fact witnesses to testify at the trial in Indiana Michigan Co. v. United States, No. 98-486C, conducted in March 2004. Messrs. Pollog and Zabransky, as well as Mr. Kouts, have testified in all trials conducted since that time. Yankee Atomic Electric Co. v. United States, No. 98-126C (trial conducted July-August 2004); Sacramento Municipal Utility District v. United States, No. 98-488C (trial conducted March 2005); Tennessee Valley Authority v. United States, No. 01-115C (trial conducted June 2005); Southern Nuclear Operating Co., et. al, v. United States, No. 98-614C (trial conducted October 2005); and Pacific Gas & Electric Co. v. United States, Nos. 04-74C and -75C (trial conducted June 2006).

cross-examination. See Renda Marine, Inc. v. United States, 66 Fed. Cl. 639, 645 (2005) (citing United States v. Int'l Bus. Machs. Corp., 90 F.R.D. 377, 382 (S.D.N.Y. 1981)) (disregarding designated deposition testimony of witnesses who testified at trial); Sacramento Municipal Utility Dist. v. United States, No. 98-488C, order, at 2 (Fed. Cl. March 16, 2005) (unpublished) (denying motion to designate prior testimony of witnesses who were to testify at trial); see also Pacific Gas & Electric Co. v. United States, Nos. 04-0074 & -0074 C, 2006 WL 2925649, at *108 (court struck deposition designations not relied upon by parties in post-trial briefing to avoid burdening the record, pursuant to FRE 403). While SFI should not be allowed to designate testimony from witnesses who will testify at trial, to the extent that the Court allows it, we ask that SFI be barred from cross-examining these witnesses upon the topics that are the subject of SFI's designations.

## III. CONTRARY TO SFI'S CONCERNS, THE GOVERNMENT HAS PROPERLY LODGED OBJECTIONS TO THE TESTIMONY DESIGNATED AND SOUGHT TO COMPLETE THOSE DEPOSITION DESIGNATIONS WITH ITS COUNTER-DESIGNATIONS

If the Court allows the testimony that SFI has designated to become part of the record in this case, the Government respectfully requests that the Court first rule upon the objections to that testimony indicated in the portions of the testimony designated. RCFC 32(b). Thereafter, and to the extent that the Court admits any designated testimony, the Government requests that the Court consider the Government's counter-designations from these same depositions. FRE 106.

In its response, SFI objects to the Government's objections, asserting generally that they go beyond those that the Government is allowed to raise, pursuant to RCFC 32(d)(3). Response at 9-10. However, pursuant to RCFC 32(b), the Government may object "at the trial or hearing

to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying." The Government has asserted proper objections to the testimony that SFI has designated, including objections to the foundation of the testimony and the fact that much of the testimony concerns documents which SFI claims are already in the record.

SFI also objects generally to the purported scope of the Government's counter-designations and attempts to limit the permissible scope of counter-designations to those necessary "to complete a particular statement or portion of a transcript." See Response at 11. FRE 106 provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." RCFC 32(a)(4) ("If only part of a deposition is offered in evidence by a party, an adverse party may require the offeror to introduce any other part which ought in fairness be considered with the part introduced, any party may introduce any other parts.") (emphasis added). Portions of a statement or writing must be admitted if it is necessary to explain the admitted portion, place the admitted portion in context, avoid misleading the trier of fact, or ensure a fair and impartial understanding of the admitted portion. United States v. Sweiss, 814 F.2d 1208, 1211-12 (7th Cir. 1987); United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982). Each of the Government's counter-designations properly fits within this rule.

SFI also asserts that the Government is not allowed to counter-designate testimony from depositions or trial testimony from which SFI has not designated testimony and provides a list of several days of deposition from which the Government has counter-designated testimony, but

SFI did not designate testimony. Response at 11. However, most of the depositions from which SFI has designated testimony were depositions lasting several days. With the exception of the trial testimony designated for Mr. Morgan, the Government has only counter-designated from depositions that SFI has designated testimony, albeit from different days, and SFI's concern is unfounded.[6]

CONCLUSION

For the foregoing reasons and the reasons stated in our motion to strike, we respectfully request that the Court deny the admission of the deposition and trial testimony that SFI has designated or, in the alternative, that the Court rule upon the objections and admit the Government's counter-designations.

