STATE OF MISSISSIPPI

COUNTY OF HINDS

Personally appeared before me, a Notary Public in and for the jurisdiction aforesaid, the within named D. C. Lutken, who acknowledged that he is a Vice President of Middle South Energy, Inc., a corporation, and that in his capacity herein set forth he signed and delivered the foregoing instrument on the corporation's behalf as of the day and year therein mentioned, being duly authorized so to do.

GIVEN UNDER MY HAND AND OFFICIAL SEAL, this the ____ day of ________________, 1980.

______________________________
NOTARY PUBLIC

My Commission Expires:

__________________________

EXHIBIT "F"

SPECIAL WARRANTY DEED, CONVEYANCE
AND ADJUSTMENT AGREEMENT NO. _____

This Special Warranty Deed, Conveyance and Adjustment Agreement No. ___, dated as of _______________, 19___, between MIDDLE SOUTH ENERGY, INC., an Arkansas corporation (MSE), and SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION, a Mississippi corporation (SMEPA),

W I T N E S S E T H:

(All terms hereinafter used shall have the meanings ascribed to them in the Grand Gulf Nuclear Station - Joint Construction, Acquisition and Ownership Agreement between MSE and SMEPA, dated as of May 1, 1980, and recorded on ______________, 1980, in Book _____, at page _____, in the office of the Chancery Clerk of Claiborne County, Mississippi (Construction Agreement) which is incorporated herein by reference and made a part hereof).

WHEREAS, under the Construction Agreement, MSE is constructing Grand Gulf for itself and SMEPA, and

WHEREAS, under the Construction Agreement SMEPA has agreed to furnish the total Cost of Construction until such time as its total advances plus its AFUDC equals 10% of

the total Cost of Construction plus the total AFUDC of MSE and SMEPA, and

WHEREAS, Section 2.02 of the Construction Agreement contemplates that MSE and SMEPA will, on each Payment and Adjustment Date or at such other times as shall be mutually agreeable, (a) each transfer and convey by a Special Warranty Deed, Conveyance and Adjustment Agreement, undivided ownership interests in Grand Gulf, including the real property described herein, free and clear of all liens and mortgages, other than those expressly permitted by the terms of the Construction Agreement, so that, as of each Payment and Adjustment Date or at such other times as any Special Warranty Deed, Conveyance and Adjustment Agreement is entered into, MSE and SMEPA will each own, as tenants in common, the undivided ownership interest in Grand Gulf derived by application of the formula set forth in Section 2.02 of the Construction Agreement, and (b) by execution and delivery of a Special Warranty Deed, Conveyance and Adjustment Agreement confirm the adjustment to their respective undivided ownership interests in Grand Gulf as of each such Payment and Adjustment Date, and

WHEREAS, the parties wish to execute and deliver this Special Warranty Deed, Conveyance and Adjustment Agreement No. ___ for the purpose of carrying out the agreements hereinabove referred to,

NOW, THEREFORE, the parties hereto hereby agree that:

1. Pursuant to application of the following formulas it has been determined that SMEPA is entitled to own a ___% undivided ownership interest in Grand Gulf (excluding Nuclear Fuel) and that MSE is entitled to own a _____% undivided ownership interest in Grand Gulf (excluding Nuclear Fuel):

$$A = \frac{B + B^1 + C,}{D + B^1 + E,} \times 100\%, \quad \text{and} \quad A^1 = 100\% - A, \text{ where}$$

A = Undivided ownership interest entitlement of SMEPA, ___%.

$A^1$ = Undivided ownership interest entitlement of MSE, _______%.

B = Contribution of SMEPA to Cost of Construction to beginning of the month preceding the date hereof, $__________.

$B^1$ = Contribution of SMEPA to Cost of Construction during the month preceding the date hereof, $ ____________.

C = AFUDC of SMEPA with respect to B, $ __________.

D = Total contributions of MSE and SMEPA to Cost of Construction to the beginning of the month preceding the date hereof, $ _____________.

E = AFUDC of MSE and SMEPA with respect to D, $ _______________.

2. Pursuant to application of the foregoing formula on this Payment and Adjustment Date and in accordance with Section 2.02 of the Construction Agreement, SMEPA presently owns an equitable interest in or is entitled to

own, as the case may be, an undivided ownership interest in Grand Gulf (excluding Nuclear Fuel and the Easement previously conveyed to SMEPA by MSE in an Easement Agreement, dated as of _________ 1980, and recorded on __________, 1980, in Book ___, at page ___, in the office of the Chancery Clerk of Claiborne County, Mississippi) equal to ___% and MSE presently owns an equitable interest in or is entitled to own, as the case may be, an undivided ownership interest in Grand Gulf (excluding Nuclear Fuel and the Easement referred to above) equal to ___%.

3. In order to perfect in MSE an undivided ownership interest in Grand Gulf (excluding Nuclear Fuel and the Easement referred to above) equal to ____% and to perfect in SMEPA an undivided ownership interest in Grand Gulf (excluding Nuclear Fuel and the Easement referred to above) equal to ____%, it is necessary for MSE and SMEPA to transfer and convey and with regard to the real property described below to convey and warrant specially, to themselves and each other as tenants in common, and in consideration of MSE's and SMEPA's agreements contained in the Construction Agreement and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, MSE and SMEPA do hereby transfer, convey and warrant specially to MSE as a tenant in common a ____% undivided ownership interest in Grand Gulf (excluding Nuclear Fuel and the

Easement referred to above), including the real property described herein, and to SMEPA as a tenant in common a ____% undivided ownership interest in Grand Gulf (excluding Nuclear Fuel and the Easement referred to above), including the real property described herein. The real property referred to herein is more particularly described as follows:

(Description of Land)

4. MSE represents that SMEPA's undivided ownership interest obtained through any transfer and conveyance by MSE is free from the lien of the MSE Mortgage and any other liens and encumbrances relating to MSE, other than those permitted by Sections 2(ii) and 2 (iii) of the SMEPA Mortgage. SMEPA represents that MSE's undivided ownership interest obtained through any transfer and conveyance by SMEPA is free from the lien of the SMEPA Mortgage and any other liens and encumbrances relating to SMEPA, other than Excepted Encumbrances as such term is defined in the MSE Mortgage.

5. MSE and SMEPA hereby expressly waive and renounce for the useful life of Grand Gulf, for themselves, their successors, transferees, assigns and mortgagees, all rights as tenants in common in Grand Gulf to require partition

or division of Grand Gulf, except as expressly stated in the Construction Agreement.

6. This Special Warranty Deed, Conveyance and Adjustment Agreement is hereby made expressly subject to all applicable terms, conditions, exceptions, reservations, and covenants set forth in the Construction Agreement.

IN WITNESS WHEREOF, the undersigned parties hereto have duly executed this Agreement as of the date first above written.

MIDDLE SOUTH ENERGY, INC.

BY: ______________________________
VICE PRESIDENT

SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION

BY: ______________________________
PRESIDENT

STATE OF MISSISSIPPI

COUNTY OF HINDS

Personally appeared before me, a Notary Public in and for the jurisdiction aforesaid, the within named D. C. Lutken, who acknowledged that he is Vice President of Middle South Energy, Inc., a corporation, and that in his capacity herein set forth he signed and delivered the foregoing

instrument on the corporation's behalf as of the day and year therein mentioned, being duly authorized so to do.

GIVEN UNDER MY HAND AND OFFICIAL SEAL, this the ____ day of ________________, 19 __.

________________________________
NOTARY PUBLIC

My Commission Expires:

________________________

STATE OF MISSISSIPPI

COUNTY OF ______________

Personally appeared before me, a Notary Public in and for the jurisdiction aforesaid, the within named R. D. Morrow, Sr., who acknowledged that he is the President of South Mississippi Electric Power Association, a corporation, and that in his capacity herein set forth he signed and delivered the foregoing instrument on the corporation's behalf as of the day and year therein mentioned, being duly authorized so to do.

GIVEN UNDER MY HAND AND OFFICIAL SEAL, this the ____ day of ________________, 19 __.

