**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on December 20, 2006)

| | |
|---|---|
| **SYSTEM FUELS, INC.,** on its own behalf and as agent for SYSTEM ENERGY RESOURCES, INC. and SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant. | No. 03-2624C<br>(Judge Braden) |

**PLAINTIFF'S SUPPLEMENTAL BRIEF ON CAUSATION**

Of Counsel:
Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)

L. Jager Smith, Jr.
**WISE CARTER CHILD & CARAWAY, P.A.**
1340 Echelon Parkway
Jackson, MS 39213
601-368-5572
601-368-5816 (fax)

Alex D. Tomaszczuk
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102-4859
(703) 770-7940
(703) 770-7901 (fax)

Counsel of Record for Plaintiff System Fuels, Inc., on its own behalf and as agent for System Energy Resources, Inc. and South Mississippi Electric Power Association

December 20, 2006

# TABLE OF CONTENTS


TABLE OF AUTHORITIES …………………………………………………………………ii

I. THE STANDARD FOR PROVING CAUSATION IN A SNF CASE IS WELL-ESTABLISHED AND REQUIRES SHOWING THE BREACH WAS A SUBSTANTIAL CAUSAL FACTOR IN THE DAMAGES …………………………….2

A. Pre-breach damages are recoverable under the same “substantial causal factor” standard ……………………………………………………………..2

B. Pre-breach mitigation costs are evaluated under a rule of reasonableness ……6

C. DOE’s breach was a substantial causal factor of SFI’s damages ……………..7

D. DOE has the burden of demonstrating SFI’s mitigatory steps were unreasonable …………………………………………………………………..8

II. DOE’S FICTIONAL “BUT-FOR” WORLD IS NOT THE PROPER STANDARD, BUT SFI’S PROOF OF DAMAGES MEETS EVEN THAT STANDARD …………………………………………………………………...10

A. The fictional “but-for” standard is not the correct legal standard …………...10

B. SFI’s costs were the direct result of DOE’s breach of the Standard Contract ...……………………………………………………………………13

CONCLUSION …………………………………………………………….……..…......15

# TABLE OF AUTHORITIES

*Alaska Pulp Corp. v. United States*, 59 Fed. Cl. 400 (2004) ........................................................5

*Am. Fed. Bank v. United States*, 72 Fed. Cl. 586 (2006) ........................................................6, 10

*Am. Savs. Bank v. United States*, 62 Fed. Cl. 6 (2004) ..................................................................6

*Bank of Am. v. United States*, 70 Fed. Cl. 246 (2006) .................................................................12

*Cal. Fed. Bank v. United States*, 395 F.3d 1263 (Fed. Cir. 2005) ...............................................12

*Citizens Fed. Bank v. United States*, 59 Fed. Cl. 507 (2004)......................................................5, 6

*Columbia First Bank v. United States*, 60 Fed. Cl. 97 (2004) ....................................................5, 6

*Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652 (2003) ............................................7

*Energy Capital Corp. v. United States*, 302 F.3d 1314 (Fed. Cir. 2002).......................................2

*First Heights Bank v. United States*, 422 F.3d 1311 (Fed. Cir. 2005) .........................................10

*Franconia Assocs. v. United States*, 61 Fed. Cl. 718 (2004) ..........................................5, 6, 9, 10

*Globe Savs. Bank v. United States*, 65 Fed. Cl. 330 (2005).........................................................9

*Home Savs. of Am. v. United States*, 399 F.3d 1341 (Fed. Cir. 2005) ..........................................8

*Hughes Communications Galaxy, Inc. v. United States*, 271 F.3d 1060 (Fed. Cir. 2001) .............7

*Indiana Michigan Power Co. v. United States*, 422 F.3d 1369 (Fed. Cir. 2005) ................. *passim*

*In re Kellett Aircraft Corp.* 186 F.2d 197 (3d Cir. 1950) ............................................................8

*Ketchikan Pulp Co. v. United States*, 20 Cl. Ct. 164 (1990).........................................................8

*Koby v. United States*, 53 Fed. Cl. 493 (2002) ...............................................................................8

*Long Island Savs. Bank v. United States*, 60 Fed. Cl. 80 (2004) ..............................................6, 9

*Long Island Savs. Bank v. United States*, 67 Fed. Cl. 616 (2005) ...............................................10

*Pacific Gas & Elec. Co. v. United States*, 73 Fed. Cl. 333 (2006) .............................................10

