Case 1:03-cv-02624-SGB Document 110-21 Filed 11/05/2007 Page 1 of 65

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on November 6, 2006)

| | | |
|---|---|---|
| **SYSTEM FUELS, INC.,** on its own behalf and as agent for SYSTEM ENERGY RESOURCES, INC. and SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION, | ) | |
| Plaintiff, | ) | No. 03-2624C |
| | ) | (Judge Braden) |
| v. | ) | |
| **THE UNITED STATES,** | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL TESTIMONY OF FRANK B. RIVES**
**<u>ON AGENCY AND RATES ISSUES</u>**

Per the Court's direction at the September 2006 damages trial in this case, Plaintiff System Fuels, Inc. ("SFI"), on its own behalf and as agent for System Energy Resources, Inc. ("SERI"), and South Mississippi Electric Power Association ("SMEPA"), respectfully files the prepared direct testimony of Frank B. Rives, as follows:

Q. PLEASE STATE YOUR NAME AND BUSINESS ADDRESS.

A. My name is Frank B. Rives. My business address is 1340 Echelon Parkway, Jackson MS 39213.

Q. BY WHOM ARE YOU EMPLOYED AND IN WHAT POSITION?

A. I am employed by Entergy Services, Inc. ("ESI") as Director, Nuclear Fuels. I report to the Chief Executive Officer of the Nuclear organization, Gary Taylor. In the capacity of Director, Nuclear Fuels, I am responsible for procurement of fuel and fuel-related services, including the administration of Entergy's contracts with the Department of Energy ("DOE") for disposal of spent nuclear fuel.

Q. ARE YOU THE SAME FRANK B. RIVES WHO TESTIFIED IN THE PLAINTIFFS' CASE IN CHIEF IN THIS MATTER?

A. Yes, I am.

Q. WHAT IS THE PURPOSE OF YOUR SUPPLEMENTAL TESTIMONY?

A. I will address the relationship of the named plaintiffs in this case, agency and service agreements in place between the plaintiffs and certain Entergy service companies, and how the costs claimed as damages in this case have been collected on accounting books for those plaintiffs. I will also address the Court's inquiries regarding the recovery of damages costs from ratepayers.

Q. PLEASE IDENTIFY THE PLAINTIFFS IN THIS CASE.

A. This case is captioned as System Fuels, Inc. ("SFI") on its own behalf and as agent for System Energy Resources, Inc. ("SERI") and South Mississippi Electric Power Association ("SMEPA").

Q. WHAT IS SFI?

A. SFI is an Entergy Corporation subsidiary, owned by four of Entergy Corporation's utility subsidiaries. SFI is owned by Entergy Arkansas, Inc. (35 percent share), Entergy Louisiana Holdings, Inc. (33 percent share), Entergy New Orleans, Inc. (13 percent share), and Entergy Mississippi, Inc. (19 percent share). SFI was created to fulfill the purpose of, among other things, "[p]urchasing, selling, contracting for the storage, transportation and processing of, and otherwise dealing with [fuels for electric generating plants], materials which can be converted into such fuels, and their by-product materials." SFI Articles of Incorporation, January 4, 1972, Plaintiffs' Exhibit 500, para. 4. The stated purpose of dealing with fuel by-product materials includes the ultimate disposition of spent nuclear fuel. SERI entered into an agreement with SFI in 1978 whereby SFI would provide nuclear fuels and fuel services for SERI. Nuclear Fuel and Fuel Services Purchase Agreement, dated June 15, 1978, Plaintiffs' Exhibit 501.

Q. WHAT IS SERI?

A. SERI is a wholly-owned subsidiary of Entergy Corporation. SERI owns or leases a 90 percent undivided share of the Grand Gulf Nuclear Station ("Grand Gulf"). It sells its share of Grand Gulf power output to four of Entergy Corporation's utility subsidiaries, at wholesale, under a Federal Energy Regulatory Commission- ("FERC") approved power sales agreement having no set term and intended to be for the life of Grand Gulf. SERI Rate

 Pester, H

RECEIVED
NOV 5 2003
OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELEC. CO., Plaintiff, v. THE UNITED STATES, Defendant. | No. 98-126C (Senior Judge Merow) |

## NOTICE OF INDIRECTLY-RELATED CASES

In accordance with RCFC 40.2, counsel for Entergy Gulf States, Inc., System Fuels, Inc.("SFI") (acting on its own behalf and as agent for Entergy Arkansas, Inc., Entergy Louisiana, Inc., System Energy Resources, Inc., and South Mississippi Electric Power Association), and Entergy Nuclear Indian Point 2, LLC state that their actions[1] are indirectly-related to the following actions that were filed and are currently pending in this Court:

(1) General Atomics v. United States, No. 03-2505C (Wolski, J.);

(2) Consumers Energy Co. v. United States, No. 02-1894C (Damich, C.J.);

(3) Detroit Edison Co. v. United States, No. 02-926C (Williams, J.);

(4) Vermont Yankee Nuclear Power Corp. v. United States, No. 02-898C (Hodges, J.);

(5) PSEG Nuclear L.L.C. v. United States, No. 01-551C (Sypolt, J.);

[1] On this day, plaintiffs SFI, Entergy Gulf States, Inc., and Entergy Nuclear Indian Point 2, LLC have filed five separate complaints that are captioned in the following manner: (1) Entergy Gulf States, Inc. v. United States (Complaint filed November 5, 2003); (2) System Fuels, Inc., on its own behalf and as agent for Entergy Arkansas, Inc. v. United States, (Complaint filed November 5, 2003); (3) System Fuels, Inc., on its own behalf and as agent for Entergy Louisiana, Inc. v. United States, (Complaint filed November 5, 2003); (4) System Fuels, Inc., on its own behalf and as agent for System Energy Resources, Inc. and South Mississippi Electric Power Association v. United States, (Complaint filed November 5, 2003); and (5) Entergy Nuclear Indian Point 2, LLC v. United States, (Complaint filed November 5, 2003).



154-98-126
CR

(6) Tennessee Valley Auth. v. United States, No. 01-249C (Bruggink, S.J.);

(7) Nebraska Pub. Power Dist. v. United States, No. 01-116C (Sypolt, J.);

(8) Omaha Pub. Power Dist. v. United States, No. 01-115C (Bush, J.);

(9) Power Auth. of N.Y. v. United States, No. 00-703C (Damich, C.J.);

(10) Wisconsin Elec. Power Co. v. United States, No. 00-697C (Merow, S.J.);

(11) GPU Nuclear, Inc. v. United States, No. 00-440C (Bush, J.);

(12) Boston Edison Co. v. United States, No. 99-447C (Lettow, J.);

(13) Commonwealth Edison Co. v. United States, No. 98-621C (Hewitt, J.);

(14) Southern Nuclear Operating Co. et al. v. United States, No. 98-614C (Merow, S.J.);

(15) Sacramento Mun. Utility Dist. v. United States, No. 98-488C (Braden, J.);

(16) Indiana Mich. Power Co. v. United States, No. 98-486C (Hodges, J.);

(17) Duke Power v. United States, No. 98-485C (Sypolt, J.);

(18) Northern States Power Co. v. United States, No. 98-484C (Wiese, J.);

(19) Florida Power & Light Co. v. United States, No. 98-483C (Sypolt, J.);

(20) Maine Yankee Atomic Power Co. v. United States, No. 98-474C (Merow, S.J.);

(21) Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C (Merow, S.J.); and

(22) Yankee Atomic Elec. Co. v. United States, No. 98-126C (Merow, S.J.).

RCFC 40.2(a)(1)(B) states that actions involving the "same contract, property or patent" are deemed "directly-related." The actions brought by SFI, Entergy Gulf States, Inc., and Entergy Nuclear Indian Point 2, LLC, as well as the actions listed above, are all based upon the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste ("Standard Contract"), 10 C.F.R. § 961.11. SFI entered three separate Standard Contracts with Defendant, acting by and through the Department of Energy ("DOE"); Entergy Gulf States, Inc. entered into one Standard Contract with DOE; and Entergy Nuclear Indian Point 2, LLC was assigned one Standard Contract. Although each Standard Contract, as the name suggests,

contains identical material terms and conditions, the parties to each contract are different. In addition, each of the plaintiff utilities has suffered and filed claims for damages in varying amounts depending upon a variety of circumstances, including but not limited to the costs associated with their on-site storage of spent nuclear fuel.

Given the facts summarized above, it is more likely that this case is "indirectly-related" to the above-listed actions. See RCFC 40.2(b). First, each of these cases has been randomly assigned to different judges in the past. Second, while many of these cases were assigned to a coordinated discovery proceeding (as countenanced by RCFC 40.2(b)(1)) and are proceeding using "lead" or "accelerated" cases, the merits of each case continue to be resolved by the individual judge assigned to that particular case.

Therefore, in accordance with RCFC 40.2(b)(2) for indirectly-related cases, this filing has been captioned in the earliest filed case – Yankee Atomic Elec. Co. v. United States, No. 98-126C (Merow, S.J.). Counsel in all the above-listed cases shall be served with this notice. RCFC 40.2(b)(2).

Dated: November 5, 2003

Respectfully submitted,

Alex D. Tomaszczuk
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, VA 22102-4859
703.770.7940 – telephone
703.770.7901 – facsimile

Counsel of Record for Plaintiffs
Entergy Gulf Services, Inc., System Fuels, Inc., Entergy Nuclear Indian Point 3, LLC, Florida Power & Light Company, Northern States Power Company, Duke Power, Indiana Michigan Power Company, Boston Edison Company, Power Authority of the State of New York, Omaha Public Power District, Nebraska Public Power District, PSEG Nuclear L.L.C., Vermont Yankee Nuclear Power Corporation, Detroit Edison Company

*Of Counsel*:
Jay E. Silberg
Devon E. Hewitt
Daniel S. Herzfeld
Jack Y. Chu
SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of November 2003, I caused a copy of the foregoing NOTICE OF INDIRECTLY-RELATED CASES to be served by facsimile and by U.S. mail, postage prepaid, on:

Harold D. Lester, Jr.
Assistant Director
Commercial Litigation Branch
Civil Division
United States Department of Justice
Washington, D.C. 20530

Attention: Classification Unit
8th Floor, 1100 L Street, N.W.
Counsel of Record for the United States

Jerry Stouck
Spriggs & Hollingsworth
1350 I Street, N.W.
9th Floor
Washington, DC 20005
Counsel of Record for Yankee Atomic Elec. Co., Maine Yankee Atomic Power Co., and Connecticut Yankee Power Co.

Peter K. Shea
Office of General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, TN 37902-1401
Tel: (865) 632-7319
Counsel of Record for Tennessee Valley Authority

M. Stanford Blanton
Balch & Bingham, LLP
1710 Sixth Avenue North
Birmingham, AL 35203
Tel: (205) 251-8100
Counsel of Record for Southern Nuclear Operating Company, et al.

