IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Electronically Filed on January 9, 2007)

| | | |
|---|---|---|
| **SYSTEM FUELS, INC.**, **SYSTEM ENERGY RESOURCES, INC.**, and **SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION**, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 03-2624C (Judge Braden) |
| **THE UNITED STATES**, | ) | |
| Defendant. | ) | |

## SECOND AMENDED COMPLAINT AND SUPPLEMENTAL COMPLAINT

Plaintiffs System Fuels, Inc. ("SFI"), System Energy Resources, Inc. ("System Energy"), and South Mississippi Electric Power Association ("SMEPA"), for their second amended complaint and supplemental complaint in this action, allege as follows:

## NATURE OF THE CASE

1. SFI, System Energy, and SMEPA bring this lawsuit to recover significant damages caused by the Department of Energy's ("DOE") material partial breach of its unconditional obligation to begin disposing of spent nuclear fuel and high level nuclear waste (collectively, "SNF") generated by the commercial nuclear power plant owned by System Energy and SMEPA. Pursuant to the Nuclear Waste Policy Act of 1982, as amended, 42 U.S.C. §§ 10101 et seq. ("NWPA"), DOE and SFI entered into a contract in 1983 under which System Energy and SMEPA have paid and continue to pay substantial fees in return for DOE's obligation to remove and dispose of SNF beginning no later than January 31, 1998. SFI, System Energy, and SMEPA have fully complied with their fee payment obligations under the contract. DOE, however, has failed to perform its reciprocal obligation to dispose of SNF, and has stated

that it will not do so until 2017 at the earliest. System Energy and SMEPA have incurred and will continue to incur significant costs associated with procuring additional SNF storage capacity and other damages as a result of DOE's total disregard of its contractual obligations.

**PARTIES**

2. System Energy and SMEPA are the owners of Unit 1 of the Grand Gulf Nuclear Station ("Grand Gulf"). System Energy owns or leases 90% of Grand Gulf and SMEPA owns the remaining 10% interest in Grand Gulf. The Nuclear Regulatory Commission ("NRC") issued a license to System Energy and SMEPA for Grand Gulf Unit 1 in 1983. The Grand Gulf plant has generated and continues to generate SNF, which is stored at the plant site. SFI has entered into a Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (the "Standard Contract") with DOE pursuant to which DOE is to accept and dispose of the SNF generated by the Grand Gulf plant in return for payment of specified fees by SFI.[1]

3. Defendant is the United States of America, acting through DOE.

**JURISDICTION**

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1491(a)(1).

5. DOE's complete failure to comply with its essential contractual obligation to begin disposing of SNF by January 31, 1998 constitutes a material partial breach of its Standard Contract, for which SFI, System Energy, and SMEPA may seek recovery of damages without exhausting any administrative remedies. In companion decisions handed down on August 31, 2000, the Federal Circuit has conclusively rejected the Government's exhaustion of remedies jurisdictional defense. See Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir.

[1] SFI entered into the Standard Contract on behalf of itself, System Energy (then known as Middle South Energy, Inc.), and SMEPA. Although System Energy and SMEPA own or lease the Grand Gulf nuclear plant, SFI performs all duties of the Purchaser under the Standard Contract on behalf of System Energy and SMEPA, including payment of the quarterly fee.

2000) ("Northern States"); Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336 (Fed. Cir. 2000) ("Maine Yankee").

6. Furthermore, Article XI of the Standard Contract states, "Nothing in this contract shall be construed to preclude either party from asserting its rights and remedies under the contract or at law." Pursuant to this provision, SFI, System Energy, and SMEPA are entitled to pursue their legal claims without exhausting any administrative remedies.

## FACTUAL BACKGROUND

### The Standard Contract

7. In 1982, Congress enacted the NWPA, codifying the Federal Government's long-standing commitment to accept responsibility and provide for the timely disposition of commercial SNF. Pursuant to Section 302(a)(5)(B) of the NWPA, 42 U.S.C. § 10222(a)(5)(B), DOE was required to commence disposing of commercially-generated SNF no later than January 31, 1998, in return for the payment of fees by utilities and others that generated or held title to the SNF. The fees are paid into the Nuclear Waste Fund, which is the source of funds to cover DOE's costs for disposing of SNF.

