**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on April 25, 2008)

| | | |
|---|---|---|
| **SYSTEM FUELS, INC.**, **SYSTEM ENERGY RESOURCES, INC.**, and **SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION**, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 03-2624C (Judge Braden) |
| **THE UNITED STATES**, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR CLAIM FOR RECOVERY OF THE COST OF BORROWED FUNDS**

Of Counsel:
Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)

L. Jager Smith, Jr.
**WISE CARTER CHILD & CARAWAY, P.A.**
1340 Echelon Parkway
Jackson, MS 39213
601-368-5572
601-368-5816 (fax)

Alex D. Tomaszczuk
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102-4859
(703) 770-7940
(703) 770-7901 (fax)

Counsel of Record for Plaintiffs
System Fuels, Inc., System Energy Resources, Inc., and South Mississippi Electric Power Association

April 25, 2008

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... iii

FACTUAL BACKGROUND ..... 2

I. The Court's October 11, 2007 Memorandum Opinion And Order ..... 2

II. Mr. Metcalfe's Supplemental Testimony ..... 4

ARGUMENT ..... 5

I. The Record In This Case Has Always Been Open, And Plaintiffs Carried Their Burden Of Proof Regarding The Recovery Of Their Cost Of Borrowed Funds ..... 5

II. Mr. Metcalfe Provided Sufficient And Proper Testimony For The Court To Award, *Inter Alia*, "Cost Of Borrowed Funds" Damages ..... 7

III. As The Court Previously Ruled, Cost Of Borrowed Funds Is Not Prejudgment Interest ..... 9

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

## Cases & Decisions


Bishop v. United States,
26 Cl. Ct. 281 (1992) ....................11

Bluebonnet Sav. Bank, FSB v. United States,
266 F.3d 1348 (Fed. Cir. 2001)....................3

Browning Ferris Indus., Inc. v. United States,
2007 WL 1412087 (Fed. Cl. May 10, 2007) ....................11

Caldwell v. United States,
391 F.3d 1226 (Fed. Cir. 2004)....................11

Framlau Corp. v. United States,
215 Ct. Cl. 185 (1977) ....................9

Fru-Con Constr. Corp v. United States,
44 Fed. Cl. 298 (1999), *aff'd*, 250 F.3d 762 (Fed. Cir. 2000)....................11

Gevyn Constr. Corp. v. United States,
827 F.2d 752 (Fed. Cir. 1987)....................9

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005)....................3

Pacific Gas & Elec. Co. v. United States,
58 Fed. Cl. 1 (2003) ....................11

Stockton E. Water Dist. v. United States,
76 Fed. Cl. 497 (2007) ....................11

System Fuels, Inc. v. United States,
78 Fed. Cl. 769 (2007) .................... *passim*

Wickham Contracting Co., Inc. v. Fischer,
12 F.3d 1574 (Fed. Cir. 1994)....................3, 9


## Rules and Regulations


RCFC 59 ....................10, 11


## Other Authorities


BLACK'S LAW DICTIONARY (8th ed. 2004) ....................10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Electronically Filed on April 25, 2008)

| | |
|---|---|
| **SYSTEM FUELS, INC.**,<br>**SYSTEM ENERGY RESOURCES, INC.**, and<br>**SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION**,<br><br>Plaintiffs,<br><br>v.<br><br>**THE UNITED STATES**,<br><br>Defendant. | No. 03-2624C<br>(Judge Braden) |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR CLAIM FOR RECOVERY OF THE COST OF BORROWED FUNDS**

Pursuant to the Court's March 12, 2008 Scheduling Order, Plaintiffs System Fuels, Inc., System Energy Resources, Inc., and South Mississippi Electric Power Association (collectively "Plaintiffs") respectfully submit their supplemental brief in support of their claim for the cost of borrowed funds. This brief supports the supplemental testimony of Mr. Kenneth P. Metcalfe, Plaintiffs' damages expert in this case, and is in response to the brief of the Defendant (the "Government") filed on April 11, 2008 and styled as an "Opposition To Plaintiffs' Claim For Pre-Judgment Interest In Response To The Court's March 2008 Scheduling Order" ("Gov't Br.").