---

[6] Mr. Barrett's May 8, 2002 deposition was a continuation for Mr. Barrett's deposition in the coordinated discovery proceedings which stretched over seven days. SFI has designated testimony from four of the seven days, including testimony from May 10, 2002. The Government properly may designate testimony from another day of this continuing deposition. Mr. Brownstein's deposition on May 23, 2002, was the first day of two days of deposition conducted in Yankee Atomic Electric Co. v. United States, No. 98-126C. SFI designated testimony from the second day of Mr. Brownstein's deposition, June 14, 2002. Mr. Cole's March 13, 2002 deposition was a continuation of his deposition that began on March 12, 2002, from which SFI has designated testimony. Ms. Klein's April 25, 2002 deposition was a continuation of her deposition that began on April 24, 2002, from which SFI has designated testimony. Contrary to SFI's assertion, it designated testimony from Mr. Milner's May 3, 2002 deposition (SFI's notice appears to contain a typographical error). Mr. Pollog's April 12, 2002 deposition was a continuation of his deposition that began on April 11, 2002, from which SFI has designated testimony. Ms. Slater's April 21, 1999 deposition is the first day of a two-day deposition conducted in Yankee Atomic. SFI designated testimony from the second day of this deposition, April 22, 1999. Finally, contrary to SFI's assertion, it designated testimony from Mr. Trebules' April 18, 2002 deposition in Yankee Atomic.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Sharon A. Snyder
SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 616-0347
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

MARIAN E. SULLIVAN
JOHN C. EKMAN
SCOTT E. DAMELIN
STEPHEN FINN
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

October 18, 2006

# APPENDIX

INDEX TO THE APPENDIX


| Document | Page |
| --- | --- |
| Excerpt of Deposition of Mr. Lake Barrett, May 10, 2002 | 1 |
| Excerpt of Deposition of Mr. Ronald Milner, May 3, 2002 | 5 |
| Excerpt of Trial Transcript in Tennessee Valley Authority v. United States, Mar. 29, 2005 | 9 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

COPY

- - - - - - - - - - - - - - - - - - x

YANKEE ATOMIC ELECTRIC COMPANY; : Case Nos. 98-126C,
CONNECTICUT YANKEE ATOMIC POWER : 98-154C, 98-474C,
COMPANY; MAINE YANKEE ATOMIC : 98-483C, 98-484C,
POWER COMPANY; FLORIDA POWER & : 98-485C, 98-486C,
LIGHT COMPANY; NORTHERN STATES : 98-488C, 98-614C,
POWER COMPANY; DUKE POWER, a : 98-621C, 99-447C,
Division of DUKE ENERGY CORP.; : 00-440C, 00-695C,
INDIANA MICHIGAN POWER COMPANY; : 00-703C, 01-115C,
SACRAMENTO MUNICIPAL UTILITY : 01-116C, 01-249C,

- - - - - - - - - - - - - - - - - - x

(Caption continued on the next page)

Continued Deposition of LAKE H. BARRETT

Washington, D. C.

Friday, May 10, 2002

8:06 a.m.