________________________________
NOTARY PUBLIC

My Commission Expires:

________________________

EXHIBIT G

LIST OF CONTRACTS, PERMITS, AUTHORIZATIONS,
LICENSES AND OTHER INTANGIBLE RIGHTS
ASSIGNED TO SMEPA AT THE CLOSING

I. List of Contracts, Purchase Orders and Subcontracts Wherein the Aggregate Contract Price is Estimated to Exceed One Million Dollars ($1,000,000).

A. Direct Contracts of Middle South Energy, Inc.:

| | Vendor | Title | Contract Effective Date |
|---|---|---|---|
| 1. | General Electric | NSSS | 6/25/74 |
| 2. | Allis-Chalmers | Turbine Generator | 12/10/74 |
| 3. | General Electric | Spare Parts | 6/30/78 |
| 4. | General Electric | Startup Services | -- |
| 5. | General Electric | BWR Simulator Training | 6/30/78 |
| 6. | General Electric | Inservice Inspection | 12/22/77 |
| 7. | Bechtel | Engineering, Procurement and Construction | 11/15/71 |

B. Purchase Orders and Subcontracts of Bechtel Power Corporation, acting as agent for Middle South Energy, Inc.:

| | Spec/P.O.# | Vendor | Title | P.O. Effective |
|---|---|---|---|---|
| 1. | A-004.2 | M.P. Gibson Co. | Furnish & Erect Concrete Masonry | 3/21/7 |
| 2. | A-039.0 | O.B. Cannon | Special Coatings | 8/27/7 |
| 3. | A-074.0 | INRYCO, Inc. | Secondary Containment Metal Enclosure | 10/15/7 |
| 4. | C-016.0 | McHann Bros. | Furnish & Construct Railroad | 3/11/7 |
| 5. | C-022.0 | W.J. Runyon & Sons | Site Access Road & Paving | 6/28/7 |
| 6. | C-101.0 | National Mobile Con. | Concrete | 4/11/7 |
| 7. | C-101.1 | United Cement | Cement | 10/11/7 |
| 8. | C-111.0 | Bethlehem Steel | Reinforcing Steel | 10/22/7 |
| 9. | C-121.0 | Bristol Steel | Structural Steel Category I Structures | 2/26/7 |
| 10. | C-122.0 | Stupp Bros. | Structural Steel Non Cat. I Structures | 1/16/7 |
| 11. | C-143.0 | Chicago Bridge & Iron | Misc. Field Erection Tanks | 5/16/7 |
| 12. | C-131.0 | Alfab, Inc. | Mis. Steel for Category Structures | 3/27/7 |
| 13. | C-131.1 | Stupp Bros. | Misc. Steel for Non-Cat. I Structures | 4/15/7 |
| 14. | C-136.0 | Stupp Bros. | Metal Decking | 5/23/7 |
| 15. | C-151.0 | Chicago Bridge & Iron | Containment Liner Plate & Accessories | 2/26/7 |
| 16. | C-153.0 | W. J. Woolley | Personnel Locks, Equipment | 10/04/7 |
| 17. | C-154.0 | Southern Boiler | RPV Shield Wall | 5/23/7 |
| 18. | C-171.0 | Economy Forms | Liner Plate & Appurtenances for Upper Cont. & Spent Fuel Pad | 9/27/7 |

| | | | | |
|---|---|---|---|---|
| 65. | FSC-18 | Reliance Truck Co. | Heavy Hauling, Reactor Pressure Ves. | 4/ /7 |
| 66. | FSC-19 | Capital Security Serv. | Security Services | 7/ /7 |
| 67. | FSC-30 | Bagwell Coating | Cementitious Line Proofing of Struc. Steel | 10/ /7 |
| 68. | FSC-34 | Peabody Testing | Non Destructive Testing | 1/ /7 |
| 69. | M-192.0 | General Electric | Install Reactor Internals | 5/23/7 |

II. Contracts Relating to the Financing of, or Sale of Capacity and Energy from, Grand Gulf with Certain Companies of the Middle South Utilities System and to the Financing of Nuclear Fuel, which are specifically Exempted from the Assignment of Contracts to SMEPA by Section 2.02 of the Sale, Construction and Ownership Agreement.

A. Middle South System Agreements

1. Capital Funds Agreement, dated as of June 21, 1974, between Middle South Utilities, Inc. (MSU) and Middle South Energy, Inc. (MSE).

2. Availability Agreement, dated as of June 21, 1974, as amended by the First Amendment thereto, dated as of June 30, 1977, among MSE and Arkansas Power & Light Company, Arkansas-Missouri Power Company, Louisiana Power & Light Company, Mississippi Power & Light Company and New Orleans Public Service Inc. (collectively, System Companies).

3. First Supplementary Capital Funds Agreement and Assignment, dated as of June 30, 1977, by and between MSU, MSE and Manufacturers Hanover Trust Company, as agent for certain Banks (Agent).

4. First Assignment of Availability Agreement, Consent and Agreement, dated as of June 30, 1977, by and between MSE, the System Companies and the Agent.

5. Second Supplementary Capital Funds Agreement and Assignment, dated as of June 30, 1977, by and between MSU, MSE and United States Trust Company of New York and Malcolm J. Hood, as Trustees (Trustees).

6. Second Assignment of Availability Agreement, Consent and Agreement, dated as of June 30, 1977, by and between MSE, the System Companies and the Trustees.

7. System Agreement, dated April 16, 1973, and effective July 2, 1973, among the System Companies and Middle South Services, Inc. (Services).

8. Sales Agreement, dated as of June 21, 1974, between Mississippi Power & Light Company and MSE.

9. Service Agreement, dated as of July 16, 1974, between Services and MSE.

10. Nuclear Fuel and Fuel Services Purchase Agreement, dated as of June 15, 1978, among System Fuels, Inc., AP&L, LP&L and MSE.

B. Fuel Agreements

1. Contract for Fuel Fabrication Service for the Initial Core of Fuel Bundles and Related Services, dated June 25, 1974, between MSE and General Electric Company.

2. Fuel Fabrication and Related Services Contract, effective March 30, 1976, between MSE and Exxon Nuclear Company, Inc.

III. List of Permits, Authorizations, Licenses, and Other Intangible Rights:

| AGENCY | PERMIT/LICENSE | DATE ISSUED | EXPIRATION DATE | RENEWAL APPLICATION |
|---|---|---|---|---|
| 1. AEC/NRC | 1. Final Environmental Statement Docket Nos. 50-416 and 50-417 | 8/73 | N/A | N/A |
| | 2. Limited Work Authorization | 5/3/74 | | N/A |
| | 3. Construction Permit Unit 1: CPPR-118 | 9/4/74 | 9/1/81 | N/A |
| | Unit 2: CPPR-119 | 9/4/74 | 11/1/84 | N/A |
| | 4. Operating License Application (Units 1 and 2) Concurrent submittal of Final Environmental Report and Final Safety Analysis Report. (Docket Nos. 50-416 and 50-417) | Applied For 4/28/78 Docketed on 6/30/78 | N/A | N/A |
| | 5. Special Nuclear Materials (SNM) License (To receive and warehouse nuclear fuel) | To Be Applied for 11/79 | N/A | N/A |

| | | | | |
|---|---|---|---|---|
| B. Miss. State Board of Health | 1. Special Nuclear Materials (SNM) License (To receive radioactive sources for in-plant instrumentation) | | | |
| | MS-SNM-01 | 6/15/79 | 7/1/80 | 5/80 |
| | MS-SNM-18 | 5/31/79 | 5/1/83 | 3/83 |
| C. Miss. Public Service Commission | Certificate of Public Convenience and Necessity | | | |
| | 1. Units 1 and 2 | 2/5/74 | N/A | N/A |
| D. Miss. Air & Water Pollution Control Commission | 1. Section 401 Water Quality Certification | 2/5/74 | N/A | N/A |
| | 2. NPDES - Temporary/Construction Sewage Plant Permit No. MS0027031 | 10/15/74 Renewed 4/27/77 | 4/25/82 | 10/81 |
| | 3. Permit to Burn Waste Material | 1/8/75 | N/A | N/A |
| | 4. Temporary Permit to Operate Permanent/Construction Sewage Plant | 1/30/75 | Replaced by NPDES Perm MS0029173 | |
| | 5. NPDES - Permanent/Construction Sewage Treatment Plant No. MS0029173 | 8/8/75 | 5/31/80 | 11/79 |
| | 6. NPDES - Permit for Construction Runoff Draft Permit No. MS0029521 | Issued 10/22/75 | N/A | N/A |
| | 7. NPDES - Plant Discharge | Applied for 10/26/77 | N/A | N/A |
| E. U.S. Corps of Engineers | 1. Permit to dredge existing barge slip No. LMKOD-FE 1522-15 (Miss.R.)-67 | 11/12/76 | 11/12/79 | N/A |
| | 2. Permit to construct plant discharge structures No. LMKOD-FE 1522-14 (Miss.R.)-55 | 10/15/76 | 10/15/79 | N/A |