*Precision Pine & Timber, Inc. v. United States*, 63 Fed. Cl. 122 (2004) ......................................5

*Robinson v. United States*, 305 F.3d 1330 (Fed. Cir. 2002) ......................................................3, 8

*Sacramento Mun. Util. Dist. v. United States*, 70 Fed. Cl. 332 (2006).............................4, 6, 8, 12

*San Carlos Irrigation & Drainage Dist. v. United States*, 111 F.3d 1557 (1997)............................2

*S. Cal. Fed. Savs. & Loan Ass'n v. United States*, 422 F.3d 1319 (Fed. Cir. 2005)........................5

*T.C. Bateson Constr. Co. v. United States*, 319 F.2d 135 (Ct. Cl. 1963) .......................................9

*Tenn. Valley Auth. v. United States*, 69 Fed. Cl. 515 (2006) ................................................ *passim*

*Westfed Holdings, Inc. v. United States*, 55 Fed. Cl. 544 (2003) ....................................................6

*Yankee Atomic Elec. Co. v. United States*, 73 Fed. Cl. 249 (2006) ......................................3, 8, 11

**Other Authorities**

Restatement (Second) of Contracts § 347 (1981)...........................................................................2, 7

Restatement (Second) of Contracts § 350 (1981)...........................................................................3, 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Electronically Filed on December 20, 2006)

| | | |
|---|---|---|
| **SYSTEM FUELS, INC.,** on its own behalf and as agent for SYSTEM ENERGY RESOURCES, INC. and SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION, | ) | |
| Plaintiff, | ) | No. 03-2624C (Judge Braden) |
| v. | ) | |
| **THE UNITED STATES,** | ) | |
| Defendant. | ) | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF ON CAUSATION**

Plaintiff System Fuels, Inc. ("SFI"), on its own behalf and as agent for System Energy Resources, Inc. and South Mississippi Electric Power Association, respectfully submits this supplemental brief regarding the standard for the causation element of damages and the associated burdens of proof arising from the breach by the Department of Energy ("DOE") of its obligation to accept spent nuclear fuel ("SNF") from SFI pursuant to the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste ("Standard Contract"). As explained below, under the standard plainly established by the case law in this Circuit, SFI must show that DOE's breach of the Standard Contract was a "substantial causal factor" in causing the damages that SFI seeks in this action. To the extent that DOE argues for application of a "but-for" standard premised on a "fictional" non-breach world, DOE misstates the legal standard for establishing causation for the mitigation damages arising from its breach. As recognized by decisions of this Court, and as further explained below, DOE's "but-for" standard is merely an attempt to shift its burden of proof to demonstrate that SFI's mitigation actions are unreasonable.

Where, as here, DOE seeks to limit SFI's recovery of mitigation damages, DOE bears that burden of proof.

## DISCUSSION

### I. THE STANDARD FOR PROVING CAUSATION IN A SNF CASE IS WELL-ESTABLISHED AND REQUIRES SHOWING THE BREACH WAS A SUBSTANTIAL CAUSAL FACTOR IN THE DAMAGES

SFI's claim in this action entails a straightforward application of established law on breach of contract damages. As plainly settled by the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") in *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005), a SNF case involving, as here, DOE's Standard Contract:

> "The general principle is that all losses, however described, are recoverable." *Restatement (Second) of Contracts § 347 cmt. c* (1981). Damages for a breach of contract are recoverable where: (1) the damages were reasonably foreseeable by the breaching party at the time of contracting; (2) ***the breach is a substantial causal factor in the damages***; and (3) the damages are shown with reasonable certainty. *Energy Capital Corp. v. United States,* 302 F.3d 1314, 1320 *(Fed. Cir. 2002)*. While the amount of damages need not be "ascertainable with absolute exactness or mathematical precision[,]" recovery for speculative damages is precluded. *San Carlos Irrigation & Drainage Dist., 111 F.3d at 1563* (citation omitted).

422 F.3d at 1373 (emphasis added). The standard plainly established by *Indiana Michigan* for proving causation for breach of contract damages in an SNF case is that the breach "is a substantial causal factor in the damages."