David Handzo
Jenner & Block
601 13th Street, N.W.
Suite 1200 South
Washington, D.C. 20005
Tel: (202) 639-6075
Counsel of Record for Commonwealth Edison Company

Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue, 40th Floor
Seattle, WA 98101-3099
Tel: (206) 583-8419
Counsel of Record for Wisconsin Electric Power Company

Melvin C. Garbow
Arnold & Porter
555 12th Street, N.W.
Washington, D.C. 20004-1206
Tel: (202) 942-5666
Counsel of Record for Sacramento Municipal Utility District

Thomas O. Mason
Williams Mullen
8270 Greensboro Drive
Suite 700
McLean, VA 22102
Counsel of Record for Consumers Energy Co.

Brad Fagg
Morgan, Lewis, & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
Counsel of Record for General Atomics and GPU Nuclear, Inc.

[signature]

Document #: 1256497 v.1A

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED NOV 5 2003 U.S. COURT OF FEDERAL CLAIMS

SYSTEM FUELS, INC., on its own behalf and as agent for SYSTEM ENERGY RESOURCES, INC. and SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No.: 03-2624C

Judge: Braden

**COMPLAINT**

System Fuels, Inc. ("SFI") on its own behalf and as agent for System Energy Resources, Inc. ("System Energy") and South Mississippi Electric Power Association ("SMEPA"), for its complaint in this action, alleges as follows:

**NATURE OF THE CASE**

1. SFI brings this lawsuit on its own behalf and as agent for System Energy and SMEPA to recover significant damages caused by the Department of Energy's ("DOE") material partial breach of its unconditional obligation to begin disposing of spent nuclear fuel and high level nuclear waste (collectively, "SNF") generated by the commercial nuclear power plant owned by System Energy and SMEPA. Pursuant to the Nuclear Waste Policy Act of 1982, as amended, 42 U.S.C. §§ 10101 et seq. ("NWPA"), DOE and SFI entered into a contract in 1983 under which System Energy and SMEPA have paid and continue to pay substantial fees in return for DOE's obligation to remove and dispose of SNF beginning no later than January 31, 1998. SFI, System Energy, and SMEPA have fully complied with their fee payment obligations under the contract. DOE, however, has failed to perform its reciprocal obligation to dispose of SNF, and has stated that it will not do so until 2010 at the earliest. System Energy and SMEPA have

incurred and will continue to incur significant costs associated with procuring additional SNF storage capacity and other damages as a result of DOE's total disregard of its contractual obligations.

## PARTIES

2. System Energy and SMEPA are the owners of Unit 1 of the Grand Gulf Nuclear Station ("Grand Gulf"). System Energy owns 90% of Grand Gulf and SMEPA owns the remaining 10% interest in Grand Gulf. The Nuclear Regulatory Commission ("NRC") issued a license to System Energy and SMEPA for Grand Gulf Unit 1 in 1983. The Grand Gulf plant has generated and continues to generate SNF, which is stored at the plant site. SFI has entered into a Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (the "Standard Contract") with DOE pursuant to which DOE is to accept and dispose of the SNF generated by the Grand Gulf plant in return for payment of specified fees by SFI.[1]

3. Defendant is the United States of America, acting through DOE.

## JURISDICTION

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1491(a)(1).

5. DOE's complete failure to comply with its essential contractual obligation to begin disposing of SNF by January 31, 1998 constitutes a material partial breach of its Standard Contract, for which SFI may seek recovery of damages (including damages to its principals – System Energy and SMEPA) without exhausting any administrative remedies. In companion decisions handed down on August 31, 2000, the Federal Circuit has conclusively rejected the Government's exhaustion of remedies jurisdictional defense. See Northern States Power Co. v.

[1] SFI entered into the Standard Contract on behalf of itself, System Energy (then known as Middle South Energy, Inc.), and SMEPA. Although System Energy and SMEPA own the Grand Gulf nuclear plant, SFI performs all duties of the Purchaser under the Standard Contract on behalf of System Energy and SMEPA, including payment of the quarterly fee.

United States, 224 F.3d 1361 (Fed. Cir. 2000) ("Northern States"); Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336 (Fed. Cir. 2000) ("Maine Yankee").

6. Furthermore, Article XI of the Standard Contract states, "Nothing in this contract shall be construed to preclude either party from asserting its rights and remedies under the contract or at law." Pursuant to this provision, SFI, System Energy, and SMEPA are entitled to pursue their legal claims without exhausting any administrative remedies.

## FACTUAL BACKGROUND

### The Standard Contract

7. In 1982, Congress enacted the NWPA, codifying the Federal Government's long-standing commitment to accept responsibility and provide for the timely disposition of commercial SNF. Pursuant to Section 302(a)(5)(B) of the NWPA, 42 U.S.C. § 10222(a)(5)(B), DOE was required to commence disposing of commercially-generated SNF no later than January 31, 1998, in return for the payment of fees by utilities and others that generated or held title to the SNF. The fees are paid into the Nuclear Waste Fund, which is the source of funds to cover DOE's costs for disposing of SNF.

8. Pursuant to Section 302 of the NWPA, in 1983 DOE developed the Standard Contract. The Standard Contract embodies the reciprocal obligations mandated by the NWPA, pursuant to which contract holders agree to pay fees into the Nuclear Waste Fund in return for the provision of SNF disposal services by DOE, beginning no later than January 31, 1998. See 10 C.F.R. Part 961.11. Specifically, the Standard Contract provides that "[t]he services to be provided by DOE under this contract shall begin, after commencement of facility operations, not later than January 31, 1998 and shall continue until such time as all SNF . . . has been disposed of." 10 C.F.R. § 961.11, Art. II.

9. SFI executed its Standard Contract, on behalf of itself, System Energy, and SMEPA, on June 30, 1983. To date, System Energy and SMEPA have paid more than $148 million into the Nuclear Waste Fund pursuant to this contract and continues to pay fees in excess of $7 million per year.

**DOE's Anticipatory Breach of the Contractual Deadline**

10. Notwithstanding the obligation imposed upon DOE by the Standard Contract, DOE failed to meet most of the early milestones established by the NWPA. These early failures eventually led to problems further along the program schedule, particularly in establishing the geologic repository called for by the NWPA. At the same time, however, DOE continued to make commitments and representations that it would begin to dispose of SNF by the 1998 deadline.

11. For example, in a September 7, 1984 letter by Donald P. Hodel, then Secretary of Energy, to United States Senator J. Bennett Johnston, Secretary Hodel stated, "Pursuant to my authority, it is my intention that this commitment together with the overall thrust of the [NWPA], will create an obligation for [DOE] to accept spent fuel in 1998 whether or not a repository is in operation."

12. Similarly, in its 1987 Mission Plan Amendment, DOE announced that the geologic repository called for by the NWPA would not be available until 2003. DOE indicated, however, that it would be able to begin accepting SNF by 1998 at a Monitored Retrievable Storage ("MRS") facility designed to store SNF until commencement of repository operations.

13. Congress substantially amended the NWPA in 1987. As amended, the NWPA required DOE to focus its entire repository development effort on characterizing Yucca Mountain, Nevada, one of the earlier-identified candidate sites, to determine its suitability as the nation's first geologic repository. 42 U.S.C. § 10133. Congress also authorized DOE to

construct a MRS but did not name a specific site. Rather, the NWPA provided two different options for siting a MRS. Under the first option, a MRS could be sited through the efforts of the Nuclear Waste Negotiator, an Executive Branch position created by the 1987 Amendments. 42 U.S.C. §§ 10242-10249. Under the second option for MRS siting, DOE was authorized to site and develop a MRS on its own, but on a schedule that was linked by the NWPA to the development of the repository. 42 U.S.C. §§ 10165(b), 10168(d).

14. By 1987, the repository program was more than ten years behind schedule. Despite the fact that, in less than five years, the repository program had fallen ten years behind schedule, DOE relied solely on the efforts of the Nuclear Waste Negotiator for development of the MRS. DOE did not develop any contingency plans for meeting the January 31, 1998 deadline in the event that the Negotiator was unsuccessful, a state of events that continued even after the Negotiator's authority expired with the unsuccessful completion of his mission. Not surprisingly, DOE's waste disposal program fell further behind schedule.

15. In 1995, DOE issued a Final Interpretation of Nuclear Waste Acceptance Issues ("Final Interpretation") wherein DOE retreated from its earlier acknowledgments that it had an unconditional obligation to begin disposing of SNF by January 31, 1998. 60 Fed. Reg. 21973, 21974 (May 3, 1995). In its Final Interpretation, DOE stated that, since passage of the NWPA, it "has become apparent that neither a repository nor an interim storage facility constructed under the Act will be available by 1998," and that it would commence disposing of SNF at a repository by 2010 at the earliest. 60 Fed. Reg. at 21794. The Final Interpretation also stated DOE's conclusion that the NWPA does not impose an obligation on DOE to commence disposing of contract holders' SNF in 1998 in the absence of a disposal or interim storage facility. Id. at 21794-95.

**DOE's Breach of its Contractual Obligation**

16. Various utilities, including SFI, filed petitions for review of the Final Interpretation in the U.S. Court of Appeals for the District of Columbia Circuit. The D.C. Circuit ruled in favor of the petitioners and held that the NWPA imposed on DOE an unconditional obligation to begin disposing of SNF by January 31, 1998. Indiana Michigan Power Co. v. Department of Energy, 88 F.3d 1272 (D.C. Cir. 1996). The Court further held that this obligation was reciprocal to the utilities' obligation to pay fees into the Nuclear Waste Fund. The Court remanded the matter to DOE for proceedings consistent with the opinion.

17. Notwithstanding the D.C. Circuit's unequivocal ruling, DOE advised SFI and other Standard Contract holders that it would not begin to dispose of SNF by the January 31, 1998 deadline. Specifically, DOE announced in a December 17, 1996 letter to contract holders "that DOE anticipates it will be unable to begin acceptance of spent nuclear fuel for disposal in a repository or interim storage facility by January 31, 1998." DOE further took the position that its failure to meet the deadline was excused because its delay was unavoidable.

18. In response to DOE's recalcitrance, SFI (through its affiliate Entergy Operations, Inc.) and other utilities filed another petition with the D.C. Circuit for a writ of mandamus to compel DOE to comply with the mandate in Indiana Michigan. In Northern States Power Co. v. United States Dep't of Energy, 128 F.3d 754 (D.C. Cir. 1997) ("Northern States I"), the D.C. Circuit reiterated that DOE had an unconditional obligation under both the NWPA and the Standard Contract to begin disposing of utilities' SNF by January 31, 1998. The Court also held that DOE had a clear duty to act in accordance with this unconditional obligation and issued a writ of mandamus precluding DOE from arguing that its failure to meet the January 31, 1998 deadline was unavoidable. On November 30, 1998, the United States Supreme Court denied DOE's petition for a writ of certiorari in the Northern States I case, 525 U.S. 1016 (1998).

19. Despite the ruling in Northern States I, DOE made no effort to meet the contractual deadline. DOE did not begin to dispose of SNF by January 31, 1998, as required by the NWPA and Standard Contract, and has maintained the position announced prior to the D.C. Circuit's rulings that it will not begin to dispose of SNF until 2010 at the earliest. DOE has failed and refused to provide any firm commencement date for the disposal of SNF at the Grand Gulf nuclear plant.