8. Pursuant to Section 302 of the NWPA, in 1983 DOE developed the Standard Contract. The Standard Contract embodies the reciprocal obligations mandated by the NWPA, pursuant to which contract holders agree to pay fees into the Nuclear Waste Fund in return for the provision of SNF disposal services by DOE, beginning no later than January 31, 1998. See 10 C.F.R. Part 961.11. Specifically, the Standard Contract provides that "[t]he services to be provided by DOE under this contract shall begin, after commencement of facility operations, not later than January 31, 1998 and shall continue until such time as all SNF . . . has been disposed of." 10 C.F.R. § 961.11, Art. II.

9. SFI executed its Standard Contract, on behalf of itself, System Energy, and SMEPA, on June 30, 1983. To date, System Energy and SMEPA have paid more than $171 million into the Nuclear Waste Fund pursuant to this contract and continue to pay fees in excess of $10 million per year.

**DOE's Anticipatory Breach of the Contractual Deadline**

10. Notwithstanding the obligation imposed upon DOE by the Standard Contract, DOE failed to meet most of the early milestones established by the NWPA. These early failures eventually led to problems further along the program schedule, particularly in establishing the geologic repository called for by the NWPA. At the same time, however, DOE continued to make commitments and representations that it would begin to dispose of SNF by the 1998 deadline.

11. For example, in a September 7, 1984 letter by Donald P. Hodel, then Secretary of Energy, to United States Senator J. Bennett Johnston, Secretary Hodel stated, "Pursuant to my authority, it is my intention that this commitment together with the overall thrust of the [NWPA], will create an obligation for [DOE] to accept spent fuel in 1998 whether or not a repository is in operation."

12. Similarly, in its 1987 Mission Plan Amendment, DOE announced that the geologic repository called for by the NWPA would not be available until 2003. DOE indicated, however, that it would be able to begin accepting SNF by 1998 at a Monitored Retrievable Storage ("MRS") facility designed to store SNF until commencement of repository operations.

13. Congress substantially amended the NWPA in 1987. As amended, the NWPA required DOE to focus its entire repository development effort on characterizing Yucca Mountain, Nevada, one of the earlier-identified candidate sites, to determine its suitability as the nation's first geologic repository. 42 U.S.C. § 10133. Congress also authorized DOE to

construct a MRS but did not name a specific site. Rather, the NWPA provided two different options for siting a MRS. Under the first option, a MRS could be sited through the efforts of the Nuclear Waste Negotiator, an Executive Branch position created by the 1987 Amendments. 42 U.S.C. §§ 10242-10249. Under the second option for MRS siting, DOE was authorized to site and develop a MRS on its own, but on a schedule that was linked by the NWPA to the development of the repository. 42 U.S.C. §§ 10165(b), 10168(d).

14. By 1987, the repository program was more than ten years behind schedule. Despite the fact that, in less than five years, the repository program had fallen ten years behind schedule, DOE relied solely on the efforts of the Nuclear Waste Negotiator for development of the MRS. DOE did not develop any contingency plans for meeting the January 31, 1998 deadline in the event that the Negotiator was unsuccessful, a state of events that continued even after the Negotiator's authority expired with the unsuccessful completion of his mission. Not surprisingly, DOE's waste disposal program fell further behind schedule.

15. In 1995, DOE issued a Final Interpretation of Nuclear Waste Acceptance Issues ("Final Interpretation") wherein DOE retreated from its earlier acknowledgments that it had an unconditional obligation to begin disposing of SNF by January 31, 1998. 60 Fed. Reg. 21973, 21974 (May 3, 1995). In its Final Interpretation, DOE stated that, since passage of the NWPA, it "has become apparent that neither a repository nor an interim storage facility constructed under the Act will be available by 1998," and that it would commence disposing of SNF at a repository by 2010 at the earliest. 60 Fed. Reg. at 21794. The Final Interpretation also stated DOE's conclusion that the NWPA does not impose an obligation on DOE to commence disposing of contract holders' SNF in 1998 in the absence of a disposal or interim storage facility. Id. at 21794-95.