For reasons explained below, Plaintiffs respectfully submit that the Government's brief neither raises any new arguments (beyond those already presented in this case) regarding the cost of borrowed funds, nor accurately characterizes Mr. Metcalfe's testimony and methodology for calculating the cost of borrowed funds. On the contrary, Mr. Metcalfe provided supplemental

testimony to the Court and performed his underlying calculations in a manner wholly consistent with the Court's direction as specified at the January 23, 2008 status hearing and in the October 11, 2007 Order requesting supplemental expert testimony. Moreover, contrary to the Government's oft-repeated mantra, the record in this case has not closed. This Court may, and should, consider both Mr. Metcalfe's supplemental testimony and his prior trial testimony in support of Plaintiffs' recovery of their claim for the cost of borrowed funds.[1]

In this case, Mr. Metcalfe has provided more than sufficient evidence for the Court to determine the entirety of Plaintiffs' damages with reasonable certainty. Thus, Plaintiffs respectfully request that the Court enter judgment on their breach of contract claim in the amount of $10,501,916 (which amount includes the weighted average cost of capital as part of their damages claim). Alternatively, Plaintiffs request that this Court enter judgment in the amount of $10,371,933 (based on Plaintiffs' weighted average cost of debt) or $10,100,652 (based on Plaintiffs' cost of borrowed funds).

## FACTUAL BACKGROUND

### I. THE COURT'S OCTOBER 11, 2007 MEMORANDUM OPINION AND ORDER

The Court has previously ruled that Plaintiffs' total damages award, excluding the cost of borrowed funds, is $10,014,114. System Fuels, Inc. v. United States, 78 Fed. Cl. 769, 809 (2007). Regarding the adjudication of the cost of borrowed funds associated with Plaintiffs' damages claim, the Court found on the merits that Plaintiffs are entitled to recover the cost of borrowed funds but required "clarification about the existing record" and entered a separate

[1] The Court has indicated that the cost of borrowed funds is a more appropriate characterization of Plaintiffs' financing costs in this case. However, Plaintiffs respectfully submit, for reasons explained in Mr. Metcalfe's supplemental testimony, that their weighted average cost of capital remains the measure of damages that would make them economically whole as a result of the Government's breach.

Order Requesting Supplemental Expert Testimony contemporaneously with the trial decision. Id. This separate Order stated, in relevant part:

> Plaintiff is ordered to submit Supplemental Direct Testimony from Mr. Kenneth P. Metcalfe, President of The Kenrich Group, LLC that explains clearly and succinctly each step taken to arrive at the $1,587,000 amount of the cost of borrowed funds that Plaintiffs have requested as part of their damages award. Mr. Metcalfe is directed to cite only to the documents in the record, such as the exhibits attached to his Direct Testimony or Federal Energy Regulatory Agency, Nuclear Regulatory Agency, and/or Securities and Exchange Commission filings on the public record.

Order Requesting Supplemental Expert Testimony (Oct. 11, 2007).

As to the merits of Plaintiffs' claim for their cost of borrowed funds, the Court drew an important distinction between (1) the prejudgment "interest" that the Government argued is unrecoverable absent the Government's specific provision for its recovery, and (2) the cost of capital that Plaintiffs incurred to plan, design, and construct the dry fuel storage facility (or "ISFSI") at the Grand Gulf Nuclear Station ("Grand Gulf"). In particular, the Court noted that interest as an "amount charged by a lender to a borrower for the use of funds" is treated by accountants as "an unrecovered cost, accrued as a liability." 78 Fed. Cl. at 807. Thus, the U.S. Court of Appeals for the Federal Circuit (the "Federal Circuit") has permitted recovery of "interest" as an amount charged by a lender, when such amounts are components of a damages claim. Id. (citing Bluebonnet Sav. Bank, FSB v. United States, 266 F.3d 1348, 1355 (Fed. Cir. 2001); Wickham Contracting Co., Inc. v. Fischer, 12 F.3d 1574, 1582 (Fed. Cir. 1994)). By extension, the Court ruled that if causation is established, a private party to a government contract may recover an amount charged by a lender for borrowed funds that were loaned to mitigate a breach of contract. 78 Fed. Cl. at 807.