Job No.: 11792-11

Pages 1104 to 1437, Volume 5

Reported by: Diane Gomez, RPR

L.A.D. REPORTING COMPANY, INC.
1100 Connecticut Avenue, NW • Suite 1150, Washington, D.C. 20036 • 202.861.3410
Fax: 202.861.3425 • 800.292.4789 • Website: ladreporting.com • E-mail: lisa@ladreporting.com
NATIONWIDE COURT REPORTERS AND VIDEOGRAPHERS

DISTRICT; SOUTHERN NUCLEAR :
OPERATING COMPANY, et al.; :
COMMONWEALTH EDISON COMPANY; :
BOSTON EDISON COMPANY; GPU :
NUCLEAR, INCORPORATED; WISCONSIN :
ELECTRIC POWER COMPANY; POWER :
AUTHORITY OF THE STATE OF NEW :
YORK; OMAHA PUBLIC POWER DISTRICT; :
NEBRASKA PUBLIC POWER DISTRICT; :
and TENNESSEE VALLEY AUTHORITY, :
Plaintiffs :
v. :
THE UNITED STATES, :
Defendant :
- - - - - - - - - - - - - - - - - - X

Laboratory?
A Yes.
Q What is Pacific Northwest Laboratory?
A It's a contractor in Richland, Washington.
Q Were those contractors relied on often by the Department of Energy in connection with the development, design, and construction of the waste management system?
MS. HERRMANN: Objection. Vague.
A We use them as advisors and analysts for the waste management system.
Q Do you continue to so use them through today?
A No.
Q Through when did you use them?
A Through the late eighties.
Q There's also another name at the top of the first page, H.D. Huber, H-u-b-e-r. Do you know that individual?
A No.
Q Did you ever rely on the work of Pacific Northwest Laboratory?

MS. HERRMANN: Objection. Vague.
A I used it as input.
Q For what purposes?
A For advice on systems analysis.
Q Did you ever personally assign work out to be performed by Pacific Northwest Laboratory?
A I don't remember me personally, but my staff did.
Q Did you authorize your staff to assign work out to Pacific Northwest Laboratory?
A Yes.
Q I take it then you considered the work of Pacific Northwest Laboratory to be competent?
A Yes.
Q I turn your attention to page Bates number PA-221972. It's the second page of the document. Actually, returning to the first page, do you see the buck slip on the first page? It says, '91 HLRWM conference papers, volume two, "high priority."
A I see it.
Q Is that your writing?
A No.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
- - - - - - - - - - - - - - - - - - - - - - - - x
YANKEE ATOMIC ELECTRIC COMPANY, :
(98-126C) :
CONNECTICUT YANKEE ATOMIC POWER COMPANY :
(98-154C) :
MAINE YANKEE ATOMIC POWER COMPANY :
(98-474C) :
FLORIDA POWER & LIGHT COMPANY :
(98-483C) :
NORTHERN STATES POWER COMPANY :
(98-484C) :
DUKE POWER, A Division of DUKE :
ENERGY CORP. (98-485C) :
INDIANA MICHIGAN POWER COMPANY :
(98-486C) :
SACRAMENTO MUNICIPAL UTILITY DISTRICT :
(98-488C) :
SOUTHERN NUCLEAR OPERATING COMPANY, :
et al., (98-614C) :
COMMONWEALTH EDISON COMPANY :
(98-621C) :
BOSTON EDISON COMPANY :
(99-447C) :
GPU NUCLEAR, INCORPORATED :
(00-440C) :
WISCONSIN ELECTRIC POWER COMPANY, :
(00-697C) :
POWER AUTHORITY OF THE STATE OF :
NEW YORK (00-703C) :
OMAHA PUBLIC POWER DISTRICT :
(01-115C) :
NEBRASKA PUBLIC POWER DISTRICT :
(01-116C) :
TENNESSEE VALLEY AUTHORITY :
(01-249C) :
Plaintiffs, :
v. :
UNITED STATES OF AMERICA, :
Defendant. :
- - - - - - - - - - - - - - - - - - - - - - - - x

Washington, D.C.
Friday, May 3, 2002

Continued Deposition of RONALD MILNER, a witness herein, called for examination by counsel for

Certified Copy

Plaintiffs in the above-entitled matter, pursuant to notice, the witness being previously duly sworn by CATHERINE S. BOYD, Notary Public in and for the Commonwealth of Virginia, taken at the offices of Shaw Pittman, 1650 Tysons Boulevard, McLean, Virginia, at 9:15 a.m., Friday, May 3, 2002, and the proceedings being taken down by Stenotype by CYNTHIA R. SIMMONS, RMR, CRR, and transcribed under her direction.

consider?