| | | | | | |
|---|---|---|---|---|---|
| | 3. | General permit to fill an existing barge slip with sand to facilitate barge unloadings. LMKOD-FE 1522-14 (Miss.R.)-7 | 9/28/77 | N/A | N/A |
| | 4. | General permit to construct temporary hydrostatic testing discharge line LMKOD-FE 1522-14-GPD (Vicksburg District)-22 | 8/1/79 | N/A | N/A |
| F. Federal Aviation Administration | 1. | Approval to construct two cooling towers and associated construction cranes | Issued 11/9/73 Revised 11/4/77 | N/A | N/A |
| G. Miss. Game and Fish Commission | 1. | Administrative scientific collection permit for preoperational environmental radiological monitoring program | 11/22/78 | 11/7/79 | 10/79 |

EXHIBIT H

SYSTEM FUELS, INC. / BOX 61532 / NEW ORLEANS, LA. 70161 / (504) 586-157

JOHN L. PRENDERGAST
PRESIDENT AND
CHIEF EXECUTIVE OFFICER

June 15, 1978

Mr. Arch P. Pettit
President
Arkansas Power & Light Company
P. O. Box 551
Little Rock, Arkansas 72203

Dear Mr. Pettit:

System Fuels, Inc. (SFI) is engaged in planning and implementing programs for the procurement of fuel supplies for the Middle South System and as a part of such programs is undertaking to arrange for an adequate inventory of nuclear fuel for the Middle South System. Arkansas Power & Light Company (AP&L) presentl owns 992,060 pounds of $U_3O_8$ or $U_3O_8$ equivalent, including 105,000 pounds of $U_3O_8$ and 887,060 pounds of $U_3O_8$ equivalent as $UF_6$ (339,060 kilograms of U as $UF_6$) ("Excess Uranium"), which uranium is in excess of that required by AP&L in the near future for the operation of its Arkansas Nuclear One Generating Station. The Excess Uranium was acquired by AP&L under the terms of contracts dated September 20, 1971 and July 14, 1970 between AP&L and Eldorado Nuclear Limited and AP&L and Kerr McGee Corporation, respectively.

This is to confirm the understanding between us that AP&L is willing to sell the Excess Uranium to SFI, and SFI is willing to purchase the Excess Uranium from AP&L, upon and subject to the following terms and conditions:

1. SFI will purchase the Excess Uranium from AP&L for an amount in cash equal to the actual cost incurred by AP&L for the Excess Uranium, plus applicable allowance for funds used during construction to date of the purchase by SFI, it being understood that as of December 31, 1977 this amounted to $12,747,257.42 (including $678,616.96 of allowance for funds used during construction);

2. SFI will place the Excess Uranium in its inventory of $U_3O_8$ or $U_3O_8$ equivalent and arrange for the necessary storage, conversion and enrichment thereof;

3. SFI will make the enriched Excess Uranium available for sale to AP&L or any other subsidiary of Middle South Utilities, Inc. for fabrication into and use as nuclear fuel at a price equal to the cost thereof to SFI, including applicable conversion, enrichment, transportation and storage costs, fixed charges, and interest and general administrative expenses, all of which shall be determined in accordance with the provisions of Rule 91 promulgated by the Securities and Exchange Commission under the Public Utility Holding Company Act of 1935; and

4. If all or part of the enriched Excess Uranium is sold to a party other than AP&L, the purchasing party shall, as a condition to such sale, agree to make available to AP&L energy in the amount equivalent to the amount of energy generated through the use of enriched Excess Uranium so purchased by such party from SFI at a fuel cost based upon the cost of the enriched Excess Uranium so purchased by such party from SFI.

If this letter correctly sets forth the understanding between us and is acceptable to you, please sign and return the enclosed copy thereof. Upon

the receipt of all requisite regulatory approvals, the documents necessary to consummate the proposed transaction will be prepared, signed and delivered.

Very truly yours,

President

The foregoing correctly sets forth the understanding between us and is acceptable to us

ARKANSAS POWER & LIGHT COMPANY

By
President

EXHIBIT I

LIST OF REPORTS AND CONTRACTS

| REPORT | TO | FROM | DESCRIPTION | FREQUENC |
|---|---|---|---|---|
| 1. Weekly Construction Progress Report | MP&L | Bechtel | Detail Report on the Progress of the Construction | Weekly |
| 2. Project Monthly Progress Report | MP&L | Bechtel | Reflects the status of Engineering, Procurement & Construction | Monthly |
| 3. Cash Flow a. Schedule of Expenditures | MP&L | Middle South Energy | Reflects how much MSE has paid to Bechtel, Allis Chalmers & others | 3 times month |
| b. Analysis of Client Cost | MP&L | Middle South Energy | Report of distribution of money paid out by Bechtel | Monthly |
| 4. Forecasts | MP&L | Bechtel | Projects the cost of Construction from the date of the report to completion of project | Yearly |
| 5. Advance Fund Request | Middle South Energy | Bechtel | Request for Anticipated Expenditures | Monthly |
| 6. Cost Trend Report | MP&L | Bechtel | Breakdown of money over/under projection in Bechtel contract. Includes summary of man-hours & schedule | Monthly |
| 7. Statement of Recoverable Cost | MP&L | Bechtel | Breakdown of construction cost per month | Monthly |
| 8. Turbine Progress Report | MP&L | Allis Chalmers | Provides manufacturing status of equipment | Monthly |

S305-0024-03

| CONTRACTS | FREQUENCY |
|---|---|
| 1. Contracts in which SMEPA has an undivided ownership interest, wherein the aggregate contract price is estimated to exceed $1,000,000. | Quarterly |

S305-0024-032

EXHIBIT

Form 1065 — Department of the Treasury, Internal Revenue Service

# U.S. Partnership Return of Income

For calendar year 1978, or other taxable year beginning ........, 1978, and ending ........, 19 ..

1978

A Principal business activity (See page 12 of instructions)

B Principal product or service (See page 12 of instructions)

C Business code no. (See page 12 of instructions)

Use IRS label. Other-wise please print or type.

Name XYZ Tenants in Common

Number and street

City or town, State, and ZIP code

D Employer identification X

E Date business started X

F Enter total assets from 13, column (D), Sch. $ X

G Is this a final return? ☐ Yes ☒ No

IMPORTANT—Fill in all applicable lines and schedules. If more space is needed, see Instruction b. Enter any items specially allocated to the partners on Schedule K, line 16, instead of on the numbered lines on this page or in Schedules D through L.