#### A. Pre-breach damages are recoverable under the same "substantial causal factor" standard.

The foregoing discussion from the *Indiana Michigan* opinion clearly applies to post-breach damages. However, the *Indiana Michigan* decision also unequivocally established that

*pre-breach costs are recoverable* under a claim, as here, for damages for partial breach, reversing the trial court's conclusion to the contrary. 422 F.3d at 1374. The Federal Circuit concluded that holding pre-breach damages unrecoverable would "compromise" a party's obligation to mitigate damages:

> Holding pre-breach damages unrecoverable . . . would, however, compromise a party's obligation to mitigate damages. The general rule must be reconciled with a party's obligation to ***mitigate damages which befall it during the periods both antedating and postdating the breach***. "[A] party cannot recover damages for loss that he could have avoided by reasonable efforts." *Robinson v. United States,* 305 F.3d 1330, 1333 (Fed. Cir. 2002) (quoting *Restatement (Second) Contracts § 350 cmt. b* (1981)) (emphasis in original). Mitigation is appropriate where a reasonable person, in light of the known facts and circumstances, would have taken steps to avoid damage. See *Robinson, 305 F.3d at 1334* (citing *Restatement (Second) of Contracts § 350 cmt. b*).
>
> * * *
>
> But we see no reason why efforts to avoid damages in contemplation of a partial breach should not also be recoverable. Section 350, comment b of the Restatement of Contracts advises that "[o]nce a party has reason to know that performance by the other party will not be forthcoming, ...he is expected to take such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise." Indiana Michigan is "not precluded from recovery ...to the extent that [it] has made reasonable but unsuccessful efforts to avoid loss." Id. § 350(2). Hence, mitigation damages are available for pre-breach costs should the obligee elect to treat the obligor's breach as partial . . . .

422 F.3d at 1375 (emphasis added). Partial breach claimants may recover pre-breach mitigation damages, and *Indiana Michigan* holds that such claimants must prove "foreseeability, causation, and reasonableness" for such damages. *Id.* at 1376. <u>Nothing in the Federal Circuit's decision suggests that the court intended to establish a different test or meaning for the term "causation" in the context of mitigation damages than the term "substantial causal factor" used three pages earlier in the decision</u>. In fact, other SNF decisions of this Court expressly recognize that the same "substantial causal factor" test applies to mitigation damages as to other breach damages. Y*ankee Atomic Elec. Co. v. United States* ("*Yankee Atomic*"), 73 Fed. Cl. 249, 263 (2006) (for

recovery of incurred mitigation costs, plaintiffs must establish "(2) the breach is a substantial causal factor in the damages") (quotation and citation omitted); *Sacramento Mun. Util. Dist. v. United States*, 70 Fed. Cl. 332, 365 (2006) ("*SMUD*") (decision to incur pre-breach mitigation costs "was made in anticipation of [DOE's] subsequent January 31, 1998 breach of the Standard Contract, and, therefore, was a substantial causal factor in this decision") (citation omitted).

Under *Indiana Michigan*, causation is a factual determination, and the decision there turned on plaintiff's failure to establish causation at trial. As trier of fact, the trial court found that plaintiff's costs were incurred for independent business reasons far in advance of any "anticipated" DOE breach, and that DOE's breach was simply not a substantial factor in the plaintiff's decision to incur those costs. 422 F.3d at 1375-76. The Federal Circuit affirmed this factual finding, noting that, while "DOE should have foreseen that its breach would force Indiana Michigan to find alternate storage for its SNF," the trial court's factual findings were supportable by the record, and "not so infected by legal error as to require remand." 422 F.3d at 1376. Contrary to DOE's assertions in this case and other SNF cases, the Federal Circuit's decision in *Indiana Michigan* simply cannot be read to establish a "but-for" causation standard. And unlike the facts there, the preponderance of the credible evidence *in this case* shows that DOE's breach of the Standard Contract *was* a substantial causal factor in SFI's damages.

DOE prefers to ignore the words "substantial causal factor" in *Indiana Michigan* when it argues in this case and others that the decision established a "but-for" causation standard (based solely on *Indiana Michigan's* holding that the plaintiff there had failed to prove causation). DOE badly misreads *Indiana Michigan* by asserting that before a utility may recover the costs to expand its SNF storage capacity, the utility must prove that it would not have undertaken the expansion regardless of the DOE's breach. Neither the Federal Circuit's standard, nor the

determination by the trial court that Indiana Michigan Power Company failed to meet the "substantial causal factor" test (affirmed by the Federal Circuit) supports DOE's position.