20. In Maine Yankee, decided by the Federal Circuit on August 31, 2000, the Federal Circuit concluded that DOE's admitted failure to begin accepting spent nuclear fuel by the January 31, 1998 contractual deadline constituted a breach of the Standard Contract. In the companion Northern States case, the Federal Circuit held that the unavoidable delays provision of the contract "does not bar a suit seeking damages for the Government's failure to begin performance at all by the statutory and contractual deadline of January 31, 1998." Northern States, 224 F.3d at 1367. In summary, the Federal Circuit has determined as a matter of law that DOE breached the contract and that System Energy, SMEPA, and other similarly situated utilities that are parties to the Standard Contract can bring an action for breach of contract damages in this Court.

**Nature of Damages Sustained by SFI as a Result of DOE's Breach**

21. As a direct consequence of DOE's disregard of its contractual obligations and defiance of the D.C. Circuit's rulings, System Energy and SMEPA have been and will be forced to incur substantial additional costs to provide for extended on-site storage of its SNF. Moreover, System Energy and SMEPA have incurred and will continue to incur other substantial damages, including but not limited to regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternative off-site storage capacity to permit continued operation of its nuclear plant.

## CLAIMS FOR RELIEF

## COUNT I

**(Partial Breach of Contract)**

22. Paragraphs 1 through 21 are incorporated herein by reference as if set forth in full.

23. SFI, System Energy, and SMEPA have complied and continue to comply with all of their obligations under the Standard Contract, including the payment of all required fees into the Nuclear Waste Fund.

24. DOE has failed to perform its obligation under the Standard Contract to dispose of SNF beginning no later than January 31, 1998, and thereby has partially and materially breached the Standard Contract.

25. As a direct and proximate result of DOE's partial breach of the Standard Contract, System Energy and SMEPA have incurred and will incur damages in an amount to be determined at trial. The rate at which System Energy's and SMEPA's damages will continue to accrue is dependent upon various factors including but not limited to when DOE commences performance of its contractual obligations, and System Energy and SMEPA reserve all rights to recover presently unascertainable damages that may be caused by DOE's future partial breaches of the Standard Contract.

## COUNT II

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

26. Paragraphs 1 through 25 are incorporated herein by reference as if fully set forth in full.

27. The Standard Contract between SFI (on behalf of itself, System Energy, and SMEPA) and DOE contains an implied covenant of good faith and fair dealing, pursuant to which DOE has a duty to perform its obligations under the contract in good faith and not to take actions detrimental to SFI's, System Energy's, and SMEPA's contractual rights. DOE has breached the covenant of good faith and fair dealing by failing and refusing to make any effort to meet the contractual deadline for beginning to dispose of SNF; by steadfastly attempting to avoid its obligations under the contract as defined by the D.C. Circuit; by failing to make any effort to dispose of System Energy's and SMEPA's SNF or even to provide System Energy and SMEPA with a firm date on which DOE will begin to do so; and by insisting on System Energy's and SMEPA's continued performance of their reciprocal obligation to pay fees into the Nuclear Waste Fund despite DOE's refusal to perform.

28. DOE's failure to act has not been the result of inadequate resources. DOE annual expenditures from the Nuclear Waste Fund have consistently been well below the level of annual receipts into the Nuclear Waste Fund. There are ample funds available to DOE to comply with its contractual obligations.

29. In contrast to DOE's failure to take any action to meet its contractual commitments, DOE has taken action to receive, transport, and store SNF from other entities. For example, DOE has accepted and continues to store SNF from foreign research reactors.

30. As a direct and proximate result of DOE's breach of the implied covenant of good faith and fair dealing, System Energy and SMEPA have suffered and will continue to suffer damages as alleged above.

**COUNT III**

**(Taking Without Just Compensation)**

31. Paragraphs 1 through 30 are incorporated herein by reference as if set forth in full.

32. Based on its long standing commitment to dispose of SNF, which was codified with a date certain in the NWPA, the Government was and is unequivocally obligated under the Standard Contract and NWPA to commence acceptance and disposal of SNF generated at the Grand Gulf nuclear plant no later than January 31, 1998.

33. The Government's failure and refusal to comply with the requirements of the Standard Contract for acceptance and disposal of SNF generated at the Grand Gulf nuclear plant constitutes a taking of the vested real property rights of SFI's principals – System Energy and SMEPA. For example, the Government's failure to honor its commitments under the Standard Contract will prevent System Energy and SMEPA from being able to decommission their nuclear plant site and devote that site to commercial uses as soon as it otherwise would have been able to do so. The Government's conduct has deprived, and will continue to deprive, System Energy and SMEPA of the full valuable economic use of that site, as well as the real property on which the SNF is stored and from which it cannot lawfully be removed.

34. System Energy and SMEPA, acting through their agent SFI, are entitled to just compensation for this taking of System Energy's and SMEPA's real property in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff SFI, acting on its own behalf and as agent for System Energy and SMEPA, respectfully requests that the Court enter judgment in its favor and against the United States as follows:

(a) On Count I, for damages in an amount to be established at trial;

(b) On Count II, for damages in an amount to be established at trial;

(c) On Count III, for damages in an amount to be established at trial;

(d) Pre-judgment and post-judgment interest as permitted by law;

(e) Costs of suit, including reasonable attorneys' fees as permitted by law; and

(f) Such other and further relief as this Court may deem proper.

Dated: November 5, 2003

Respectfully submitted,

Alex D. Tomaszczuk
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, VA 22102
(703) 770-7940 – telephone
(703) 770-7901 – facsimile

Counsel of Record for Plaintiff
System Fuels, Inc., on its own behalf
and as agent for System Energy Resources, Inc.
and South Mississippi Electric Power Association

*Of Counsel*:
Jay E. Silberg
Devon E. Hewitt
Daniel S. Herzfeld
Jack Y. Chu
SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000

Joseph L. Blount
Entergy Services, Inc.
Legal and External Affairs
P.O. Box 31995
Jackson, MS 39286-1995

Document #: 1252112 v.3

ORIGINAL

FILED NOV 5 2003 U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SYSTEM FUELS, INC., on its own behalf and as agent for ENTERGY ARKANSAS, INC., Plaintiff, v. THE UNITED STATES, Defendant. | No.: 03-2623C<br>Judge: L[illegible] |

## COMPLAINT

System Fuels, Inc. ("SFI") on its own behalf and as agent for Entergy Arkansas, Inc. ("Entergy Arkansas"), for its complaint in this action, alleges as follows:

## NATURE OF THE CASE

1. SFI brings this lawsuit on its own behalf and as agent for Entergy Arkansas to recover significant damages caused by the Department of Energy's ("DOE") material partial breach of its unconditional obligation to begin disposing of spent nuclear fuel and high level nuclear waste (collectively, "SNF") generated by the commercial nuclear power plant owned by Entergy Arkansas. Pursuant to the Nuclear Waste Policy Act of 1982, as amended, 42 U.S.C. §§ 10101 et seq. ("NWPA"), DOE and SFI entered into a contract in 1983 under which Entergy Arkansas has paid and continues to pay substantial fees in return for DOE's obligation to remove and dispose of SNF beginning no later than January 31, 1998. SFI and Entergy Arkansas have fully complied with their fee payment obligations under the contract. DOE, however, has failed to perform its reciprocal obligation to dispose of SNF, and has stated that it will not do so until 2010 at the earliest. Entergy Arkansas has incurred and will continue to incur significant costs associated with procuring additional SNF storage capacity and other damages as a result of DOE's total disregard of its contractual obligations.

## PARTIES

2. Entergy Arkansas is the owner of Units 1 and 2 of the Arkansas Nuclear One nuclear power plant ("ANO"). The Atomic Energy Commission ("AEC") issued a license to Entergy Arkansas for Unit 1 in May 1974 and AEC's successor, the Nuclear Regulatory Commission ("NRC"), issued a license to Entergy Arkansas for Unit 2 in September 1978. The ANO units have generated and continue to generate SNF, which is stored at the plant site. SFI has entered into a Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (the "Standard Contract") with DOE pursuant to which DOE is to accept and dispose of the SNF generated by ANO in return for payment of specified fees by SFI.[1]

3. Defendant is the United States of America, acting through DOE.

## JURISDICTION

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1491(a)(1).

5. DOE's complete failure to comply with its essential contractual obligation to begin disposing of SNF by January 31, 1998 constitutes a material partial breach of its Standard Contract for which SFI may seek recovery of damages (including those of its principal – Entergy Arkansas) without exhausting any administrative remedies. In companion decisions handed down on August 31, 2000, the Federal Circuit has conclusively rejected the Government's exhaustion of remedies jurisdictional defense. See Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000) ("Northern States"); Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336 (Fed. Cir. 2000) ("Maine Yankee").

[1] SFI entered into the Standard Contract on behalf of itself and Entergy Arkansas (then known as Arkansas Power & Light Company). Although Entergy Arkansas owns the ANO plant, SFI performs all duties of the Purchaser under the Standard Contract on behalf of Entergy Arkansas, including payment of the quarterly fee.

6. Furthermore, Article XI of the Standard Contract states, "Nothing in this contract shall be construed to preclude either party from asserting its rights and remedies under the contract or at law." Pursuant to this provision, SFI and Entergy Arkansas are entitled to pursue their legal claims without exhausting any administrative remedies.

## FACTUAL BACKGROUND

### The Standard Contract

7. In 1982, Congress enacted the NWPA, codifying the Federal Government's long-standing commitment to accept responsibility and provide for the timely disposition of commercial SNF. Pursuant to Section 302(a)(5)(B) of the NWPA, 42 U.S.C. § 10222(a)(5)(B), DOE was required to commence disposing of commercially-generated SNF no later than January 31, 1998, in return for the payment of fees by utilities and others that generated or held title to the SNF. The fees are paid into the Nuclear Waste Fund, which is the source of funds to cover DOE's costs for disposing of SNF.

8. Pursuant to Section 302 of the NWPA, in 1983 DOE developed the Standard Contract. The Standard Contract embodies the reciprocal obligations mandated by the NWPA, pursuant to which contract holders agree to pay fees into the Nuclear Waste Fund in return for the provision of SNF disposal services by DOE, beginning no later than January 31, 1998. See 10 C.F.R. Part 961.11. Specifically, the Standard Contract provides that "[t]he services to be provided by DOE under this contract shall begin, after commencement of facility operations, not later than January 31, 1998 and shall continue until such time as all SNF . . . has been disposed of." 10 C.F.R. § 961.11, Art. II.

9. SFI executed this Standard Contract on behalf of itself and Entergy Arkansas on June 30, 1983. To date, Entergy Arkansas has paid more than $223 million into the Nuclear Waste Fund pursuant to this contract and continues to pay fees in excess of $10 million per year.

**DOE's Anticipatory Breach of the Contractual Deadline**

10. Notwithstanding the obligation imposed upon DOE by the Standard Contract, DOE failed to meet most of the early milestones established by the NWPA. These early failures eventually led to problems further along the program schedule, particularly in establishing the geologic repository called for by the NWPA. At the same time, however, DOE continued to make commitments and representations that it would begin to dispose of SNF by the 1998 deadline.