**DOE's Breach of its Contractual Obligation**

16. Various utilities, including Plaintiffs, filed petitions for review of the Final Interpretation in the U.S. Court of Appeals for the District of Columbia Circuit. The D.C. Circuit ruled in favor of the petitioners and held that the NWPA imposed on DOE an unconditional obligation to begin disposing of SNF by January 31, 1998. Indiana Michigan Power Co. v. Department of Energy, 88 F.3d 1272 (D.C. Cir. 1996). The Court further held that this obligation was reciprocal to the utilities' obligation to pay fees into the Nuclear Waste Fund. The Court remanded the matter to DOE for proceedings consistent with the opinion.

17. Notwithstanding the D.C. Circuit's unequivocal ruling, DOE advised SFI and other Standard Contract holders that it would not begin to dispose of SNF by the January 31, 1998 deadline. Specifically, DOE announced in a December 17, 1996 letter to contract holders "that DOE anticipates it will be unable to begin acceptance of spent nuclear fuel for disposal in a repository or interim storage facility by January 31, 1998." DOE further took the position that its failure to meet the deadline was excused because its delay was unavoidable.

18. In response to DOE's recalcitrance, SFI (through its affiliate Entergy Operations, Inc.) and other utilities filed another petition with the D.C. Circuit for a writ of mandamus to compel DOE to comply with the mandate in Indiana Michigan. In Northern States Power Co. v. United States Dep't of Energy, 128 F.3d 754 (D.C. Cir. 1997) ("Northern States I"), the D.C. Circuit reiterated that DOE had an unconditional obligation under both the NWPA and the Standard Contract to begin disposing of utilities' SNF by January 31, 1998. The Court also held that DOE had a clear duty to act in accordance with this unconditional obligation and issued a writ of mandamus precluding DOE from arguing that its failure to meet the January 31, 1998 deadline was unavoidable. On November 30, 1998, the United States Supreme Court denied DOE's petition for a writ of certiorari in the Northern States I case, 525 U.S. 1016 (1998).

19. Despite the ruling in Northern States I, DOE made no effort to meet the contractual deadline. DOE did not begin to dispose of SNF by January 31, 1998, as required by the NWPA and Standard Contract, and for many years maintained the position announced prior to the D.C. Circuit's rulings that it will not begin to dispose of SNF until 2010 at the earliest. More recently, DOE announced that the "best-achievable" date to begin receipt of SNF is now March 31, 2017. This date is one that DOE characterizes as "aggressive" and assumes among other highly optimistic assumptions "the absence of litigation related delays." Statement of Edward F. Sproat III, Director, Office of Civilian Radioactive Waste Management, U.S. Department of Energy, before the Subcommittee on Energy and Air Quality, Committee on Energy and Commerce, U.S. House of Representatives (July 19, 2006).

20. In Maine Yankee, decided by the Federal Circuit on August 31, 2000, the Federal Circuit concluded that DOE's admitted failure to begin accepting spent nuclear fuel by the January 31, 1998 contractual deadline constituted a breach of the Standard Contract. In the companion Northern States case, the Federal Circuit held that the unavoidable delays provision of the contract "does not bar a suit seeking damages for the Government's failure to begin performance at all by the statutory and contractual deadline of January 31, 1998." Northern States, 224 F.3d at 1367. In summary, the Federal Circuit has determined as a matter of law that DOE breached the contract and that Plaintiffs and other similarly situated utilities that are parties to the Standard Contract can bring an action for breach of contract damages in this Court.

**Nature of Damages Sustained by Plaintiffs as a Result of DOE's Breach**

21. As a direct consequence of DOE's disregard of its contractual obligations and defiance of the D.C. Circuit's rulings, System Energy and SMEPA have been and will be forced to incur substantial additional costs to provide for extended on-site storage of their SNF. Moreover, System Energy and SMEPA have incurred and will continue to incur other substantial damages, including but not limited to regulatory costs associated with efforts to ensure sufficient

on-site storage capacity or alternative off-site storage capacity to permit continued operation of their nuclear plant.

**CLAIMS FOR RELIEF**

**COUNT I**

**(Partial Breach of Contract)**

22. Paragraphs 1 through 21 are incorporated herein by reference as if set forth in full.

23. SFI, System Energy, and SMEPA have complied and continue to comply with all of their obligations under the Standard Contract, including the payment of all required fees into the Nuclear Waste Fund.

24. DOE has failed to perform its obligation under the Standard Contract to dispose of SNF beginning no later than January 31, 1998, and thereby has partially and materially breached the Standard Contract.