The Court found that Plaintiffs established the requisite causation for recovery of their cost of borrowed funds, which causation requires a showing that the damages are foreseeable,

substantially caused by the breach, and shown with reasonable certainty. Id. at 788 (citing three-factor test from Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1373 (Fed. Cir. 2005)). On foreseeability, the Court observed that because the use of a dry fuel storage system was foreseeable to the Government when the Standard Contract was executed, and that it was a matter of public record that utilities would need to borrow funds, pursuant to Federal Energy Regulatory Commission's ("FERC") requirements, to build a dry fuel storage facility in the event of the Department of Energy's breach of its Standard Contract obligations. 78 Fed. Cl. at 807. On causation, the Court found that the Government's partial breach of the Standard Contract was a substantial factor in Plaintiffs' need to borrow funds to build the ISFSI at Grand Gulf, and that Plaintiffs' annual FERC Form No. 1 filings, among other documents, represented the best evidence of how Plaintiffs borrowed funds on an annualized basis for their construction of the ISFSI. Id. at 807-08. Finally, regarding reasonable certainty, the Court could not, from the record evidence, readily ascertain how Mr. Metcalfe derived the annual rates underlying his calculations of Plaintiffs' cost of borrowed funds. Id. Thus, the Court directed Mr. Metcalfe to provide further instruction and step-by-step guidance regarding how he calculated Plaintiffs' cost of borrowed funds. Id.

## II. MR. METCALFE'S SUPPLEMENTAL TESTIMONY

Consistent with the Court's direction, Mr. Metcalfe provided written "Supplemental Direct Testimony" regarding his step-by-step calculations of Plaintiffs' $1,587,000 cost of capital claim to the Court in a filing dated November 14, 2007. Additionally, Mr. Metcalfe testified live before the Court on January 23, 2008 and further explained the formulas and processes underlying the calculation of damages in Plaintiffs' $12,178,000 claim as initially submitted to the Court. In following the instructions in the Court's October 11th Order

Requesting Supplemental Expert Testimony, Mr. Metcalfe's November 2007 testimony did not specifically address the damages in this case (with certain deductions) as determined in the October 11, 2008 Memorandum Opinion and Order. Transcript of January 23, 2008 Hearing ("Supp. Tr.") at 42-44. Thus, the Court directed Mr. Metcalfe to submit additional testimony explaining how to calculate Plaintiffs' damages, including their cost of borrowed funds, while accounting for the Court's specified deductions (i.e., an "updated" version of his damages calculations). Id. at 92-95.

Mr. Metcalfe provided his "Second Supplemental Direct Testimony" to the Court in a filing dated February 19, 2008 ("Metcalfe February 2008 Testimony"). In this update, Mr. Metcalfe determined, with the same exhibits from the record that he used to prepare Plaintiffs' initial damages claim, that Plaintiffs' nominal damages total $9,919,842 (to account for minor discrepancies between the record evidence and the deduction amounts cited in the October 11, 2007 Memorandum Opinion and Order). Metcalfe February 2008 Testimony at 4. Additionally, Mr. Metcalfe determined that Plaintiffs' damages, including their cost of borrowed funds based on the August 31, 2005 damages cut-off date, total $10,100,652.[2] Id. at 7.

## ARGUMENT

### I. THE RECORD IN THIS CASE HAS ALWAYS BEEN OPEN, AND PLAINTIFFS CARRIED THEIR BURDEN OF PROOF REGARDING THE RECOVERY OF THEIR COST OF BORROWED FUNDS

In its October 11, 2007 Memorandum Opinion and Order, the Court specifically deferred for further proceedings a final determination on Plaintiffs' claim for the cost of borrowed funds:

---

[2] Mr. Metcalfe also provided his calculations of Plaintiffs' damages (inclusive of their financing costs) using the Plaintiffs' weighted average cost of capital and weighted average cost of debt, which damages total $10,501,916 and $10,371,933, respectively. Metcalfe February 2008 Testimony at 7, 9.