A. I recall maintaining a list of approved DCS's and looking at that list versus utilities which we might be aware were running out of pool space which had a lower priority ranking than another which had sufficient pool space.

And, you know, the potential of in essence brokering something between the two utilities.

Q. And do you recall any consideration of developing a computerized system for providing information among utilities on approved DCSes?

A. I do now reading this.

Q. But you don't have any independent recollection beyond this document?

A. No, I don't.

Q. If I could turn you to the first page of the attached draft report. Do you know whether this report was ever finalized?

A. I don't recall whether it was or not. In any event this is a contractor report which would never relate to a position the Department took, simply input data to it.

Q. You say it would never relate to a position?

A. It would never reflect, I'm sorry; not

relate, it would never reflect the Department's position, it would simply input data to it.

Q. The Department would have to subsequently take a separate position which might or might not approve or reflect what the contractor recommended?

A. The Department would take a position based on information from a number of sources including its contractor's input.

Q. I see the last sentence of the second paragraph on this page states that, the next to the last sentence, "Based on the preliminary evaluations of the cost, complexity, maintenance requirements, and the accuracy and timeliness of the information provided through these various options, the Department has decided to develop a PC-based electronic bulletin board system, the DCS exchange network."

A. I'm sorry; what paragraph are you reading from?

Q. The second paragraph under introduction, sir.

A. Okay.

Q. The next to the last sentence. You see it states that the Department has decided to develop a PC-based electronic bulletin board system?

Page 1826

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
-------------------------------x
SACRAMENTO MUNICIPAL UTILITY :
DISTRICT. :
:NO. 98-488C
Plaintiff :
vs. :
UNITED STATES. :
Defendant. :
------------------------------- :
Courtroom 5
National Courts Building
715 Madison Place
Washington. D.C.

Tuesday. March 29. 2005

VOLUME 7

The parties met. pursuant to the notice of the Judge at 9:00 a.m.

BEFORE THE HONORABLE SUSAN G. BRADEN

Page 1827

APPEARANCES:
ON BEHALF OF PLAINTIFF:
DAVID S. NESLIN. ESQ.
TIMOTHY R. MACDONALD. ESQ.
Arnold & Porter LLP
370 Seventeenth Street
Suite 4500
Denver. Colorado 80202-1370
(303) 863-2301

HOWARD N. CAYNE. ESQ.
Arnold & Porter LLP
555 Twelfth Street. N.W.
Washington. D.C. 20004-1206
(202) 942-5656

Page 1828

APPEARANCES (Continued:)

ON BEHALF OF THE DEFENDANT:
ALAN J. LO RE. ESQ.
JOSHUA E. GARDNER. ESQ.
TODD J. COCHRAN. ESQ.
SCOTT DAMELIN. ESQ.
RUSSELL SHULTIS. ESQ.
ELIZABETH THOMAS. ESQ..
U.S. Department of Justice
1100 L Street. N.W.
Washington. D.C. 20036

ALSO PRESENT:
STEVEN M. COHN. ESQ.
STEVE J. REDEKER
THOMAS POLLOG

***Index appears at end of transcript***

Page 1829

P R O C E E D I N G S
- - - - -
THE COURT: Let's go.
Whereupon--
DAVID ZABRANSKY
a witness. called for examination. having previously been duly sworn. was examined and testified further as follows:
CROSS-EXAMINATION (Resumed)
BY MR. CAYNE:
Q. Good morning. Mr. Zabransky.
A. Good morning.
Q. I'd like to turn your attention to Plaintiff's Exhibit 121. I believe that will be in the first binder. one out of three. Do you have that document before you. sir?
A. Yes. I see it.
Q. And is this document a memorandum from you to -- was this a memorandum from you. sir?
A. It's an e-mail from me to Mr. -- I believe it's Auke Piersma.
Q. And who is that person?
A. Mr. Piersma used to be with a group called Public Citizen.
Q. And there's also a CC?
A. Yes.