**Income**

| | | | |
|---|---|---|---|
| 1a | Gross receipts or sales $ ........ 1b Less returns and allowances $ ........ Balance ▶ | 1c | |
| 2 | Cost of goods sold and/or operations (line 34, Schedule A) | 2 | |
| 3 | Gross profit (subtract line 2 from line 1c) | 3 | |
| 4 | Ordinary income or (loss) from other partnerships and fiduciaries (attach statement) | 4 | |
| 5 | Nonqualifying dividends | 5 | |
| 6 | Interest | 6 | |
| 7 | Income or (loss) from rents (Schedule H) | 7 | |
| 8 | Royalties (attach schedule) | 8 | |
| 9 | Net farm profit or (loss) (attach Schedule F (Form 1040)) | 9 | |
| 10 | Net gain or (loss) (Form 4797, line 11) | 10 | |
| 11 | Other income (attach schedule) | 11 | |
| 12 | TOTAL income (add lines 3 through 11) | 12 | |

**Deductions**

| | | | |
|---|---|---|---|
| 13a | Salaries and wages (other than to partners) $ ........ 13b Less Jobs Credit $ ........ Balance ▶ | 13c | |
| 14 | Guaranteed payments to partners (see line 14 instruction) | 14 | |
| 15 | Rent | 15 | |
| 16 | Interest | 16 | |
| 17 | Taxes | 17 | X |
| 18 | Bad debts (see line 18 instruction) | 18 | |
| 19 | Repairs | 19 | |
| 20 | Depreciation (see Instructions for Schedule J) | 20 | X |
| 21 | Amortization (attach schedule) | 21 | |
| 22 | Depletion (other than oil and gas—attach schedule—see line 22 instruction) | 22 | |
| 23a | Retirement plans, etc. (see line 23a instruction). (Enter number of plans ▶ ........) | 23a | |
| 23b | Employee benefit programs (see line 23b instruction) | 23b | |
| 24 | Other deductions (attach schedule) | 24 | X |
| 25 | TOTAL deductions (add lines 13c through 24) | 25 | X |
| 26 | Ordinary income (loss) (subtract line 25 from line 12) | 26 | X |

**Schedule A—COST OF GOODS SOLD AND/OR OPERATIONS (See line 2 instruction)**

| | | | |
|---|---|---|---|
| 27 | Inventory at beginning of year (if different from last year's closing inventory, attach explanation) | 27 | |
| 28a | Purchases $ ........ 28b Less cost of items withdrawn for personal use $ ........ Balance ▶ | 28c | |
| 29 | Cost of labor | 29 | NOT |
| 30 | Material and supplies | 30 | APPLICABLE |
| 31 | Other costs (attach schedule) | 31 | |
| 32 | Total of lines 27 through 31 | 32 | |
| 33 | Inventory at end of year | 33 | |
| 34 | Cost of goods sold (subtract line 33 from line 32). Enter here and on line 2, above | 34 | |

35a Check valuation method(s) used for total closing inventory: ☐ Cost ☐ Lower of cost or market ☐ Other (attach explanation)

35b Check if Form 970 or other statement is attached for adoption of LIFO inventory method

35c Are you engaged in manufacturing? ☐ Yes ☐ No. If "Yes," check if you valued your inventory in accordance with regulations section 1.471-11

35d Was there any substantial change in determining quantities, cost, or valuations between opening and closing inventory? ☐ Yes ☐ If "Yes," attach explanation.

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ XYZ Tenants in Common, by Z Corporation as Agent — Signature of general partner

▶ Date

S305-0024-0321

Paid Preparer's Information — Preparer's signature ▶ | Preparer's social security no. | Check if self-employed ▶

Firm's name (or yours, if self-employed) ▶ | E.I. No. ▶

## Schedule D—CAPITAL GAINS AND LOSSES (See instructions for Schedule D)

**Part I** Short-term capital gains and losses—assets held one year or less

| a. Kind of property and description (Example, 100 shares of "Z" Co.) | b. Date acquired (mo., day, yr.) | c. Date sold (mo., day, yr.) | d. Gross sales price less expense of sale | e. Cost or other basis | f. Gain or (loss) for the year (d less e) | g. Gain or (loss) after 10/31/78 |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

2 Partnership's share of net short-term gain or (loss), including specially allocated items, from other partnerships and from fiduciaries . . . . .

3 Net short-term gain or (loss) from lines 1 and 2. Enter here and on Schedule K (Form 1065), line 5 . . .

**Part II** Long-term capital gains and losses—assets held more than one year

| | | | | | | |
|---|---|---|---|---|---|---|
| 4 | | | | | | |
| | | | | | | |
| | | | | | | |

5 Partnership's share of net long-term gain or (loss), including specially allocated items, from other partnerships and from fiduciaries . . . . .

6 Capital gain distributions . . . . .

7 Net long-term gain or (loss) from lines 4, 5, and 6. Enter here and on Schedule K (Form 1065), line 6 . . . .

## Schedule H—INCOME FROM RENTS (See line 7 instruction) If more space is needed, use Form 4831.

| a. Kind and location of property | b. Amount of rent | c. Depreciation (explain in Schedule J) | d. Repairs (attach schedule) | e. Other expenses (attach schedule) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| 1 Totals . . . . . | | | | |

2 Net income (loss) (subtract total of columns c, d, and e from column b). Enter here and on page 1, line 7 . . .

## Schedule I—BAD DEBTS (See line 18 instruction)

| a. Year | b. Trade notes and accounts receivable outstanding at end of year | c. Sales on account | Amount added to reserve: d. Current year's provision | e. Recoveries | f. Amount charged against reserve | g. Reserve for bad debts at end of year |
|---|---|---|---|---|---|---|
| 1973 | | | | | | |
| 1974 | | | | | | |
| 1975 | | | | | | |
| 1976 | | | | | | |
| 1977 | | | | | | |
| 1978 | | | | | | |

## Schedule J—DEPRECIATION (See Instructions for Schedule J) If more space is needed use Form 4562.

| a. Description of property | b. Date acquired | c. Cost or other basis | d. Depreciation allowed or allowable in prior years | e. Method of computing depreciation | f. Life or rate | g. Depreciation for this year |
|---|---|---|---|---|---|---|
| 1 Total additional first-year depreciation (NOT to exceed $2,000). (Do not include in items below.) enter here and on Schedule K, line 2) | | | | | | |
| 2 Other depreciation: | | | | | | |
| Buildings . . . . . | | | | | | |
| Furniture and fixtures . . . | | | | | | |
| Transportation equipment . . | | | | | | X |
| Machinery and other equipment . . | | (Form 4832 Attached) | | | | |
| Other (specify): | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | 5305-0024-03 | |
| | | | | | | |
| 3 Totals . . . . . | | | | | | X |
| 4 Amount of depreciation claimed in Schedules A and H . . . | | | | | | – |
| 5 Balance (subtract line 4 from line 3). Enter here and on page 1, line 20 . . . | | | | | | X |

## Schedule K—PARTNERS' SHARES OF INCOME, CREDITS, DEDUCTIONS, ETC.

Enter the total distributive amount for each applicable item listed below.
Note: Enter each partner's distributive share of partnership items on Schedule K-1.