Even before *Indiana Michigan*, this Court thoroughly analyzed the evolution of the "substantial factor" test for causation of damages in this Circuit in *Citizens Federal Bank v. United States*, 59 Fed. Cl. 507, 514-15 (2004) (a *Winstar* case) and had determined that "substantial factor" was the appropriate standard for causation. Other cases of this Court and of the Federal Circuit involving *Winstar* issues confirm that the test for causation is the "substantial factor" test and not the "but-for" test, for the damages sought by the Plaintiff in this case. *See S. Cal. Fed. Savs. & Loan Ass'n. v. United States*, 422 F.3d 1319 (Fed. Cir. 2005) (affirming the Court of Federal Claims' determination "that FIRREA was the principal cause of [bank's] recapitalization and was the substantial factor in [bank's] incurring higher costs of funds after the breach"), *cert denied*, 126 S. Ct. 2967 (2006); *Columbia First Bank v. United States,* 60 Fed. Cl. 97, 103 (2004) ("the weight of authority supports the appropriateness of the use of the substantial factor analysis of causation").

Consistent with the *Citizens Federal Bank* approach, this Court has applied the "substantial factor" test in litigation in addition to SNF and *Winstar*-type cases. *E.g., Alaska Pulp Corp. v. United States*, 59 Fed. Cl. 400 (2004) (applying the substantial factor test in a case involving alleged breach of a Forest Service timber contract); *Franconia Assocs. v. United States*, 61 Fed. Cl. 718, 747 (2004) (court applied the "substantial factor" test in a breach of contract case involving the Department of Agriculture's Farmer's Home Administration); *Precision Pine & Timber, Inc. v. United States*, 63 Fed. Cl. 122, 128-29 (2004) (stating the legal standard for causation in a case involving the breach of a timber contract is the "substantial factor test," and rejecting the government's more stringent "but-for" standard).

Under the "substantial factor" standard, SFI need not show that DOE's conduct was the "sole" cause of its damages to establish that losses were "proximately caused" by DOE's breach. *Franconia Assocs.*, 61 Fed. Cl. at 750 (citing *Long Island Savs. Bank v. United States*, 60 Fed. Cl. 80, 90 (2004); *Westfed Holdings, Inc. v. United States,* 55 Fed. Cl. 544, 553 (2003), *aff'd in part, rev'd in part*, 407 F.3d 1352 (Fed. Cir. 2005)). Under this standard, SFI "need not show that each dollar claimed was entirely unaffected by outside events." *Franconia Assocs.*, 61 Fed. Cl. at 750 (citing *Citizens Fed. Bank*, 59 Fed. Cl. at 514-15). *SMUD*, 70 Fed. Cl. at 363 ("[DOE's] analysis was based on a 'but for' causation standard. . . . [T]he Federal Circuit, however, requires that a plaintiff need only demonstrate a 'substantial causal factor,' a lesser standard than the 'but for' standard."); *Am. Fed. Bank v. United States*, 72 Fed. Cl. 586, 601 (2006) (the government's assertion of a "but-for" test for causation "has a somewhat artificial quality, however, because the government fails fully to state the applicable legal standard for causation."); *Citizens Fed. Bank,* 59 Fed. Cl. at 514-16 (Court found immaterial that there were multiple causes for mitigation effort, that multiple causes did not destroy causation, and that the breach was a substantial factor in bringing about the mitigation effort).

Under this standard, a breach is a "substantial factor" causing the costs if it directly and primarily caused them. *Am. Savs. Bank v. United States,* 62 Fed. Cl. 6, 26 (2004) (citing *Columbia First Bank*, 60 Fed. Cl. at 105). In other words, there must be a direct causal relationship between the breach and any claimed losses.

**B. Pre-breach mitigation costs are evaluated under a rule of reasonableness.**

*Indiana Michigan* holds that efforts to avoid damage "in contemplation of a partial breach" are recoverable; that once a party has reason to know that performance of the other party will not be forthcoming, the first party is expected to take such affirmative steps as are

appropriate in the circumstances to avoid loss by making substitute arrangements, and that recovery of such damages is not precluded because the efforts, though reasonable, ultimately prove unsuccessful. *Indiana Michigan*, 422 F.3d at 1375. *See also*, Restatement (Second) of Contracts § 347, cmt. a, b (damages include costs to "arrange a substitute transaction" and "costs incurred in a reasonable effort, whether successful or not, to avoid loss"); *Hughes Communications Galaxy, Inc. v. United States*, 271 F.3d 1060, 1067-68 (Fed. Cir. 2001).