11. For example, in a September 7, 1984 letter by Donald P. Hodel, then Secretary of Energy, to United States Senator J. Bennett Johnston, Secretary Hodel stated, "Pursuant to my authority, it is my intention that this commitment together with the overall thrust of the [NWPA], will create an obligation for [DOE] to accept spent fuel in 1998 whether or not a repository is in operation."

12. Similarly, in its 1987 Mission Plan Amendment, DOE announced that the geologic repository called for by the NWPA would not be available until 2003. DOE indicated, however, that it would be able to begin accepting SNF by 1998 at a Monitored Retrievable Storage ("MRS") facility designed to store SNF until commencement of repository operations.

13. Congress substantially amended the NWPA in 1987. As amended, the NWPA required DOE to focus its entire repository development effort on characterizing Yucca Mountain, Nevada, one of the earlier-identified candidate sites, to determine its suitability as the nation's first geologic repository. 42 U.S.C. § 10133. Congress also authorized DOE to construct a MRS but did not name a specific site. Rather, the NWPA provided two different options for siting a MRS. Under the first option, a MRS could be sited through the efforts of the Nuclear Waste Negotiator, an Executive Branch position created by the 1987 Amendments. 42

U.S.C. §§ 10242-10249. Under the second option for MRS siting, DOE was authorized to site and develop a MRS on its own, but on a schedule that was linked by the NWPA to the development of the repository. 42 U.S.C. §§ 10165(b), 10168(d).

14. By 1987, the repository program was more than ten years behind schedule. Despite the fact that, in less than five years, the repository program had fallen ten years behind schedule, DOE relied solely on the efforts of the Nuclear Waste Negotiator for development of the MRS. DOE did not develop any contingency plans for meeting the January 31, 1998 deadline in the event that the Negotiator was unsuccessful, a state of events that continued even after the Negotiator's authority expired with the unsuccessful completion of his mission. Not surprisingly, DOE's waste disposal program fell further behind schedule.

15. In 1995, DOE issued a Final Interpretation of Nuclear Waste Acceptance Issues ("Final Interpretation") wherein DOE retreated from its earlier acknowledgments that it had an unconditional obligation to begin disposing of SNF by January 31, 1998. 60 Fed. Reg. 21973, 21974 (May 3, 1995). In its Final Interpretation, DOE stated that, since passage of the NWPA, it "has become apparent that neither a repository nor an interim storage facility constructed under the Act will be available by 1998," and that it would commence disposing of SNF at a repository by 2010 at the earliest. 60 Fed. Reg. at 21794. The Final Interpretation also stated DOE's conclusion that the NWPA does not impose an obligation on DOE to commence disposing of contract holders' SNF in 1998 in the absence of a disposal or interim storage facility. Id. at 21794-95.

**DOE's Breach of its Contractual Obligation**

16. Various utilities, including SFI, filed petitions for review of the Final Interpretation in the U.S. Court of Appeals for the District of Columbia Circuit. The D.C. Circuit ruled in favor of the petitioners and held that the NWPA imposed on DOE an unconditional obligation to begin disposing of SNF by January 31, 1998. Indiana Michigan

Power Co. v. Department of Energy, 88 F.3d 1272 (D.C. Cir. 1996). The Court further held that this obligation was reciprocal to the utilities' obligation to pay fees into the Nuclear Waste Fund. The Court remanded the matter to DOE for proceedings consistent with the opinion.

17. Notwithstanding the D.C. Circuit's unequivocal ruling, DOE advised SFI and other Standard Contract holders that it would not begin to dispose of SNF by the January 31, 1998 deadline. Specifically, DOE announced in a December 17, 1996 letter to contract holders "that DOE anticipates it will be unable to begin acceptance of spent nuclear fuel for disposal in a repository or interim storage facility by January 31, 1998." DOE further took the position that its failure to meet the deadline was excused because its delay was unavoidable.

18. In response to DOE's recalcitrance, SFI (through its affiliate Entergy Operations, Inc.) and other utilities filed another petition with the D.C. Circuit for a writ of mandamus to compel DOE to comply with the mandate in Indiana Michigan. In Northern States Power Co. v. United States Dep't of Energy, 128 F.3d 754 (D.C. Cir. 1997) ("Northern States I"), the D.C. Circuit reiterated that DOE had an unconditional obligation under both the NWPA and the Standard Contract to begin disposing of utilities' SNF by January 31, 1998. The Court also held that DOE had a clear duty to act in accordance with this unconditional obligation and issued a writ of mandamus precluding DOE from arguing that its failure to meet the January 31, 1998 deadline was unavoidable. On November 30, 1998, the United States Supreme Court denied DOE's petition for a writ of certiorari in the Northern States I case, 525 U.S. 1016 (1998).

19. Despite the ruling in Northern States I, DOE made no effort to meet the contractual deadline. DOE did not begin to dispose of SNF by January 31, 1998, as required by the NWPA and Standard Contract, and has maintained the position announced prior to the D.C. Circuit's rulings that it will not begin to dispose of SNF until 2010 at the earliest. DOE has failed and refused to provide any firm commencement date for the disposal of SNF generated at the ANO nuclear plant.

20. In Maine Yankee, decided by the Federal Circuit on August 31, 2000, the Federal Circuit concluded that DOE's admitted failure to begin accepting spent nuclear fuel by the January 31, 1998 contractual deadline constituted a breach of the Standard Contract. In the companion Northern States case, the Federal Circuit held that the unavoidable delays provision of the contract "does not bar a suit seeking damages for the Government's failure to begin performance at all by the statutory and contractual deadline of January 31, 1998." Northern States, 224 F.3d at 1367. In summary, the Federal Circuit has determined as a matter of law that DOE breached the contract and that Entergy Arkansas and other similarly situated utilities that are parties to the Standard Contract can bring an action for breach of contract damages in this Court.

**Nature of Damages Sustained by SFI as a Result of DOE's Breach**

21. As a direct consequence of DOE's disregard of its contractual obligations and defiance of the D.C. Circuit's rulings, Entergy Arkansas has been and will be forced to incur substantial additional costs to provide for extended on-site storage of its SNF. Moreover, Entergy Arkansas has incurred and will continue to incur other substantial damages, including but not limited to regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternative off-site storage capacity to permit continued operation of its nuclear plant.

**CLAIMS FOR RELIEF**

**COUNT I**

**(Partial Breach of Contract)**

22. Paragraphs 1 through 21 are incorporated herein by reference as if set forth in full.

23. SFI and Entergy Arkansas have complied and continue to comply with all of their obligations under the Standard Contract, including the payment of all required fees into the Nuclear Waste Fund.

24. DOE has failed to perform its obligation under the Standard Contract to dispose of SNF beginning no later than January 31, 1998, and thereby has partially and materially breached the Standard Contract.

25. As a direct and proximate result of DOE's partial breach of the Standard Contract, Entergy Arkansas has incurred and will incur damages in an amount to be determined at trial. The rate at which Entergy Arkansas' damages will continue to accrue is dependent upon various factors including but not limited to when DOE commences performance of its contractual obligations, and Entergy Arkansas reserves all rights to recover presently unascertainable damages that may be caused by DOE's future partial breaches of the Standard Contract.

## COUNT II

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

26. Paragraphs 1 through 25 are incorporated herein by reference as if fully set forth in full.

27. The Standard Contract between SFI (on behalf of itself and Entergy Arkansas) and DOE contains an implied covenant of good faith and fair dealing, pursuant to which DOE has a duty to perform its obligations under the contract in good faith and not to take actions detrimental to SFI's and Entergy Arkansas' contractual rights. DOE has breached the covenant of good faith and fair dealing by failing and refusing to make any effort to meet the contractual deadline for beginning to dispose of SNF; by steadfastly attempting to avoid its obligations under the contract as defined by the D.C. Circuit; by failing to make any effort to dispose of Entergy Arkansas' SNF or even to provide Entergy Arkansas with a firm date on which DOE will begin to do so; and by insisting on Entergy Arkansas' continued performance of its reciprocal obligation to pay fees into the Nuclear Waste Fund despite DOE's refusal to perform.

28. DOE's failure to act has not been the result of inadequate resources. DOE annual expenditures from the Nuclear Waste Fund have consistently been well below the level of annual receipts into the Nuclear Waste Fund. There are ample funds available to DOE to comply with its contractual obligations.

29. In contrast to DOE's failure to take any action to meet its contractual commitments, DOE has taken action to receive, transport, and store SNF from other entities. For example, DOE has accepted and continues to store SNF from foreign research reactors.

30. As a direct and proximate result of DOE's breach of the implied covenant of good faith and fair dealing, Entergy Arkansas has suffered and will continue to suffer damages as alleged above.

**COUNT III**

**(Taking Without Just Compensation)**

31. Paragraphs 1 through 30 are incorporated herein by reference as if set forth in full.

32. Based on its long standing commitment to dispose of SNF, which was codified with a date certain in the NWPA, the Government was and is unequivocally obligated under the Standard Contract and NWPA to commence acceptance and disposal of SNF generated at the ANO nuclear plant no later than January 31, 1998.

33. The Government's failure and refusal to comply with the requirements of the Standard Contract for acceptance and disposal of SNF generated at the ANO nuclear plant constitutes a taking of the vested real property rights of SFI's principal – Entergy Arkansas. For example, the Government's failure to honor its commitments under the Standard Contract will prevent Entergy Arkansas from being able to decommission its nuclear plant site and devote that

site to commercial uses as soon as it otherwise would have been able to do so. The Government's conduct has deprived, and will continue to deprive, Entergy Arkansas of the full valuable economic use of that site, as well as the real property on which the SNF is stored and from which it cannot lawfully be removed.

34. Entergy Arkansas, acting through its agent SFI, is entitled to just compensation for this taking of its real property in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SFI, acting on its own behalf and as agent for Entergy Arkansas, respectfully requests that the Court enter judgment in its favor and against the United States as follows:

(a) On Count I, for damages in an amount to be established at trial;

(b) On Count II, for damages in an amount to be established at trial;

(c) On Count III, for damages in an amount to be established at trial;

(d) Pre-judgment and post-judgment interest as permitted by law;

(e) Costs of suit, including reasonable attorneys' fees as permitted by law; and

(f) Such other and further relief as this Court may deem proper.

Dated: November 5, 2003

Respectfully submitted,

[signature]

Alex D. Tomaszczuk
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, VA 22102
(703) 770-7940 – telephone
(703) 770-7901 – facsimile

Counsel of Record for Plaintiff
System Fuels, Inc., on its own behalf
and as agent for Entergy Arkansas, Inc.