25. As a direct and proximate result of DOE's partial breach of the Standard Contract, System Energy and SMEPA have incurred and will incur damages in an amount to be determined at trial. The rate at which System Energy's and SMEPA's damages will continue to accrue is dependent upon various factors including but not limited to when DOE commences performance of its contractual obligations, and System Energy and SMEPA reserve all rights to recover presently unascertainable damages that may be caused by DOE's future partial breaches of the Standard Contract.

**COUNT II**

**(Taking Without Just Compensation)**

26. Paragraphs 1 through 25 are incorporated herein by reference as if fully set forth in full.

27. Based on its long standing commitment to dispose of SNF, which was codified with a date certain in the NWPA, the Government was and is unequivocally obligated under the Standard Contract and NWPA to commence acceptance and disposal of SNF generated at the Grand Gulf nuclear plant no later than January 31, 1998.

28. The Government's failure and refusal to comply with the requirements of the Standard Contract for acceptance and disposal of SNF generated at the Grand Gulf nuclear plant constitutes a taking of the vested real property rights of System Energy and SMEPA. For example, the Government's failure to honor its commitments under the Standard Contract will prevent System Energy and SMEPA from being able to decommission their nuclear plant site and devote that site to commercial uses as soon as it otherwise would have been able to do so. The Government's conduct has deprived, and will continue to deprive, System Energy and SMEPA of the full valuable economic use of that site, as well as the real property on which the SNF is stored and from which it cannot lawfully be removed.

29. System Energy and SMEPA are entitled to just compensation for this taking of System Energy's and SMEPA's real property in an amount to be determined at trial.

**SUPPLEMENTAL PLEADING**

30. Since the filing of the original complaint in this case in November 2003, Plaintiffs have continued to pay fees into the Nuclear Waste Fund of approximately $10 million per year. To date, Plaintiffs have paid more than $171 million into the Nuclear Waste Fund.

31. Since the filing of the original complaint in this case, Plaintiffs have incurred and continue to incur additional damages at Grand Gulf, which damages arise from the same

continuing partial breach of SFI's Standard Contract and continuing taking of System Energy's and SMEPA's property without just compensation by the Government.

32. Between November 2003 and continuing through August 2005, the following transactions, occurrences, and events, *inter alia*, took place as a direct and proximate result of the Government's continuing partial breach of SFI's Standard Contract and continuing taking of System Energy's and SMEPA's property without just compensation: Plaintiffs incurred costs for engineering studies of spent fuel disposal options for Grand Gulf and on the engineering design of a dry storage facility at Grand Gulf. Plaintiffs also commenced construction of a dry storage facility at Grand Gulf and began obtaining dry storage casks and cask transfer equipment for the facility.

33. As a direct and proximate result of DOE's continuing partial breach of SFI's Standard Contract, continuing taking of System Energy's and SMEPA's property without just compensation, and the actions taken in paragraph 32 above, Plaintiffs have incurred substantial damages in addition to those sought in the original Complaint in this case. The amount of these damages (through August 31, 2005) is to be determined at the trial that commenced in September 2006 and is scheduled to reconvene on January 16, 2007. System Energy and SMEPA reserve all rights to recover damages incurred after that date as a result of the continuing partial breach of SFI's Standard Contract and continuing taking of System Energy's and SMEPA's property without just compensation by the Government.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs SFI, System Energy and SMEPA respectfully request that the Court enter judgment in their favor and against the United States as follows:

(a) On Count I, for damages in an amount to be established at trial;

(b) On Count II, for damages in an amount to be established at trial;

(c) Pre-judgment and post-judgment interest as permitted by law;

(d) Costs of suit, including reasonable attorneys' fees as permitted by law; and

(e) Such other and further relief as this Court may deem proper.

Dated: January 9, 2007

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Jack Y. Chu
Alex D. Tomaszczuk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102
(703) 770-7940
(703) 770-7901 (fax)

Counsel of Record for Plaintiffs
System Fuels, Inc.,
System Energy Resources, Inc., and
South Mississippi Electric Power Association

Of Counsel:

Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)

L. Jager Smith, Jr.
**WISE CARTER CHILD**
**& CARAWAY, P.A.**
1340 Echelon Parkway
Jackson, MS 39213
601-368-5572
601-368-5816 (fax)