> Without the ability to ascertain precisely how Mr. Metcalfe arrived at the cost of borrowed funds claimed by Plaintiffs in this case, the court cannot determine the amount of the cost of borrowed funds with reasonable certainty. It may be the answer lies in the record, but the court requires specific instruction and guidance through the exhibits attached to Mr. Metcalfe's testimony. . . . Because the court requires clarification about the existing record, the court has entered a separate Order Requesting Supplemental Expert Testimony to be issued, together with this Memorandum Opinion and Order. After receiving the information requested and any objections thereto, the court will issue a Final Order awarding mitigation damages to Plaintiffs for certain costs incurred from January 15, 1998 to August 31, 2005.

78 Fed. Cl. at 809-10. This Court's direction to the parties plainly contemplated the submission of additional testimony into the record clarifying Plaintiffs' damages (and, in particular, their weighted average cost of capital or cost of borrowed funds). Nonetheless, based on the unsupported assertion that the record in this case is closed, and a misinterpretation of the Court's ruling regarding Plaintiffs' recovery of their cost of borrowed funds, the Government mistakenly concludes that supplemental testimony from Mr. Metcalfe was either irrelevant or inappropriate. Gov't Br. at 2 n.2. On the contrary, as the quoted excerpt above indicates, the Court *never* held that it was impossible from the record to determine Plaintiffs' cost of borrowed funds with reasonable certainty (and specifically indicated that there may already be sufficient evidence in the record). The Court's explanation at the January 23, 2008 hearing also belies the Government's understanding of the procedural posture in this case. Supp. Tr. at 52 ("[T]he Court didn't make the holding that [Government counsel] said. What I said is I was confused. I couldn't understand the record. It could have been in there but it was really my own ignorance. So I didn't make a finding that [Plaintiffs] didn't meet the burden of proof. I said I couldn't understand the evidence in the record.").

Finally, regarding the evidentiary record in this case, the Government asserts without any reasonable basis that the treatises cited in Mr. Metcalfe's February 19, 2008 testimony should be

disregarded. Towards the end of the January 23, 2008 proceeding, the Court commented to Mr. Metcalfe: "I am interested in knowing if there is a standard text someplace that uses the words 'weighted average cost of capital,' because, as I said, we went to all the books available in the Federal Circuit's library in accounting and economics and couldn't find that term." Supp. Tr. at 89-90. Thus, to the extent that judicially noticeable materials about the "weighted average cost of capital" would assist the Court in issuing a final decision regarding Plaintiffs' damages, Mr. Metcalfe's supplemental testimony identifying several such treatises is entirely appropriate and should not be disregarded.

## II. MR. METCALFE PROVIDED SUFFICIENT AND PROPER TESTIMONY FOR THE COURT TO AWARD, *INTER ALIA*, "COST OF BORROWED FUNDS" DAMAGES

At trial and in his supplemental testimony, Mr. Metcalfe provided ample grounds for the Court to award damages based on Plaintiffs' weighted average cost of capital for their planning and construction of the ISFSI at Grand Gulf. Although Mr. Metcalfe testified that, in his opinion, damages awards based on Plaintiffs' cost of borrowed funds or their weighted average cost of debt would not fully compensate Plaintiffs for their economic loss from the Government's breach of contract, such alternative calculations represent at least a partial attempt to do so. Supp. Tr. at 85-88.

The Government, in its only argument regarding the actual merits of Mr. Metcalfe's supplemental testimony, mischaracterizes Mr. Metcalfe's use of a pre-tax debt cost rate in computing the cost of borrowed funds. For example, the Government implies that Mr. Metcalfe improperly used a pre-tax debt cost rate for his alternative calculations, and that his methodology somehow "changed" or became inconsistent. Gov't Br. at 11. No inconsistency exists, however, due to the inherent differences between the weighted average cost of capital, the cost of

borrowed funds, and the weighted average cost of debt. Mr. Metcalfe's original supplemental direct testimony explained that FERC *requires* debt rates to be maintained and reported on a pre-tax basis, and that the weighted average cost of debt (like the cost of borrowed funds) is a pre-tax rate. Supplemental Direct Testimony of Kenneth P. Metcalfe at 10 n.14, 12 n.16 (Nov. 14, 2007). The calculation of Plaintiffs' weighted average cost of capital, on the other hand, requires use of an after-tax rate. Id.