Page 2110

one entity. So essentially, the vast majority of contracting that the program does in order to conduct its activities, both at the repository, through the transportation, the waste acceptance area, for instance, and other areas, systems area, for instance, that I manage, are also done by Bechtel SAIC Corporation, with the help of subcontractors.

Q. Now, in terms of your job, how do you use the contractors that you reference, both the M&O and subcontractors?

A. Well, we have an annual task statement with them under which they do individual studies for us, and when there are specific guidance that we want to give them about a specific report, we will issue a technical direction letter asking them to conduct a certain study for us, and then they provide those studies, and we review them, provide comments, and that's essentially their role.

Q. Are those considered deliverables under this contract?

A. Yes, they are.

Q. Now, how does DOE – I assume, are these written products that you're referencing as studies?

A. That's correct.

Q. How does DOE regard these types of reports

Page 2111

prepared by contractors?

A. They're essentially the view of the contractor, and unless the Department issues its own report under its own letterhead, with the DOE stamp, as well as a document number, that's not DOE position or DOE policy.

THE COURT: Right. You're just getting advice?

THE WITNESS: Right, that's correct.

BY MR. DAMELIN:

Q. And in terms of, I think you said putting it on DOE letterhead or the equivalent of that, who makes that decision regarding a contractor report or study or document?

A. It's typically a DOE official, and that's routed through our senior management, and a decision is made that that document is acceptable and will be issued under a DOE letterhead. Let me give you an example. For instance, when we went through the site recommendation process, we went through many, many drafts of documents that were related to the Secretary's recommendation. And those drafts were prepared by contractors, but it wasn't until the Department issued those final documents that became part of the

Page 2112

site recommendation that we adopted and we accepted the language in those reports, and therefore, it was issued under a DOE identification number, and it was considered a DOE document.

Q. Within OCRWM, who is responsible for setting policy regarding the Civilian Radioactive Waste Management Program?

A. It's the director of the program.

Q. Now, your description of, I guess, the type of approval needed for – or that you view for contractor reports or documents, would that also apply to verbal statements by contractors?

A. Verbal statements by contractors have no binding influence on the department. It's just their views of the world as they see it.

Q. Now, Mr. Kouts, you had mentioned, I believe, in your description of your background, the first position or job that you had within OCRWM related to an MRS proposal to Congress. Can you describe for the Court what your job entailed in that position?

A. Okay. Section 141 of the Nuclear Waste Policy Act basically requested the Department submit a proposal on monitored retrievable storage to the Congress for its consideration, so when I joined the

Page 2113

program, there was a small MRS team that was tasked with putting together that proposal. And that's – my specific responsibilities had to do with the needs and feasibility analysis of the, of the MRS, which was contained in volume two of the proposal. That volume two was an environmental assessment, which was also required by Congress, the needs and feasibility analysis, which was also required by Congress, and a program plan, which was volume three of that. So those were basically my responsibilities. I worked as a member of that team.

Q. And was that team part, or included as part of OCRWM?

A. Yes, it was a small group that worked for an office director within OCRWM at that time.

Q. And just so I'm clear, the Section 141 you reference, that was to the Nuclear Waste Policy Act?

A. That's correct.

Q. Now, as part of this team that you mentioned you were working on, what steps did DOE take to address the MRS provision of the Nuclear Waste Policy Act?

A. Well, the, the, there was fairly specific guidance given in Section 141. They requested a combination of at least five facilities and the – or

CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 18th day of October, 2006, a copy of foregoing "DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S "NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS" AND, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE RELIANCE UPON THOSE DESIGNATIONS AS SUBSTANTIVE EVIDENCE PURSUANT TO RCFC 32(a) AND FEDERAL RULE OF EVIDENCE 801(d)(2)," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Marian E. Sullivan