Enter the number of partners in the partnership ▶

Are any partners in this partnership also partnerships? ☐ Yes ☐

| Partnership's distributive share items | Total |
|---|---|
| 1 a Guaranteed payments to partners: | |
| (1) Deductible by the partnership (page 1, line 14) | |
| (2) Capitalized by the partnership (see General Instruction d) | |
| b Ordinary income (loss) (page 1, line 26) (Loss) | X |
| 2 Additional first-year depreciation (Schedule J, line 1) | |
| 3 Gross farming or fishing income | |
| 4 Dividends qualifying for exclusion (attach list) | |
| 5 Net short-term capital gain or (loss) (Schedule D, line 3): After 10/31/78 ▶ ______; Total for year ▶ | |
| 6 Net long-term capital gain or (loss) (Schedule D, line 7): After 10/31/78 ▶ ______; Total for year ▶ | |
| 7 Net section 1231 gain or (loss) from involuntary conversions due to casualty and theft (Form 4797, line 3): After 10/31/78 ▶ ______; Total for year ▶ | |
| 8 Net gain or (loss) from sale or exchange of property used in trade or business and certain involuntary conversion under section 1231 (Form 4797, line 6): After 10/31/78 ▶ ______; Total for year ▶ | |
| 9 Net earnings or (loss) from self-employment (Schedule N, line 10) | |
| 10 a Charitable contributions (attach list): 50% ______ 30% ______ 20% ______ | |
| b Other itemized deductions (attach list) | |
| 11 Expense account allowance | |
| 12 New jobs credit or combined new jobs and targeted jobs credits | |
| 13 Taxes paid by regulated investment companies on undistributed capital gains (attach schedule) | |
| 14 a Payments for partners to a Keogh Plan. (Enter type of plan ▶ ______) | |
| b Payments for partners to an Individual Retirement Arrangement | |
| 15 a Other income, deductions, etc. (attach schedule) | |
| b Oil and gas depletion. Enter amount (not for partner's use) ▶ | |
| 16 Specially allocated items (attach schedule): | |
| a Short-term capital gain or (loss) | |
| b Long-term capital gain or (loss) | |
| c Ordinary gain or (loss) | |
| d Other | |
| 17 Tax preference items (see instructions for Schedules K and K-1, line 17): | |
| a Accelerated depreciation on real property: | |
| (1) Low-income rental housing (section 167(k)) | |
| (2) Other real property | |
| b Accelerated depreciation on personal property subject to a lease | |
| Amortization: c ______ d ______ e ______ f ______ | |
| g Reserves for losses on bad debts of financial institutions | |
| h Depletion (other than oil and gas) | |
| i (1) Excess intangible drilling costs from oil, gas or geothermal wells under section 57(a)(11) | |
| (2) Net income from oil, gas or geothermal wells | |
| 18 Interest on Investment Indebtedness: | |
| a Investment interest expense: | |
| (1) Indebtedness incurred before December 17, 1969 | |
| (2) Indebtedness incurred before September 11, 1975, but after December 16, 1969 | |
| (3) Indebtedness incurred after September 10, 1975 | |
| b Net investment income or (loss) | |
| c Excess expenses from "net lease property" | |
| d Excess of net long-term capital gain over net short-term capital loss from investment property | |
| 19 Investment in property that qualifies for investment credit: | S305-0024-( |
| Basis of new investment property — a 3 or more but less than 5 years | X |
| b 5 or more but less than 7 years | X |
| c 7 or more years | X |
| Qualified progress expenditures — d 7 or more years — 1974, 1975, 1976, and 1977 | |
| e 7 or more years — 1978 | |
| Cost of used investment property — f 3 or more but less than 5 years | |
| g 5 or more but less than 7 years | |

Form 1065 (1978) Page

## Schedule L—BAL[ANCE] SHEETS (See General Information)

| [ASS]ETS | Beginning of taxable year (A) Amount | Beginning of taxable year (B) Total | End of taxable year (C) Amount | End of taxable year (D) Total |
|---|---|---|---|---|
| 1 Cash |  | X |  | X |
| 2 Trade notes and [accoun]ts receivable | X |  | X |  |
| a Less allowance [for b]ad debts | — | X | — | X |
| 3 Inventories |  | X |  | X |
| 4 Gov't obligations: [U].S. and instrumentalities |  |  |  |  |
| b State, subdivis[ions t]hereof, etc. |  |  |  |  |
| 5 Other current asse[ts (a]ttach schedule) |  | X |  | X |
| 6 Mortgage and real [esta]te loans |  |  |  |  |
| 7 Other investments [(att]ach schedule) |  |  |  |  |
| 8 Buildings and othe[r fix]ed depreciable assets | X |  | X |  |
| a Less accumulate[d d]epreciation | X | X | X | X |
| 9 Depletable assets |  |  |  |  |
| a Less accumulated depletion |  |  |  |  |
| 10 Land (net of any amortization) |  | X |  | X |
| 11 Intangible assets (amortizable only) |  |  |  |  |
| a Less accumulated amortization |  |  |  |  |
| 12 Other assets (attach schedule) |  | X |  | X |
| 13 Total assets |  | X |  | X |
| LIABILITIES AND CAPITAL |  |  |  |  |
| 14 Accounts payable |  | X |  | X |
| 15 Mortgages, notes, and bonds payable in less than 1 year |  |  |  | X |
| 16 Other current liabilities (attach schedule) |  | X |  |  |
| 17 All nonrecourse loans (attach schedule) |  |  |  |  |
| 18 Mortgages, notes, and bonds payable in 1 year or more |  |  |  |  |
| 19 Other liabilities (attach schedule) |  | X |  | X |
| 20 Partners' capital accounts |  | X |  | X |
| 21 Total liabilities and capital |  |  |  |  |

## Schedule M—RECONCILIATION OF PARTNERS' CAPITAL ACCOUNTS (See Instruction for Schedule M)

(Show reconciliation of each partner's capital account on Schedule K-1, block L)

| a. Capital account at beginning of year | b. Capital contributed during year | c. Ordinary income (loss) from line 26, page 1 | d. Income not included in column c, plus nontaxable income | e. Losses not included in column c, plus unallowable deductions | f. Withdrawals and distributions | g. Capital account at end of year |
|---|---|---|---|---|---|---|
| X | X | X | X | — |  | X |

## Schedule N—COMPUTATION OF NET EARNINGS FROM SELF-EMPLOYMENT (See Instruction for Schedule N)

1 Ordinary income (loss) (page 1, line 26)
2 Add: Guaranteed payments to partners included on Schedule K, lines 1a(1) and 1a(2)
3 Net rental loss from real estate (see instruction for Schedule N)
4 Net loss from Form 4797 (page 1, Form 1065, line 10)
5 Total
6 Less: Nonqualifying dividends (page 1, line 5)
7 Interest (see instruction for Schedule N)
8 Net rental income from real estate (see instruction for Schedule N)
9 Net gain from Form 4797 (page 1, Form 1065, line 10)
10 Net earnings or (loss) from self-employment. Enter on Schedule K, line 9

NOT APPLICABL[E]

Note: *Any additional first-year depreciation taken by the individual partners will reduce their net earnings from self-employment. (See Schedule J instructions.)*

S305-0024-0324

| Question | Yes | No |
|---|---|---|
| H Is the partnership a limited partnership (see General Instruction c)? |  | X |
| I Is this partnership a partner in another partnership? |  | X |
| J Has any material regarding the offering of a partnership interest or other security ever been registered or filed with a Federal or State agency or authority? If "Yes," attach a statement giving the name and address of the agency(s). |  | X |
| K Did the partnership, at any time during the taxable year, have any interest in or signature or other authority over a bank, securities, or other financial account in a foreign country (except in a U.S. military banking facility operated by a U.S. financial institution)? See General Information |  |  |
| L Was the partnership the grantor of, or transferor to, a foreign trust during any taxable year, which foreign trust was in existence during the current taxable year whether or not the partnership or any partner has any beneficial interest in the trust? If "Yes," ... | | |

Revised in Accordance with the Revenue Act of 1978 and the Energy Tax Act of 1978

SCHEDULE K-1 (Form 1065)
Department of the Treasury Internal Revenue Service

# Partner's Share of Income, Credits, Deductions, etc.—1978

For Calendar year 1978 or fiscal year beginning ............, 1978, ending ............, 19......
(Complete for each partner—See instructions on back of Copy C)

Copy A (File with Form 1065)

Partner's identifying number ➤ X
Partner's name, address, and ZIP code
X CORPORATION

Partnership's identifying number ➤ X
Partnership's name, address, and ZIP code
XYZ Tenants in Common

| | Yes | No |
|---|---|---|
| A Date(s) partner acquired any partnership interest during the year ➤ | | |
| B Is partner a nonresident alien? | | X |
| C Is partner a limited partner (see General Instruction c.3)? | | X |
| D (i) Did partner ever contribute property other than money to the partnership (if "Yes," complete line 21)? | | X |
| (ii) Did partner ever receive a distribution other than money from the partnership (if "Yes," complete line 22)? | | X |
| (iii) Was any part of the partner's interest ever acquired from another partner? | | X |
| E (i) Did partnership interest terminate during the year? | | X |
| (ii) Did partnership interest decrease during the year? | | X |

| F Enter Partner's percentage of: | (i) Before decrease or termination | (ii) End of year |
|---|---|---|
| Profit sharing | % | X % |
| Loss sharing | % | X % |
| Ownership of capital | % | X % |
| Time devoted to business | | % |

G IRS Center where partnership return filed ➤
H What type of entity is this partner? ➤
I Partner's share of liabilities (see instructions):

| | (i) Incurred before 1/1/77 | (ii) Incurred after 12/31/76 |
|---|---|---|
| Nonrecourse | $ | $ |
| Other | $ | $ X |