**C. DOE's breach was a substantial causal factor of SFI's damages.**

As shown at trial, SFI incurred costs to design, license, and construct a dry spent nuclear fuel storage facility at the Grand Gulf Nuclear Station. Plaintiff reasonably undertook this project to store SNF that DOE was obligated, but has failed, to accept under the Standard Contract. *See Indiana Michigan*, 422 F.3d at 1375 ("It is *beyond debate* that because [DOE] unequivocally announced in 1994 that it would not meet it contractual obligations beginning in 1998, *the utilities were in fact obligated to take mitigatory steps*.") (emphasis added). As noted in *Indiana Michigan*, and other cases, these costs were inherently foreseeable by DOE, and the very foreseeability of these costs also confirms that the breach was a substantial causal factor in such damages. *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652, 667 (2003) ("the intent of the NWPA and the parties was to avoid the construction by utilities of additional at-reactor storage"); *Tenn. Valley Auth. v. United States*, 69 Fed. Cl. 515, 528 (2006) ("*TVA*") (emphasis added) ("DOE also recognized that utilities might be forced to build additional on-site storage facilities if DOE were not successful in performing under its contracts for SNF disposal, as reflected by the fact that one of DOE's goals was to preclude the utilities' need to provide storage outside their spent fuel pools . . . In short, the court finds that *it was entirely foreseeable to DOE* that failure to perform under the Standard Contract would result in damages of the nature and magnitude that [the plaintiff] claims.").

In other SNF cases, this Court has found DOE's breach to be a substantial causal factor in the utility's decision to take mitigatory steps like those taken by SFI. *See Yankee Atomic*, 73 Fed. Cl. at 268 (determining that DOE's breach was a "substantial causal factor" in Yankee Atomic's "mitigation damages."); *SMUD*, 70 Fed. Cl. at 365 (DOE's breach was a substantial causal factor in some of SMUD's mitigation expenses; DOE's "but-for" standard expressly rejected.). *See also TVA*, 69 Fed. Cl. at 528 (TVA's decision to build dry storage was made "in direct response" to DOE's breach).

**D. DOE has the burden of demonstrating SFI's mitigatory steps were unreasonable.**

As the injured, non-breaching party, SFI has a duty to mitigate losses that could have been avoided by "reasonable efforts." *Robinson*, 305 F.3d at 1333 (citing Restatement (Second) of Contracts § 350 cmt. b). Assuming the other elements required to prove damages are met, if SFI's efforts are reasonable, the costs for those efforts are recoverable. *See Indiana Michigan*, 422 F.3d at 1375 ("we see no reason why efforts to avoid damages in contemplation of a partial breach should not also be recoverable").

Whether SFI's mitigation efforts are reasonable is determined under the circumstances. *Home Savs. of Am. v. United States*, 399 F.3d 1341, 1353 (Fed. Cir. 2005).[1] DOE, as the party challenging SFI's mitigation efforts, bears the burden of proof. *TVA*, 69 Fed. Cl. 515, 528, 530

[1] *See also Ketchikan Pulp Co. v. United States*, 20 Cl. Ct. 164, 166 (1990) (reasonableness of the injured party's mitigation action is "judged by the facts and circumstances at the time the action is taken") (citation omitted); *id.* (injured party does not have to undertake extraordinary efforts to "ferret out the single best situation which will absolutely minimize the breaching party's damages"). *See also Koby v. United States*, 53 Fed. Cl. 493, 497 (2002) (where a choice is required between two reasonable courses of action, the party that caused the injury may not complain that one course, rather than the other, was chosen) (citing *In re Kellett Aircraft Corp.*, 186 F.2d 197, 198-99 (3d Cir. 1950)) ("The rule of mitigation of damages may not be invoked by a contract breaker as a basis for hypercritical examination of the conduct of the injured party, or merely for the purpose of showing that the injured person might have taken steps which seemed wiser or would have been more advantageous to the defaulter.").