*Of Counsel*:
Jay E. Silberg
Devon E. Hewitt
Daniel S. Herzfeld
Jack Y. Chu
SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000

Joseph L. Blount
Entergy Services, Inc.
Legal and External Affairs
P.O. Box 31995
Jackson, MS 39286-1995

Document #: 1250807 v.4

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on August 18, 2006)

| | |
|---|---|
| **SYSTEM FUELS, INC.,** on its own behalf and as agent for SYSTEM ENERGY RESOURCES, INC. and SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant. | No. 03-2624C<br>(Judge Braden) |

**<u>PLAINTIFF'S WITNESS LIST</u>**

Pursuant to the Court's February 27, 2006 Scheduling Order and Appendix A ¶ 15(a) of the Rules of the Court of Federal Claims, Plaintiff System Fuels, Inc. ("SFI"), on its own behalf and as agent for System Energy Resources, Inc. and South Mississippi Electric Power Association,[1] hereby submits its list of witnesses for the damages trial scheduled to commence on September 18, 2006. Consistent with RCFC Appendix A ¶ 15(a), this list does not contain witnesses that SFI may choose to use for impeachment. SFI reserves the right to amend this list as described in the RCFC or as may otherwise be permitted by the Court. SFI also reserves the right to call any and all witnesses on Defendant's witness list.

[1] For purposes of this witness list, the term "Entergy" will be used as shorthand for companies such as Entergy Services, Inc. and Entergy Operations, Inc. that, like SFI, are affiliate subsidiaries of Entergy Corporation.

**A. <u>Fact Witnesses SFI Expects to Call</u>**

1. William A. Eaton
Vice President of Engineering
Entergy Operations, Inc.
1340 Echelon Parkway
Jackson, MS 39213
(601) 368-5390

Time Needed for Direct Examination: 3 hours

Mr. Eaton will testify regarding the effects of DOE's breach of the Standard Contract on Entergy generally, the effect of the dry fuel storage project on Entergy personnel resources, the location, purpose and operations of the nuclear reactor and spent fuel pool at the Grand Gulf Nuclear Station ("Grand Gulf"), and the need for a dry fuel storage facility at Grand Gulf.

2. Charles B. Franklin
Manager of Project Management
Entergy Services, Inc.
1340 Echelon Parkway
Jackson, MS 39213
(601) 368-5430

Time Needed for Direct Examination: 5 hours

Mr. Franklin will testify regarding various aspects of the plant operations at Grand Gulf including, *inter alia*, spent nuclear fuel discharges at Grand Gulf, the capacity of the Grand Gulf spent fuel pool, Entergy's plans to build a dry fuel storage facility at Grand Gulf in light of DOE's breach of the Standard Contract, options considered in the decision to build a dry fuel storage facility, and DOE's obligations to accept spent nuclear fuel from Grand Gulf. Mr. Franklin will also testify regarding Entergy's planning and coordination related to the expansion of on-site storage of spent nuclear fuel facilities among its various nuclear plants, as well as Entergy's spent fuel acceptance rate models.

3. John McGaha
President
Entergy Operations, Inc.
1340 Echelon Parkway
Jackson, MS 39213
(601) 368-5690

Time Needed for Direct Examination: 2 hours

Mr. McGaha will testify regarding the general management of Entergy's nuclear facilities, including the location, purpose, and operations of the nuclear reactor and spent fuel pool at Grand Gulf, and the effects of DOE's breach of the Standard Contract on Entergy generally and in particular on the utilization of personnel and other resources at Grand Gulf as a result of DOE's breach.

4. Frank B. Rives
Director of Nuclear Fuels
Entergy Services, Inc.
1340 Echelon Parkway
Jackson, MS 39213
(601) 368-5750

Time Needed for Direct Examination: 5 hours

Mr. Rives will testify regarding the administration of the Standard Contract for Grand Gulf that SFI executed with DOE, and Entergy's understanding of DOE's obligations and performance under the Standard Contract. Mr. Rives will also testify regarding Entergy's overall planning efforts with respect to additional on-site storage of spent nuclear fuel at Entergy's fleet of nuclear plants as a result of DOE's breach, including procurement of a dry cask system for use at Grand Gulf and other Entergy plants.



600182231v1

5. Edwin E. Rogers
Superintendent of Maintenance Support
Entergy Operations, Inc.
Grand Gulf Nuclear Station
P.O. Box 756
Port Gibson, MS 39150
(601) 437-7311

Time Needed for Direct Examination: 2 hours

Mr. Rogers will testify regarding Entergy's management of the work by contractors (in particular, but not limited to, the performance, quality, and cost-effectiveness) on the dry fuel storage facility and related projects at Grand Gulf.

6. Bryan E. Warren
Project Manager, Dry Fuel Storage Project
Entergy Operations, Inc.
Grand Gulf Nuclear Station
P.O. Box 756
Port Gibson, MS 39150
(601) 437-6245

Time Needed for Direct Examination: 5 hours

Mr. Warren will testify regarding various aspects of the Grand Gulf dry fuel storage project including, *inter alia*, the decision to build a dry fuel storage facility, the tasks comprising the project, the design and construction of the dry fuel storage facility, costs incurred on the dry fuel storage project, and the necessary modifications to the Grand Gulf facility to accommodate the dry fuel storage project.

Case 1:03-cv-02624-SGB Document 112 Filed 08/05/2007 Page 5 of 10

**B. Fact Witnesses SFI May Call If the Need Arises**[2]

1. Diane M. Bryars
Manager of Source Systems Accounting
Entergy Services, Inc.
639 Loyola Avenue
New Orleans, LA 70113
(985) 340-2668

Ms. Bryars will testify, as may be required, regarding the accounting documents and records that Entergy compiled in support of SFI damages incurred as a result of the Department of Energy's ("DOE") breach of the Standard Contract. Her testimony may also address how Entergy accounts for various costs, including but not limited to capital projects and overheads.

2. Theodore Bunting
Vice President and Chief Financial Officer
System Energy Resources, Inc.
1340 Echelon Parkway
Jackson, MS 39213
(601) 368-5290

Mr. Bunting will testify, as may be required, regarding how Entergy accounts for various costs, including but not limited to cost of capital and Entergy's capital project financing practices.

3. Lee Ann Canova
Manager of Intrasystem Billings
Entergy Services, Inc.
639 Loyola Avenue
New Orleans, LA 70113
(504) 576-2289

Ms. Canova will testify, as may be required, regarding the accounting documents and records that Entergy compiled in support of SFI damages incurred as a result of DOE's breach of

---

[2] If SFI calls any of the witnesses in this category (B), SFI expects the time needed for direct examination of any such witness to be one hour or less.

the Standard Contract. Her testimony may also address how Entergy accounts for various costs, including but not limited to capital projects and overheads.

4. Linda K. Harris
Senior Lead Procurement Specialist
Entergy Services, Inc.
1340 Echelon Parkway
Jackson, MS 39213
(601) 368-5317

Ms. Harris will testify, as may be required, regarding procurement matters at Entergy related to the dry fuel storage project at Grand Gulf.

5. C. Randy Hutchinson
Senior Vice President, Nuclear Business Development
Entergy Nuclear
1340 Echelon Parkway
Jackson, MS 39213
(601) 368-5294

Mr. Hutchinson will testify, as may be required, regarding the resource utilization at Grand Gulf as a result of DOE's breach of the Standard Contract and Entergy's management of the Grand Gulf dry fuel storage project.

6. Johnnie M. Rockingham
Senior Financial Analyst
Entergy Operations, Inc.
Grand Gulf Nuclear Station
P.O. Box 756
Port Gibson, MS 39150
(601) 437-6445

Ms. Rockingham will testify, as may be required, regarding Entergy's processing of invoices and work orders, and creation of budget and cost reports for the dry fuel storage project at Grand Gulf.

7. Lisa Dabello Saragusa
Manager of Property Accounting
Entergy Services, Inc.
639 Loyola Avenue
New Orleans, LA 70113
(504) 576-6752

Ms. Saragusa will testify, as may be required, regarding the accounting documents and records that Entergy compiled in support of SFI damages incurred as a result of DOE's breach of the Standard Contract. Her testimony may also address how Entergy accounts for various costs, including but not limited to capital projects, overheads, and cost of capital.

8. Joe S. Simpson, Jr.
Materials Project Coordinator
Entergy Operations, Inc.
Grand Gulf Nuclear Station
P.O. Box 756
Port Gibson, MS 39150
(601) 437-2461

Mr. Simpson will testify, as may be required, regarding the procurement of materials for the dry fuel storage project using Entergy's Passport system.

9. Kenneth L. Walker
Reactor Engineering Superintendent
Entergy Operations, Inc.
Grand Gulf Nuclear Station
P.O. Box 756
Port Gibson, MS 39150
(601) 437-2119

Mr. Walker will testify, as may be required, regarding the technical aspects of operating the Grand Gulf spent fuel pool, nuclear fuel management and characterization activities, as well as Entergy's cell recovery efforts for the Grand Gulf spent fuel pool.

10. Dennis P. Wiles
Director of Engineering
Entergy Operations, Inc.
Grand Gulf Nuclear Station
P.O. Box 756
Port Gibson, MS 39150
(601) 437-6169

Mr. Wiles will testify, as may be required, regarding the resource requirements and utilization at Grand Gulf and Entergy's decision to build a dry fuel storage facility at Grand Gulf as a result of DOE's breach of the Standard Contract.

11. Michael D. Withrow
Manager of Nuclear Engineering
Entergy Operations, Inc.
Grand Gulf Nuclear Station
P.O. Box 756
Port Gibson, MS 39150
(601) 437-6247

Mr. Withrow will testify, as may be required, regarding the plant operations at Grand Gulf, including Entergy's spent fuel pool expansion efforts and its decision to build a dry fuel storage facility at Grand Gulf in light of DOE's breach of the Standard Contract. Mr. Withrow will also testify regarding the necessary modifications to the Grand Gulf facility to accommodate the dry fuel storage project.

12. David Zabransky
Contracting Officer
Office of Civilian Radioactive Waste Management
U.S. Department of Energy
1000 Independence Avenue, SW
Washington, DC 20585

Mr. Zabransky will provide testimony regarding DOE's administration and operation of the Civilian Radioactive Waste Management Program, including, *inter alia*, DOE's suspension of the Delivery Commitment Schedule process.

Case 1:03-cv-02624-SGB Document 117 Filed 10/15/2007 Page 9 of 10

**C. <u>Expert Witnesses SFI Expects to Call</u>**

1. Kenneth P. Metcalfe
President
The Kenrich Group, LLC
1200 New Hampshire Avenue, NW, Suite 410
Washington, DC 20036
(202) 420-7681

Time Needed for Direct Examination: 4 hours[3]

Mr. Metcalfe will testify as an expert regarding SFI's overall damages theory and approach, the Kenrich fuel management and damages models underlying SFI's claim, the accounting and economic variables/assumptions (e.g., past financing, inflation) underlying the claim, and the propriety of the cost elements incorporated in the Kenrich model (including Entergy's accounting system). Mr. Metcalfe will also testify regarding the individual components of SFI's damages claim, and in particular the determination and support for Entergy's costs in the actual and non-breach worlds that relate to, *inter alia*, spent fuel pool modifications at Grand Gulf and dry fuel storage-related costs at Grand Gulf. Mr. Metcalfe's opinions and the grounds for these opinions are set forth in his expert report, co-authored with Richard J. Sieracki.