Another example of the Government's mischaracterizations is the statement that "Mr. Metcalfe's [weighted average cost of debt] and 'cost of borrowed funds' calculations assume that all costs claimed as damages are financed by pre-tax debt." Gov't Br. at 11. This statement is at least partially incorrect. As Mr. Metcalfe explained, for the cost of borrowed funds alternative damages calculation, a reasonable assumption is made that only a portion of Plaintiffs' total nominal damages are financed with debt (i.e., that portion being equal to the ratio of Plaintiffs' debt to their total capital structure). This assumption further results in the recovery of debt financing costs related to only a portion of the total nominal dollar damages. Metcalfe February 2008 Testimony at 7-8.[3]

The Government further suggests that Mr. Metcalfe's most recent calculations regarding the cost of borrowed funds are new to the record and incorrectly asserts that the only reason for this approach is "to increase damages." Gov't Br. at 10-11. The Government is wrong on both counts. As to the first point, both the cost of borrowed funds and the weighted average cost of debt are readily ascertainable components of the weighted average cost of capital. E.g., Supp. Tr. 56-57. The underlying calculations for these costs were contained in the workpaper binders

[3] In the "weighted average cost of debt" alternative damages calculation, the inherent assumption is that Plaintiffs financed 100 percent of their nominal dollar damages with debt, rather than with a combination of its debt and (more expensive) equity capital.

that Plaintiffs produced to the Government in support of Mr. Metcalfe's expert report in November 2005 (excerpts of which were attached to Mr. Metcalfe's supplemental testimony) and were a part of the trial record. As to the second point, the damages that Mr. Metcalfe calculated based on Plaintiffs' weighted average cost of debt and cost of borrowed funds are both lower than the weighted average cost of capital that he had initially calculated in this case for Plaintiffs' damages claim. The fact that Mr. Metcalfe has presented different methodologies to calculate damages proves nothing other than that different methodologies yield alternative (and here, reduced) damages computations.

In short, consistent with the Court's direction, Mr. Metcalfe has in his supplemental testimony provided reasonable and conservative alternatives to the weighted average cost of capital damages that Plaintiffs have claimed in this case.

## III. AS THE COURT PREVIOUSLY RULED, COST OF BORROWED FUNDS IS NOT PREJUDGMENT INTEREST

The Federal Circuit has held that a plaintiff's cost of borrowed funds may be recovered in circumstances such as those presented here. Wickham, 12 F.3d at 1574. This case is a construction claim for the costs of building a dry fuel storage facility at Grand Gulf. As in Wickham, the Plaintiffs here have had to finance those construction costs, and those financing costs comprise an integral part of Plaintiffs' claim. The Government attempts to distinguish this case from Wickham by relying on the Federal Circuit's distinction between borrowing based on equity capital and debt capital in Gevyn Constr. Corp. v. United States, 827 F.2d 752, 754 (Fed. Cir. 1987). The Federal Circuit drew such a distinction based on the proposition that "the costs to the contractor of borrowing capital [are] clearly determinable, while the value to him of the use of equity is not so readily ascertainable." Id. (citing Framlau Corp. v. United States, 215 Ct. Cl. 185 (1977)). While this underlying principle regarding the cost of capital may hold in

government contract cases where the plaintiff is a construction company (e.g., in Wickham and Gevyn), Plaintiffs in this case are regulated utilities and do not incur costs of capital in the ordinary course of business in the same way that construction companies do.

As the Court is aware, Mr. Metcalfe has testified and Plaintiffs have themselves conceded that they did not engage in borrowings specifically for purposes of financing the construction of the ISFSI at Grand Gulf. Utility typically do not operate in such a manner. Mr. Metcalfe has also explained, however, why the costs to Plaintiffs of borrowing capital – whether based on debt or equity – are real economic costs and readily ascertainable. Supp. Tr. at 79-81. Thus, the same principles underlying the Federal Circuit's award in Wickham apply equally here to Plaintiffs' claim for their cost of capital (or cost of borrowed funds).