J Enter total amount of liabilities other than nonrecourse for which partner is protected against loss through guarantees, stop loss agreements or similar arrangements of which the partnership has knowledge:
Incurred before 1/1/77 . . . $ N/A
Incurred after 12/31/76 . . . $ N/A

K Partner's share of any pre-1976 loss(es) from a section 465 activity for which there existed a corresponding amount of nonrecourse liability at the end of the year in which loss(es) occurred . . . $ N/A

L Reconciliation of partner's capital account:

| a. Capital account at beginning of year | b. Capital contributed during year | c. Ordinary income (loss) from line 1b | d. Income not included in column c, plus non-taxable income | e. Losses not included in column c, plus unallowable deductions | f. Withdrawals and distributions | g. Capital account at end of year |
|---|---|---|---|---|---|---|
| X | X | X | X | — | — | X |

| a. Distributive share item | b. Amount | c. 1040 filers enter col. b amount as shown. |
|---|---|---|
| 1 a Guaranteed payments to partner: (1) Deductible by the partnership | | Sch. E, Part III |
| (2) Capitalized by the partnership | X | Sch. E, Part III |
| b Ordinary income or (loss) | (Loss) | Sch. E, Part III |
| 2 Additional first-year depreciation | | Sch. E, Part III |
| 3 Gross farming or fishing income | | Sch. E, Part III |
| 4 Dividends qualifying for exclusion | | Sch. B, Part II, line 3 |
| 5 Short-term capital gain or (loss): a Total for the year ➤ | | Sch. D, line 2, col. f |
| b After 10/31/78 | | Sch. D, line 2, col. g |
| 6 Long-term capital gain or (loss): a Total for the year ➤ | | Sch. D, line 9, col. f |
| b After 10/31/78 | | Sch. D, line 9, col. g |
| 7 Involuntary conversions gain or (loss)—casualty and theft: a Total ➤ | | Form 4797, line 1 |
| b After 10/31/78 | | See Form 4797 instr. |
| 8 Other gain or (loss)—from property under section 1231: a Total ➤ | | Form 4797, line 4 |
| b After 10/31/78 | | See Form 4797 instr. |
| 9 Net earnings or (loss) from self-employment | | Sch. SE, Part I or Part II |
| 10 a Charitable contributions: 50% ........, 30% ........, 20% ........ | | Sch. A, line 21 or 22 |
| b Other itemized deductions (attach list) | | See Sch. A |
| 11 Expense account allowance | | |
| 12 New jobs credit or combined new jobs and targeted jobs credits | | Form 5884, or Form 5884-TJ |
| 13 Taxes paid by regulated investment company | | Line 61, add words "from 1065" |
| 14 a Payments for partner to a Keogh Plan (Type ➤ ............) | | Line 25 |
| b Payments for partner to an Individual Retirement Arrangement | | Line 24 |
| 15 a Other income, deductions, etc. (attach schedule) | | (Enter on applicable lines of your return) |
| b Oil and gas depletion. Enter amount (not for partner's use) ➤ | | |
| 16 Specially allocated items: a Short term capital gain or (loss) | | Sch. D, line 2 |
| (See attached schedule.) b Long term capital gain or (loss) | | Sch. D, line 9 |
| c Ordinary gain or (loss) | | Form 4797, line 10 |
| d Other | | Sch. E, Part III |

* [illegible]

| | | |
|---|---|---|
| 17 a Accelerated de ation on real property: (1) Low-income rental housing | | Form 4625, line 1(b)(1 |
| (2) Other real property | | Form 4625, line 1(b)(2 |
| b Accelerated de ation on personal property subject to a lease | | Form 4625, line 1(c) |
| Amortization: c d e f | | Form 4625, line 1(d) thru (z |
| | | Form 4625, line 1(h) |
| g Reserves for lo on bad debts of financial institutions | | Form 4625, line 1(j) |
| h Depletion (othe an oil and gas) | | See Form 4625 instr. |
| i (1) Excess inta le drilling costs from oil, gas or geothermal wells | | |
| (2) Net income n oil, gas or geothermal wells | | |
| 18 Interest on Inves ent Indebtedness: a Investment interest expense— | | |
| (1) Indebtedne ncurred before 12/17/69 | | Form 4952, line 1 |
| (2) Indebtedne ncurred before 9/11/75, but after 12/16/69 | | Form 4952, line 15 |
| (3) Indebtedne ncurred after 9/10/75 | | Form 4952, line 5 |
| b Net investment ome or (loss) | | Form 4952, line 2 or line 10( |
| c Excess expense om "net lease property" | | Form 4952, lines 11 and 19 |
| d Excess of net lo term capital gain over net short-term capital loss from investment pro ty | | Form 4952, line 20 |
| 19 Property Qualified f Investment Credit: | | |
| Basis of new investment property: a 3 or more but less than 5 years | X | Form 3468, line 1(a) |
| b 5 or more but less than 7 years | X | Form 3468, line 1(b) |
| c 7 or more years | X | Form 3468, line 1(c) |
| Qualified progress expenditures: d 7 or more years — 1974, 1975, 1976 and 1977 | | Form 3468, line 1(d) |
| e 7 or more years — 1978 | | Form 3468, line 1(e) |
| | | Form 3468, line 1(f) |
| Cost of used investment property: f 3 or more but less than 5 years | | Form 3468, line 1(g) |
| g 5 or more but less than 7 years | | Form 3468, line 1(h) |
| h 7 or more years | | |

20 Property Used in Recomputing a Prior Year Investment Credit (enter in corresponding column of Form 4255):

| | (1) Description of property (also state whether new or used) | (2) Date placed in service | (3) Cost or basis | (4) Estimated useful life | (5) Applicable percentage | (6) Original qualified investment (column 3 x column 5) | (8) Date item ceased to be investment credit property | (9) Period actually used | (10) Applicable percentage | (11) Qualified investment (column 3 x column 10) |
|---|---|---|---|---|---|---|---|---|---|---|
| A | X | X | X | X | X | X | X | X | X | X |
| B | | | | | | | | | | |

| | |
|---|---|
| 21 a Basis to partner of contributed property (other than money) at time(s) of contribution to partnership | |
| b Value of contributed property in line 21a as reflected in the partner's capital account | |
| 22 a Basis to partnership of distributed property (other than money) at time(s) of distribution to the partner | |
| b Value of distributed property in line 22a as reflected in the partner's capital account | |

| | Yes | No |
|---|---|---|
| 23 Partnership information regarding international boycotting. For partner's reporting requirements see Form 5713. | | |
| a Did partnership have operations in a boycotting country? | N/A | |
| b Did partnership participate in or cooperate with an international boycott? | N/A | |
| c Did partnership file Form 5713? | N/A | |

8305-0024-0326

Note: Supporting Schedules were attached to show detailed computations of the investment credit, depreciation, the tax basis of partnership assets, and items on the partnership balance sheet.

GRAND GULF NUCLEAR STATION

Amendment No. 1 dated as of May 1, 1980 to

Joint Construction, Acquisition and Ownership Agreement

between

Middle South Energy, Inc.

and

South Mississippi Electric Power Association

Dated as of May 1, 1980

## Table of Contents


| | Page |
|---|---|
| ARTICLE I - SECTION 9.23 AMENDMENT | 2 |
| ARTICLE II - SECTION 7.02 AMENDMENT | 2 |
| ARTICLE III - EXHIBIT AMENDMENTS | 3 |
| 2.01 Amendment to Exhibit A | 3 |
| 2.02 Amendment to Exhibit B | 3 |
| 2.03 Amendment to Exhibit G | 3 |
| ARTICLE IV - MISCELLANEOUS | 3 |
| 3.01 Counterparts | 3 |
| 3.02 Governing Law | 3 |
| 3.03 REA Approval | 3 |


## LIST OF EXHIBITS


EXHIBIT

A - Revised Exhibit A
B - Revised Exhibit B
C - Revised Exhibit G

GRAND GULF NUCLEAR STATION

Amendment No. 1 dated as of May 1, 1980 to

Joint Construction, Acquisition and
Ownership Agreement

between

Middle South Energy, Inc.

and

South Mississippi Electric Power Association

Dated as of May 1, 1980

THIS AMENDMENT NO. 1 dated as of May 1, 1980, to the Joint Construction, Acquisition and Ownership Agreement, dated as of May 1, 1980 (Agreement), is between Middle South Energy, Inc., an Arkansas corporation (MSE), and South Mississippi Electric Power Association, a Mississippi corporation (SMEPA).