("Because the government seeks to limit the non-breaching party's recovery for mitigation, the government bears the burden of proof."); *Globe Savs. Bank v. United States*, 65 Fed. Cl. 330, 348 (2005), *aff'd in part, vacated in part, and remanded in part on another ground,* 189 Fed. Appx. 964 (Fed. Cir. 2006) (For mitigation efforts, "the burdens of proof and persuasion shift from the plaintiff to the defendant. The burden is on the breaching party to show that the injured party's efforts at mitigation were unreasonable."); *Franconia Assocs.,* 61 Fed. Cl. at 741 (citing *T.C. Bateson Constr. Co. v. United States*, 319 F.2d 135, 160 (Ct. Cl. 1963)).

In *Globe Savings Bank*, this Court recognized and rejected the Government's attempt to recharacterize a mitigation damages claim as one of failure to prove causation:

> Perhaps in an effort to avoid the consequences of this shift in the burden of proof, the government frames its arguments regarding mitigation in terms of causation and foreseeability, elements of the damage calculus for which the injured party bears the burden of proof. For example, the government argues that Globe's losses were caused not by the government's breach, but by Globe's choice of an unreasonable method of mitigation. *See* Def.'s Post-Trial Reply Br. ("Def.'s Reply") at 14 ("plaintiff's failure to raise capital . . . is the immediate cause of any lost profits"). This strategy has been rejected in prior decisions, most recently in Judge Allegra's well-reasoned opinion in *Franconia Associates*, 61 Fed. Cl. at 749-51 & n.60 (discussing *Long Island Sav.*, 60 Fed. Cl. at 93). The court in *Franconia* correctly observed that where *"the question presented involves an injured party's failure to act to lessen damages, the issue does not involve proximate causation, but rather mitigation." Id.* at 750. Were the rule otherwise, the breaching party "would benefit from a pervasive causation defense not subject, like mitigation, to the bounds of reasoned decision-making. A breaching party simply could spin out a tangled web of damage-reducing hypothetical events in hopes that the injured party would become ensnared in failing to disprove at least one of them." *Id.* Here, the government's mitigation defense hangs on a very thin thread.

65 Fed. Cl. at 348 (emphasis added) (footnotes omitted). *Globe Savings Bank* underscores a theme recognized in other *Winstar* cases before this Court and the Federal Circuit where "the government puts these arguments forward under the guise of causation . . . [but] they are more properly regarded as contentions about the reasonableness of the steps that plaintiff took in

mitigating the breach." *Am. Fed. Bank*, 72 Fed. Cl. at 600, citing *First Heights Bank v. United States*, 422 F.3d 1311, 1317 (Fed. Cir. 2005); *Long Island Savs. Bank v. United States*,, 67 Fed. Cl. 616, 640 (2005).

As stated in *American Federal Bank*:

> "The clear import of the government['s] characterizing its argument[s] as one[s] of causation is to avoid the reasonability element of the mitigation doctrine," because plaintiff has the burden to prove that its actions were caused by the breach, while the government has the burden to prove the unreasonableness of the actions taken.

72 Fed. Cl. at 600 (citations omitted). This Court, as it has in other SNF cases, should reject DOE's identical strategy here. *See TVA*, 69 Fed. Cl. at 529-30 ("The government frames [its] argument as one of causation, . . . but in the circumstances of this case, it realistically is a contention aimed at limiting the amount of damages TVA may recover as a result of its mitigation efforts.") The key legal issue now before this Court is not proximate causation, but rather mitigation, and DOE bears the burden of proving that SFI's efforts at mitigation were unreasonable.

## II. DOE'S FICTIONAL "BUT-FOR" WORLD IS NOT THE PROPER STANDARD, BUT SFI'S PROOF OF DAMAGES MEETS EVEN THAT STANDARD

### A. The fictional "but-for" standard is not the correct legal standard.

In its attempt to limit its exposure to damages by shifting the burden of proof, DOE contends that SFI must prove that SFI would *not* have incurred the expenses it seeks as damages if DOE had performed without breach under DOE's view of the hypothetical, fictional world. DOE argues that acting reasonably and mitigating damages is not enough. According to DOE, SFI must prove that the mitigation actions taken to address DOE's delay would not have been taken under the mythical conditions urged by DOE, *i.e.*, the so-called "but-for" world. DOE cites *Pacific Gas & Electric Co. v. United States ("PG&E")*, 73 Fed. Cl. 333 (2006), in support

of its argument that a utility bears the burden of "establishing what might have been" to recover pre-breach mitigatory costs. *Id.*