2. Eileen M. Supko
Senior Consultant
Energy Resources International, Inc.
1015 18th Street, NW, Suite 650
Washington, DC 20036
(202) 785-8833

Time Needed for Direct Examination: 2 hours

[3] Based on previous instructions from the Court, Plaintiff is preparing to submit the direct testimony of its expert witnesses in written, narrative format. To the extent no time is needed for the direct examination of its expert witnesses, Plaintiff reserves the right to allocate that time to its fact witnesses, as may be required.

Ms. Supko will testify as an expert regarding the rate at which DOE would have accepted spent nuclear fuel from Grand Gulf, had DOE begun acceptance of spent nuclear fuel in accordance with the Nuclear Waste Policy Act and Standard Contract, and the rate at which DOE is expected to accept spent nuclear fuel from Grand Gulf, once DOE begins receipt of spent fuel at the Yucca Mountain repository. Ms. Supko will also provide testimony regarding general spent fuel storage practices and related technical issues in the nuclear industry. Ms. Supko's opinions and the grounds for these opinions are set forth in her expert reports.

Dated: August 18, 2006

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Jack Y. Chu
Alex D. Tomaszczuk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102-4859
(703) 770-7940
(703) 770-7901 (fax)

Counsel of Record for Plaintiff
System Fuels, Inc., on its own behalf
and as agent for System Energy Resources, Inc.
and South Mississippi Electric Power Association

OF COUNSEL:
Jay E. Silberg
Walter F. Zenner
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)

L. Jager Smith, Jr.
**WISE CARTER CHILD**
**& CARAWAY, P.A.**
1340 Echelon Parkway
Jackson, MS 39213
601-368-5572
601-368-5816 (fax)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on December 22, 2006)

| | |
|---|---|
| **SYSTEM FUELS, INC.** and **ENTERGY ARKANSAS, INC.**, <br> Plaintiffs, <br> v. <br> **THE UNITED STATES**, <br> Defendant. | No. 03-2623C <br> (Judge Lettow) |

**PLAINTIFFS' WITNESS LIST**

Pursuant to the Court's December 8, 2006 Scheduling Order, Plaintiffs System Fuels, Inc. and Entergy Arkansas, Inc.[1] hereby submit their list of witnesses for the damages trial scheduled to commence on February 13, 2007. Consistent with RCFC Appendix A ¶ 13(b), this list does not contain witnesses that Plaintiffs may choose to use for impeachment. Plaintiffs reserve the right to amend this list as described in the RCFC or as may otherwise be permitted by the Court. Plaintiffs also reserve the right to call any and all witnesses on Defendant's witness list.

[1] For purposes of this witness list, the term "Entergy" will be used as shorthand for companies such as Entergy Services, Inc. and Entergy Operations, Inc. that, like Plaintiffs, are affiliate subsidiaries of Entergy Corporation.

400496346v1

**Fact Witnesses**

1. Diane M. Bryars
Manager of Source Systems Accounting
Entergy Services, Inc.
639 Loyola Avenue
New Orleans, LA 70113
(985) 340-2668

Ms. Bryars will testify, as may be required, regarding the accounting documents and records that Entergy compiled in support of Plaintiffs' damages incurred as a result of the Department of Energy's ("DOE") breach of the Standard Contract. Her testimony may also address how Entergy accounts for various costs, including but not limited to capital projects and overheads.

2. Lee Ann Canova
Manager of Intrasystem Billings
Entergy Services, Inc.
639 Loyola Avenue
New Orleans, LA 70113
(504) 576-2289

Ms. Canova will testify, as may be required, regarding the accounting documents and records that Entergy compiled in support of Plaintiffs' damages incurred as a result of DOE's breach of the Standard Contract. Her testimony may also address how Entergy accounts for various costs, including but not limited to capital projects and overheads.

3. Rhonda Dare
Senior Lead Financial Analyst
Entergy Operations, Inc.
Arkansas Nuclear One
1448 S.R. 333, N-GSB-1C
Russellville, AR 72802
(479) 858-5311

Ms. Dare will testify, as may be required, regarding the invoices and work orders

underlying the dry fuel storage project at the Arkansas Nuclear One ("ANO") plant, and the preparation of budgets and cost reports for the dry fuel storage project at ANO.

4. William A. Eaton
Vice President of Engineering
Entergy Operations, Inc.
1340 Echelon Parkway
Jackson, MS 39213
(601) 368-5390

Mr. Eaton will testify, as may be required, regarding the effects of DOE's continuing breach of the Standard Contract on Entergy generally, the effect of the dry fuel storage and Boraflex mitigation projects on Entergy's personnel resources at ANO, the location, purpose and operations of the nuclear reactor and spent fuel pools at ANO, and the need for an expanded dry fuel storage facility at ANO.

5. Terry Grant Ehren
Project Manager, Metamic and Poison Panel Projects
Entergy Operations, Inc.
Arkansas Nuclear One
1448 S.R. 333, N-GSB-62
Russellville, AR 72802
(479) 858-4391

Mr. Ehren will testify regarding the Boraflex mitigation projects at ANO including, *inter alia*, the tasks and work orders comprising these projects, the costs incurred on these projects, and the necessary modifications to the ANO facility to accommodate these projects.

6. David Eichenberger
Project Manager, Dry Fuel Storage Project
Entergy Operations, Inc.
Arkansas Nuclear One
1448 S.R. 333, N-TSB-50
Russellville, AR 72802
(479) 858-4079

Mr. Eichenberger will testify regarding Entergy's management of its contract with Holtec

International, Inc. ("Holtec") for the fabrication and use of Holtec's dual-purpose systems in the dry fuel storage facility at ANO. His testimony will also address the resources and personnel required to load dry fuel storage casks at ANO, and the necessary modifications to the ANO facility to accommodate such cask loading.

7. Charles B. Franklin
Manager of Project Management
Entergy Services, Inc.
1340 Echelon Parkway
Jackson, MS 39213
(601) 368-5430

Mr. Franklin will testify regarding various aspects of the plant operations at ANO including, *inter alia*, the spent nuclear fuel discharges at ANO, the capacity of the ANO spent fuel pools, the expanded dry fuel storage facility built at ANO in light of DOE's continuing breach of the Standard Contract, the options considered by Entergy during the ANO dry fuel storage project, and DOE's obligations to accept spent nuclear fuel from ANO. Mr. Franklin will also testify regarding Entergy's planning and coordination for the expansion of on-site spent nuclear fuel storage facilities among its various nuclear plants, as well as Entergy's spent fuel acceptance rate models.

8. Patricia Galbraith
Director, State and Local Taxes
Entergy Services, Inc.
639 Loyola Avenue
New Orleans, LA 70113
(504) 576-4407

Ms. Galbraith will testify, as may be required, regarding how Entergy accounts for property taxes and the method used to calculate the increased property taxes incurred from the dry fuel storage project at ANO.

9. Danny C. Hughes
Supervisor, Materials
Entergy Operations, Inc.
Arkansas Nuclear One
1448 S.R. 333, N-WHS-3
Russellville, AR 72802
(479) 858-4692

Mr. Hughes will testify, as may be required, regarding the procurement of materials for the dry fuel storage and Boraflex mitigation projects at ANO using Entergy's Passport system.

10. Joe A. Kowalewski
Director, Engineering
Entergy Operations, Inc.
Arkansas Nuclear One
1448 S.R. 333, N-ADM-22
Russellville, AR 72802
(479) 858-4400

Mr. Kowalewski will testify, as may be required, regarding Entergy's decisions to expand the dry fuel storage facility at ANO and to begin the Boraflex mitigation projects as a result of DOE's continuing breach of the Standard Contract. His testimony may also address the resource requirements and utilization of personnel at ANO associated with these projects.

11. Nathan E. Langston
Senior Vice President and Chief Accounting Officer
Entergy Services, Inc.
639 Loyola Avenue
New Orleans, LA 70113
(504) 576-4326

Mr. Langston will testify, as may be required, regarding Entergy's accounting practices generally including, *inter alia,* the accounting of the one-time fee payment obligation for ANO and the company's plans for the payment thereof.

12. Donald B. Lomax
Manager, Nuclear Fuel Services
Entergy Operations, Inc.
Arkansas Nuclear One
1448 S.R. 333, N-TSB-51
Russellville, AR 72802
(479) 858-5598

Mr. Lomax will testify regarding the plant operations at ANO including, *inter alia*, Entergy's spent fuel pool cell recovery and Boraflex mitigation efforts and its decision to expand the dry fuel storage facility at ANO in light of DOE's continuing breach of the Standard Contract. His testimony will also address the necessary modifications to the ANO facility to accommodate the dry fuel storage project and the loading of dry fuel storage casks at ANO.

13. Jaime McCoy, Ph.D.
Superintendent, Reactor Engineering
Arkansas Nuclear One
1448 S.R. 333, N-SYS-4
Russellville, AR 72802
(479) 858-5525

Dr. McCoy will testify regarding the technical aspects of operating and managing the ANO spent fuel pools including, *inter alia*, the selection of fuel from the pools for the dry fuel storage facility at ANO and the effects of Boraflex degradation on the spent fuel pools.

14. John McGaha
President
Entergy Operations, Inc.
1340 Echelon Parkway
Jackson, MS 39213
(601) 368-5690

Mr. McGaha will testify regarding the general management of Entergy's nuclear facilities, including the location, purpose, and operations of the nuclear reactor and spent fuel pools at ANO, and the effects of DOE's continuing breach of the Standard Contract on Entergy generally. In particular, his testimony may focus on the utilization of personnel and other

resources at ANO as a result of DOE's breach.

15. Robert L. Morgan
Former Acting Director, Office of Civilian Radioactive Waste Management Program
P.O. Box 2589
Monument, CO 80132
(719) 559-3579

Mr. Morgan will testify, as may be required, regarding the formation and implementation of the Nuclear Waste Policy Act and the Standard Contract.

16. Thomas E. Pollog
Nuclear Engineer and Contracting Officer's Technical Representative
Office of Civilian Radioactive Waste Management
U.S. Department of Energy
1000 Independence Avenue, SW
Washington, DC 20585
(202) 586-4153

Mr. Pollog will testify, as may be required, regarding DOE's spent fuel discharge projections model and DOE's Delivery Commitment Schedule process.

17. Frank B. Rives
Director of Nuclear Fuels
Entergy Services, Inc.
1340 Echelon Parkway
Jackson, MS 39213
(601) 368-5750

Mr. Rives will testify regarding the administration of the Standard Contract for ANO that System Fuels, Inc. executed with DOE, and Entergy's understanding of DOE's obligations and performance under the Standard Contract. Mr. Rives will also testify regarding Entergy's overall planning efforts with respect to additional on-site storage of spent nuclear fuel at Entergy's fleet of nuclear plants as a result of DOE's continuing breach, including the procurement of a dry cask system from Holtec for use at ANO and other Entergy plants.

18. Lisa Dabello Saragusa
Manager of Property Accounting
Entergy Services, Inc.
639 Loyola Avenue
New Orleans, LA 70113
(504) 576-6752

Ms. Saragusa will testify, as may be required, regarding the accounting documents and records that Entergy compiled in support of Plaintiffs' damages incurred as a result of DOE's breach of the Standard Contract. Her testimony may also address how Entergy accounts for various costs, including but not limited to capital projects, overheads, and cost of capital.