To prove their claims for cost of capital or cost of borrowed funds as damages, Plaintiffs needed to satisfy the same three-factor test for causation – foreseeability, substantial causation, and reasonable certainty – that the Court applied regarding the rest of Plaintiffs' claim. The Court found that Plaintiffs carried their burden in this regard. 78 Fed. Cl. at 807-09. In its brief, the Government expressly "requests that the Court reconsider its prior ruling that the 'cost of borrowed funds' is recoverable in this case." Gov't Br. at 5. However, the Government wholly fails to establish *any* grounds – under RCFC 59 or otherwise – for this Court to reconsider its prior rulings as to Plaintiffs' entitlement to recover their cost of borrowed funds. Contrary to the Government's attempt to paint Plaintiffs' claim with the "prejudgment interest" brush, Plaintiffs' claim has never been one for prejudgment interest, which is defined as "*statutorily prescribed interest* accrued either from the date of the loss or from the date when the complaint was filed up to the date the final judgment is entered." BLACK'S LAW DICTIONARY (8th ed. 2004) (emphasis added). Even the Government must concede that Mr. Metcalfe's testimony and calculations did

not originate from statutory prescriptions like prejudgment interest does, but rather from FERC documents and Plaintiffs' business records. See Supp. Tr. at 8 (Mr. Metcalfe describing the sources of the underlying exhibits for his calculations).

Ultimately, although not explicitly styled as such, the Government's April 11, 2008 brief amounts to a RCFC 59 motion for reconsideration of the Court's finding that Plaintiffs are entitled to recover as damages their cost of borrowed funds – a motion for reconsideration that should be denied. It is well-settled in this Court that motions for reconsideration must be supported by "a showing of extraordinary circumstances which justify relief." Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (citing Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999), *aff'd*, 250 F.3d 762 (Fed. Cir. 2000)). To prevail, the moving party must meet the "exacting standard of identifying 'a manifest error of law or mistake of fact.'" Browning Ferris Indus., Inc. v. United States, 2007 WL 1412087, at *1 (Fed. Cl. May 10, 2007) (citing Pacific Gas & Elec. Co. v. United States, 58 Fed. Cl. 1, 2 (2003)). To establish manifest legal or factual error, the moving party must demonstrate: "(1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice." Stockton E. Water Dist. v. United States, 76 Fed. Cl. 497, 499 (2007) (citing Bishop v. United States, 26 Cl. Ct. 281, 286 (1992)). In the end, reconsideration of even part of a final judgment is extraordinary relief, not an opportunity for a dissatisfied party to repeat arguments previously rejected. "[M]otions for reconsideration are not intended to allow a party to reassert arguments that the Court has already considered." Also, RCFC 59 "is not intended to give an unhappy litigant an additional chance to sway the court." Fru-Con Constr., 44 Fed. Cl. at 300. As explained throughout this brief, the Government is essentially repeating arguments that this Court has

already considered, and has not demonstrated any basis for extraordinary relief contemplated under RCFC 59. This Court need not, and should not, revisit its prior rulings, which were (and are) supported by the record and applicable law.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter judgment on their breach of contract claim in the amount of $10,501,916 (which amount includes the weighted average cost of capital from their damages claim). Alternatively, Plaintiffs request that this Court enter judgment in the amount of $10,371,933 (based on Plaintiffs' weighted average cost of debt) or $10,100,652 (based on Plaintiffs' cost of borrowed funds).

Dated: April 25, 2008

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Jack Y. Chu
Alex D. Tomaszczuk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102-4859
(703) 770-7940
(703) 770-7901 (fax)

Counsel of Record for Plaintiffs
System Fuels, Inc., System Energy Resources, Inc., and South Mississippi Electric Power Association

OF COUNSEL:
Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)

L. Jager Smith, Jr.
**WISE CARTER CHILD**
**& CARAWAY, P.A.**
1340 Echelon Parkway
Jackson, MS 39213
601-368-5572
601-368-5816 (fax)