The Agreement now contains a provision relating to equal opportunity, a portion of which the parties desire to change. The parties also desire to change the date specified in the Agreement as the deadline for conducting the Closing. In addition, the parties wish to substitute new Exhibits A, B and G for the present Exhibits A, B and G to the Agreement.

NOW, THEREFORE, IN CONSIDERATION of the premises, and the mutual covenants herein set forth, MSE and SMEPA agree as follows:

ARTICLE I - SECTION 9.23 AMENDMENT

Section 9.23(vi) of the Agreement is herewith amended to read as follows:

> "In the event of MSE's noncompliance with the nondiscrimination clause of this Agreement or with any of such rules, regulations or orders, this Agreement will not be cancelled, terminated or suspended in whole or in part, but MSE may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order No. 11246 of September 24, 1964, and such other sanctions may be imposed and remedies invoked as provided in Executive Order No. 11246 of September 24, 1965, or by rule, regulation or order of the Secretary of Labor, or as otherwise provided by law."

ARTICLE II - SECTION 7.02 AMENDMENT

Section 7.02(iv) of the Agreement is herewith amended to read as follows:

> The Closing shall occur on or before July 1, 1980, at the offices of Mississippi Power & Light Company, Jackson, Mississippi, or at such other time and place as may be agreed upon by the parties; if the Closing has not occurred by December 1, 1980, unless such date is extended with the consent of MSE, then this Agreement, the Operating Agreement, the Indemnification Agreement and the Substitute Power Agreement shall be deemed void and of no effect.

ARTICLE III - EXHIBIT AMENDMENTS

Section 2.01. Amendment to Exhibit A. Exhibit A to the Agreement is hereby amended to read as set forth in Exhibit A hereto.

Section 2.02. Amendment to Exhibit B. Exhibit B to the Agreement is hereby amended to read as set forth in Exhibit B hereto.

Section 2.03. Amendment to Exhibit G. In accordance with Section 2.04(a) of the Agreement, Exhibit G to the Agreement is hereby amended to read as set forth in Exhibit C hereto.

ARTICLE IV - MISCELLANEOUS

Section 3.01. Counterparts. This Amendment No. 1 may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

Section 3.02. Governing Law. The validity, interpretation and performance of this Amendment No. 1 and each of its provisions shall be governed by the laws of the State of Mississippi.

Section 3.03. REA Approval. This Amendment No. 1 shall not be in force and effect until approved by the Administrator of the REA.

IN WITNESS WHEREOF, the undersigned parties hereto have duly executed this Amendment No. 1 to the Agreement as of the date first above mentioned.

MIDDLE SOUTH ENERGY, INC.

BY: ______________________
D. C. LUTKEN
VICE PRESIDENT

SEAL

ATTEST:

______________________

SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION

BY ______________________
C. C. CLARK
VICE PRESIDENT

SEAL

ATTEST:

______________________

STATE OF MISSISSIPPI

COUNTY OF HINDS

Personally appeared before me, a Notary Public in and for the jurisidiction aforesaid, the within named D. C.

LUTKEN, who acknowledged that he is a Vice President of Middle South Energy, Inc., a corporation, and that in his capacity herein set forth he signed and delivered the foregoing instrument on the corporation's behalf as of the day and year therein mentioned, being duly authorized so to do.

GIVEN UNDER MY HAND AND OFFICIAL SEAL, this the 15th day of October, 1980

Debra Mitchell
NOTARY PUBLIC

My Commission Expires:
My Commission Expires Jan. 13, 1984

STATE OF MISSISSIPPI
COUNTY OF Forrest

Personally appeared before me, a Notary Public in and for the jurisidiction aforesaid, the within named C. C. CLARK, who acknowledged that he is a Vice President of South Mississippi Electric Power Association, a corporation, and that in his capacity herein set forth he signed and delivered the foregoing instrument on the corporation's behalf as of the day and year therein mentioned, being duly authorized so to do.



S305-0024-0507

GIVEN UNDER MY HAND AND OFFICIAL SEAL, this the 15 day of October, 1980

Peggy Diane Banton
NOTARY PUBLIC

My Commission Expires:
My Commission Expires Aug. 24, 1981

(9) 41

GRAND GULF NUCLEAR STATION

Amendment No. 2 dated as of October 31, 1980 to

Joint Construction, Acquisition and
Ownership Agreement

between

Middle South Energy, Inc.

and

South Mississippi Electric Power Association

Dated as of May 1, 1980

Table of Contents


| | | | Page |
|---|---|---|---|
| Article I | - | Section 3.03 Amendment | 2 |
| Article II | - | Section 6.02 Amendment | 3 |
| Article III | - | Section 9.16 Amendment | 5 |
| Article IV | - | Section 10.04 Amendment | 5 |
| Article V | - | Exhibit "K" | 6 |
| Article VI | - | Miscellaneous | 6 |
| | | 6.01 - Counterparts | 6 |
| | | 6.02 - Governing Law | 6 |
| | | 6.03 - REA Approval | 6 |

Exhibits

A - New Exhibit "K"

GRAND GULF NUCLEAR STATION

Amendment No. 2 dated as of October 31, 1980 to

Joint Construction, Acquisition and
Ownership Agreement

between

Middle South Energy, Inc.

and

South Mississippi Electric Power Association

Dated as of May 1, 1980

THIS AMENDMENT NO. 2, dated as of October 31, 1980, to the Joint Construction, Acquisition and Ownership Agreement, dated as of May 1, 1980, and as previously amended by Amendment No. 1, dated as of May 1, 1980 (Ownership Agreement), is between Middle South Energy, Inc., an Arkansas corporation (MSE), and South Mississippi Electric Power Association, a Mississippi corporation (SMEPA).

The Ownership Agreement now contains a provision relating to progress payments of the costs of construction which the parties desire to change in part. The parties also wish to amend the section of the Ownership Agreement dealing with REA approval and the section dealing with the functions of the Administrative Committee. Further, the parties desire to amend the section of the Ownership Agreement concerning alienation and assignment by inserting additional language and by attaching a new Exhibit K to the Ownership

Agreement.

NOW, THEREFORE, IN CONSIDERATION of the premises, and the mutual covenants herein set forth, MSE and SMEPA agree as follows:

ARTICLE I - SECTION 3.03 AMENDMENT

Section 3.03 of the Ownership Agreement entitled "Progress Payment of Cost of Construction" is herewith amended to read in its entirety as follows:

> At all times after the Final Adjustment Date and whether prior to or after Commercial Operation of either Unit, SMEPA shall pay to MSE an amount equal to 10% of the Cost of Construction of Grand Gulf Unit No. 1 and Grand Gulf Unit No. 2, as the case may be, payable as follows: MSE will, on or before the first day of each month, commencing with the month immediately preceding the Final Adjustment Date, notify SMEPA of the Cost of Construction anticipated to be incurred by MSE during the succeeding calendar month plus any adjustments for Cost of Construction incurred in prior months but not previously charged or credited to SMEPA. SMEPA shall pay an amount equal to 10% of such anticipated Cost of Construction as so adjusted, to the MSE-SMEPA Grand Gulf Construction Account, and MSE shall pay 90% of such Cost of Construction into said account, all in accordance with detailed payment procedures to be established by the Administrative Committee pursuant to Section 10.04(e). In the event the Administrative Committee has not adopted procedures by which payments shall be made into the Grand Gulf Construction Account, payments shall be made by both MSE and SMEPA on the first day of such succeeding month (or on such other day or days in such month as shall be designated in the notice). The first of such payments shall be made at the Final Adjustment Date.