DOE's assertion that it is SFI's burden to create a "but-for" world against which to compare "actual" damages involves needless determinations grounded in speculation and conjecture: speculation about what a "but-for" nonbreach world would have looked like and conjecture about what SFI would have done in response. For example, divining the type, length, weight, and assembly capacity of the cask DOE would have employed during performance of the Standard Contract in the "but-for" world requires deriving hypothetical assumptions based on guesswork and supposition. Even establishing when the "but-for" world begins and when it ends is pure speculation, and impossible to prove. As a result, DOE's "but-for" standard improperly subjects this Court and SFI to a far more speculative inquiry (and more demanding burden of proof) than specified in *Indiana Michigan*. But *Indiana Michigan* removed the need to engage in such a speculative exercise when it stated that DOE's unequivocal May 1994 announcement that DOE would breach "its contractual obligations beginning in 1998" meant that utilities "were in fact obligated to take mitigatory steps" starting, at the latest, in 1994. *Indiana Michigan*, 422 F.3d at 1372, 1375-77. Instead, the court focused the inquiry on reasonableness of mitigation actions and actual incurred expenditures. *Id.; Yankee Atomic*, 73 Fed. Cl. at 260. In *Yankee Atomic*, this Court noted that the case had been "tried [before the *Indiana Michigan* decision] on a comparison of the real 'breach world' to the hypothetical nonbreach world." Facing DOE requests for speculative findings from "the mythical nonbreach world" on a host of "other imponderables" the Court stated: "*Indiana Michigan* altered the landscape considerably by parsing utility claims into actual expenditures and framing the inquiry as one of mitigation."[2] *Id*.

---

[2] *Indiana Michigan* itself noted that "highly speculative" inquiries concerning damages were disfavored, and for that reason it precluded recovery of damages for future

In contrast, the "but-for world" approach employed in the *PG&E* decision and argued by DOE springs from "lost profits" decisions where "what might have been" is naturally and necessarily relevant. There first must be "profits" before there could have been profits that were "lost" by any breach.[3] That approach is irrelevant here. *SMUD*, 70 Fed. Cl. at 363 (Court expressly rejected the need to prove what a "but-for" world what have looked like: "the Federal Circuit, however, requires that a plaintiff need only demonstrate a 'substantial causal factor,' a lesser standard than the 'but for' standard"); *TVA*, 69 Fed. Cl. at 530 ("the rate of acceptance that DOE might have established in the but-for, non-breach world for the years after year ten" was a key issue between the parties, but determining that rate was "largely a hypothetical exercise.").

As noted above, this Court -- in other SNF cases and in several *Winstar* decisions -- has rejected DOE's position and the approach taken in *PG&E* that the Court speculate as to what "might have been" in a "but-for" world. With all due and appropriate respect, that decision and DOE's argument on "expectancy damages" fails to apply the causation standard established by *Indiana Michigan* and recognized in other decisions of this Court. The *PG&E* decision's adoption

---

nonperformance resulting from DOE's breach until those damages are incurred. *Indiana Michigan*, 422 F.3d at 1377.

3 DOE frequently cites *Cal. Fed. Bank v. United States*, 395 F.3d 1263, 1268 (Fed. Cir. 2005), as holding that in the *Winstar* context the supposedly more rigorous "but-for" causation standard, rather than the "substantial factor" standard, is applied to a claim for lost profits. As noted above, the instant case does not involve lost profits. And *California Federal*, unlike this case, did not involve mitigation costs. In this case, the Court is dealing with actual incurred mitigation costs foreseeably spent in response to DOE's breach, and not the recovery of lost profits, which necessarily would not be calculable without resort to a hypothetical "but for" world. In its reliance on *California Federal*, DOE also ignores that portion of the opinion in which the Federal Circuit elaborated on its direct-causation test by stating that the breach need not be "the sole factor or sole cause" of damages. *Id.* "The existence of other factors operating in confluence with the breach will not necessarily preclude recovery based on the breach." *Id. See also Bank of Am. v. United States*, 70 Fed. Cl. 246, 251 (2006) ("no business judgment is exercised in a vacuum ... [and] [i]t is thus irrelevant that [the bank] may have had independent business reasons" for executing a transaction mitigating the breach).

of DOE's incorrect legal standard erroneously fails to accord proper weight to the fact that the mitigatory expenses at issue here are expenses that actually have been incurred. Once the elements of substantial causal factor, foreseeability and reasonable certainty are established for such expenses, the burden is on the breaching party to show that recovery is not warranted.