19. Christopher D. Walker
Senior Engineer
Entergy Operations, Inc.
Arkansas Nuclear One
1448 S.R. 333, N-SYS-4
Russellville, AR 72802
(479) 858-4664

Mr. Walker will testify, as may be required, regarding the dry fuel storage project, the Boraflex mitigation projects, and the spent fuel pool management practices at ANO.

20. Darrell Williams
Engineer
Waterloo Road, G-ESC3-NPE
Port Gibson, MS 39150
(601) 437-6186

Mr. Williams will testify regarding the development of the dry fuel storage project at ANO including, *inter alia*, Entergy's decision to build the dry fuel storage facility, the tasks comprising the project, the design and construction of the dry fuel storage facility, the costs incurred on the dry fuel storage project, and the necessary modifications to the ANO facility to accommodate the project.

21. David Zabransky
Contracting Officer
Office of Civilian Radioactive Waste Management
U.S. Department of Energy
1000 Independence Avenue, SW
Washington, DC 20585

Mr. Zabransky will provide testimony regarding DOE's administration and operation of the Civilian Radioactive Waste Management Program, including, *inter alia*, DOE's suspension of the Delivery Commitment Schedule process.

**Expert Witnesses**

1. Kenneth P. Metcalfe
President
The Kenrich Group, LLC
1200 New Hampshire Avenue, NW
Suite 410
Washington, DC 20036
(202) 420-7681

Mr. Metcalfe will testify as an expert regarding Plaintiffs' overall damages theory and approach, the Kenrich fuel management and damages models underlying Plaintiffs' claim, the accounting and economic variables/assumptions (e.g., past financing, inflation) underlying the claim, and the propriety of the cost elements incorporated in the Kenrich model (including Entergy's accounting system). Mr. Metcalfe will also testify regarding the individual components of Plaintiffs' damages claim, and in particular the determination and support for Entergy's costs in the actual and non-breach worlds that relate to, *inter alia*, the spent fuel pool and other plant modifications at ANO and dry fuel storage-related costs at ANO. Mr. Metcalfe's opinions and the grounds for these opinions are set forth in his expert report dated January 20, 2006 and the report supplement submitted to Defendant on August 16, 2006.

2. Eileen M. Supko
Senior Consultant
Energy Resources International, Inc.
1015 18th Street, NW
Suite 650
Washington, DC 20036
(202) 785-8833

Ms. Supko will testify as an expert regarding the rate at which DOE would have accepted spent nuclear fuel from ANO, had DOE begun acceptance of spent nuclear fuel in accordance with the Nuclear Waste Policy Act and Standard Contract, and the rate at which DOE is expected to accept spent nuclear fuel from ANO, once DOE begins receipt of spent fuel at the Yucca Mountain repository. Ms. Supko will also provide testimony regarding general spent fuel storage practices and related technical issues in the nuclear industry. Ms. Supko's opinions and the grounds for these opinions are set forth in her expert reports dated December 21, 2005.

Dated: December 22, 2006

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Jack Y. Chu
Alex D. Tomaszczuk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, Virginia 22102-4859
(703) 770-7940
(703) 770-7901 (fax)

Counsel of Record for Plaintiffs
System Fuels, Inc. and
Entergy Arkansas, Inc.

Of Counsel:
Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037-1128
(202) 663-8000
(202) 663-8007 (fax)

L. Jager Smith, Jr.
**WISE CARTER CHILD**
**& CARAWAY, P.A.**
1340 Echelon Parkway
Jackson, MS 39213
(601) 368-5572
(601) 368-5816 (fax)

400496346v1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Electronically Filed on August 18, 2006)

| | |
|---|---|
| **SYSTEM FUELS, INC.,** on its own behalf and as agent for SYSTEM ENERGY RESOURCES, INC. and SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant. | No. 03-2624C<br>(Judge Braden) |

**NOTICE OF DEPOSITION & TRIAL TESTIMONY DESIGNATIONS**

Plaintiff System Fuels, Inc. ("SFI"), on its own behalf and as agent for System Energy Resources, Inc. ("SERI") and South Mississippi Electric Power Association ("SMEPA"), respectfully submits certain designated deposition and prior trial testimony of witnesses of the United States ("the Government") that it intends to use as substantive evidence in its case-in-chief. A listing identifying the witnesses and specific transcript pages and lines is attached hereto. Because this testimony derives from the Government's agents or employees, it is admissible as substantive evidence pursuant to Fed. R. Evid. 801(d)(2) as admissions by a party-opponent. *See Globe Savings Bank*, *F.S.B. v. United States*, 61 Fed. Cl. 91, 96-97 (2004).

In this regard, RCFC Appendix A, ¶ 15(b) provides that a party must move for leave to file designations of substantive testimony, *except "as provided by Fed. R. Evid. 801(d)."* RCFC Appendix A, ¶ 15(b) (emphasis added). Because SFI's designations are pursuant to Fed. R. Evid. 801(d), SFI has filed this notice (as a motion does not appear to be required by the rules). *See Globe Savings*, 61 Fed. Cl. at 96. In this regard, this filing provides notice to the

400442055v2

Government and this Court regarding these designations. SFI will be prepared to file the listed pages with the Court (and serve the Government) prior to commencement of trial.

Ultimately, SFI seeks to have the designated deposition and prior trial testimony admitted to streamline the parties' trial preparation and reduce trial time and costs. SFI reserves its right to supplement these designations based on any of the Government's counter-designations (should it have any) or if SFI gains the opportunity to depose the Government's proposed trial witnesses.[1]

Dated: August 18, 2006

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Daniel S. Herzfeld
Alex D. Tomaszczuk
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102-4859
(703) 770-7940
(703) 770-7901 (fax)

Counsel of Record for Plaintiff System Fuels, Inc., on its own behalf and as agent for System Energy Resources, Inc. and South Mississippi Electric Power Association

OF COUNSEL:
Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)

L. Jager Smith, Jr.
**WISE CARTER CHILD & CARAWAY, P.A.**
1340 Echelon Parkway
Jackson, MS 39213
601-368-5572
601-368-5816 (fax)

[1] By letter dated August 9, 2006, the Government refused SFI's July 20, 2006 request to update the depositions of four Government witnesses, all of whom appear on the Government's witness list of August 11, 2006, and none of whom have been deposed in this case (these individuals were deposed by SFI's counsel in other proceedings several years ago). Between SFI's case-in-chief (in September 2006) and the Government's case-in-chief (in January 2007), SFI intends to take appropriate steps to compel the depositions of these Government witnesses. SFI reserves its right to supplement its designations prior to the Government's case-in-chief and present those designations at trial in January 2007.

**ATTACHMENT 1**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on August 18, 2006)

| | | |
|---|---|---|
| **SYSTEM FUELS, INC.,** on its own behalf and as agent for SYSTEM ENERGY RESOURCES, INC. and SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION, | ) | |
| Plaintiff, | ) | No. 03-2624C (Judge Braden) |
| v. | ) | |
| **THE UNITED STATES,** | ) | |
| Defendant. | ) | |

**DEPOSITION & TRIAL TESTIMONY DESIGNATIONS**

**Lake Barrett**

**Dep. Testimony (Apr. 22, 2002)**
10:21 through 11:8
49:2 through 60:22
74:2 through 74:15
76:12 through 76:19
85:3 through 94:8
117:3 through 123:2
137:11 through 139:20
153:3 through 156:19
197:4 through 198:10
217:1 through 220:2

**Dep. Testimony (Apr. 23, 2002)**
348:1 through 350:11

**Dep. Testimony (Apr. 26, 2002)**
739:1 through 742:13
795:5 through 798:9

400442055v2

**Dep. Testimony (May 10, 2002)**
1163:1 through 1166:7
1284:19 through 1286:7
1332:1 through 1335:18
1368:10 through 1371:21

**Trial Testimony, *Tennessee Valley Authority v. US* (Jun. 24, 2005)**
818:1 through 819:20
824:17 through 826:25

**John Bartlett**

**Trial Testimony, *Yankee Atomic Electric Co., et al. v. US* (July 14, 2004)**
609:5 through 613:8
614:2 through 615:23
617:4 through 621:13
633:8 through 640:15
643:11 through 647:18

**Alan Brownstein**

**Dep. Testimony (Apr. 9, 2002)**
9:18 through 10:14
136:7 through 136:25

**Dep. Testimony (Apr. 10, 2002)**
276:6 through 276:17
282:5 through 283:15
299:15 through 299:20
328:19 through 328:21
376:22 through 378:5
405:16 through 405:20

**Dep. Testimony (Apr. 11, 2002)**
514:1 through 519:9

**Dep. Testimony (June 14, 2002)**
282:1 through 282:25
427:16 through 427:25

**Billy Cole**:

**Dep. Testimony (Mar. 12, 2002)**
8:10 through 9:25
55:2 through 55:25
75:1 through 75:14
129:2 through 130:22

Case 1:03-cv-02624-SGB Document 110-8 Filed 01/05/2007 Page 5 of 7

173:3 through 176:24
180:1 through 180:24
201:20 through 202:24
204:1 through 206:23
225:15 through 226:18

**Dep. Testimony (June 4, 2002)**
199:5 through 200:11

**Susan Klein**:

**Dep. Testimony (Apr. 24, 2002)**
11:10 through 12:15
151:6 through 151:20

**Christopher Kouts**

**Trial Testimony, *Tennessee Valley Authority v. US* (Jul. 12, 2005)**
1567:15 through 1568:7
1569:4 through 1570:17
1571:1 through 1580:24

**Michael Lawrence**

**Dep. Testimony (May 20, 2002)**
86:7 through 88:22
130:7 through 131:16
142:10 through 145:24

**Dep. Testimony (May 21, 2002)**
301:20 through 305:4

**Ronald Milner**:

**Dep. Testimony (May 1, 2002)**
11:23 through 12:8
31:1 through 31:22
73:10 through 73:22

**Dep. Testimony (May 2, 2002)**
555:8 through 556:12

**Dep. Testimony (May 7, 2002)**
661:4 through 661:24

**Trial Testimony, *Yankee Atomic Electric Co., et al. v. US* (Aug. 11, 2004)**
4711:23 through 4712:3
4723:9 through 4723:17

**<u>Robert Morgan</u>**

**Dep. Testimony (Mar. 21, 2002)**
24:10 through 24:24
37:9 through 44:4
137:3 through 144:10

**Dep. Testimony (June 25, 2002)**
134:12 through 135:14

**Trial Testimony, *Yankee Atomic Electric Co., et al. v. US* (Aug. 11, 2004)**
3674:16 through 3686:22

**<u>Thomas Pollog</u>**

**Dep. Testimony (Apr. 11, 2002)**
20:9 through 21:4
96:1 through 97:17

**Dep. Testimony (May 16, 2002)**
293:3 through 294:23

**Trial Testimony, *Yankee Atomic Electric Co., et al. v. US* (Aug. 4, 2004)**
4012:19 through 4021:9
4021:18 through 4023:11