All such payments shall be in Immediately Available Funds. As agent for the parties MSE shall draw down such funds as needed to pay the Cost of Construction. MSE may, without liability to SME56, at any time before the date payment into the MSE-SMEPA Grand Gulf Construction Account is due, cancel the call for such funds. MSE will provide SMEPA with such information as is reasonably required by SMEPA in order for SMEPA to account for the payment of the Cost of Construction on its books and for retirement of Grand Gulf. MSE will give SMEPA as much notice as is reasonably practicable of any major anticipated costs.

ARTICLE II - SECTION 6.02 AMENDMENT

Section 6.02 of the Ownership Agreement entitled "Alienation and Assignment" is herewith amended to read in its entirety as follows:

Alienation and Assignment. During the useful life of Grand Gulf, except with the prior written consent of the other, and except as hereinafter provided in Sections 6.03 and 6.04, neither MSE nor SMEPA shall have the right to sell, lease, convey, transfer, assign, encumber or alienate in any manner whatsoever its ownership interest, or any portion or portions thereof, in Grand Gulf or any rights under this Agreement without first offering, subject to all requisite regulatory approvals, including, without limitation, approval of the SEC and the NRC, such sale, lease or other conveyance to the other party upon the same terms and conditions as may be proposed for a sale, lease or conveyance to a third party. Any such offer shall be made in the form of a proposed contract which shall be open for acceptance by the other party for a period of 90 days. In the event such an offer is accepted, both parties shall proceed to a

closing pursuant to the terms of such contract in an expeditious manner, subject to obtaining all necessary regulatory approvals. In the event such offer is not accepted by the other party within the aforesaid 90 day period and the offering party does not consummate a sale, lease or other conveyance of such interest within a period of one year after the date of its offer to the other party, no such sale, lease or other conveyance may be consummated without re-offering the sale, lease or conveyance to such other party. In no event shall the offering party sell, lease or convey such interest to any third party on any terms at variance from those set forth in the aforesaid proposed contract. In the event of any sale, conveyance, transfer, assignment or alienation (other than solely as security for an indebtedness) by MSE or SMEPA of its ownership interest, or any portion or portions thereof, in Grand Gulf, MSE or SMEPA, as the case may be, shall, subject to obtaining all necessary regulatory approvals, cause such transferee to become a party to this Agreement and assume pro rata the obligations and the rights of the transferor hereunder. Notwithstanding the foregoing, MSE shall be under no obligation in such event to assign, proportionately or otherwise, any part of its authority and responsibility under Section 3.01 to plan, design, license, acquire, construct, complete, train for operation, startup, renew, add to, replace, decommission, entomb and dispose of Grand Gulf or any authority and responsibility related thereto under this Agreement. Anything to the contrary notwithstanding each condition or restriction imposed in this section shall be given effect only to the extent to which it does not violate any applicable rule against perpetuities or the suspension of the power of alienation or any other rules of law or equity. In the event that the rule against perpetuities is determined to apply to the type of interest created in this section, then the conditions and restrictions provided in this section shall be binding upon MSE, SMEPA, their assigns and successors, and shall continue in full force and effect for a period not to exceed twenty-one (21)

> years after the death of the last survivor of the officers of MSE, as specified on the Certificate of Incumbency dated October 31, 1980, a true and correct copy of which is attached hereto as Exhibit K. Further, the "first refusal" rights of SMEPA provided in this section shall not be enforceable against MSE so long as and to the extent either the MSE Mortgage or the MSE Bank Loan Agreement prohibit the creation of such a right in SMEPA.

ARTICLE III - SECTION 9.16 AMENDMENT

Section 9.16 of the Ownership Agreement entitled "REA Approval" is herewith amended to read in its entirety as follows:

> This Agreement shall not be in force and effect until approved by the Administrator of the REA pursuant to the terms of the Amending Loan Contract between SMEPA and REA dated July 28, 1958 and all amendments thereto.

ARTICLE IV - SECTION 10.04 AMENDMENT

Section 10.04(e) of the Ownership Agreement is hereby redesignated as Section 10.04(f) and a new Section 10.04(e) is herewith added to the Ownership Agreement to read as follows:

> (e) Establish detailed payment procedures by which MSE and SMEPA shall make payments into the MSE-SMEPA Grand Gulf Construction Account pursuant to the provisions of Section 3.03.

## ARTICLE V - EXHIBIT K

Exhibit K is hereby added to the Ownership Agreement to read as set forth in Exhibit A hereto.

## ARTICLE VI - MISCELLANEOUS

Section 6.01. Counterparts. This Amendment No. 2 may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

Section 6.02. Governing Law. The validity, interpretation and performance of this Amendment No. 2 and each of its provisions shall be governed by the laws of the State of Mississippi.

Section 6.03. REA Approval. This Amendment No. 2 shall not be in force and effect until approved by the Administrator of the REA pursuant to the terms of the Amending Loan Contract between REA and SMEPA dated July 28, 1958 and all amendments thereto.

IN WITNESS WHEREOF, the undersigned parties hereto have duly executed this Amendment No. 2 to the Ownership Agreement as of the date first above mentioned.

MIDDLE SOUTH ENERGY, INC.

BY: ______________________
D. C. LUTKEN
VICE PRESIDENT

SEAL

ATTEST:

______________________

SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION

BY: W W Bond
W. W. BOND
PRESIDENT

SEAL

ATTEST:

D H Ware

STATE OF MISSISSIPPI

COUNTY OF HINDS

Personally appeared before me, a Notary Public in and for the jurisdiction aforesaid, the within named D. C. LUTKEN, who acknowledged that he is a Vice President of Middle South Energy, Inc., a corporation, and that in his capacity herein set forth he signed and delivered the foregoing instrument on the corporation's behalf as of the day and year therein mentioned, being duly authorized so to do.

GIVEN UNDER MY HAND AND OFFICIAL SEAL, this, the 22 day of June, 1981.

Elizabeth B. Ralston
NOTARY PUBLIC

My Commission Expires:
My Commission Expires Jan. 18, 1984

STATE OF MISSISSIPPI

COUNTY OF Stone

Personally appeared before me, Chancery Clerk in and for the jurisdiction aforesaid, the within named W. W. BOND, who acknowledged that he is President of South Mississippi Electric Power Association, a corporation, and that in his capacity herein set forth he signed and delivered the

foregoing instrument on the corporation's behalf as of the day and year therein mentioned, being duly authorized so to do.

GIVEN UNDER MY HAND AND OFFICIAL SEAL, this, the 23rd day of June, 1981.

Gerald W. Bond, Chancery Clerk
CHANCERY CLERK
By: Penny Parker, D.C.

My Commission Expires:
Jan. 2, 1984

Exhibit A

EXHIBIT K

MIDDLE SOUTH ENERGY, INC.

Certificate of Incumbency

I, D. E. Stapp, do hereby certify that I am the duly elected and qualified Secretary and the keeper of the records and corporate seal of MIDDLE SOUTH ENERGY, INC., a corporation organized and existing under the laws of the State of Arkansas and that the following persons have been appointed or elected, have qualified and are now acting as officers or employees of said corporation in the capacity set before their respective names and that the signatures set opposite their names are genuine specimens of their respective signatures.

| OFFICER | NAME | SPECIMEN SIGNATURE |
|---|---|---|
| President | Floyd W. Lewis | [signature] |
| Vice President | D. Clark Gibbs | [signature] |
| Vice President | Donald C. Lutken | [signature] |
| Vice President | John F. Vogt, Jr. | [signature] |
| Secretary and Assistant Treasurer | Dan E. Stapp | [signature] |

IN WITNESS WHEREOF, I have subscribed my name as Secretary and have caused the corporate seal of said corporation to be hereunto affixed this 31st day of October, 1980.

[signature]
Secretary

Filed for Record October 9 19 81
8:03 A.M.

Shee Jennings Clerk
By Elizabeth Graves D.C.

State of Mississippi
County of Claiborne

Shee Jennings Chancery Clerk of said County, hereby certify that this instrument of writing was filed for record in my office at 8:03 A.M. on the 9 day of October 19 81 and was duly recorded in page 56-68 Book No. 10-V in my office.

Witness my hand and official seal this 9th day of October 19 81

Shee Jennings Clerk
By Elizabeth Graves D.C.