**B. SFI's costs were the direct result of DOE's breach of the Standard Contract.**

Although SFI's decision to build a dry fuel storage facility in the actual world was a direct result of DOE's breach, DOE, applying its burden shifting strategy, prefers to argue that the facility would also have been necessary in the speculative, "fictional" "non-breach" world and that DOE is entitled to a setoff reflecting those "non-breach" world costs. Again, although styled as an argument that the costs were not "caused" by the breach, the real intent is to argue that DOE should not have to pay the full amount of the mitigation claim. *See TVA*, 69 Fed. Cl. at 529-30 ("The government frames this argument as one of causation . . . but in the circumstances of this case, it realistically is a contention aimed at limiting the amount of damages [the plaintiff] may recover as a result of its mitigation efforts. The government contends that [the plaintiff's] damages should be constrained to the difference between the costs of building the dry storage facilities in the present (breach) world versus the costs of building the facilities later in the but-for, non-breach world.. . . Because the government seeks to limit the non-breaching party's recovery for mitigation, the government bears the burden of proof.").

Even if DOE were somehow correct in its "but-for" analysis (which it is not), SFI still prevails. As shown at trial, SFI had no reason, other than the DOE's breach, to build a dry fuel storage facility at Grand Gulf. Mr. John McGaha testified that in 2000, Entergy initially approved a capital project where the company would purchase storage cask systems from Holtec International, Inc. on a fleet-wide basis for the dry fuel storage facilities that would eventually be

required at its plants (including Grand Gulf) due to the DOE's breach of the Standard Contract. Trial Transcript ("Tr.") at 159-60; 194-95. Mr. Charles "Ben" Franklin later explained at trial that the actual decision process for pursuing and implementing dry storage at Grand Gulf (and the approval of funds therefor) began approximately two years later. In 2002, Mr. Franklin prepared with Mr. Frank Rives a spent fuel management plan explaining that, due to DOE's continuing failure to begin acceptance of SNF at Grand Gulf and other plants nationwide, dry storage was necessary at Grand Gulf starting in 2007 in order to continue plant operations while maintaining full core reserve in the Grand Gulf spent fuel pool. Tr. at 247-60. Mr. Franklin also testified that Entergy considered several other storage options in addition to dry cask storage – including, *inter alia*, Private Fuel Storage and rod consolidation – but ultimately concluded that dry cask storage was the most technically prudent and best available alternative at Grand Gulf for mitigating the effects of the Government's breach. Tr. at 326-32.

In other words, DOE's breach was not just a "substantial causal factor," it was the direct, central and driving factor in SFI's decision to build dry storage at Grand Gulf. *See, e.g., TVA*, 69 Fed. Cl. at 527-28 ("[the plaintiff's] decision to build dry storage was made in direct response to DOE's breach"). SFI seeks to recover the costs of designing and constructing that facility – as actually incurred by SFI through August 31, 2005 – in this action. To the extent that the DOE contends that SFI would have needed to build a dry storage facility even if DOE had performed in 1998, and that the costs SFI has claimed here are not "incremental" to DOE's breach, its position is not supported by either common sense or the preponderance of the credible evidence.

## CONCLUSION

As detailed above, the adjudication of SFI's mitigation damages claim requires a straightforward application of the law on causation of breach of contract damages. SFI has established through oral testimony and supporting documents that DOE's breach was, at a minimum, a substantial factor in its incurrence of mitigation costs. As such, SFI has established causation under the standard adopted by the Federal Circuit in *Indiana Michigan* for partial breach cases like this one. DOE now bears the heavy burden of showing – at the resumption of this trial on January 16, 2007 – that the way SFI planned, designed, licensed, and is constructing the dry fuel storage facility at Grand Gulf represents an unreasonable response to DOE's breach of the Standard Contract.

Dated: December 20, 2006

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Jack Y. Chu
Alex D. Tomaszczuk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102-4859
(703) 770-7940
(703) 770-7901 (fax)

Counsel of Record for Plaintiff
System Fuels, Inc., on its own behalf
and as agent for System Energy Resources, Inc.
and South Mississippi Electric Power Association

OF COUNSEL:
Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)

L. Jager Smith, Jr.
**WISE CARTER CHILD &**
**CARAWAY, P.A.**
1340 Echelon Parkway
Jackson, MS 39213
(601) 368-5572
(601) 368-5816 (fax)