**Trial Testimony, *Tennessee Valley Auth. v. US* (June 24, 2005)**
908:6 through 909:24
916:2 through 918:8

**Trial Testimony, *Tennessee Valley Auth. v. US* (July 12, 2005)**
1365:9 through 1367:10

**Trial Testimony, *Tennessee Valley Auth. v. US* (July 12, 2005)**
1662:8 through 1666:18

**<u>Nancy Slater (Thompson)</u>**

**Dep. Testimony (Apr. 22, 1999)**
242:18 through 245:21

**Dep. Testimony (June 13, 2002)**
5:2 through 7:4
98:1 through 99:25
108:20 through 110:13

<u>**Victor Trebules**</u>

**Dep. Testimony (Apr. 17, 2002)**
17:7 through 18:17
52:11 through 53:21
97:2 through 99:1

**Dep. Testimony (Apr. 18, 2002)**
19:7 through 20:16

<u>**David Zabransky**</u>

**Dep. Testimony (Apr. 17, 2002)**
16:11 through 16:19
30:6 through 42:13
45:2 through 52:8
57:1 through 59:14
76:13 through 79:19
89:3 through 92:17
105:6 through 105:14
129:9 through 132:22

**Dep. Testimony (Apr. 18, 2002)**
323:2 through 326:17
343:2 through 366:22
431:4 through 442:22

**Dep. Testimony (Apr. 19, 2002)**
596:1 through 626:16
668:2 through 671:20

**Dep. Testimony (June 6, 2002)**
246:1 through 247:25

**Trial Testimony**, ***Yankee Atomic Electric Co., et al. v. US*** **(Aug. 5, 2004)**
4110:15 through 4112:3
4118:2 through 4118:12
4166:3 through 4167:16

**Trial Testimony, *Tennessee Valley Auth. v. US* (June 24, 2005)**
929:3 through 929:18

**Trial Testimony, *Tennessee Valley Auth. v. US* (July 12, 2005)**
1743:13 through 1743:25

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on December 22, 2006)

| | | |
|---|---|---|
| **SYSTEM FUELS, INC.** and<br>**ENTERGY ARKANSAS, INC.**,<br><br>Plaintiffs,<br><br>v.<br><br>**THE UNITED STATES**,<br><br>Defendant. | ) | No. 03-2623C<br>(Judge Lettow) |

**NOTICE OF DEPOSITION & TRIAL TESTIMONY DESIGNATIONS**

Plaintiffs System Fuels, Inc. and Entergy Arkansas, Inc. (together "SFI") respectfully submit certain designated deposition and prior trial testimony of witnesses of the United States ("the Government") that it intends to use as substantive evidence in its case-in-chief. A listing identifying the witnesses and specific transcript pages and lines is attached hereto. Because this testimony derives from the Government's agents or employees, it is admissible as substantive evidence pursuant to Fed. R. Evid. 801(d)(2) as admissions by a party-opponent. *See Globe Savings Bank, F.S.B. v. United States*, 61 Fed. Cl. 91, 96-97 (2004).

In this regard, RCFC Appendix A, ¶ 15(b) provides that a party must move for leave to file designations of substantive testimony, *except "as provided by Fed. R. Evid. 801(d)."* RCFC Appendix A, ¶ 15(b) (emphasis added). Because SFI's designations are pursuant to Fed. R. Evid. 801(d), SFI has filed this notice (as a motion does not appear to be required by the rules). *See Globe Savings*, 61 Fed. Cl. at 96. In this regard, this filing provides notice to the Government and this Court regarding these designations. SFI will be prepared to file the listed pages with the Court (and serve the Government) prior to commencement of trial.

400505249v1

Case 1:03-cv-02624-GBL Document 101-7 Filed 01/25/2006 Page 3 of 7

Ultimately, SFI seeks to have the designated deposition and prior trial testimony admitted to streamline the parties' trial preparation and reduce trial time and costs. SFI reserves its right to supplement these designations, among other reasons, to respond to any of the Government's counter-designations (should it have any), to include recent testimony from the trial in *Northern States Power Co. v. United States*, No. 98-484C (Wiese, S.J.) that concluded on December 11, 2006, and to otherwise assure that the testimony presented meets the requirements of Fed. R. Evid. 801(d).

Dated: December 22, 2006

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Daniel S. Herzfeld
Alex D. Tomaszczuk
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102-4859
(703) 770-7940
(703) 770-7901 (fax)

Counsel of Record for Plaintiffs
System Fuels, Inc. and
Entergy Arkansas, Inc.

OF COUNSEL:
Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)

L. Jager Smith, Jr.
**WISE CARTER CHILD & CARAWAY, P.A.**
1340 Echelon Parkway
Jackson, MS 39213
(601) 368-5572
(601) 368-5816 (fax)

**ATTACHMENT 1**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on December 22, 2006)

**SYSTEM FUELS, INC.** and
**ENTERGY ARKANSAS, INC.**,

Plaintiffs,

v.

**THE UNITED STATES**,

Defendant.

No. 03-2623C
(Judge Lettow)

**DEPOSITION & TRIAL TESTIMONY DESIGNATIONS**

**Lake Barrett**

**Dep. Testimony (Apr. 22, 2002)**
10:21 through 11:8
49:2 through 60:22
74:2 through 74:15
76:12 through 76:19
85:3 through 94:8
117:3 through 123:2
137:11 through 139:20
153:3 through 156:19
197:4 through 198:10
217:1 through 220:2

**Dep. Testimony (Apr. 23, 2002)**
348:1 through 350:11

**Dep. Testimony (Apr. 26, 2002)**
739:1 through 742:13
795:5 through 798:9

**Dep. Testimony (May 10, 2002)**
1163:1 through 1166:7
1284:19 through 1286:7

1332:1 through 1335:18
1368:10 through 1371:21

**Trial Testimony, *Tennessee Valley Authority v. US* (Jun. 24, 2005)**
818:1 through 819:20
824:17 through 826:25

**John Bartlett**

**Trial Testimony, *Yankee Atomic Electric Co., et al. v. US* (July 14, 2004)**
609:5 through 613:8
614:2 through 615:23
617:4 through 621:13
633:8 through 640:15
643:11 through 647:18

**Alan Brownstein**

**Dep. Testimony (Apr. 9, 2002)**
9:18 through 10:14
136:7 through 136:25

**Dep. Testimony (Apr. 10, 2002)**
276:6 through 276:17
282:5 through 283:15
299:15 through 299:20
328:19 through 328:21
376:22 through 378:5
405:16 through 405:20

**Dep. Testimony (Apr. 11, 2002)**
514:1 through 519:9

**Dep. Testimony (June 14, 2002)**
282:1 through 282:25
427:16 through 427:25

**Billy Cole**:

**Dep. Testimony (Mar. 12, 2002)**
8:10 through 9:25
55:2 through 55:25
75:1 through 75:14
129:2 through 130:22
173:3 through 176:24
180:1 through 180:24
201:20 through 202:24

204:1 through 206:23
225:15 through 226:18

**Dep. Testimony (June 4, 2002)**
199:5 through 200:11

**Susan Klein**:

**Dep. Testimony (Apr. 24, 2002)**
11:10 through 12:15
151:6 through 151:20

**Christopher Kouts**

**Trial Testimony, *Tennessee Valley Authority v. US* (Jul. 12, 2005)**
1567:15 through 1568:7
1569:4 through 1570:17
1571:1 through 1580:24

**Michael Lawrence**

**Dep. Testimony (May 20, 2002)**
86:7 through 88:22
130:7 through 131:16
142:10 through 145:24

**Dep. Testimony (May 21, 2002)**
301:20 through 305:4

**Ronald Milner**:

**Dep. Testimony (May 1, 2002)**
11:23 through 12:8
31:1 through 31:22
73:10 through 73:22

**Dep. Testimony (May 3, 2002)**
555:8 through 556:12

**Dep. Testimony (May 7, 2002)**
661:4 through 661:24

**Trial Testimony, *Yankee Atomic Electric Co., et al. v. US* (Aug. 11, 2004)**
4711:23 through 4712:3
4723:9 through 4723:17

**Robert Morgan**

**Dep. Testimony (Mar. 21, 2002)**
24:10 through 24:24
37:9 through 44:4
137:3 through 144:10

**Dep. Testimony (June 25, 2002)**
134:12 through 135:14

**Trial Testimony, *Yankee Atomic Electric Co., et al. v. US* (Aug. 3, 2004)**
3674:16 through 3686:22

**Thomas Pollog**

**Dep. Testimony (Apr. 11, 2002)**
20:9 through 21:4
96:1 through 97:17

**Dep. Testimony (May 16, 2002)**
293:3 through 294:23

**Trial Testimony, *Yankee Atomic Electric Co., et al. v. US* (Aug. 4, 2004)**
4012:19 through 4021:9
4021:18 through 4023:11

**Trial Testimony, *Tennessee Valley Auth. v. US* (June 24, 2005)**
908:6 through 909:24
916:2 through 918:8

**Trial Testimony, *Tennessee Valley Auth. v. US* (July 11, 2005)**
1365:9 through 1367:10

**Trial Testimony, *Tennessee Valley Auth. v. US* (July 12, 2005)**
1662:8 through 1666:18

**Nancy Slater (Thompson)**

**Dep. Testimony (Apr. 22, 1999)**
242:18 through 245:21

**Dep. Testimony (June 13, 2002)**
5:2 through 7:4
98:1 through 99:25
108:20 through 110:13

**<u>Victor Trebules</u>**

**Dep. Testimony (Apr. 17, 2002)**
17:7 through 18:17
52:11 through 53:21
97:2 through 99:1

**Dep. Testimony (Apr. 18, 2002)**
19:7 through 20:16

**<u>David Zabransky</u>**

**Dep. Testimony (Apr. 17, 2002)**
16:11 through 16:19
30:6 through 42:13
45:2 through 52:8
57:1 through 59:14
76:13 through 79:19
89:3 through 92:17
105:6 through 105:14
129:9 through 132:22

**Dep. Testimony (Apr. 18, 2002)**
323:2 through 326:17
343:2 through 366:22
431:4 through 442:22

**Dep. Testimony (Apr. 19, 2002)**
596:1 through 626:16
668:2 through 671:20

**Dep. Testimony (June 6, 2002)**
246:1 through 247:25

**Trial Testimony**, ***Yankee Atomic Electric Co., et al. v. US*** **(Aug. 5, 2004)**
4110:15 through 4112:3
4118:2 through 4118:12
4166:3 through 4167:16

**Trial Testimony, *Tennessee Valley Auth. v. US* (June 24, 2005)**
929:3 through 929:18

**Trial Testimony, *Tennessee Valley Auth. v. US* (July 12, 2005)**
1743:13 through 1743:25

CERTIFICATE OF FILING

I hereby certify that on this 5th day of January, 2007, a copy of foregoing "DEFENDANT'S MOTION TO CONDUCT JOINT TRIAL PROCEEDINGS FOR THE TESTIMONY OF THREE GOVERNMENT FACT WITNESSES," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Marian E. Sullivan